**CAIR LEGAL DEFENSE FUND**
Lena F. Masri (D.C. Bar # 100019) (seeking *pro hac vice* admission)
Email:  lmasri@cair.com
Gadeir I. Abbas (VA Bar # 81161) (seeking *pro hac vice* admission)
Email:  gabbas@cair.com
Carolyn M. Homer (D.C. Bar # 1049145) (seeking *pro hac vice* admission)
Email:  chomer@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax:    (202) 488-0833

**KELLY / WARNER, PLLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Raeesabbas Mohamed, Esq. (AZ Bar # 027418)
Email: raees@kellywarnerlaw.com
Phone: (480) 331-9397
Fax:    (866) 961-4984

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
### PHOENIX DIVISION

| | |
|---|---|
| **AMERICAN MUSLIMS FOR PALESTINE** and **DR. HATEM BAZIAN** <br><br> Plaintiffs, <br><br> vs. <br><br> **ARIZONA STATE UNIVERSITY**; **ARIZONA BOARD OF REGENTS**; and **MARK BRNOVICH,** in his official capacity as Attorney General of Arizona <br><br> Defendants. | Case No. <br><br> **COMPLAINT AND JURY DEMAND** |

COMPLAINT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

PARTIES ............................................................................................................................2

JURISDICTION & VENUE................................................................................................3

FACTUAL BACKGROUND ..............................................................................................3

The Israel – Palestine Conflict is a Fraught Issue of International Importance ..........3

Arizona Passes Anti-Boycott, Divestment, and Sanctions Legislation .......................5

Muslim Students Association Invites Pro-Palestine Speakers to Campus Event........6

FIRST CAUSE OF ACTION: VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE U.S CONSTITUTION.........................9

PRAYER FOR RELIEF....................................................................................................12

## INTRODUCTION

1. The First Amendment protects the rights of all speakers to advocate for all viewpoints on issues of public concern. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

2. The conflict between Israel and Palestine is a longstanding issue of considerable public concern, both in the United States and internationally, to which politicians, professionals, and the press dedicate considerable energy and resources.

3. In 2016, the State of Arizona chose to categorically take Israel's side in this international conflict by adopting Ariz. Rev. Stat. § 35-393. This Act bars the State of Arizona from entering into government contracts with companies or persons who engage in or advocate for economic boycotts of Israel.

4. On February 22, 2018 the Muslim Students Association of Arizona State University invited American Muslims for Palestine and Dr. Hatem Bazian to speak at an April 3, 2018 educational event regarding Palestinian perspectives on Middle East conflict, including the Boycott, Divestment and Sanctions Movement. Because of the Act, however, Arizona State University's standard outside speaker contract was amended in 2016 to contain a "No Boycott of Israel" clause. American Muslims for Palestine and Dr. Hatem Bazian cannot agree to that clause. They are therefore barred from presenting at the April 3, 2018 campus event solely because they engage in and advocate for economic boycotts of Israel as a means to promote Palestinians' human rights.

5. Arizona's ban on contracting with any boycotter of Israel constitutes viewpoint discrimination that chills constitutionally-protected political advocacy on behalf of Palestine. This Court should enjoin enforcement of Ariz. Rev. Stat. § 35-393 and the "No Boycott of Israel" clause under the First Amendment, thereby permitting Plaintiffs to participate in the Muslim Students Association's event on April 3, 2018.

**PARTIES**

6. Plaintiff AJP Educational Foundation, Inc., doing business as American Muslims for Palestine, is a 501(c)(3) non-profit organization committed to educating the American public about Palestine's rich heritage while advocating for Palestinian justice. American Muslims for Palestine is headquartered in Bridgeview, Illinois with offices in Washington, D.C. and seven state chapters.

