1

**CAIR LEGAL DEFENSE FUND**
Lena F. Masri (D.C. Bar No. 100019) (seeking *pro hac vice admission*)

2

Email:  lmasri@cair.com
Gadeir I. Abbas* (VA Bar No. 81161) (seeking *pro hac vice admission*)

3

Email:  gabbas@cair.com
Carolyn M. Homer (D.C. Bar No. 1049145) (seeking *pro hac vice admission*)

4

Email: chomer@cair.com
453 New Jersey Ave., SE

5

Washington, DC 20003
Phone: (202) 742-6420

6

Fax:     (202) 379-3317

7

**KELLY / WARNER, PLLC**
8283 N. Hayden Road, Suite 229

8

Scottsdale, Arizona 85258
Raeesabbas Mohamed, Esq. (AZ Bar # 027418)

9

Email: raees@kellywarnerlaw.com
Phone: (480) 331-9397

10

Fax:     (866) 961-4984

11

*Attorneys for Plaintiffs*

12

   * *Licensed in VA, not in D.C.*
    *Practice limited to federal matters*

13

14

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

15

**PHOENIX DIVISION**

16

17

**AMERICAN MUSLIMS FOR PALESTINE**
and **DR. HATEM BAZIAN**

Case No.  CV-18-670-PHX-JJT

18

Plaintiffs,

**DECLARATION OF TAHER HERZALLAH ON behalf of AMERICAN MUSLIMS FOR PALESTINE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

19

vs.

20

**ARIZONA STATE UNIVERSITY; ARIZONA BOARD OF REGENTS**; and **MARK**

21

**BRNOVICH,** in his official capacity as Attorney General of Arizona

22

Defendants.

23

24

**DECLARATION OF TAHER HERZALLAH**

1.      I am Taher Herzallah, the Associate Director of Outreach & Community Organizing for American Muslims for Palestine ("AMP").  I have personal knowledge of the facts set out in this Declaration.  If called upon as a witness I would competently testify as to the matters stated herein.

2.      In my capacity as the Associate Director of Outreach & Community Organizing, I act as a liaison between AMP and activist, religious, and educational student associations on college campuses across the United States.  I help create and publish educational materials on Palestine for use by student organizations.  I also help train students on how to conduct effective advocacy campaigns, and I help coordinate logistics and press for campus events related to Muslims and Palestine.  On behalf of AMP I also issue grants to help cover student organizations' costs, such as travel expenses, associated with engaging in Palestinian advocacy and bringing outside speakers to their campuses.

3.      American Muslims for Palestine is the leader of the international Boycott, Divestment, and Sanctions ("BDS") movement in the United States.  BDS is a peaceful movement intended to impose economic and social pressure on the Israeli government to alter its behavior towards and maltreatment of Palestinians.  BDS is a movement in the broad sense of the term; is not centrally run by any single leader or organization, but rather encompasses a general global effort to peacefully protest Israel's maltreatment of Palestinians.  The precise forms of economic,

DECLARATION OF TAHER HERZALLAH RE: MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

1  academic, cultural, and political protest in support of the BDS movement vary

2  between individuals and organizations.

3      4.      BDS activity in the United States often focuses on identifying, and then

4  boycotting, Israeli and American companies which directly profit off of the

5  continuing Israeli occupation of Palestinian territory or which are otherwise directly

6  involved in continuing violations of Palestinian's fundamental rights.  For example,

7  American Muslims for Palestine spearheaded a BDS boycott campaign against

8  SodaStream, an Israeli company which operated a factory in the occupied West

9  Bank.  In October 2014, SodaStream announced that it would close the factory in

10  response to the boycott.

11      5.      AMP seeks to unite the American Muslim community behind

12  meaningful political advocacy in support of Palestine.  AMP routinely pushes for

13  civic engagement, such as through peaceful protests, educational events, letter-

14  writing campaigns, and in-person meetings.  On March 19, 2018, more than 150

15  individuals associated with AMP are slated to participate in the Fourth Annual

16  Palestine Advocacy Day on Capitol Hill in Washington, D.C.  AMP also regularly

17  participates in international policy discussions regarding Palestine.  For example,

18  Dr. Osama Abuirshaid, AMP's National Policy Director, has presented on Palestine

19  at the United Nations in New York.

