**MARK BRNOVICH**
**ATTORNEY GENERAL**
Drew C. Ensign (No. 25463)
Oramel H. (O.H.) Skinner (No. 32891)
Brunn (Beau) W. Roysden III (No. 28698)
Robert J. Makar (No. 033579)
Assistant Attorneys General
2005 N. Central Avenue*f*
Phoenix, Arizona 85004
Telephone: (602) 542-5252
Drew.Ensign@azag.gov

*Attorneys for Defendant Mark Brnovich*
*in his official capacity as Attorney General*

(Additional counsel listed on signature page)

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| American Muslims for Palestine and Dr. Hatem Bazian,<br><br>                    Plaintiffs,<br><br>vs.<br><br>Arizona Board of Regents for and on behalf of Arizona State University; and Mark Brnovich, in his official capacity as Attorney General Of Arizona,<br><br>                    Defendants. | Case No: 2:18-cv-00670-PHX-JJT<br><br>**DEFENDANTS' JOINT MOTION TO DISMISS**<br><br>**Oral Argument Requested** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................ii

INTRODUCTION ...........................................................................................1

FACTUAL BACKGROUND ..........................................................................2

LEGAL STANDARD......................................................................................4

ARGUMENT ..................................................................................................5

I.   PLAINTIFFS' CLAIM IS DOUBLY MOOT ......................................5

    A.   Plaintiffs' Claim Is Moot Now That Plaintiffs Spoke At The April 3 Event That Was The Subject Of Their Suit ...............6

    B.   ABOR's Removal Of The Anti-Boycott Clause Also Moots This Action.....7

    C.   No Exceptions To Constitutional Mootness Apply Here ...............7

       1.   The Capable of Repetition, Yet Evading Review Exception Does Not Apply Here ............7

       2.   The Voluntary Cessation Exception Also Does Not Apply........9

    D.   Alternatively, This Case Is Moot As A Prudential Matter ........10

II.   PLAINTIFFS' CLAIM IS UNRIPE.................................................13

III.   THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED .......15

    A.   The Attorney General Enjoys Sovereign Immunity ................15

    B.   Plaintiffs' Claim Against The Attorney General Fails For Lack of Standing And Ripeness...........16

    C.   Plaintiffs Have Not Stated A Valid Section 1983 Claim ...........16

CONCLUSION ..............................................................................................17

i

# TABLE OF AUTHORITIES

## CASES

*Alden v. Maine*
  527 U.S. 706 (1999) ............................................................................... 15
*Already, LLC v. Nike, Inc.*
  568 U.S. 85 (2013) ............................................................................. 4, 5, 6
*Alvarez v. Smith*
  558 U.S. 87 (2009) ............................................................................. 4, 6, 7
*American Cargo Transp., Inc. v. United States*
  625 F.3d 1176 (9th Cir. 2010) ............................................................... 10
*American Mfrs. Mut. Ins. Co. v. Sullivan*
  526 U.S. 40 (1999) ................................................................................. 17
*American Rivers v. NMFS*
  126 F.3d 1118 (9th Cir. 1997) ................................................................. 7
*Arizona Attorneys for Criminal Justice v. Ducey*
  No. 17-cv-1422, 2018 WL 1570244, (D. Ariz. Mar. 30, 2018) ................... 16
*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*
  654 F.3d 975 (9th Cir. 2011) ................................................................... 6
*Davis v. FEC*
  554 U.S. 724 (2008) ................................................................................. 8
*DeFunis v. Odegaard*
  416 U.S. 312 (1974) ............................................................................. 6, 9
*Deutsche Bank Nat. Tr. Co. v. FDIC*
  744 F.3d 1124 (9th Cir. 2014) ............................................................... 10
*FEC v. Wisconsin Right to Life, Inc.*
  551 U.S. 449 (2007) ................................................................................. 8
*Forest Guardians v. U.S. Forest Serv.*
  329 F.3d 1089 (9th Cir. 2003) ................................................................. 7
*GTE California, Inc. v. FCC*
  39 F.3d 940 (9th Cir. 1994) ..................................................................... 6
*Headwaters, Inc. v. BLM*
  893 F.2d 1012 (9th Cir. 1989) ................................................................. 8
*Idaho Dep't of Fish & Game v. NMFS*
  56 F.3d 1071 (9th Cir. 1995) ................................................................... 9
*Jordahl v. Brnovich*
  No. 17-cv-8263 (D. Ariz. Dec. 6, 2017) ................................................... 9
*Log Cabin Republicans v. United States*
  658 F.3d 1162 (9th Cir. 2011) ............................................................. 5, 7
*Los Angeles v. Lyons*
  461 U.S. 95 (1983) ............................................................................... 8, 9
*Mendez v. Freeport-McMoRan, Inc.*
  No. 16- 00548, 2016 WL 6577064 (D. Ariz. Nov. 7, 2016) ...................... 5
*Morales v. Trans World Airlines, Inc.*
  504 U.S. 374 (1992) ......................................................................... 15, 16