7. Plaintiff Dr. Hatem Bazian is a Professor of Islamic Law and Theology at Zaytuna College, which he cofounded as the first accredited Muslim liberal arts college in the United States. Separately, Dr. Bazian serves as a lecturer and adjunct professor at the University of California, Berkeley, where he earned his Ph.D. Dr. Bazian founded and chairs American Muslims for Palestine. He is also a cofounder of Students for Justice in Palestine. Dr. Bazian is an internationally renowned expert on Islamophobia and a leader of the Boycott, Divestment, and Sanctions ("BDS") movement in America.

8. Defendant Arizona State University ("ASU") is a public university within the Arizona University System, with its flagship campus located in Tempe, Arizona.

9. Defendant Arizona Board of Regents is the governing public body for the Arizona University System, including Arizona State University. The Arizona Board of Regent's principal place of business is located at 2020 N. Central Ave., Suite 230 in Phoenix, Arizona.

10. Defendant Mark Brnovich is the Attorney General of Arizona. The Attorney General's principal office is located at 2005 N. Central Ave in Phoenix, AZ. He is responsible for enforcing and defending the constitutionality of Arizona law. Defendant Brnovich is sued in his official capacity, only.

## JURISDICTION & VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, namely the First and Fourteenth Amendments to the U.S. Constitution.

12. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

13. This Court has personal jurisdiction over the Defendants because they reside in this district.

14. A substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this Judicial District. Venue therefore lies in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

**The Israel – Palestine Conflict is a Fraught Issue of International Importance**

15. The relationship between Israel and Palestine is one of the most significant international political conflicts of the modern era. One of the core disputes

within that conflict concerns Israel's continuing occupation and settlement of Palestinian territories, including the West Bank and Golan Heights.

16. On December 23, 2016, the United Nations Security Council unanimously (with the United States abstaining) adopted Resolution 2334. The Resolution condemned Israeli settlements in the Occupied Palestinian Territories, and reaffirmed that continuing settlements "constitute[e] a flagrant violation under international law and a major obstacle to the achievement of the two-State solution and a just, lasting and comprehensive peace." The Resolution additionally condemned Israeli violence and human rights abuses against Palestinians.

17. A robust international movement seeks to impose economic pressure on Israel to cease its settlement activity in Palestinian Territory. Calling itself "Boycott, Divestment, and Sanctions" or "BDS," the movement seeks the peaceful end of Israeli discrimination against and maltreatment of Palestinians. The BDS movement specifically encourages economic divestment from institutions that are not in compliance with established international law related to the Israeli occupation of Palestine.

18. The United States has historically discouraged Israeli settlements as "inconsistent with international law." Overall, however, U.S. policy strongly supports Israel, and the U.S. and Israel enjoy close political and economic relationships. These friendly relations have tended to soften or mute the United States' criticism of Israeli settlements. The United States abstained from Resolution 2334 due to its political support of Israel, and previously vetoed a similar U.N. Resolution in February 2011.

19. The merits of all perspectives in the Israel-Palestinian conflict and the U.S.'s respective political positions are robustly and publicly debated by leading

politicians, academics, universities, non-profit organizations, businesses, and media organizations in the United States and around the world.

### Arizona Passes Anti-Boycott, Divestment, and Sanctions Legislation

20. Because the prevailing political sentiment in the United States favors Israel, many U.S. states, private organizations, and public officials view the Palestinian-led Boycott, Divestment, and Sanctions movement as a threat to U.S.-Israel economic relations and Israel's sovereignty.

21. This political climate has, in recent years, prompted local and state legislatures to consider more than a hundred bills and resolutions aimed at hindering the Boycott, Divestment, and Sanctions movement. At least twenty-four states have enacted legislation.

22. Arizona is one state to enact anti-Boycott, Divestment, and Sanctions measures. On March 17, 2016, Arizona enacted HB 2617, codified at Ariz. Rev. Stat. § 35-393 *et. seq.* In support of the Act, the legislature found that "Boycotts and related tactics have become a tool of economic warfare that threaten the sovereignty and security of key allies and trade partners of the United States." The Legislature then specifically identified Israel as a subject of threatening boycotts. "The state of Israel is the most prominent target of such boycott activity, beginning with the Arab League Boycott adopted in 1945, even before Israel's declaration of independence as the reestablished national state of the Jewish people."