20      6.      I have been the primary point of contact between American Muslims

21  for Palestine and the Muslim Students Association at Arizona State University ("the

22  MSA") regarding an event the ASU MSA is hosting on April 3, 2018 on the topic of

23  Palestine and the Boycott, Divestment, and Sanctions movement.  On February 22,

24  2018, the Muslim Students Association issued an invitation for American Muslims

DECLARATION OF TAHER HERZALLAH RE: MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

1 for Palestine to present alongside Dr. Hatem Bazian at the April event.  I believe

2 such events are critical to educating communities, encouraging student advocacy,

3 and ensuring the success of AMP's mission.  I would like to attend this event.

4       7.      A true and correct copy of the February 22, 2018 invitation I received is

5 attached as **Exhibit A**.  The invitation includes, as an attachment, a copy of Arizona

6 State University's standard "Speaker / Artist / Performer Agreement."  It is my

7 understanding that unless AMP fills out and signs this Agreement, it will not be

8 permitted to present at the April 3, 2018 campus event on the BDS movement.

9       8.      Although I have authority to sign campus speaker agreements generally

10 on behalf of AMP, I cannot in good faith sign Arizona State University's Agreement.

11 This is because of one, and only one, objection. Paragraph 20 of the Agreement

12 requires me to swear on behalf of AMP:  "No Boycott of Israel. As required by

13 Arizona Revised Statutes § 35-393.01, Entity certifies it is not currently engaged in

14 a boycott of Israel and will not engage in a boycott of Israel during the term of this

15 Contract."   Neither I nor AMP can agree to that clause, because AMP both engages

16 in and advocates for boycotts of Israel due to its political leadership of the BDS

17 movement within the United States.  If the "No Boycott of Israel" clause is stricken

18 or declared unenforceable, I will sign the Agreement, enabling AMP to participate in

19 the April 3, 2018 event.

20       9.      I have previously been involved with Palestinian activism at Arizona

21 State University.  Back in 2009 and 2010 I was a student at the University of

22 California at Riverside and I was heavily involved in Riverside student

23 organizations which advocated for Palestine.  During those years I helped construct

24 a "Mock Apartheid Wall."  The "Mock Apartheid Wall" is 10 feet tall and 60 feet

DECLARATION OF TAHER HERZALLAH RE: MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

1   long.  The purpose of the "Mock Apartheid Wall" (and others like it) is to symbolize

2   the literal barrier that Israel erected in the West Bank starting in the year 2000, and

3   which has been used to establish Israeli dominance over and decrease the physical

4   and economic mobility of Palestinians ever since.  The "Mock Apartheid Wall" is

5   inscribed with art and educational messages regarding Israel's violations of

6   international law and the plight of the Palestinian people.  A photo of the Mock

7   Apartheid Wall, as displayed at U.C. Irvine in 2010, is below:



20        10.   In 2009 and 2010 the Arizona State University chapter of Students for

  Justice in Palestine borrowed our "Mock Apartheid Wall" for their annual

21   "Apartheid Week" events on campus.  This is why the photo above has red "ASU"

22   letters on the second panel – they indicate that the Wall had travelled to Arizona

23   State University.  I personally helped transport the Wall to Tempe, Arizona, where

24

DECLARATION OF TAHER HERZALLAH RE: MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

1 | we set it up on ASU's campus on the Hayden Lawn.  At the time, I appreciated that

2 | ASU's commitment to free speech and student advocacy extended to welcoming

3 | such a massive presentation on Palestine to the heart of ASU's campus.

4 |       11.    Now, however, I feel that the State of Arizona and Arizona State

5 | University have undermined their prior openness to full and frank discussions of the

6 | internationally important Israel – Palestine conflict.  Solely because of the 2016

7 | passage of Arizona Revised Statutes § 35-393.01, outsiders like myself and

8 | organizations like AMP – who participate in boycotts of Israel in order to advance

9 | Palestinian civil rights – are no longer welcome at Arizona State University.  I

10 | believe this is a violation of my fundamental First Amendment rights to engage in

11 | free speech, advocacy, association, and expression.

12 |       12.    I verify under penalty of perjury under the laws of the United States

13 | that the foregoing is true and correct.

14 |       Executed on February 26 2018 in the city of FALLS CHURCH, VA

15 |

16 |       By: _____

17 |              Taher Herzallah

18 |

19 |

20 |

21 |

22 |

23 |

24 |

DECLARATION OF TAHER HERZALLAH RE: MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

# Exhibit A



Taher Herzallah <taher@ampalestine.org>

## BDS event at ASU

**MSA ASU** <msaasu@gmail.com>                                          Thu, Feb 22, 2018 at 10:10 AM
To: taher@ampalestine.org

Salam Taher, I hope this finds you well insha'Allah. This is Zain Siddiqi from the MSA at Arizona State. We would love to have AMP over at ASU for an event on the BDS movement on April 3rd. We are also bringing Dr. Hatem Bazian and would love to have AMP alongside him. Attached is the speaker form we just need you to sign and then we can go ahead and book you for the date insha'Allah if you agree.