*Native Vill. of Noatak v. Blatchford*
   38 F.3d 1505 (9th Cir. 1994) ...................................................................... 8
*Natural Res. Council, Inc. v. Grossarth*
   979 F.2d 1377 (9th Cir. 1992) .................................................................... 7
*Pennhurst State Sch. & Hosp. v. Halderman*
   465 U.S. 89 (1984) ................................................................................... 15
*Public Utilities Comm'n v. FERC*
   100 F.3d 1451 (9th Cir. 1996) ............................................................. 8, 9
*Saldana v. Occidental Petroleum Corp.*
   774 F.3d 544 (9th Cir. 2014) ..................................................................... 5
*Sample v. Johnson*
   771 F.2d 1335 (9th Cir. 1985) ................................................................... 8
*Scott v. Pasadena Unified School Dist.*
   306 F.3d 646 (9th Cir. 2002) ..................................................................... 9
*Seminole Tribe of Fla. v. Florida*
   517 U.S. 44 (1996) ................................................................................... 15
*Shoshone-Bannock Tribes v. Fish & Game Commission, Idaho*
   42 F.3d 1278 (9th Cir. 1994) ..................................................................... 6
*St. Clair v. City of Chico*
   880 F.2d 199 (9th Cir. 1989) ..................................................................... 5
*Steel Co. v. Citizens for a Better Envt.*
   523 U.S. 83 (1998) ................................................................................... 13
*Thomas v. Anchorage Equal Rights Comm'n*
   220 F.3d 1134 (9th Cir. 2000) ...................................................... 5, 13, 14
*Western Radio Serv. Co. v. Glickman*
   113 F.3d 966 (9th Cir. 1997) ..................................................................... 7
*White v. Lee*
   227 F.3d 1214 (9th Cir. 2000) ................................................................. 10
*Wilton v. Seven Falls Co.*
   515 U.S. 277 (1995) ................................................................................. 13
*Winzler v. Toyota Motor Sales U.S.A., Inc.*
   681 F.3d 1208 (10th Cir. 2012) .............................................................. 11
*Younger v. Harris*
   401 U.S. 37 (1971) ................................................................................... 14

**STATUTES**

42 U.S.C. § 1983 ............................................................................................ 16

42 U.S.C. § 1988 ............................................................................................ 16

A.R.S. § 35-393.01 ..................................................................................... 1, 2

**OTHER AUTHORITIES**

2016 Ariz. Sess. Laws. Ch. 46 (2d Reg. Sess.) ............................................. 2

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants jointly move to dismiss Plaintiffs' Complaint.

## INTRODUCTION

This case began as a First Amendment challenge to a clause in an outdated speaker contract, which rapidly proved to be wholly unnecessary—and indeed could have been resolved with a simple phone call rather than seeking the accelerated intervention of this Court.  But regardless of whether this case was ever within this Court's jurisdiction, it assuredly is not now because it is doubly moot.

Specifically, Plaintiffs' challenge is now moot both because: (1) Plaintiffs have now spoken at the April 3 event at issue without any hindrance by Defendants, rendering academic the issue of whether Plaintiffs could speak at that event without agreeing to the relevant anti-boycott clause, and (2) the challenged clause was removed *last year* by Defendant Arizona Board of Regents for and on behalf of Arizona State University ("ABOR") from its speaker contracts—prior to any invitation to Plaintiffs to speak—and all Defendants agree the statute the clause sought to implement, A.R.S. § 35-393.01(A) (the "Act"), does not apply to guest speaker invitations.  Either one of these two factors equally eliminate Article III justiciability here.  Together they leave no doubt that dismissal is required.

Plaintiffs cannot avoid this outcome by relying on either the capable-of-repetition, yet-evading-review or voluntary-cessation exceptions to mootness.  Neither exception applies here.  But even if this case is not moot within the meaning of Article III, it satisfies the requirements for prudential mootness.  At best, justiciability is hanging by a thread here and the relief requested is, at the very least, uncomfortably close to an advisory opinion.  Moreover, Plaintiffs' litigation conduct demonstrates that the core of this suit—the "dispute" about whether Plaintiffs could speak at the April 3 event—was little more than a pretense to challenge the Act.

Plaintiffs' challenge also fails for lack of ripeness.  Here there is no credible threat of enforcement against Plaintiffs—and indeed all Defendants have affirmatively

disavowed any intent to enforce the Act in this context.  Because any threat of enforcement is thoroughly *in*credible, Plaintiffs' claim is unripe.

Finally, this case must be dismissed against the Attorney General because (1) he enjoys sovereign immunity against Plaintiffs' claim, (2) that claim lacks standing and ripeness as to the Attorney General, and (3) Plaintiffs have not asserted that he took, or is about to take, *any* action whatsoever that could serve as the basis of liability.

Similarly, ABOR must be dismissed because Plaintiffs have not alleged any actions *by ABOR* that purportedly violated Plaintiffs' rights, because the incorrect contract was sent to Plaintiffs by a third party and ABOR has *never*—at *any* point— insisted that Plaintiffs sign a contract with the anti-boycott provision as a condition of speaking at the April 3 event.

## FACTUAL BACKGROUND

### *The Anti-Boycott Act*

Concerned about the use of boycotts as "economic warfare" against Israel, the Arizona Legislature enacted, and the Governor signed, the Act.  *See* 2016 Ariz. Sess. Laws. Ch. 46, § 2 (2d Reg. Sess.) .  The Act was passed by bipartisan supermajorities: 42-16 in the House and 23-6 in the Senate.  *See* Ensign Decl. Exs. A-B.  The relevant provision of the Act prohibits public entities from "enter[ing] into a contract with a company to acquire or dispose of services, supplies, information technology or construction" unless the company provides "a written certification that the company is not currently engaged in, and agrees for the duration of the contract to not engage in, a boycott of Israel."  A.R.S. § 35-393.01(A).