23. The Legislature concluded that "a company's decision to discriminate against Israel, Israeli entities or entities that do business with Israel or in Israel is an unsound business practice making the company an unduly risky contracting partner or vehicle for investment."

24. Based on these findings, Arizona law now prohibits all public entities from contracting with any company that boycotts Israel, or any person who may induce others to boycott Israel.

25. Specifically, Ariz. Rev. Stat. § 35-393.01 provides:

    A.    A public entity may not enter into a contract with a company to acquire or dispose of services, supplies, information technology or construction unless the contract includes a written certification that the company is not currently engaged in, and agrees for the duration of the contract to not engage in, a boycott of Israel.

    B.    A public entity may not adopt a procurement, investment or other policy that has the effect of inducing or requiring a person or company to boycott Israel.

26. The Act defines "boycott" to include "engaging in a refusal to deal, terminating business activities or performing other actions that are intended to limit commercial relations with Israel." Ariz. Rev. Stat. § 35-393.

27. To comply with this statutory provision, Arizona agencies and public entities including state universities have started including language in their boilerplate contracts which bars boycotts of Israel.

**Muslim Students Association Invites Pro-Palestine Speakers to Campus Event**

28. The Muslim Students Association at Arizona State University seeks to engage in interfaith and intellectual dialogue. To that end, it regularly hosts events on campus, including inviting guest speakers. Recent events include: (a) a presentation on the "History of Islam in America" by Ustadh Ubaydullah Evans from the American Learning Institute for Muslims; (b) a panel discussion on

"Contemporary Perception of Islam" with Imraan Siddiqi, the Executive Director of CAIR-Arizona, Imam Yaser Ali, a local attorney, and Imam Anas Hlyahel, a contributory author to the popular blog Muslim Matters; and (c) a discussion of "Women in Islam: Beyond the Stereotypes" with Amal Fayad, a local counselor and Naeema Zaman, a local academic.

29. The political climate of the Middle East, including all facets of the Israeli – Palestinian conflict, is of particular interest to the Muslim Students Association and its membership. It is also of interest to other professors and students across campus. For example, Arizona State University houses the School of Politics and Global Studies, the School of Historical, Philosophical, and Religious Studies, the Department of Jewish Studies, the Council for Arabic and Islamic Studies, and the Center for the Study of Religion and Conflict – all of which may be interested in a discussion of Israel and Palestine.

30. Arizona State University is committed to academic freedom, and to providing an open venue for student organizations to invite outside speakers and host educational events on a wide variety of subjects, and from a wide variety of viewpoints. Student organizations have broad authority to create events and choose who to invite to speak. Such presentations do not reflect the views of Arizona State University itself, but rather those of the individual speakers. For example, the ASU chapter of Students for Justice in Palestine has repeatedly hosted an "Apartheid Week." For many years, these students set up a large "Mock Apartheid Wall" on the Hayden Lawn filled with art and educational information regarding Palestinian perspectives on Israel's occupation of Palestinian territories, and Israel's relegation of Palestinians to second-class status.

1      31.   On February 22, 2018, the leadership of the Muslim Students Association invited American Muslims for Palestine and the organization's chairman, Dr. Hatem Bazian, to give a guest educational presentation on campus. The presentation will be on the BDS movement and is scheduled for April 3, 2018.

       32.   The Muslim Students Association has issued many invitations and scheduled many outside speakers in the past, without incident.

       33.   To host an event, the Arizona Board of Regents and Arizona State University require that student organizations pre-clear the availability of physical facilities, and that the outside speaker sign the university's standard "Speaker/Artist/Performer Agreement."

       34.   The standard "Speaker/Artist/Performer Agreement" was amended sometime after passage of Ariz. Rev. Stat. § 35-393 in March 2016.  Paragraph 20 of the agreement now reads, in full: "<u>No Boycott of Israel</u>.  As required by Arizona Revised Statutes § 35-393.01, Entity certifies it is not currently engaged in a boycott of Israel and will not engage in a boycott of Israel during the term of this Contract."