--

**Muslim Students Association of ASU, Board 2017-18**
President: Hadi Naseredden, Vice President: Zain Siddiqi, Treasurer: Aamirah Chisti, Secretary: Nefisa Iman, Outreach Director: Huda Khalife, Social Director: Nadia Muraweh, Service Director: Samira Said, Education Director: Sami Omais, Social Media Director: Nafisa Thorpe
*If you would like to be removed from this list, please email us back with "unsubscribe" in subject line
*If you would like to add an email address of your own or a friend's to this list, please submit it through this link



📄 **ASU_Speaker_Agrmt_Form.pdf**
   53K



# SPEAKER/ARTIST/PERFORMER AGREEMENT

This Agreement is entered into as of _____, 20__, between the Arizona Board of Regents acting for and on behalf of Arizona State University ("*ASU*") and _____ [1]("*Speaker*"), or _____, a _____ _____, [2] as the authorized agent for Speaker.  If Speaker is represented by an authorized agent, then references to Speaker herein will also refer to the authorized agent, where appropriate.

1. Engagement; Event.  ASU hereby engages Speaker to personally provide the following services, and Speaker agrees to personally provide to ASU the following services (the "*Presentation*") at the following Event (the "*Event*"):

   Event/Location: _____

   Dates and times of Event:_____

   Speaker's Presentation schedule: _____

   Title of Speaker's Presentation: _____

   Speaker's hospitality requirements: _____

   Speaker's technical requirements: _____

2. Notice.  Any communication or notice required under this Agreement shall be in writing and may either be given by personal delivery or sent, in all cases, against receipt, addressed to the following:

   If to ASU:                              If to Speaker:

   _____           _____
   _____           _____
   _____           _____
   Attn: _____          Attn: _____
   Email: _____          Email: _____

   Notice shall be deemed to be received upon receipt by the receiving party.

3. Speaker Warranty.  Speaker warrants that at all times during the Event, Speaker will personally provide Speaker's best professional efforts. Speakers' professional credentials are such that Speaker can provide the Presentation in a knowledgeable and professional manner.

4. Payment.  ASU shall pay Speaker the all-inclusive fee of $_____ upon completion of the Presentation. Speaker shall complete a Substitute W-9 Form, which must be signed by the person or entity to whom payment is to be issued. ASU will issue all payment in accordance with the information on the completed and signed Substitute W-9 Form.

_____

1 – If an authorized agent is signing, please be sure to fill in the speaker name as well.
2 – Include full legal name of authorized agent, state of formation, and type of entity (for example: ABC, Inc., an Arizona Corporation.)

1

Revised 9.8.2016

5.   Acceptance of Agreement.   Speaker will accept and return this Agreement to ASU no later than _____, 20__.  In all events, this Agreement must be fully signed and received at ASU at least one week prior to the Event to allow on-time payment. This Agreement must be fully signed before payment can be processed. Please return a signed copy of this Agreement to ASU at the address set forth in Section 16.

6.   Compliance with Law.   Speaker will comply with all applicable published ASU, City, County, State and Federal laws, acts, codes, regulations and policies, including all applicable federal immigration laws and regulations that relate to employment.

7.   Press Materials.   Speaker shall timely supply all press/promotion material requested by ASU.

8.   Educational Component.   ASU is required to include some type of educational component with every program presented by ASU. Speaker shall work with ASU to develop a satisfactory educational component.

9.   Indemnity.   Speaker shall indemnify, defend, and hold ASU harmless for, from, and against, any all claims, demands, suits, costs and damages (including reasonable attorneys' fees) that ASU may incur by reason of any:  (a) actual or alleged infringement or violation of any copyright, or other proprietary right by Speaker; (b) claim for damages arising from Speaker's Presentation; or (c) any of Speaker's costs and liabilities arising out of the Presentation or Event, including without limitation:  travel and meal expenses; union dues;  taxes; agents' commissions or other expenses or obligations; damages to Speaker's equipment or materials; compensation to third parties engaged by Speaker; compensation for lost or stolen equipment or materials; workers compensation or other insurance; and any expenses not preapproved by ASU in writing.