### *ABOR's Speaker Form Contract*

Arizona State University ("ASU") utilizes a template speaker's contract that is used both for speakers invited by ASU itself and for speakers invited by student organizations when material resources of ASU are required.  2d Cárdenas Decl. ¶ 2. Student groups are not required to use the template contract when only nominal or incidental resources are required (*e.g.*, the use of classrooms).  *Id.*

After enactment of the Act, ASU incorporated an anti-boycott clause into its standard form contracts, including its speaker's contract in September 2016. *Id.*¶ 3. In December 2017, however, ABOR determined that the Act did not apply to on-campus speeches and therefore removed the anti-boycott clause from its speaker contract and posted that revised version of the contract on its website in December 2017. *Id.* ¶ 4. Although the form has been revised since, no subsequent version of the form has ever included an anti-boycott clause. *Id.* ¶ 5. The current version of the speaker form is attached as Exhibit C to the Second Cárdenas Declaration. *Id.*¶ 5 & Ex. C.

### *Plaintiffs' April 3 Speaking Invitation*

On February 22, 2018, a student member of the Muslim Students Association of Arizona State University ("MSA") invited Plaintiffs to speak at an April 3, 2018 event. *Id.* ¶ 6 ; Complaint ¶ 31; Doc. 9-2 Ex. A. No other events/dates were included in that invitation. As part of that invitation, without consultation with ASU officials, the student sent an outdated version of the ASU speaker contract that included an anti-boycott provision, paragraph 20. Complaint ¶¶ 31, 35; Doc. 17-1 at 1 ¶¶ 3-4.

### *This Suit And Subsequent Events*

Plaintiffs filed the instant suit on March 1 without first contacting Defendants. Doc. 1; 2d Cárdenas Decl. Ex. E. Plaintiffs sought a preliminary injunction the next day, again without notifying Defendants. *See* Doc. 9. When ABOR/ASU heard about the suit through media inquiries, it contacted counsel for Plaintiffs, both local and in D.C., to explain that the correct version of the contract does not contain the boycott provision. 2d Cárdenas Decl. ¶ 11. Although ABOR explained the need to speak with counsel prior to Plaintiffs' March 2 press conference, ABOR was advised counsel was in a meeting and unable to speak; ABOR therefore released a press release stating that the Act did not apply to Plaintiffs' April 3 speaking event. *Id.* ¶¶ 11-12; Ex. E. When ABOR finally was able to speak to Plaintiffs' counsel on March 6 it told them that the speaker form sent to Plaintiffs and attached to their declarations was an obsolete version. *Id.* Ex. O. On

3

1    March 8, ABOR's counsel provided Plaintiffs with an updated form, which omitted the

2    anti-boycott clause.  *See id.*

3         Also on March 8, Defendants filed an opposition to Plaintiffs' request for an

4    expedited hearing.  *See* Doc. 17.  In that opposition, ABOR/ASU explained that it had

5    sent Plaintiffs an updated form that excluded the anti-boycott clause, that "'the statute

6    simply does not apply in this context,'" and "'ASU has no intentions of enforcing the

7    statute that is the subject of your lawsuit and it will not be a bar to the April 3rd event.'"

8    *Id.* at 3 (quoting Doc. 17-1 Ex. 1) (alteration omitted).  The Attorney General similarly

9    explained that he "agree[d] with ASU's determination that the Act does not apply to Dr.

10   Bazian and AMP with respect to their April 3 speaking engagements" and that he would

11   "not take any action to enforce the Act vis-à-vis Dr. Bazian's and AMP's April 3

12   speaking engagements."  *Id.* at 3-4.

13        Despite prior statements to the contrary, Plaintiffs did not sign the corrected

14   contracts even though they do not contain the anti-boycott clause.  2d Cárdenas Decl. Ex.

15   M.  Instead, Plaintiffs raised a new objection to a clause requiring Plaintiffs to "comply

16   with all applicable … laws."  *Id.*  So ASU removed that clause as well.  *Id.* Ex. L.  Even

17   this change did not satisfy Plaintiffs.  *Id.* Ex. K.  Instead, Plaintiffs insisted on a

18   stipulation that did nothing more than reiterate the commitments that Defendants had

19   already made to Plaintiffs, as well as the Court.  *Id.* Exs. H, I; Doc. 20.

20        Plaintiffs spoke on ASU's campus on April 3.  2d Cárdenas Decl. ¶ 8.  Defendants

21   are not aware of any future on-campus speaking engagements by Plaintiffs.  *Id.* ¶ 9.

22                                   **LEGAL STANDARD**

23        Article III requires that "[a]n actual controversy must be extant at all stages of

24   review, not merely at the time the complaint is filed."  *Alvarez v. Smith*, 558 U.S. 87, 92,

25   (2009) (quotation marks omitted).  A case is moot "when the issues presented are no

26   longer live."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation marks

27   omitted).  To satisfy the ripeness requirements of Article III, "there must be a 'genuine

28

                                            4

threat of imminent prosecution.'"  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

"[A] Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly before the court."  *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).  In evaluating a Rule 12(b)(1) motion, a court "may look beyond the complaint to facts properly in the record, ... need not presume the truthfulness of the plaintiffs' allegations[, and] ... need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Saldana v. Occidental Petroleum Corp.*, 774 F.3d 544, 551 (9th Cir. 2014) (citations and quotations omitted).