       35.   Both American Muslims for Palestine and Dr. Hatem Bazian advocate for boycotts of Israel due to Israel's continuing violations of international law in its treatment of Palestinians.  Dr. Hatem Bazian and American Muslims for Palestine intend to use their speaking opportunity at Arizona State University to educate the campus community about the historical context and rationale for the peaceful Palestinian Boycott, Divestment, and Sanctions movement.

       36.   Neither Dr. Hatem Bazian nor American Muslims for Palestine can or will sign the contract with the "No Boycott of Israel" provision, which is required by state law.  As advocates for Palestinian rights and justice, they cannot in good faith

certify or state that they do not boycott Israel, and will not engage in a boycott of Israel.

37. Dr. Hatem Bazian and American Muslims for Palestine would accept the Muslim Students Association's invitation if the "No Boycott of Israel" clause were stricken. They agree to all other contractual terms. The "No Boycott of Israel" provision of the ASU's standard speaker agreement is, to Plaintiffs' knowledge, the only barrier to their participation at the Muslim Student Association's scheduled April 3, 2018 event.

# FIRST CAUSE OF ACTION

## VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE U.S CONSTITUTION

38. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

39. The First Amendment provides: "Congress shall make no law … abridging the freedom of speech, or of the press." U.S. CONST. Amend. I.

40. The First Amendment binds the State of Arizona pursuant to the incorporation doctrine of the Fourteenth Amendment.

41. Political speech on issues of great national and international importance is central to the purposes of the First Amendment. Speech and advocacy related to the Israel – Palestine conflict is core political speech on a matter of public concern entitled to the highest levels of constitutional protection.

42. Economic boycotts for the purposes of bringing about political change are entrenched in American history, beginning with colonial boycotts on British tea. Later, the Civil Rights Movement relied heavily on boycotts to combat racism and

bring about societal change.  The Supreme Court has recognized that non-violent boycotts intended to advance civil rights constitute "form[s] of speech or conduct that [are] ordinarily entitled to protection under the First and Fourteenth Amendments." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).

43. The First Amendment protects the rights of speakers to call for and participate in economic boycotts as a means of amplifying their message.  Joining voices together to participate in and call for political boycotts is protected association under the First Amendment.

44. The Arizona Board of Regents and Arizona State University provide a limited public forum for student organizations and their sponsored educational events. Any "ideologically driven attempts to suppress a particular point of view" within that forum "are presumptively unconstitutional." *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819, 830 (1995).

45. Ariz. Rev. Stat. § 35-393 and the "No Boycott of Israel" clause each constitute viewpoint discrimination, because they only bar speech and expression against Israel, and not speech or expression in favor of Israel or against Palestine.

46. Ariz. Rev. Stat. § 35-393 and the "No Boycott of Israel" clause each constitute content-specific restrictions on speech, because they single out boycotts *of Israel* for disfavored treatment.

47. Ariz. Rev. Stat. § 35-393 and the "No Boycott of Israel" clause each constitute speaker-specific restrictions on speech, because they single out government contractors who advocate for Palestine and against Israel as specific speakers who warrant disfavored treatment.

48. Ariz. Rev. Stat. § 35-393 and the "No Boycott of Israel" clause each impose a prior restraint on speech, by requiring speakers to certify in advance that they do not and will not engage in a boycott of Israel.

49. Ariz. Rev. Stat. § 35-393 and the "No Boycott of Israel" clause each constitute impermissible State attempts to impose conditions on an independent contractor on a basis that infringes constitutionally protected freedom of speech.

50. Ariz. Rev. Stat. § 35-393 and the "No Boycott of Israel" clause each constitute impermissible State attempts to impose an ideological litmus test or compel speech related to government contractors' political beliefs, associations, and expressions.