10. Indemnification Limitation.   ASU is a public institution and, as such, any indemnification, liability limitation, or hold harmless provision will be limited as required by Arizona law, including without limitation Article 9, Sections 5 and 7 of the Arizona Constitution and A.R.S. §§ 35-154 and 41-621. Therefore, notwithstanding any other provision of this Agreement to the contrary, ASU's liability under any claim for indemnification is limited to claims for property damage, personal injury, or death to the extent caused by acts or omissions of ASU.

11. Default, Remedies, Force Majeure, Cancellation.

   11.1  Default.  Failure by either party to perform as specifically described herein shall be deemed to be an "*Event of Default*" hereunder.

   11.2  Remedies.  Upon the occurrence of an Event of Default, the non-defaulting party (1) shall have all the remedies afforded by law and in equity; and (2) shall have the right to terminate this Agreement.

   11.3  Force Majeure.  Neither Speaker nor ASU shall be liable for failure to perform hereunder if failure is caused by civil tumult, strike, epidemic, or any cause beyond the control of the parties.  Labor difficulties due to the ingestion of alcohol or illegal substances will not be deemed labor difficulties and will not be deemed an event of Force Majeure.

   11.4  Cancellation.  If the Event is cancelled by ASU, reasonable efforts will be made to reschedule.

12. Liability; Insurance.  Speaker, at its expense, will procure and maintain, for the duration of the Event, a policy of commercial general liability insurance in an amount of not less than $1,000,000, single limit, against claims for bodily injury, death and property damage occurring in connection with the Event and the Presentation. This insurance must name the Arizona Board of Regents, Arizona State University, and the

2

State of Arizona as additional insureds. Speaker must provide ASU with a certificate evidencing this insurance coverage no later than 10 days prior to the Presentation.

13. <u>No Assignment</u>.   Neither party shall have the right to assign any rights or obligations under this Agreement without the prior written consent of the other party.

14. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter. No prior or contemporaneous agreement or understanding will be effective.

15. <u>Governing Law and Venue</u>.  This Agreement will be governed by the laws of the State of Arizona without regard to any conflicts of laws principles. ASU's obligations hereunder are subject to the regulations/policies of the Arizona Board of Regents. Any proceeding arising out of or relating to this Agreement will be conducted in Maricopa County, Arizona. Each party waives any objection it may now or hereafter have to venue or to convenience of forum.

16. <u>Independent Contractor</u>.  Speaker is an independent contractor and is not an employee of ASU. Neither Speaker nor any personnel of Speaker will for any purpose be considered employees or agents of ASU. Speaker assumes full responsibility for the actions of Speaker's personnel, and is solely responsible for their supervision, direction and control, payment of salary and expenses (including withholding income taxes and social security), worker's compensation, and disability benefits.

17. <u>Recordings; Use of Name and Likeness</u>.  Both parties may record the Presentation for internal records. No recording of the Presentation, either visual or audio, will be made by or on behalf of Speaker for the purposes of profit or significant distribution without prior written approval from ASU. ASU may require an additional payment for the privilege, and may require Speaker to sign a filming/recording agreement. ASU may record the Presentation on video tape, audio tape, film, photograph or any other medium, use Speaker's name, likeness, voice and biographical material in connection with these recordings for purposes within the ASU mission, including education and research, and exhibit or distribute the recording in whole or in part without restrictions or limitation for any educational or promotional purpose that ASU deems appropriate.

18. <u>No Revenue Sharing</u>.  Speaker shall not participate in any revenues associated with the Presentation or Event. This includes: sponsorship, ticketing, ticketing fees, ASU concessions revenues, and any other revenue streams that may be associated with the Event.

19. <u>Non-discrimination</u>.   The parties will comply with all applicable state and federal laws, rules, regulations, and executive orders governing equal employment opportunity, immigration, and nondiscrimination, including the Americans with Disabilities Act. **If applicable, the parties will abide by the requirements of 41 CFR §§ 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability**.

20. <u>No Boycott of Israel</u>**.** As required by Arizona Revised Statutes § 35-393.01, Entity certifies it is not currently engaged in a boycott of Israel and will not engage in a boycott of Israel during the term of this Contract.

21. <u>Conflicts of Interest</u>.  In accordance with Arizona Revised Statutes ("*A.R.S.*") <u>§ 38-511</u>, ASU may cancel this Agreement within three years after the execution of this Agreement, without penalty or further obligation, if any person significantly involved in initiating, negotiating, securing, drafting, or creating this

3

Agreement on behalf of ASU, at any time while this Agreement or any extension thereof is in effect, is an employee or agent of any other party to this Agreement in any capacity or a consultant to any other party with respect to the subject matter of this Agreement. Notice is provided of A.R.S. § 41-753D.