"Dismissal for failure to state a claim can be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Mendez v. Freeport-McMoRan, Inc.*, No. 16- 00548, 2016 WL 6577064, at *1 (D. Ariz. Nov. 7, 2016) (quotation marks omitted).

## ARGUMENT

## I. PLAINTIFFS' CLAIM IS DOUBLY MOOT

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  *Nike*, 568 U.S. at 91 (citation omitted).  "[T]he Supreme Court and [the Ninth Circuit] have repeatedly held that a case is moot when the challenged statute is repealed, expires, or is amended to remove the challenged language.  *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166 (9th Cir. 2011).

This action is moot for two independent reasons:  (1) Plaintiffs have already spoken at the April 3 event, rendering irrelevant the purported dispute as to whether Plaintiffs would be able to do so without agreeing to an anti-boycott provision, and (2) ABOR/ASU had already replaced the outdated speaker contract upon which Plaintiffs'

claim is based *months* before this suit was filed (as a simple phone call or *any* contact with ABOR/ASU would have confirmed).

### A.   Plaintiffs' Claim Is Moot Now That Plaintiffs Spoke At The April 3 Event That Was The Subject Of Their Suit

Because Plaintiffs' April 3 event has now occurred, any "controversy between the parties has thus clearly ceased to be definite and concrete and no longer touches the legal relations of parties having adverse legal interests." *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974) (quotation marks omitted).  The expiration of the relevant action—here an invitation to speak on campus *on April 3* purportedly conditioned on agreeing to the anti-boycott provision—moots any challenge to that action.  *See, e.g.*, C.*F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 983 (9th Cir. 2011) (declaratory judgment claim regarding content of instruction moot following objecting student's graduation); *GTE California, Inc. v. FCC*, 39 F.3d 940, 945 (9th Cir. 1994) (claim moot because administrative waiver at issue would have expired on its own terms prior to adjudication); *Shoshone-Bannock Tribes v. Fish & Game Commission, Idaho*, 42 F.3d 1278, 1281-82 (9th Cir. 1994) (temporary agency prohibition on fishing expired).  "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights."  *Nike*, 568 U.S. at 91 (quotation marks omitted).

Because the dispute about the constitutionality of the speaker contract for the April 3 event is now "an abstract dispute about the law," and "a dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, [it] falls outside the scope of the constitutional words 'Cases' and 'Controversies.'" *Alvarez v. Smith*, 558 U.S. at 93 (2009).

**B.     ABOR's Removal Of The Anti-Boycott Clause Also Moots This Action**

This suit is also moot because ABOR/ASU had removed the anti-boycott clause from its speaker contracts—and indeed did so *before* this action was even filed.  *Supra* at 2-4.  As in *Log Cabin Republicans*, ABOR/ASU's removal of the anti-boycott provision from its speaker contracts "gave [plaintiffs] 'everything' [their] complaint 'hoped to achieve.'"  658 F.3d at 1166 (citation omitted).

The Ninth Circuit has repeatedly held that a superseding government action moots a challenge to an earlier government action.  *See, e.g.*, *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1096 (9th Cir. 2003) ("[W]hen one [action] supersedes another, a challenge to the superseded [action] is moot"); *Western Radio Serv. Co. v. Glickman*, 113 F.3d 966, 974 (9th Cir. 1997) (agency action "has been superseded" and "therefore has no current effect or continuing consequences, and [plaintiff's] challenge to it is moot"); *American Rivers v. NMFS*, 126 F.3d 1118, 1124 (9th Cir. 1997) (challenge to 1994 biological opinion is moot because it was superseded by 1995 biological opinion); *Or. Natural Res. Council, Inc. v. Grossarth*, 979 F.2d 1377, 1378-80 (9th Cir. 1992) (cancellation of leases mooted suit over prior leases and review of agency's issuance of new leases "should be considered in the first instance by a district court in separate litigation which can develop an independent record").

So too here.  The superseding contract form moots Plaintiffs' challenge to the outdated contract form that Plaintiffs were given by a third-party's mistake.

**C.     No Exceptions To Constitutional Mootness Apply Here**

The State anticipates that Plaintiffs will argue that exceptions for voluntary cessation or claims capable of repetition, yet evading review apply here.  Neither does.

**1.     The Capable of Repetition, Yet Evading Review Exception Does Not Apply Here**

Federal courts do recognize an exception to mootness for disputes that are "'capable of repetition' while 'evading review.'"  *Alvarez*, 558 U.S. at 93.  Plaintiffs,

1  however, cannot fall within that exception, which is both "narrow" and "applies only in

2  'exceptional situations.'" *Headwaters, Inc. v. BLM*, 893 F.2d 1012, 1016 (9th Cir. 1989),

3  (citation omitted).