51. Ariz. Rev. Stat. § 35-393 and the "No Boycott of Israel" clause are each substantially overbroad.

52. Ariz. Rev. Stat. § 35-393 and the "No Boycott of Israel" clause are each void for vagueness.

53. Both Ariz. Rev. Stat. § 35-393 and the "No Boycott of Israel" clause operate to chill the exercise of constitutionally protected speech and associations.

54. The Arizona Attorney General, Arizona Board of Regents, and Arizona State University each lack a compelling or legitimate governmental interest in the enforcement of Ariz. Rev. Stat. § 35-393 and the "No Boycott of Israel" clause.

55. Enforcement of Ariz. Rev. Stat. § 35-393 and the "No Boycott of Israel" clause does not constitute the least-restrictive means of fulfilling any state interest.

56. Ariz. Rev. Stat. § 35-393 is facially unconstitutional under the First Amendment and cannot be enforced against anyone by the Arizona Attorney General.

57.  Ariz. Rev. Stat. § 35-393, as implemented through the "No Boycott of Israel" clause in the "Speaker/Artist/Performer Agreement" promulgated by the Arizona Board of Regents and Arizona State University, is unconstitutional as applied to Plaintiffs and their plans to present, as Palestinian activist speakers, a campus discussion on the Israel-Palestine conflict with a on April 3, 2018.

58.  Absent an injunction, Plaintiffs will suffer irreparable harm because they will be barred by state law and contract from engaging in protected First Amendment speech and association on a matter of public concern.  Plaintiffs will be chilled in their discussion of and advocacy for Palestinian rights, and unable to participate in the ASU MSA's April 3, 2018 event.

59.  If Defendants are not enjoined from enforcing Ariz. Rev. Stat. § 35-393, and from including the "No Boycott of Israel" clause in state contracts, Plaintiffs and all advocates for Palestine will be effectively prohibited from entering into any agreement with the State of Arizona unless they give up the constitutionally-protected views that are central to their educational and advocacy missions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court enter the following relief:

A.  Declare Ariz. Rev. Stat. § 35-393 unconstitutional and unenforceable;

B.  Issue judgment in Plaintiffs' favor and against Defendants on all causes of action alleged herein;

C.  Grant Plaintiffs a preliminary and permanent injunction striking the "No Boycott of Israel" clause from their contemplated speaker contract with the Arizona Board of Regents and Arizona State University, thereby permitting

them to participate in the Muslim Students Association's planned April 3, 2018 event regarding the BDS movement.

D. Enter a preliminary and permanent injunction against Defendants' inclusion of boycott provisions under Ariz. Rev. Stat. § 35-393 in any state contract, and against Defendant Attorney General's continuing enforcement of Ariz. Rev. Stat. § 35-393.

E. Declare void any "No Boycott of Israel" clause pursuant to Ariz. Rev. Stat. § 35-393 that now exists in any and all contracts between Arizona public entities and private companies or persons.

F. Award Plaintiffs their reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

G. Grant such other and further relief as the Court may deem to be just and proper.

**JURY DEMAND**

NOW COME Plaintiffs, by and through their undersigned counsel, and hereby demand trial by jury of the above-referenced causes of actions.

Dated this 28th day of February 2018.

**CAIR LEGAL DEFENSE FUND**

By /s/ Lena F. Masri
Lena F. Masri (D.C. Bar No. 100019)
(seeking *pro hac vice* admission)
Gadeir I. Abbas (VA Bar No. 81161)
(seeking pro hac vice admission)
Carolyn M. Homer (D.C. Bar No. 1049145)
(seeking pro hac vice admission)
453 New Jersey Ave., SE
Washington, DC 20003
 Phone: (202) 742-6420
 Fax:    (202) 488-0833

**KELLY / WARNER, PLLC**

By /s/Raees Mohamed
Raees Mohamed, Esq. (AZ Bar # 027418)
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Phone: (480) 331-9397
Fax:    (866) 961-4984

*Attorneys for Plaintiffs*