22. Arbitration in Superior Court.  In the event of litigation, as required by A.R.S. § 12-1518, the parties agree to make use of arbitration in all contracts that are subject to mandatory arbitration pursuant to rules adopted under A.R.S. § 12-133.

23. Records.  To the extent required by A.R.S. § 35-214, the non-ASU parties to this Agreement (jointly and severally, "*Entity*") will retain all records relating to this Agreement. Entity will make those records available at all reasonable times for inspection and audit by ASU or the Auditor General of the State of Arizona during the term of this Agreement and for a period of five years after the completion of this Agreement. The records will be provided at Arizona State University, Tempe, Arizona, or another location designated by ASU on reasonable notice to Entity.

24. Failure of Legislature to Appropriate.  In accordance with A.R.S. § 35-154, if ASU's performance under this Agreement depends on the appropriation of funds by the Arizona Legislature, and if the Legislature fails to appropriate the funds necessary for performance, then ASU may provide written notice of this to Entity and cancel this Agreement without further obligation of ASU. Appropriation is a legislative act and is beyond the control of ASU.

25. Weapons, Explosive Devices, and Fireworks.  ASU prohibits the use, possession, display or storage of any weapon, explosive device or fireworks on all land and buildings owned, leased, or under the control of ASU or its affiliated or related entities, in all ASU residential facilities (whether managed by ASU or another entity), in all ASU vehicles, and at all ASU or ASU affiliate sponsored events and activities, except as provided in A.R.S. § 12-781 or unless written permission is given by the Chief of the ASU Police Department or a designated representative. Notification by Entity to all persons or entities who are employees, officers, subcontractors, consultants, agents, guests, invitees or licensees of Entity ("*Entity Notification Parties*") of this policy is a condition and requirement of this Agreement. Entity further agrees to enforce this contractual requirement against all Entity Notification Parties. ASU's policy may be accessed through the following web page: http://www.asu.edu/aad/manuals/pdp/pdp201-05.html.

26. Student Educational Records.  Student educational records are protected by the federal Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("*FERPA*"). Entity will comply with FERPA and will not access or make any disclosures of student educational records to third parties without prior notice to and consent from ASU or as otherwise provided by law. If this Agreement contains a scope of work or any provision that requires or permits Entity to access or release any student records, then, for purposes of this Agreement only, ASU hereby designates Entity as a "school official" for ASU under FERPA, as that term is used in FERPA and its implementing regulations. As such, Entity will comply with FERPA and will not make any disclosures of ASU students' educational records to third parties without prior notice to, and consent from, ASU or as otherwise permitted by law. In addition, any access or disclosures of student educational records made by Entity or its employees and agents must comply with ASU's definition of legitimate educational purpose, which definition can be found at: SSM 107-01: Release of Student Information (http://www.asu.edu/aad/manuals/ssm/ssm107-01.html). If Entity violates the terms of this section, Entity will immediately provide notice of the violation to ASU.

27. Authorized Presence Requirements.  As required by A.R.S. § 41-4401, ASU is prohibited from awarding a contract to any contractor or subcontractor that fails to comply with A.R.S. § 23-214(A) (verification of employee eligibility through the e-verify program). Entity warrants that it and its subcontractors comply fully with all applicable federal immigration laws and regulations that relate to their employees and their

4

Revised 9.8.2016

compliance with A.R.S. § 23-214(A). A breach of the foregoing warranty will be deemed a material breach of this Agreement that is subject to penalties up to and including termination of the Agreement. ASU retains the legal right to inspect the papers of any contractor or subcontractor employee who works hereunder to ensure that the contractor or subcontractor is complying with the warranty stated above.

28. Tobacco-Free University.  ASU is tobacco-free. For details visit http://www.asu.edu/tobaccofree.

29. Authority.  If an individual or entity signs below on behalf of Speaker, such signatory represents and warrants that he/she/it has full and current authority to act and contract on behalf of Speaker and obligate Speaker, and that this Agreement is binding upon and enforceable against Speaker and the undersigned (if not Speaker) in accordance with its terms.


AGREED:

PRINT NAME OF SPEAKER, OR                           ARIZONA BOARD OF REGENTS
AUTHORIZED AGENT ON BEHALF OF                       FOR AND ON BEHALF OF
SPEAKER                                             ARIZONA STATE UNIVERSITY



_____                 _____
Signature                                           Signature


_____                 _____
Signatory Please Print Name                         Signatory Please Print Name


_____                 _____
Signatory Please Print Title                        Signatory Please Print Title


_____                 _____
Date Signed                                         Date Signed

5