4        To satisfy the exception, Plaintiffs would need to make two showings.  First, they

5  must demonstrate a "'reasonable expectation' or a 'demonstrated probability' that 'the

6  same controversy will recur involving the same complaining party.'" *FEC v. Wisconsin*

7  *Right to Life, Inc. ("WRTL")*, 551 U.S. 449, 463 (2007) (citation omitted).  Second,

8  Plaintiffs must demonstrate that "'the challenged action is in its duration too short to be

9  fully litigated prior to its cessation or expiration.'" *Davis v. FEC*, 554 U.S. 724, 735

10  (2008) (quoting *WRTL*, 551 U.S. at 462).  Plaintiffs bear the burden of establishing both

11  showings.  *See Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983); *Sample v. Johnson*, 771

12  F.2d 1335, 1340, 1342 (9th Cir. 1985).  But Plaintiffs cannot establish either requirement

13  here.

14        *First*, there is no reasonable likelihood that Plaintiffs will ever again be asked to

15  sign a certification under the Act.  ABOR/ASU had already removed the anti-boycott

16  clause from its speaker contracts months before this suit was filed and has no intention of

17  ever restoring it.  2d Cárdenas Decl. ¶¶ 2-6.  Thus, even if Plaintiffs are ever again asked

18  to speak at ASU, there is no reasonable probability that they will be required to sign a

19  contract with an anti-boycott provision.  *See, e.g.*, *Pub. Utils. Comm'n v. FERC*, 100 F.3d

20  1451, 1460 (9th Cir. 1996) (where "resolution of a controversy depends on facts that are

21  unique or unlikely to be repeated, the action is not capable of repetition and hence is

22  moot"); *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994)

23  (rejecting as too speculative the possibility that defendant would again enact similar

24  regulations to those originally challenged:  "If in the future the Commissioner does

25  implement regulations or policies which [plaintiff] finds objectionable, [it] can challenge

26  them at that time.").  And Plaintiffs' filings to date do not disclose any future speaking

27  engagements at ASU, rendering the possibility of recurrence even more remote.

28

*Second*, Plaintiffs' First Amendment challenges to the Act will not evade review— a virtually identical First Amendment challenge to the Act is pending before this Court in *Jordahl v. Brnovich*, No. 17-cv-8263 (D. Ariz. filed Dec. 6, 2017). That case involves a multi-year contract,[1] and will not evade review. *See, e.g., Idaho Dep't of Fish & Game v. NMFS*, 56 F.3d 1071, 1075 (9th Cir. 1995) (holding that biological opinion lasting four years is "more than enough time for litigants to obtain judicial review").

### 2. The Voluntary Cessation Exception Also Does Not Apply

The "voluntary cessation" exception to mootness is likewise inapplicable here for four reasons.

*First*, one aspect of the mootness here is simply that time has passed and Plaintiffs have given their speech. That passage of time is not "voluntary cessation," but rather ordinary mootness. *See, e.g., DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974).

*Second*, the voluntary cessation exception does not apply where, as here, Defendants had already ceased the relevant conduct before this action was filed. *See, e.g., Pub. Utils. Comm'n,* 100 F.3d at 1460 ("[I]n order for this exception to apply, the defendant's voluntary cessation must have arisen *because of* the litigation."). Here, ABOR had already removed the anti-boycott provision from its speaker agreement *before* this suit was filed. *See* Doc. 17-1; 2d Cárdenas Decl. ¶¶ 4-5.

*Third*, and relatedly, because ABOR/ASU had already stopped using a speaker contract with the anti-boycott clause *before* this suit was filed, Plaintiffs also cannot satisfy the requirements of Article III standing—which has no exception for voluntary cessation. *See, e.g., Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983); *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 655 (9th Cir. 2002) (Standing is determined based on "the facts as they existed at the time that the complaint was filed.").

---

[1]  While the contracts are for one year at a time, the contract is only bid out every four years and annual renewals are presumptive between biddings. Ensign Decl. Ex. C at 83:16-84:1; 92:16-21.

*Fourth*, Defendants have consistently explained why the Act does not apply to guest speakers, and that they have absolutely no intent of enforcing the Act against such speakers. *See* Doc. 17. Indeed, Defendants have disavowed the applicability of the Act in this context at every turn, and incorporated that position into the standard speaker contract. *Id.*; 2d Cárdenas Decl. Exs. E, J, L, N, O. And "unlike in the case of a private party, [courts] presume the government is acting in good faith" with any change in its conduct. *American Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010). The voluntary mootness exception thus does not apply. *See*, *e.g.*, *White v. Lee*, 227 F.3d 1214, 1242-44 (9th Cir. 2000) (exception did not apply where new policy was set forth in a memorandum that was "broad in scope and unequivocal in tone" and announced by press release).

### D.    Alternatively, This Case Is Moot As A Prudential Matter

Even if this case were not moot for purposes of Article III, prudential considerations here require dismissal of Plaintiffs' suit since the dispute about the April 3 event no longer has any practical significance. And Plaintiffs' litigation conduct has demonstrated that they are disinterested in obtaining a practical solution to the issue that the Complaint was purportedly about—being able to speak at the April 3 event without agreeing not to boycott Israel—and instead are intent on obtaining an advisory opinion about the constitutionality of the Act at all costs, regardless of whether it has a concrete effect on them.

The scarce judicial resources of this Court need not be wasted on litigants who interminably refuse to take "yes" for an answer. Instead, "The doctrine of prudential mootness permits a court to 'dismiss an appeal not technically moot if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief[.]'" *Deutsche Bank Nat. Tr. Co. v. FDIC*, 744 F.3d 1124, 1135 (9th Cir. 2014). Prudential mootness reflects the common-sense recognition that, "if events so overtake a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of

1   deciding the case on the merits, equity may demand not decision but dismissal." *Winzler*

2   *v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012).

3       Here, Plaintiffs have spoken at their April 3 event without hindrance and have no

4   apparent prospect of ever encountering the Act again.  *Supra* at 4.  Thus even if this case

5   were not constitutionally moot, it has long since been robbed of any practical significance

6   and should be dismissed as prudentially moot.  Indeed, even if Plaintiffs could somehow

7   squeeze into one of the exceptions to mootness, the constitutional justiciability of their

8   claim would at best exist by the thinnest of margins and the case should be readily

9   dismissed on prudential grounds.

10      Such a dismissal is particularly appropriate given Plaintiffs' litigation conduct—

11  which demonstrates that the April 3 event is but a pretense to challenge the

12  constitutionality of the Act notwithstanding its inapplicability.  At every turn, Plaintiffs

13  refused to accept satisfaction of their purported objectives.  Instead, they continually

14  invented new, *ad hoc* concerns in an attempt to keep this case alive until even Plaintiffs'

15  capacity to concoct new objections ran out.  This Court need not indulge such transparent

16  litigation-seeking behavior.

17      In particular, Plaintiffs' representations to this Court have proven to have little

18  value.  Plaintiffs' Complaint expressly stated that "Dr. Hatem Bazian and American

19  Muslims for Palestine would accept the Muslim Students Association's invitation if the

20  'No Boycott of Israel' clause were stricken.  They agree to all other contractual terms."

21  Complaint ¶ 37.  Plaintiffs made a similar representation the next day in their motion for

22  a preliminary injunction.[2]  And both of Plaintiffs' declarants swore under oath that the

23  anti-boycott clause was their *only* objection to the speaker form sent to them.[3]

24

---

25  [2]  *See* Doc. 9-1 at 5 ("The 'No Boycott of Israel' clause in ASU's standard speaker
    agreement is, to Plaintiffs' knowledge, the only institutional and legal roadblock to their
26  participation in the scheduled April 3, 2018 event.").

27  [3]  *See* Doc. 9-3 at 3 ¶ 16 ("I have no objection to Arizona State University's "Speaker /
    Artist Performer Agreement" other than Paragraph 20, the 'No Boycott of Israel' clause.
28  … If the 'No Boycott of Israel' clause is stricken or declared unenforceable, I will sign

Plaintiffs' commitments, however, rapidly proved worthless.  After discovering about the case from press inquiries (not from Plaintiffs), ASU immediately called Plaintiffs' counsel.  2d Cárdenas Decl. ¶ 11.  When ABOR was unable to connect with any of Plaintiffs' counsel prior to Plaintiffs' March 2 press conference announcing this suit, ABOR issued a press release on March 2, the same day of the press conference, to explain that it did "not believe that this law [the Act] applies to this kind of engagement because the contract was to be with a student group….  The certification was not needed." *Id.* ¶ 12; Ex. E.  Counsel for ABOR/ASU further told Plaintiffs on March 6 and March 8 that "your lawsuit is based on an outdated version of our speaker engagement form contract.  The form was revised in December of 2017 and the no boycott of Israel provision to which you object was removed."  Doc. 17-1 Ex. 1.

But even though the *sole* clause to which Plaintiffs had objected was removed from the speaker agreement before this suit was even filed, Plaintiffs did not follow through with their representations that they would sign the contracts if that clause removal occurred.  Complaint ¶ 37; *supra* at 3-4.  Instead, Plaintiffs suddenly discovered an objection to paragraph 6, which required Plaintiffs to comply with "applicable … laws," 2d Cárdenas Decl. Ex. M, O—even though Plaintiffs previously had full knowledge of that clause,[4] and stated they agreed to "all other contractual terms." Complaint ¶ 37.  In short, Plaintiffs reneged on their commitments to this Court barely a week after making them.

In an effort to resolve this dispute without full-blown litigation, ABOR agreed to remove even the "applicable … laws" clause.  2d Cárdenas Decl. Ex. L.  In addition, both

---

the Agreement, enabling me to speak at the April 3, 2018 event."); Doc. 9-2 at 3 ¶ 8 ("I cannot in good faith sign …because of one, and only one, objection. Paragraph 20 of the Agreement….  If the 'No Boycott of Israel' clause is stricken or declared unenforceable, I will sign the Agreement, enabling AMP to participate in the April 3, 2018 event."

[4] *See* Doc. 9-3 Ex. B (attaching contract with paragraph 6); Doc. 9-2 Ex. A (same).

12

1    ABOR and the Attorney General made *unequivocal* commitments to this Court that they

2    would not take action to interfere with the April 3 event under the Act.  *See* Doc. 17.

3         But even these actions did not satisfy Plaintiffs.  Instead, Plaintiffs now would

4    "only withdraw our motion pursuant to an all-party stipulation."  2d Cárdenas Decl. Ex.

5    K.  Although Defendants believed that such a stipulation was thoroughly unnecessary

6    given the removal of *every single* clause to which Defendants had *ever* objected and

7    Defendants' binding commitments made to this Court, Defendants ultimately agreed to a

8    joint stipulation.  *Id.* Ex. H.

9         Plaintiffs' conduct thus demonstrates that the April 3 event was but an artifice to

10   obtain their true objective—an opinion from this Court regarding constitutionality of the

11   Act notwithstanding that the Act does not affect Plaintiffs' concrete interests.  But this

12   Court has does not have jurisdiction to enter such an advisory opinion.  *See*, *e.g.*, *Steel*

13   *Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 101 (1998).  And even if Plaintiffs

14   satisfied the requirements of Article III, the doctrine of prudential mootness requires

15   dismissal here where there is no meaningful relief to be had.

16        Alternatively, this Court should decline to exercise its jurisdiction to hear a request

17   for a declaratory judgment.  Such jurisdiction is entirely *discretionary*.  *See*, *e.g.*, *Wilton*

18   *v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  And for all of these reasons, this Court

19   should exercise its discretion not to hear this dispute.

20   **II.    PLAINTIFFS' CLAIM IS UNRIPE**

21        As the Ninth Circuit, sitting *en banc*, has explained:  Neither "the mere existence

22   of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or

23   controversy' requirement."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134,

24   1139 (9th Cir. 2000) (en banc).  To satisfy the ripeness requirements of Article III, "there

25   must be a 'genuine threat of imminent prosecution.'"  *Id.*  Plaintiffs cannot remotely

26   make such a showing.

27

28

The Ninth Circuit has provided three factors to "evaluat[e] the genuineness of a claimed threat of prosecution": "[(1)] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, [(2)] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [(3)] the history of past prosecution or enforcement under the challenged statute." *Id.*

Because the anti-boycott clause no longer exists in speaker contracts, it is doubtful that Plaintiffs could have a "'concrete plan' to violate the" Act in the future.[5] But even if they did, the second and third factors mandate a conclusion that this suit is unripe. Not only have Defendants *never* "communicated a specific warning or threat to initiate [enforcement] proceedings" against Plaintiffs, they have *unequivocally* disavowed any intent to enforce the Act in the context of guest speakers. Doc. 17 at 3-4. Thus, as in *Thomas*, "when plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." 220 F.3d at 1140 (citation omitted); *see also Younger v. Harris*, 401 U.S. 37, 42 (1971) (same). Similarly, as to the third factor, no Defendant has ever filed an enforcement action relating to the Act in this context. Ensign Decl. ¶¶ 2-3. Indeed, the Attorney General has never initiated any suit to enforce the Act against anyone to date (although he has defended its constitutionality in this Court). Ensign Decl. ¶¶ 2-3. The second and third factors thus compel a conclusion that Plaintiffs have not established a "genuine threat of imminent prosecution," requiring dismissal of this case as unripe.

---

[5] Indeed, even at the time that this suit was filed, the speaker form actually used by ASU/ABOR did not include the anti-boycott clause. 2d Cárdenas Decl. ¶¶ 4-5.

1    **III.    THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED**

2        **A.    The Attorney General Enjoys Sovereign Immunity**

3        As a general matter, all state officials enjoy sovereign immunity.  *See*, *e.g.*, *Alden*

4    *v. Maine*, 527 U.S. 706, 747 (1999) ("[S]overeign immunity bars relief against States *and*

5    *their officers*[.]" (emphasis added)).  *Ex Parte Young* recognizes a "narrow exception" to

6    that immunity.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 76 (1996); *accord*

7    *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 114-15 & n.25 (1984)

8    (explaining that "*Young* is a fiction that has been narrowly construed").  Plaintiffs'

9    Complaint does not fall within that narrow exception, however.

10        Under *Ex Parte Young*, sovereign immunity is not a bar to suit against "an official

11    who *acts unconstitutionally* [because the official] is [thereby] 'stripped of his official or

12    representative character[.]'"  *Pennhurst*, 465 U.S. at 104 (emphasis added).  Indeed, the

13    Supreme Court has repeatedly stressed that the *Ex Parte Young* exception only applies

14    where either the state officers *actually act* in an unconstitutional manner,[6] or "threaten

15    and are about to commence proceedings, either of a civil or criminal nature, to enforce

16    against parties affected an unconstitutional act."  *Morales v. Trans World Airlines, Inc.*,

17    504 U.S. 374, 381 (1992).[7]

18

19

---

20    [6] *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (*Young* "permits suits for prospective
    injunctive relief against state officials *acting in violation of federal law*" (emphasis
21    added)); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993)
    (*Young* permits some suits "against state officials in federal court challenging the
22    constitutionality *of official conduct* enforcing state law." (emphasis added)); *see also In
    re Ellett*, 254 F.3d 1135, 1138 (9th Cir. 2001) ("To be entitled to relief under *Ex Parte
23    Young*, then, [plaintiff] must allege that [defendant] … *is engaging in a course of activity
    in violation of federal law*." (emphasis added)).
24
    [7] *Accord Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015)
25    ("[F]ederal courts may in some circumstances grant injunctive relief against state officers
    *who are violating, or planning to violate*, federal law." (emphasis added)); *Steffel v.*
26    *Thompson*, 415 U.S. 452, 464–65 (1974) (*Young* "hold[s] that state officials *who threaten
    to enforce an unconstitutional state statute* may be enjoined by a federal court" (emphasis
27    added)).

28

In stark contrast here, the Attorney General is not alleged to have done *anything*, or to have threatened to initiate *any* enforcement action. The entirety of Plaintiffs' allegations regarding the Attorney General is found in paragraph 10, which alleges that he "is responsible for enforcing and defending the constitutionality of Arizona law." Complaint ¶ 10. There is thus no allegation that the Attorney General has actually undertaken a relevant act *whatsoever*, let alone an action that violated the U.S. Constitution. Nor is there any allegation that the Attorney General has "threaten[ed] and [is] about to commence proceedings." *Morales*, 504 U.S. at 381. Indeed, he has affirmatively *disavowed* any intent to enforce the Act in this context because it does not apply. Doc. 17 at 3-4. Ultimately, the Attorney General here has simply been sued as a stand-in for the State itself, which does not satisfy *Young*.

## B. Plaintiffs' Claim Against The Attorney General Fails For Lack of Standing And Ripeness

For similar reasons, Plaintiffs lack standing to assert a claim against the Attorney General, which would also be unripe. Absent any conduct by the Attorney General, there is no subject matter jurisdiction for a claim asserted against him. *See Arizona Attorneys for Criminal Justice v. Ducey*, No. 17-cv-1422, 2018 WL 1570244, at *5 (D. Ariz. Mar. 30, 2018) ("Because Plaintiffs set forth no facts which show that they have suffered an injury as a result of some conduct of the Attorney General, it follows that it is not likely, much less plausible, that an injunction against him would redress their injury.").

## C. Plaintiffs Have Not Stated A Valid Section 1983 Claim

Plaintiffs' claim must be dismissed for failure to state a valid claim under 42 U.S.C. § 1983.[8] Plaintiffs do not allege that the Attorney General has taken *any* action with respect to the Act at all, let alone that "deprived [Plaintiffs] of a right secured by the

---

[8] By asserting a violation of the First and Fourteenth Amendments and seeking attorneys feels under 42 U.S.C. § 1988, *see* Doc. 1 at 9, 12, Plaintiffs claim for relief necessarily must be asserted under Section 1983 even though it does not invoke that section (or any other) expressly.

Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (stating elements of a Section 1983 claim).  Plaintiffs' failure to allege any action at all by the Attorney General necessarily means that Plaintiffs have not alleged a valid Section 1983 claim against him.

Plaintiffs also have not alleged that ABOR/ASU took any action under color of law that violated Plaintiffs' rights.  Notably, the Complaint does not allege that ABOR/ASU provided to Plaintiffs the speaker form to which Plaintiffs objected, and Plaintiffs' own documents establish it was the student group that did so.  *See* Doc. 9-3 ¶ 12; Doc. 9-2 ¶¶ 6-7 & Ex. A.  And when ABOR/ASU first became aware of Plaintiffs' objections, it quickly provided Plaintiff with an updated speaker form that did not include an anti-boycott clause.  2d Cárdenas Decl. Ex. E, O.  Thus, the Complaint simply does not (and could not) allege that ABOR/ASU insisted that Plaintiffs sign a contract with an anti-boycott provision as a condition of speaking at the April 3 event, and therefore does not allege a viable Section 1983 claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction or as prudentially moot.  Alternatively, the Complaint should be dismissed for failure to state a valid section 1983 claim.

1    Respectfully submitted this 10th day of April, 2018.

2                                          MARK BRNOVICH
3                                          ATTORNEY GENERAL

4                                          By:  s/ Drew C. Ensign
5                                          Drew C. Ensign (No. 25462)
                                           Oramel H. (O.H.) Skinner (No. 32891)
6                                          Brunn (Beau) W. Roysden III (No. 28698)
                                           Robert J. Makar (No. 033579)
7

8                                          *Attorneys for Defendant Mark Brnovich in his*
                                           *official capacity as Attorney General*
9

10                                         By: s/ Nancy Tribbensee
                                           Nancy Tribbensee (No. 011128)
11                                         Senior Vice President and General Counsel
                                           José A. Cárdenas (No. 005632)
12                                         Senior Vice President and General Counsel,
                                           ASU
13

14                                         *Attorneys for Defendant Arizona Board of*
                                           *Regents*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

**LOCAL RULE 12.1 CERTIFICATION**

Pursuant to Local Rule 12.1, I certify that before filing the instant motion attorneys for the State conferred with Plaintiffs' counsel by email on April 9 and informed them of the State's intention to file this motion and the bases for it.  Plaintiffs' counsel indicated that Plaintiffs would not be amending their Complaint prior to Defendants filing their instant motion to dismiss.

 s/ Drew C. Ensign
Attorney for Intervenor-Defendant State of Arizona

1

### CERTIFICATE OF SERVICE

2

I hereby certify that on this 10th day of April, 2018, I caused the foregoing

3

document to be electronically transmitted to the Clerk's Office using the CM/ECF

4

System for Filing and transmittal of a Notice of Electronic Filing to the following

5

CM/ECF registrants:

6

Lena F. Masri

7

Gadeir I. Abbas
Carolyn M. Homer

8

453 New Jersey Ave., SE
Washington, DC 20003

9

Phone: (202) 742-6420

10

Fax: (202) 488-0833

11

Raees Mohamed, Esq.

12

8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258

13

Phone: (480) 331-9397
Fax: (866) 961-4984

14

15

  s/ Drew C. Ensign

16

*Attorney for Defendant Mark Brnovich in his official capacity as Attorney General of*

17

*Arizona*

18

19

20

21

22

23

24

25

26

27

28