# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| American Muslims for Palestine and Dr. Hatem Bazian,<br>                    Plaintiffs,<br>vs.<br><br>Arizona Board of Regents for and on behalf of Arizona State University; and Mark Brnovich, in his official capacity as Attorney General Of Arizona,<br>                    Defendants. | Case No: 2:18-cv-00670-PHX-JJT |

# DECLARATION OF JOSÉ A. CÁRDENAS

I, José A. Cárdenas, declare as follows:

1.      I am an attorney licensed to practice law in Arizona.  I am Senior Vice President and General Counsel for Arizona State University ("ASU").  I have personal knowledge of the matters referred to herein and if called upon to testify could and would testify truthfully thereto.

2.      ASU has a template speaker form that is used for speakers invited by the university itself, or for student organizations, when ASU resources, other than nominal or incidental (*e.g.*, mere classroom use) are required.

3.      Shortly after A.R.S. § 35-393.01*et seq*. (the "Act") was passed by the Arizona Legislature and signed into law by the Governor, ASU incorporated an anti-boycott provision into various contract templates, including its form speaker agreement in

September 2016.  That anti-boycott provision provides as follows: "No Boycott of Israel. As required by Arizona Revised Statutes § 35-393.01, Entity certifies it is not currently engaged in a boycott of Israel and will not engage in a boycott of Israel during the term of this Contract."  Attached hereto as Exhibit A is a copy of the speaker form adopted in September 2016.

4.      In December 2017, ASU determined that the Act did not apply to speakers invited to speak on campus.  It therefore revised the speaker form agreement to remove the anti-boycott provision.  A copy of the December 2017 version of the form speaker agreement is attached as Exhibit B.  Because ASU does not believe the Act applies to guest speakers, it has no intention of amending its speaker form agreement to reinstate any anti-boycott provision.

5.      The speaker form agreement has been revised since December 2017, but none of the revised versions included any certification with respect to boycotts of Israel. A copy of the current version of the form speaker agreement is attached as Exhibit C.

6.      In February 2018, a student member of the Muslim Students Association invited speakers for an event and emailed the outdated September 2016 version of the speaker agreement to the invited speakers, without consultation with ASU officials.

7.      Following the email exchanges detailed below, Plaintiffs executed the version of the speaker agreement that, correctly, did not include the anti-boycott provision.  The speaker agreements executed by Plaintiffs relating to the April 3 speaking engagement are attached as Exhibit D.

8.     Plaintiffs spoke at the scheduled April 3 speaking engagement without any hindrance by Defendants.

9.     Defendants are not aware of any future speaking engagements by Plaintiffs at ASU.

10.     ASU's first knowledge of Plaintiffs' concerns with the anti-boycott provision came after March 2, 2018 media inquiries to ASU about Plaintiffs' complaint and press conference scheduled that day.

11.     The ASU Office of General Counsel telephoned Plaintiffs' counsel, both in Washington, D.C. and in Scottsdale, Arizona, prior to Plaintiffs' press conference on Friday, March 2, 2018, but was unable to speak with any of Plaintiffs' counsel.  Lisa Loo, ASU's Vice President of Legal Affairs and Deputy General Counsel, explained to the person answering the telephone at counsel's Scottsdale office the need to speak with Plaintiffs' counsel prior to the press conference but was told counsel was in a meeting and unable to speak with her.  The purpose of her calls was to explain to Plaintiffs' counsel that the correct version of the contract does not contain the anti-boycott provision.

12.     Attached hereto as Exhibit E is the March 2, 2018 press release of ASU issued after ASU was unable to speak with any of Plaintiffs' counsel.

13.     Ms. Loo also called Plaintiffs' local counsel on Monday, March 5, 2018 and was told that local counsel would be unavailable for the entire week.  Ms. Loo then emailed local counsel later that evening.  A copy of that email is attached hereto as Exhibit F.  Plaintiffs' counsel, Carolyn Homer, responded to Ms. Loo's various

communications on Tuesday, March 6, 2018.  A copy of that email is attached hereto as Exhibit G.

14.     Attached hereto as Exhibit H is an email chain between counsel for Plaintiffs and Defendants relating to the Joint Motion To Enter A Stipulation (Doc. 20).

15.     Attached hereto as Exhibit I is a March 14, 2018 email from Drew C. Ensign, counsel for Defendant Mark Brnovich, to Plaintiffs' counsel, on which I was copied.

16.     Attached hereto as Exhibit J is a March 14, 2018 email that I sent to Plaintiffs' counsel.

17.     Attached hereto as Exhibit K is a March 14, 2018 email from Gadeir Abbas, counsel for Plaintiffs, to Defendants' counsel.

18.     Attached hereto as Exhibit L is a March 13, 2018 email that I sent to Plaintiffs' counsel.

19.     Attached hereto as Exhibit M is a March 13, 2018 email from Gadeir Abbas, counsel for Plaintiffs, to Defendants' counsel.

20.     Attached hereto as Exhibit N is a March 13, 2018 email from Drew C. Ensign, counsel for Defendant Mark Brnovich, to Plaintiffs' counsel, on which I was copied.

21.     Attached hereto as Exhibit O is a March 8, 2018 email that I sent to Plaintiffs' counsel.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, and that this declaration was issued on April 10, 2018 in Tempe, Arizona.

<u>s/ Jose A. Cardenas</u>
Jose A. Cardenas

# Exhibit A



# SPEAKER/ARTIST/PERFORMER AGREEMENT

This Agreement is entered into as of _____, 20__, between the Arizona Board of Regents acting for and on behalf of Arizona State University ("*ASU*") and _____ [1]("*Speaker*"), or _____, a _____ _____, [2] as the authorized agent for Speaker.  If Speaker is represented by an authorized agent, then references to Speaker herein will also refer to the authorized agent, where appropriate.

1. <u>Engagement; Event</u>.  ASU hereby engages Speaker to personally provide the following services, and Speaker agrees to personally provide to ASU the following services (the "*Presentation*") at the following Event (the "*Event*"):

    Event/Location:  _____

    Dates and times of Event:_____

    Speaker's Presentation schedule: _____

    Title of Speaker's Presentation: _____

    Speaker's hospitality requirements: _____

    Speaker's technical requirements:  _____

2. <u>Notice</u>.  Any communication or notice required under this Agreement shall be in writing and may either be given by personal delivery or sent, in all cases, against receipt, addressed to the following:

    If to ASU:                                             If to Speaker:

    _____          _____

    _____          _____

    Attn: _____          Attn: _____
    Email: _____          Email: _____

    Notice shall be deemed to be received upon receipt by the receiving party.

3. <u>Speaker Warranty</u>.  Speaker warrants that at all times during the Event, Speaker will personally provide Speaker's best professional efforts. Speakers' professional credentials are such that Speaker can provide the Presentation in a knowledgeable and professional manner.

4. <u>Payment.</u>  ASU shall pay Speaker the all-inclusive fee of $_____ upon completion of the Presentation. Speaker shall complete a Substitute W-9 Form, which must be signed by the person or entity to whom payment is to be issued. ASU will issue all payment in accordance with the information on the completed and signed Substitute W-9 Form.

---

1 – If an authorized agent is signing, please be sure to fill in the speaker name as well.
2 – Include full legal name of authorized agent, state of formation, and type of entity (for example: ABC, Inc., an Arizona Corporation.)

Revised 9.8.2016

5. <u>Acceptance of Agreement</u>.   Speaker will accept and return this Agreement to ASU no later than _____, 20__.   In all events, this Agreement must be fully signed and received at ASU at least one week prior to the Event to allow on-time payment. This Agreement must be fully signed before payment can be processed. Please return a signed copy of this Agreement to ASU at the address set forth in Section 16.

6. <u>Compliance with Law</u>.   Speaker will comply with all applicable published ASU, City, County, State and Federal laws, acts, codes, regulations and policies, including all applicable federal immigration laws and regulations that relate to employment.

7. <u>Press Materials</u>.   Speaker shall timely supply all press/promotion material requested by ASU.

8. <u>Educational Component</u>.   ASU is required to include some type of educational component with every program presented by ASU. Speaker shall work with ASU to develop a satisfactory educational component.

9. <u>Indemnity</u>.   Speaker shall indemnify, defend, and hold ASU harmless for, from, and against, any all claims, demands, suits, costs and damages (including reasonable attorneys' fees) that ASU may incur by reason of any:  (a) actual or alleged infringement or violation of any copyright, or other proprietary right by Speaker; (b) claim for damages arising from Speaker's Presentation; or (c) any of Speaker's costs and liabilities arising out of the Presentation or Event, including without limitation:  travel and meal expenses; union dues;  taxes; agents' commissions or other expenses or obligations; damages to Speaker's equipment or materials; compensation to third parties engaged by Speaker; compensation for lost or stolen equipment or materials; workers compensation or other insurance; and any expenses not preapproved by ASU in writing.

10. <u>Indemnification Limitation</u>.   ASU is a public institution and, as such, any indemnification, liability limitation, or hold harmless provision will be limited as required by Arizona law, including without limitation Article 9, Sections 5 and 7 of the Arizona Constitution and A.R.S. §§ 35-154 and 41-621. Therefore, notwithstanding any other provision of this Agreement to the contrary, ASU's liability under any claim for indemnification is limited to claims for property damage, personal injury, or death to the extent caused by acts or omissions of ASU.

11. <u>Default, Remedies, Force Majeure, Cancellation</u>.

    11.1  <u>Default</u>.   Failure by either party to perform as specifically described herein shall be deemed to be an "*Event of Default*" hereunder.

    11.2  <u>Remedies</u>.   Upon the occurrence of an Event of Default, the non-defaulting party (1) shall have all the remedies afforded by law and in equity; and (2) shall have the right to terminate this Agreement.

    11.3  <u>Force Majeure</u>.   Neither Speaker nor ASU shall be liable for failure to perform hereunder if failure is caused by civil tumult, strike, epidemic, or any cause beyond the control of the parties.  Labor difficulties due to the ingestion of alcohol or illegal substances will not be deemed labor difficulties and will not be deemed an event of Force Majeure.

    11.4  <u>Cancellation</u>.   If the Event is cancelled by ASU, reasonable efforts will be made to reschedule.

12. <u>Liability; Insurance</u>.   Speaker, at its expense, will procure and maintain, for the duration of the Event, a policy of commercial general liability insurance in an amount of not less than $1,000,000, single limit, against claims for bodily injury, death and property damage occurring in connection with the Event and the Presentation. This insurance must name the Arizona Board of Regents, Arizona State University, and the

Revised 9.8.2016

State of Arizona as additional insureds. Speaker must provide ASU with a certificate evidencing this insurance coverage no later than 10 days prior to the Presentation.

13. <u>No Assignment</u>.   Neither party shall have the right to assign any rights or obligations under this Agreement without the prior written consent of the other party.

14. <u>Entire Agreement</u>.   This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter. No prior or contemporaneous agreement or understanding will be effective.

15. <u>Governing Law and Venue</u>.   This Agreement will be governed by the laws of the State of Arizona without regard to any conflicts of laws principles. ASU's obligations hereunder are subject to the regulations/policies of the Arizona Board of Regents. Any proceeding arising out of or relating to this Agreement will be conducted in Maricopa County, Arizona. Each party waives any objection it may now or hereafter have to venue or to convenience of forum.

16. <u>Independent Contractor</u>.   Speaker is an independent contractor and is not an employee of ASU. Neither Speaker nor any personnel of Speaker will for any purpose be considered employees or agents of ASU. Speaker assumes full responsibility for the actions of Speaker's personnel, and is solely responsible for their supervision, direction and control, payment of salary and expenses (including withholding income taxes and social security), worker's compensation, and disability benefits.

17. <u>Recordings; Use of Name and Likeness</u>.   Both parties may record the Presentation for internal records. No recording of the Presentation, either visual or audio, will be made by or on behalf of Speaker for the purposes of profit or significant distribution without prior written approval from ASU. ASU may require an additional payment for the privilege, and may require Speaker to sign a filming/recording agreement. ASU may record the Presentation on video tape, audio tape, film, photograph or any other medium, use Speaker's name, likeness, voice and biographical material in connection with these recordings for purposes within the ASU mission, including education and research, and exhibit or distribute the recording in whole or in part without restrictions or limitation for any educational or promotional purpose that ASU deems appropriate.

18. <u>No Revenue Sharing</u>.   Speaker shall not participate in any revenues associated with the Presentation or Event. This includes: sponsorship, ticketing, ticketing fees, ASU concessions revenues, and any other revenue streams that may be associated with the Event.

19. <u>Non-discrimination</u>.     The parties will comply with all applicable state and federal laws, rules, regulations, and executive orders governing equal employment opportunity, immigration, and nondiscrimination, including the Americans with Disabilities Act. **If applicable, the parties will abide by the requirements of 41 CFR §§ 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability**.

20. <u>No Boycott of Israel</u>.  As required by Arizona Revised Statutes § 35-393.01, Entity certifies it is not currently engaged in a boycott of Israel and will not engage in a boycott of Israel during the term of this Contract.

21. <u>Conflicts of Interest</u>.   In accordance with Arizona Revised Statutes ("*A.R.S.*") <u>§ 38-511</u>, ASU may cancel this Agreement within three years after the execution of this Agreement, without penalty or further obligation, if any person significantly involved in initiating, negotiating, securing, drafting, or creating this

Revised 9.8.2016

Agreement on behalf of ASU, at any time while this Agreement or any extension thereof is in effect, is an employee or agent of any other party to this Agreement in any capacity or a consultant to any other party with respect to the subject matter of this Agreement. Notice is provided of A.R.S. § 41-753D.

22. Arbitration in Superior Court.  In the event of litigation, as required by A.R.S. § 12-1518, the parties agree to make use of arbitration in all contracts that are subject to mandatory arbitration pursuant to rules adopted under A.R.S. § 12-133.

23. Records.  To the extent required by A.R.S. § 35-214, the non-ASU parties to this Agreement (jointly and severally, "*Entity*") will retain all records relating to this Agreement. Entity will make those records available at all reasonable times for inspection and audit by ASU or the Auditor General of the State of Arizona during the term of this Agreement and for a period of five years after the completion of this Agreement. The records will be provided at Arizona State University, Tempe, Arizona, or another location designated by ASU on reasonable notice to Entity.

24. Failure of Legislature to Appropriate.  In accordance with A.R.S. § 35-154, if ASU's performance under this Agreement depends on the appropriation of funds by the Arizona Legislature, and if the Legislature fails to appropriate the funds necessary for performance, then ASU may provide written notice of this to Entity and cancel this Agreement without further obligation of ASU. Appropriation is a legislative act and is beyond the control of ASU.

25. Weapons, Explosive Devices, and Fireworks.  ASU prohibits the use, possession, display or storage of any weapon, explosive device or fireworks on all land and buildings owned, leased, or under the control of ASU or its affiliated or related entities, in all ASU residential facilities (whether managed by ASU or another entity), in all ASU vehicles, and at all ASU or ASU affiliate sponsored events and activities, except as provided in A.R.S. § 12-781 or unless written permission is given by the Chief of the ASU Police Department or a designated representative. Notification by Entity to all persons or entities who are employees, officers, subcontractors, consultants, agents, guests, invitees or licensees of Entity ("*Entity Notification Parties*") of this policy is a condition and agreement of this Agreement. Entity further agrees to enforce this contractual requirement against all Entity Notification Parties. ASU's policy may be accessed through the following web page: http://www.asu.edu/aad/manuals/pdp/pdp201-05.html.

26. Student Educational Records.  Student educational records are protected by the federal Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("*FERPA*"). Entity will comply with FERPA and will not access or make any disclosures of student educational records to third parties without prior notice to and consent from ASU or as otherwise provided by law. If this Agreement contains a scope of work or any provision that requires or permits Entity to access or release any student records, then, for purposes of this Agreement only, ASU hereby designates Entity as a "school official" for ASU under FERPA, as that term is used in FERPA and its implementing regulations. As such, Entity will comply with FERPA and will not make any disclosures of ASU students' educational records to third parties without prior notice to, and consent from, ASU or as otherwise permitted by law. In addition, any access or disclosures of student educational records made by Entity or its employees and agents must comply with ASU's definition of legitimate educational purpose, which definition can be found at: SSM 107-01: Release of Student Information (http://www.asu.edu/aad/manuals/ssm/ssm107-01.html). If Entity violates the terms of this section, Entity will immediately provide notice of the violation to ASU.

27. Authorized Presence Requirements.  As required by A.R.S. § 41-4401, ASU is prohibited from awarding a contract to any contractor or subcontractor that fails to comply with A.R.S. § 23-214(A) (verification of employee eligibility through the e-verify program). Entity warrants that it and its subcontractors comply fully with all applicable federal immigration laws and regulations that relate to their employees and their

4

compliance with A.R.S. § 23-214(A). A breach of the foregoing warranty will be deemed a material breach of this Agreement that is subject to penalties up to and including termination of the Agreement. ASU retains the legal right to inspect the papers of any contractor or subcontractor employee who works hereunder to ensure that the contractor or subcontractor is complying with the warranty stated above.

28. <u>Tobacco-Free University</u>.  ASU is tobacco-free. For details visit http://www.asu.edu/tobaccofree.

29. <u>Authority</u>.  If an individual or entity signs below on behalf of Speaker, such signatory represents and warrants that he/she/it has full and current authority to act and contract on behalf of Speaker and obligate Speaker, and that this Agreement is binding upon and enforceable against Speaker and the undersigned (if not Speaker) in accordance with its terms.

AGREED:

PRINT NAME OF SPEAKER, OR                          ARIZONA BOARD OF REGENTS
AUTHORIZED AGENT ON BEHALF OF                      FOR AND ON BEHALF OF
SPEAKER                                            ARIZONA STATE UNIVERSITY

_____                    _____
Signature                                          Signature

_____                    _____
Signatory Please Print Name                        Signatory Please Print Name

_____                    _____
Signatory Please Print Title                       Signatory Please Print Title

_____                    _____
Date Signed                                        Date Signed

Revised 9.8.2016

# Exhibit B



ARIZONA STATE
UNIVERSITY

# SPEAKER/ARTIST/PERFORMER AGREEMENT

This Agreement is entered into as of _____, 20__, between the Arizona Board of Regents acting for and on behalf of Arizona State University (ASU) and _____ [1] (Speaker), or _____, a _____ _____, [2] as the authorized agent for Speaker.  If Speaker is represented by an authorized agent, then references to Speaker herein will also refer to the authorized agent, where appropriate.

1. <u>Engagement; Event</u>.  ASU hereby engages Speaker to personally provide the following services, and Speaker agrees to personally provide to ASU the following services (the <u>Presentation</u>) at the following Event (the <u>Event</u>):

Event/Location: _____

Dates and times of Event: _____

Speaker's Presentation schedule: _____

Title of Speaker's Presentation: _____

Speaker's hospitality requirements: _____

Speaker's technical requirements: _____

2. <u>Notice</u>.  Any communication or notice required under this Agreement will be in writing and may either be given by personal delivery or sent, in all cases, against receipt, addressed to the following:

If to ASU:                                                         If to Speaker:

_____         _____

_____         _____

_____         _____

Attn: _____         Attn: _____

Email: _____         Email: _____

Notice will be deemed to be received upon actual receipt (or refusal of receipt) by the receiving party.

3. <u>Speaker Warranty</u>.  Speaker warrants that at all times during the Event, Speaker will personally provide Speaker's best professional efforts. Speakers' professional credentials are such that Speaker can provide the Presentation in a knowledgeable and professional manner.

4. <u>Payment.</u>  ASU will pay Speaker the all-inclusive fee of $_____ upon completion of the Presentation. Speaker will complete a Substitute W-9 Form, which must be signed by the person or entity to whom payment is to be issued. ASU will issue all payment in accordance with the information on the completed and signed Substitute W-9 Form.

5. <u>Acceptance of Agreement</u>.  Speaker will accept and return this Agreement to ASU no later than _____, 20__. In all events, this Agreement must be fully signed and received at ASU at least one week prior to the Event to allow on-time payment. This Agreement must be fully signed before payment can be processed. Please return a signed copy of this Agreement to ASU at the address set forth in Section 2.

---

[1]  If an authorized agent is signing, please be sure to fill in the speaker name as well.
[2] Include full legal name of authorized agent, state of formation, and type of entity (i.e.; ABC, Inc., an Arizona Corporation.)

OGC 12.13.17

6.  <u>Compliance with Law</u>.  Speaker will comply with all applicable ASU, City, County, State, and Federal laws, acts, codes, regulations and policies, including all applicable federal immigration laws and regulations that relate to employment.

7.  <u>Press Materials</u>.  Speaker will timely supply all press/promotion material requested by ASU.

8.  <u>Indemnity</u>.  Speaker will indemnify, defend, save and hold ASU harmless for, from, and against, any all claims, demands, suits, costs and damages (including reasonable attorneys' fees) that ASU may incur by reason of any: (a) actual or alleged infringement or violation of any copyright, or other proprietary right by Speaker; (b) claim for damages arising from Speaker's Presentation; or (c) any of Speaker's costs and liabilities arising out of the Presentation or Event, including without limitation: travel and meal expenses; union dues; taxes; agents' commissions or other expenses or obligations; damages to Speaker's equipment or materials; compensation to third parties engaged by Speaker; compensation for lost or stolen equipment or materials; workers compensation or other insurance; and any expenses not preapproved by ASU in writing.

9.  <u>Indemnification and Liability Limitation</u>.  Because ASU is a public institution, any indemnification, liability limitation, releases, or hold harmless provisions are limited as required by Arizona law, including Article 9, Sections 5 and 7 of the Arizona Constitution and Arizona Revised Statutes (<u>ARS</u>) §§ 35-154 and 41-621. ASU's liability under any claim for indemnification is limited to claims for property damage, personal injury, or death to the extent caused by acts or omissions of ASU.

10. <u>Force Majeure</u>.  Neither Speaker nor ASU shall be liable to each other for failure to perform hereunder if failure is caused by civil tumult, strike, epidemic, or any other cause beyond the reasonable control of the parties (<u>Force Majeure</u>). The ingestion of alcohol, opioids, illegal substances, or the like, will not be deemed an event of Force Majeure. If the Event or Presentation is cancelled due to an event of Force Majeure, the parties will make reasonable efforts to reschedule, if feasible.

11. <u>Cancellation</u>. If either party cancels this Agreement or the Presentation, other than due to an event of Force Majeure the other party will have all remedies afforded by law and in equity. In addition, if ASU cancels the Event or the Presentation, ASU will reimburse Speaker for reasonable expenses incurred in preparation for the Presentation up to the date ASU provides notice of cancellation.

12. <u>Liability; Insurance</u>.  Speaker, at its expense, will procure and maintain, for the duration of the Event, a policy of commercial general liability insurance in an amount of not less than $1,000,000, single limit, against claims for bodily injury, death and property damage occurring in connection with the Event and the Presentation. This insurance must name the Arizona Board of Regents, Arizona State University, and the State of Arizona as additional insureds. Speaker must provide ASU with a certificate evidencing this insurance coverage no later than 10 days prior to the Presentation.

13. <u>No Assignment</u>.  Neither party may assign any rights or obligations under this Agreement without the prior written consent of the other party.

14. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter. No prior or contemporaneous agreement or understanding will be effective.

15. <u>Governing Law and Venue</u>.  This Agreement will be governed by the laws of the State of Arizona. ASU's obligations are subject to the regulations/policies of the Arizona Board of Regents. Any proceeding arising out of or relating to this Agreement will be conducted in Maricopa County, Arizona. Speaker consents to such jurisdiction, and waives objection to venue or convenience of forum.

OGC 12.13.17

16. <u>Independent Contractor</u>.  Speaker is an independent contractor and is not an employee of ASU. Neither Speaker nor any personnel of Speaker will for any purpose be considered employees or agents of ASU. Speaker assumes full responsibility for the actions of Speaker's personnel, and is solely responsible for their supervision, direction and control, payment of salary and expenses (including withholding income taxes and social security), worker's compensation, and disability benefits.

17. <u>Recordings; Use of Name and Likeness</u>.  Both parties may record the Presentation for internal records. No recording of the Presentation, either visual or audio, will be made by or on behalf of Speaker for the purposes of profit or significant distribution without prior written approval from ASU. ASU may require an additional payment for the privilege, and may require Speaker to sign a filming/recording agreement. ASU may record the Presentation on video tape, audio tape, film, photograph or any other medium, use Speaker's name, likeness, voice and biographical material in connection with these recordings for purposes within the ASU mission, including education and research, and exhibit or distribute the recording in whole or in part without restrictions or limitation for any educational or promotional purpose that ASU deems appropriate.

18. <u>No Revenue Sharing</u>.  Speaker will not participate in any revenues associated with the Presentation or Event. This includes: sponsorship, ticketing, ticketing fees, ASU concessions revenues, and any other revenue streams that may be associated with the Event.

19. <u>Non-discrimination</u>.  The parties will comply with all applicable laws, rules, regulations, and executive orders governing equal employment opportunity, immigration, and nondiscrimination, including the Americans with Disabilities Act. **If applicable, the parties will abide by the requirements of 41 CFR §§ 60-_1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability**.

20. <u>Conflicts of Interest</u>.  If within 3 years after the execution of this Agreement, Speaker hires as an employee or agent any ASU representative who was significantly involved in negotiating, securing, drafting, or creating this Agreement, then ASU may cancel this Agreement as provided in ARS § 38-511. Notice is also given of ARS §§ 41-2517 and 41-753.

21. <u>Arbitration in Superior Court</u>.  The parties agree to arbitrate disputes filed in Arizona Superior Court that are subject to mandatory arbitration pursuant to ARS § 12-133. ARS § 12-1518 requires this provision in all ASU agreements.

22. <u>Records</u>.  To the extent required by ARS § 35-214, the non-ASU parties to this Agreement will retain all records relating to this Agreement. Speaker will make those records available at all reasonable times for inspection and audit by ASU or the Auditor General of Arizona during the term of this Agreement and for 5 years after the completion of this Agreement. The records will be provided at ASU in Tempe, Arizona, or another location designated by ASU on reasonable notice to Speaker.

23. <u>Failure of Legislature to Appropriate.</u>  In accordance with ARS § 35-154, if ASU's performance under this Agreement depends on the appropriation of funds by the Arizona Legislature, and if the Legislature fails to appropriate the funds necessary for performance, ASU may provide written notice of this to Speaker and cancel this Agreement without further obligation of ASU. Appropriation is a legislative act and is beyond ASU's control.

OGC 12.13.17

24. <u>Weapons, Explosives, and Fireworks</u>. ASU prohibits the use, possession, display or storage of any weapon, explosive device or fireworks on all land and buildings owned, leased, or under the control of ASU or its affiliated entities, in all ASU residential facilities (whether managed by ASU or another entity), in all ASU vehicles, and at all ASU or ASU affiliate sponsored events and activities, except as provided in ARS § 12-781, or unless written permission is given by ASU's Police Chief or a designated representative. Speaker will notify all persons or entities who are employees, officers, subcontractors, consultants, agents, guests, invitees or licensees of Speaker of this policy, and Speaker will enforce this policy against all such persons and entities. ASU's policy is at asu.edu/aad/manuals/pdp/pdp201-05.html.

25. <u>Privacy; Educational Records</u>. Student educational records are protected by the U.S. Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (FERPA). Speaker will not require any ASU students or employees to waive any privacy rights (including under FERPA or the European Union's General Data Protection Regulation (GDPR)) as a condition for receipt of any educational services, and any attempt to do so will be void. Speaker will comply with FERPA and will not access or make any disclosures of student educational records to third parties without prior notice to and consent from ASU or as otherwise provided by law. If this Agreement requires or permits Speaker to access or release any student records, then, for purposes of this Agreement only, ASU-designates Speaker as a "school official" for ASU under FERPA, as defined in FERPA and its implementing regulations. In addition, any access or disclosures of student educational records by Speaker or any Speaker Parties must comply with ASU's definition of legitimate educational purpose. If Speaker violates this section, Speaker will immediately notify ASU.

26. <u>Authorized Presence Requirements</u>. As required by ARS § 41-4401, ASU is prohibited from awarding a contract to any contractor or subcontractor that fails to comply with ARS § 23-214(A) (verification of employee eligibility through the e-verify program). Speaker warrants that it and its subcontractors comply fully with all applicable immigration laws, rules, and regulations that relate to their employees and their compliance with ARS § 23-214(A). A breach of this warranty will be a material breach of this Agreement that is subject to penalties up to and including termination. ASU retains the right to inspect the papers of any contractor or subcontractor employee hereunder to ensure compliance with this warranty.

27. <u>Tobacco-Free University</u>. ASU is tobacco-free. For details visit asu.edu/tobaccofree.

28. <u>Authority</u>. If an individual or entity signs below on behalf of Speaker, such signatory represents and warrants that he/she/it has full and current authority to act and contract on behalf of Speaker and obligate Speaker, and that this Agreement is binding upon and enforceable against Speaker and the undersigned (if not Speaker) in accordance with its terms.

PRINT NAME OF SPEAKER OR
AGENT OF SPEAKER

ARIZONA BOARD OF REGENTS FOR AND ON
BEHALF OF ARIZONA STATE UNIVERSITY

_____

_____
Signature

_____
Signature

_____
Signatory Name

_____
Signatory Name

_____
Signatory Title

_____
Signatory Title

_____
Date Signed

_____
Date Signed

OGC 12.13.17

Exhibit C



ARIZONA STATE
UNIVERSITY

## SPEAKER/ARTIST/PERFORMER AGREEMENT

This Agreement is entered into as of _____, 20__, between the Arizona Board of Regents acting for and on behalf of Arizona State University (ASU) and _____ [1] (Speaker), or _____, a _____ _____, [2] as the authorized agent for Speaker.  If Speaker is represented by an authorized agent, then references to Speaker herein will also refer to the authorized agent, where appropriate.

1.  Engagement; Event.  ASU hereby engages Speaker to personally provide the following services, and Speaker agrees to personally provide to ASU the following services (the Presentation) at the following Event (the Event):

    Event/Location: _____

    Dates and times of Event:_____

    Speaker's Presentation schedule: _____

    Title of Speaker's Presentation: _____

    Speaker's hospitality requirements: _____

    Speaker's technical requirements: _____

2.  Notice.  Any communication or notice required under this Agreement will be in writing and may either be given by personal delivery or sent, in all cases, against receipt, addressed to the following:

    If to ASU:                            If to Speaker:

    _____    _____

    _____    _____

    _____    _____

    Attn: _____    Attn: _____

    Email: _____    Email: _____

    Notice will be deemed to be received upon actual receipt (or refusal of receipt) by the receiving party.

3.  Speaker Warranty.  Speaker warrants that at all times during the Event, Speaker will personally provide Speaker's best professional efforts. Speakers' professional credentials are such that Speaker can provide the Presentation in a knowledgeable and professional manner.

4.  Payment.  ASU will pay Speaker the all-inclusive fee of $_____ upon completion of the Presentation. Speaker will complete a Substitute W-9 Form, which must be signed by the person or entity to whom payment is to be issued. ASU will issue all payment in accordance with the information on the completed and signed Substitute W-9 Form.

5.  Acceptance of Agreement.  Speaker will accept and return this Agreement to ASU no later than _____, 20__. In all events, this Agreement must be fully signed and received at ASU at least one week prior to the Event to allow on-time payment. This Agreement must be fully signed before payment can be processed. Please return a signed copy of this Agreement to ASU at the address set forth in Section 2.

---

[1]  If an authorized agent is signing, please be sure to fill in the speaker name as well.
[2]  Include full legal name of authorized agent, state of formation, and type of entity (i.e.; ABC, Inc., an Arizona Corporation.)

OGC 4.9.2018

6.  <u>Press Materials</u>.  Speaker will timely supply all press/promotion material requested by ASU.

7.  <u>Indemnity</u>.  Speaker will indemnify, defend, save and hold ASU harmless for, from, and against, any all claims, demands, suits, costs and damages (including reasonable attorneys' fees) that ASU may incur by reason of any: (a) actual or alleged infringement or violation of any copyright, or other proprietary right by Speaker; (b) claim for damages arising from Speaker's Presentation; or (c) any of Speaker's costs and liabilities arising out of the Presentation or Event, including without limitation: travel and meal expenses; union dues; taxes; agents' commissions or other expenses or obligations; damages to Speaker's equipment or materials; compensation to third parties engaged by Speaker; compensation for lost or stolen equipment or materials; workers compensation or other insurance; and any expenses not preapproved by ASU in writing.

8.  <u>Indemnification and Liability Limitation</u>.  Because ASU is a public institution, any indemnification, liability limitation, releases, or hold harmless provisions are limited as required by Arizona law, including Article 9, Sections 5 and 7 of the Arizona Constitution and Arizona Revised Statutes (<u>ARS</u>) §§ 35-154 and 41-621. ASU's liability under any claim for indemnification is limited to claims for property damage, personal injury, or death to the extent caused by acts or omissions of ASU.

9.  <u>Force Majeure</u>.  Neither Speaker nor ASU shall be liable to each other for failure to perform hereunder if failure is caused by civil tumult, strike, epidemic, or any other cause beyond the reasonable control of the parties (<u>Force Majeure</u>). The ingestion of alcohol, opioids, illegal substances, or the like, will not be deemed an event of Force Majeure. If the Event or Presentation is cancelled due to an event of Force Majeure, the parties will make reasonable efforts to reschedule, if feasible.

10. <u>Cancellation</u>. If either party cancels this Agreement or the Presentation, other than due to an event of Force Majeure the other party will have all remedies afforded by law and in equity. In addition, if ASU cancels the Event or the Presentation, ASU will reimburse Speaker for reasonable expenses incurred in preparation for the Presentation up to the date ASU provides notice of cancellation.

11. <u>Liability; Insurance</u>.  Speaker, at its expense, will procure and maintain, for the duration of the Event, a policy of commercial general liability insurance in an amount of not less than $1,000,000, single limit, against claims for bodily injury, death and property damage occurring in connection with the Event and the Presentation. This insurance must name the Arizona Board of Regents, Arizona State University, and the State of Arizona as additional insureds. Speaker must provide ASU with a certificate evidencing this insurance coverage no later than 10 days prior to the Presentation.

12. <u>No Assignment</u>.  Neither party may assign any rights or obligations under this Agreement without the prior written consent of the other party.

13. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter. No prior or contemporaneous agreement or understanding will be effective.

14. <u>Governing Law and Venue</u>.  This Agreement will be governed by the laws of the State of Arizona. ASU's obligations are subject to the regulations/policies of the Arizona Board of Regents. Any proceeding arising out of or relating to this Agreement will be conducted in Maricopa County, Arizona. Speaker consents to such jurisdiction, and waives objection to venue or convenience of forum.

15. <u>Independent Contractor</u>.  Speaker is an independent contractor and is not an employee of ASU. Neither Speaker nor any personnel of Speaker will for any purpose be considered employees or agents of ASU. Speaker assumes full responsibility for the actions of Speaker's personnel, and is solely responsible for their supervision, direction and control, payment of salary and expenses (including withholding income taxes and social security), worker's compensation, and disability benefits.

16. <u>Recordings; Use of Name and Likeness</u>.  Both parties may record the Presentation for internal records. No recording of the Presentation, either visual or audio, will be made by or on behalf of Speaker for the purposes of profit or significant distribution without prior written approval from ASU. ASU may require an additional payment for the privilege, and may require Speaker to sign a filming/recording agreement. ASU may record the Presentation on video tape, audio tape, film, photograph or any other medium, use Speaker's name, likeness, voice and biographical material in connection with these recordings for purposes within the ASU mission, including education and research, and exhibit or distribute the recording in whole or in part without restrictions or limitation for any educational or promotional purpose that ASU deems appropriate.

17. <u>No Revenue Sharing</u>.  Speaker will not participate in any revenues associated with the Presentation or Event. This includes: sponsorship, ticketing, ticketing fees, ASU concessions revenues, and any other revenue streams that may be associated with the Event.

18. <u>Non-discrimination</u>.  The parties will comply with all applicable laws, rules, regulations, and executive orders governing equal employment opportunity, immigration, and nondiscrimination, including the Americans with Disabilities Act. **If applicable, the parties will abide by the requirements of 41 CFR §§ 60-_1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability**.

19. <u>Conflicts of Interest</u>.  If within 3 years after the execution of this Agreement, Speaker hires as an employee or agent any ASU representative who was significantly involved in negotiating, securing, drafting, or creating this Agreement, then ASU may cancel this Agreement as provided in ARS § 38-511. Notice is also given of ARS §§ 41-2517 and 41-753.

20. <u>Arbitration in Superior Court</u>.  The parties agree to arbitrate disputes filed in Arizona Superior Court that are subject to mandatory arbitration pursuant to ARS § 12-133. ARS § 12-1518 requires this provision in all ASU agreements.

21. <u>Records</u>.  To the extent required by ARS § 35-214, the non-ASU parties to this Agreement will retain all records relating to this Agreement. Speaker will make those records available at all reasonable times for inspection and audit by ASU or the Auditor General of Arizona during the term of this Agreement and for 5 years after the completion of this Agreement. The records will be provided at ASU in Tempe, Arizona, or another location designated by ASU on reasonable notice to Speaker.

22. <u>Failure of Legislature to Appropriate.</u>  In accordance with ARS § 35-154, if ASU's performance under this Agreement depends on the appropriation of funds by the Arizona Legislature, and if the Legislature fails to appropriate the funds necessary for performance, ASU may provide written notice of this to Speaker and cancel this Agreement without further obligation of ASU. Appropriation is a legislative act and is beyond ASU's control.

23. <u>Weapons, Explosives, and Fireworks</u>. ASU prohibits the use, possession, display or storage of any weapon, explosive device or fireworks on all land and buildings owned, leased, or under the control of ASU or its affiliated entities, in all ASU residential facilities (whether managed by ASU or another entity), in all ASU vehicles, and at all ASU or ASU affiliate sponsored events and activities, except as provided in ARS § 12-781, or unless written permission is given by ASU's Police Chief or a designated representative. Speaker will notify all persons or entities who are employees, officers, subcontractors, consultants, agents, guests, invitees or licensees of Speaker of this policy, and Speaker will enforce this policy against all such persons and entities. ASU's policy is at asu.edu/aad/manuals/pdp/pdp201-05.html.

24. <u>Privacy; Educational Records</u>. Student educational records are protected by the U.S. Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (<u>FERPA</u>). Speaker will not require any ASU students or employees to waive any privacy rights (including under FERPA or the European Union's General Data Protection Regulation (<u>GDPR</u>)) as a condition for receipt of any educational services, and any attempt to do so will be void. Speaker will comply with FERPA and will not access or make any disclosures of student educational records to third parties without prior notice to and  consent from ASU or as otherwise provided by law.  If this Agreement requires or permits Speaker to access or release any student records, then, for purposes of this Agreement only, ASU-designates Speaker as a "school official" for ASU under FERPA, as defined in FERPA and its implementing regulations. In addition, any access or disclosures of student educational records by Speaker or any Speaker Parties must comply with ASU's definition of legitimate educational purpose. If Speaker violates this section, Speaker will immediately notify ASU.

25. <u>Authorized Presence Requirements</u>.  As required by ARS § 41-4401, ASU is prohibited from awarding a contract to any contractor or subcontractor that fails to comply with ARS § 23-214(A) (verification of employee eligibility through the e-verify program). Speaker warrants that it and its subcontractors comply fully  with  all applicable immigration laws, rules, and regulations that relate to their employees and their compliance with  ARS § 23-214(A). A breach of this warranty will be a material breach of this Agreement that is subject to penalties up to and including termination. ASU retains the right to inspect the papers of any contractor or subcontractor employee hereunder to ensure compliance with this warranty.

26. <u>Tobacco-Free University</u>.  ASU is tobacco-free. For details visit <u>asu.edu/tobaccofree.</u>

27. <u>Authority</u>. If an individual or entity signs below on behalf of Speaker, such signatory represents and warrants that he/she/it has full and current authority to act and contract on behalf of Speaker and obligate Speaker, and that this Agreement is binding upon and enforceable against Speaker and the undersigned (if not Speaker) in accordance with its terms.

PRINT NAME OF SPEAKER OR
AGENT OF SPEAKER

ARIZONA BOARD OF REGENTS FOR AND ON
BEHALF OF ARIZONA STATE UNIVERSITY

_____

_____        _____
Signature                           Signature

_____        _____
Signatory Name                      Signatory Name

_____        _____
Signatory Title                     Signatory Title

_____        _____
Date Signed                         Date Signed

OGC 4.9.2018

Exhibit D

**ASU** ARIZONA STATE UNIVERSITY

# SPEAKER/ARTIST/PERFORMER AGREEMENT

This Agreement is entered into as of _March 23rd_, 20_18_, between the Arizona Board of Regents acting for and on behalf of Arizona State University (ASU) and _American Muslims for Palestine_ (Speaker), or _Taher Herzallah_ _AMP_ _____, [2] as the authorized agent for Speaker. If Speaker is represented by an authorized agent, then references to Speaker herein will also refer to the authorized agent, where appropriate.

1. **Engagement; Event.** ASU hereby engages Speaker to personally provide the following services, and Speaker agrees to personally provide to ASU the following services (the Presentation) at the following Event (the Event):

Event/Location: _____Pima Auditorium_____

Dates and times of Event: ___April 3rd 2018___

Speaker's Presentation schedule: _____6-7:30_____

Title of Speaker's Presentation: _BDS and the pursuit of Justice in Palestine_

Speaker's hospitality requirements: _____Hotel, flight_____

Speaker's technical requirements: _Projector to display presentation_

2. **Notice.** Any communication or notice required under this Agreement will be in writing and may either be given by personal delivery or sent, in all cases, against receipt, addressed to the following:

| If to ASU: | If to Speaker: |
|---|---|
| ATTN Zain Siddiqi | ATTN Taher Herzallah |
| 2934 E Mahogany Pl | 6404 Seven Corners Pl #N |
| Chandler, AZ 85249 | Falls Church, VA 22044 |
| Attn: Zain Siddiqi | Attn: Taher Herzallah |
| Email: zainsiddiqiahi@gmail.com | Email: taher@ampalestine.org |

Notice will be deemed to be received upon actual receipt (or refusal of receipt) by the receiving party.

3. **Speaker Warranty.** Speaker warrants that at all times during the Event, Speaker will personally provide the Speaker's best professional efforts. Speakers' professional credentials are such that Speaker can provide the Presentation in a knowledgeable and professional manner.

4. **Payment.** ASU will pay Speaker the all-inclusive fee of $___0___ upon completion of the Presentation. Speaker will complete a Substitute W-9 Form, which must be signed by the person or entity to whom payment is to be issued. ASU will issue all payment in accordance with the information on the completed and signed Substitute W-9 Form.

5. **Acceptance of Agreement.** Speaker will accept and return this Agreement to ASU no later than _03/26_, 20_18_. In all events, this Agreement must be fully signed and received at ASU at least one week prior to the Event to allow on-time payment. This Agreement must be fully signed before payment can be processed. Please return a signed copy of this Agreement to ASU at the address set forth in Section 2.

---

[1] If an authorized agent is signing, please be sure to fill in the speaker name as well.
[2] Include full legal name of authorized agent, state of formation, and type of entity (i.e.; ABC, Inc., an Arizona Corporation.)

1

vehicles, and at all ASU or ASU affiliate sponsored events and activities, except as provided in ARS § 12-781, or unless written permission is given by ASU's Police Chief or a designated representative. Speaker will notify all persons or entities who are employees, officers, subcontractors, consultants, agents, guests, invitees or licensees of Speaker of this policy, and Speaker will enforce this policy against all such persons and entities. ASU's policy is at asu.edu/aad/manuals/pdp/pdp201-05.html.

24. <u>Privacy; Educational Records</u>. Student educational records are protected by the U.S. Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (FERPA). Speaker will not require any ASU students or employees to waive any privacy rights (including under FERPA or the European Union's General Data Protection Regulation (GDPR)) as a condition for receipt of any educational services, and any attempt to do so will be void. Speaker will comply with FERPA and will not access or make any disclosures of student educational records to third parties without prior notice to and consent from ASU or as otherwise provided by law. If this Agreement requires or permits Speaker to access or release any student records, then, for purposes of this Agreement only, ASU designates Speaker as a "school official" for ASU under FERPA, as defined in FERPA and its implementing regulations. In addition, any access or disclosures of student educational records by Speaker or any Speaker Parties must comply with ASU's definition of legitimate educational purpose. If Speaker violates this section, Speaker will immediately notify ASU.

25. <u>Authorized Presence Requirements</u>. As required by ARS § 41-4401, ASU is prohibited from awarding a contract to any contractor or subcontractor that fails to comply with ARS § 23-214(A) (verification of employee eligibility through the e-verify program). Speaker warrants that it and its subcontractors comply fully with all applicable immigration laws, rules, and regulations that relate to their employees and their compliance with ARS § 23-214(A). A breach of this warranty will be a material breach of this Agreement that is subject to penalties up to and including termination. ASU retains the right to inspect the papers of any contractor or subcontractor employee hereunder to ensure compliance with this warranty.

26. <u>Tobacco-Free University</u>. ASU is tobacco-free. For details visit asu.edu/tobaccofree.

27. <u>Authority</u>. If an individual or entity signs below on behalf of Speaker, such signatory represents and warrants that he/she/it has full and current authority to act and contract on behalf of Speaker and obligate Speaker, and that this Agreement is binding upon and enforceable against Speaker and the undersigned (if not Speaker) in accordance with its terms.

PRINT NAME OF SPEAKER OR
AGENT OF SPEAKER

_____
Signature

Taher Herzallah
Signatory Name

Assoc. Director of Outreach
Signatory Title

3/23/18
Date Signed

ARIZONA BOARD OF REGENTS FOR AND ON
BEHALF OF ARIZONA STATE UNIVERSITY

Zain Siddiqi
Signature

Zain Siddiqi
Signatory Name

Vice President of Muslim Students Association
Signatory Title

3/26/2018
Date Signed

4

OGC 12.13.17

ASU    ARIZONA STATE
       UNIVERSITY

## SPEAKER/ARTIST/PERFORMER AGREEMENT

This Agreement is entered into as of ___March 23___, 20_18_, between the Arizona Board of Regents acting for and on behalf of Arizona State University (ASU) and ___HATEM  BAZIAN___ [1] (Speaker), or _____, a _____, [2] as the authorized agent for Speaker.  If Speaker is represented by an authorized agent, then references to Speaker herein will also refer to the authorized agent, where appropriate.

1.  **Engagement; Event.**  ASU hereby engages Speaker to personally provide the following services, and Speaker agrees to personally provide to ASU the following services (the Presentation) at the following Event (the Event):

Event/Location: ___Pima Auditorium, Memorial Union___

Dates and times of Event: ___April 3rd___

Speaker's Presentation schedule: ___6-7:30___

Title of Speaker's Presentation: ___BDS & the Pursuit of Justice in Palestine___

Speaker's hospitality requirements: ___Hotel, Flight___

Speaker's technical requirements: ___Projector/Screen___

2.  **Notice.**  Any communication or notice required under this Agreement will be in writing and may either be given by personal delivery or sent, in all cases, against receipt, addressed to the following:

If to ASU:
___2934 E Mahogany Pl, Chandler, AZ 85249___

Attn: ___Zain Siddiqi___
Email: ___zainsiddiqiahi@gmail.com___

If to Speaker:
___6404 Seven Corners Pl #N___
___FALLS CHURCH, VA 22044___

Attn: ___HATEM BAZIAN___
Email: ___hbazian@zaytuna.edu___

Notice will be deemed to be received upon actual receipt (or refusal of receipt) by the receiving party.

3.  **Speaker Warranty.**  Speaker warrants that at all times during the Event, Speaker will personally provide the Speaker's best professional efforts. Speakers' professional credentials are such that Speaker can provide the Presentation in a knowledgeable and professional manner.

4.  **Payment.**  ASU will pay Speaker the all-inclusive fee of $___0___ upon completion of the Presentation. Speaker will complete a Substitute W-9 Form, which must be signed by the person or entity to whom payment is to be issued. ASU will issue all payment in accordance with the information on the completed and signed Substitute W-9 Form.

5.  **Acceptance of Agreement.**  Speaker will accept and return this Agreement to ASU no later than ___03/26___, 20_18_.  In all events, this Agreement must be fully signed and received at ASU at least one week prior to the Event to allow on-time payment. This Agreement must be fully signed before payment can be processed. Please return a signed copy of this Agreement to ASU at the address set forth in Section 2.

[1] If an authorized agent is signing, please be sure to fill in the speaker name as well.
[2] Include full legal name of authorized agent, state of formation, and type of entity (i.e.; ABC, Inc., an Arizona Corporation.)

vehicles, and at all ASU or ASU affiliate sponsored events and activities, except as provided in ARS § 12-781, or unless written permission is given by ASU's Police Chief or a designated representative. Speaker will notify all persons or entities who are employees, officers, subcontractors, consultants, agents, guests, invitees or licensees of Speaker of this policy, and Speaker will enforce this policy against all such persons and entities. ASU's policy is at asu.edu/aad/manuals/pdp/pdp201-05.html.

24. Privacy; Educational Records. Student educational records are protected by the U.S. Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (FERPA). Speaker will not require any ASU students or employees to waive any privacy rights (including under FERPA or the European Union's General Data Protection Regulation (GDPR)) as a condition for receipt of any educational services, and any attempt to do so will be void. Speaker will comply with FERPA and will not access or make any disclosures of student educational records to third parties without prior notice to and consent from ASU or as otherwise provided by law. If this Agreement requires or permits Speaker to access or release any student records, then, for purposes of this Agreement only, ASU-designates Speaker as a "school official" for ASU under FERPA, as defined in FERPA and its implementing regulations. In addition, any access or disclosures of student educational records by Speaker or any Speaker Parties must comply with ASU's definition of legitimate educational purpose. If Speaker violates this section, Speaker will immediately notify ASU.

25. Authorized Presence Requirements. As required by ARS § 41-4401, ASU is prohibited from awarding a contract to any contractor or subcontractor that fails to comply with ARS § 23-214(A) (verification of employee eligibility through the e-verify program). Speaker warrants that it and its subcontractors comply fully with all applicable immigration laws, rules, and regulations that relate to their employees and their compliance with ARS § 23-214(A). A breach of this warranty will be a material breach of this Agreement that is subject to penalties up to and including termination. ASU retains the right to inspect the papers of any contractor or subcontractor employee hereunder to ensure compliance with this warranty.

26. Tobacco-Free University. ASU is tobacco-free. For details visit asu.edu/tobaccofree.

27. Authority. If an individual or entity signs below on behalf of Speaker, such signatory represents and warrants that he/she/it has full and current authority to act and contract on behalf of Speaker and obligate Speaker, and that this Agreement is binding upon and enforceable against Speaker and the undersigned (if not Speaker) in accordance with its terms.

PRINT NAME OF SPEAKER OR
AGENT OF SPEAKER

_Hatem Bazian_
Signature

HATEM  BAZIAN
Signatory Name

Professor and Chairman of AMP
Signatory Title

03/23/18
Date Signed

ARIZONA BOARD OF REGENTS FOR AND ON
BEHALF OF ARIZONA STATE UNIVERSITY

_Zain Siddiqi_
Signature

Zain Siddiqi
Signatory Name

Vice President of the Muslim Students Association
Signatory Title

3/26/2018
Date Signed

# Exhibit E



**FOR MORE INFORMATION, CONTACT:**
Bret Hovell
480-965-3502

**FOR IMMEDIATE RELEASE**

### ASU Statement on CAIR-AZ Lawsuit

***Tempe, Ariz., March 2, 2018*** — This morning, The Arizona Board of Regents and Arizona State University were alerted via a media inquiry to a lawsuit being filed by the Arizona chapter of the Council on American-Islamic Relations.

ASU would have been happy to clear up this simple misunderstanding before a lawsuit was filed.

State law requires:

"A public entity may not enter into a contract with a company to acquire or dispose of services, supplies, information technology or construction unless the contract includes a written certification that the company is not currently engaged in, and agrees for the duration of the contract to not engage in, a boycott of Israel."

This is reflected in ASU's standard provision on this topic, as required for public entities under state law.

However, ASU does not believe that this law applies to this kind of engagement because the contract was to be with a student group. Student groups are not public entities. It was a simple mistake that the ASU form containing the certification was used. The certification was not needed.

###

# Exhibit F

**Ensign, Drew**

| | |
|---|---|
| **From:** | Lisa Loo <lisaloo@asu.edu> |
| **Sent:** | Monday, March 05, 2018 6:45 PM |
| **To:** | raees@kellywarnerlaw.com |
| **Subject:** | American Muslims for Palestine and Dr. Hatem Bazian v. ABOR |

Mr. Mohamed:

My name is Lisa Loo and I am with the ASU Office of General Counsel.  I understand you are local counsel for the plaintiffs in the above-referenced litigation matter.  I called your office on Friday and today and was advised today that you are out of the office at a conference and will not be available until you return to the office on the 12th of March.  Is it possible for you to call me before your return to the office, perhaps during a break in your conference?

My direct office line is 480-965-4552 and the general office line is 480-965-4550.  The general office line is the best way to reach me during business hours and my direct line can be used after business hours.

Thank you and I look forward to speaking with you.


Regards,
Lisa

# Exhibit G

**Ensign, Drew**

| | |
|---|---|
| **From:** | Lisa Loo <lisaloo@asu.edu> |
| **Sent:** | Tuesday, March 06, 2018 9:46 AM |
| **To:** | Carolyn Homer |
| **Cc:** | Gadeir Abbas; Lena F. Masri, Esq.; raees@kellywarnerlaw.com; Anne Griffith; Jose Cardenas (General Counsel) |
| **Subject:** | Re: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670 |

I think that's a good idea. If you have a number you can circulate that would be great. Thanks

Sent from my iPhone

On Mar 6, 2018, at 9:23 AM, Carolyn Homer <cHomer@cair.com> wrote:

> Hello Ms. Loo,
>
> It may be better to set up a conference line everyone can dial into this afternoon.  Do you want to circulate an invite, or shall I?
>
> Also, I apologize, I failed to attached the issued summons on ASU in my prior email.  I added it here.
>
> Carolyn
>
> > **From:** Lisa Loo <lisaloo@asu.edu>
> > **Sent:** Tuesday, March 6, 2018 11:03 AM
> > **To:** Carolyn Homer <cHomer@cair.com>
> > **Cc:** Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com; Anne Griffith <anne@kellywarnerlaw.com>; Jose Cardenas (General Counsel) <jcardenas@asu.edu>
> > **Subject:** Re: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670
> >
> > Ms. Homer, thank you. This afternoon, 2 pm AZ time or anytime thereafter works. I've asked our General Counsel, Jose Cardenas to join us. We can call you. What is a good number to call?
> >
> > Sent from my iPhone
> >
> > On Mar 6, 2018, at 8:19 AM, Carolyn Homer <cHomer@cair.com> wrote:
> >
> > > Dear Ms. Loo,
> > >
> > > We represent Plaintiffs American Muslims for Palestine and Dr. Hatem Bazian in this action.  We understand that you've been trying to get ahold of Mr. Raees Mohammed, who is unavailable.  We are available today for an initial discussion of the case – we'll plan to call you this afternoon.
> > >
> > > You should be receiving service copies of the case documents today, but in advance of that, please find attached courtesy electronic documents of the initial case filings.  These include:

- Complaint
- Civil Cover Sheet
- AMP's Corporate Disclosure Statement
- Issued Summons on Mr. Brnovich
- Application for Preliminary Injunction and supporting papers, including:
    - Memorandum in Support
    - Declaration of Mr. Herzallah
    - Declaration of Dr. Bazian
    - Declaration of Mr. Abbas
    - Proposed Order
- Request for Hearing on PI motion
- General Court Notices:
    - Availability of US Magistrate Judge
    - Initial Discovery Pilot Program
    - General Order on Rule 12 Motions
    - General Order on Rule 4 Service

Sincerely,

Carolyn M. Homer
*Trial Attorney*
<image001.png>
453 New Jersey Ave, SE
Washington, DC 20003
Main: 202.742.6420
Dir:  202.516.4724
Fax: 202.379.3317
**www.cair.com**


<001 2018.03.01 Complaint.pdf>

<001-1 2018.03.01 Civil Cover Sheet.pdf>

<002 2018.03.01 Corporate Disclosure Statement.pdf>

<004 2018.03.01 Notice of Availability of a US Magistrate Judge.pdf>

<005 2018.03.01 Notice to Parties - Mandatory Initial Discovery Pilot Project.pdf>

<006 2018.03.01 Summons in a Civil Action - Brnovich - Issued.pdf>

<007 2018.03.02 General Order Rule 12 Motions.pdf>

<008 2018.03.02 General Order Rule 4 Service.pdf>

<009 2018.03.02 Notice of Motion and Application for Preliminary Injunction - all supporting docs.pdf>

<010 2018.03.02 Request for Hearing on App for Preliminary Injunction.pdf>

<006-2 2018.03.01 Summons in a Civil Action - ASU - Issued.pdf>

# Exhibit H

**Ensign, Drew**

| | |
|---|---|
| **From:** | Carolyn Homer <cHomer@cair.com> |
| **Sent:** | Thursday, March 15, 2018 5:41 PM |
| **To:** | Ensign, Drew; Lena F. Masri, Esq.; Gadeir Abbas; 'Cassiemarie Sporrer'; 'Lisa Loo' |
| **Cc:** | 'Jose Cardenas (General Counsel)'; raees@kellywarnerlaw.com; Roysden, Beau; Skinner, OH; 'Nancy Tribbensee' |
| **Subject:** | Re: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670 |

That was already corrected.  Thanks!  We will file shortly.

---

**From:** Ensign, Drew <Drew.Ensign@azag.gov>
**Sent:** Thursday, March 15, 2018 8:39:53 PM
**To:** Lena F. Masri, Esq.; Gadeir Abbas; 'Cassiemarie Sporrer'; 'Lisa Loo'
**Cc:** 'Jose Cardenas (General Counsel)'; Carolyn Homer; raees@kellywarnerlaw.com; Roysden, Beau; Skinner, OH; 'Nancy Tribbensee'
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Thanks, Lena.  You have permission on behalf of the AG and I just confirmed that ABOR/ASU also signs off on this.

One quick note – Lisa had previously sent a suggestion to correct <Defendants'> to <Plaintiffs'> before "Application for a Preliminary Injunction" in the proposed order.  Can you get that change incorporated in the proposed order if it has not been already?

Thanks,
Drew

---

**From:** Lena F. Masri, Esq. [mailto:lmasri@cair.com]
**Sent:** Thursday, March 15, 2018 5:30 PM
**To:** Ensign, Drew; Gadeir Abbas; 'Cassiemarie Sporrer'; 'Lisa Loo'
**Cc:** 'Jose Cardenas (General Counsel)'; Carolyn Homer; raees@kellywarnerlaw.com; Roysden, Beau; Skinner, OH; 'Nancy Tribbensee'
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Hi Drew,

We're ok with this change.  Just confirming that we have the go ahead to file this?  Thanks.

Lena F. Masri, Esq.
**National Litigation Director**
**Acting Civil Rights Director**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.379-3317

Cell: 248.390.9784

www.cair.com

**www.lenamasri.com**

Licensed to practice in MI, NY and DC.

*[This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.]*

WEB | FACEBOOK | TWITTER

---

**From:** Ensign, Drew [mailto:Drew.Ensign@azag.gov]
**Sent:** Thursday, March 15, 2018 8:23 PM
**To:** Gadeir Abbas <gAbbas@cair.com>; 'Cassiemarie Sporrer' <Cassiemarie.Sporrer@asu.edu>; 'Lisa Loo' <lisaloo@asu.edu>
**Cc:** 'Jose Cardenas (General Counsel)' <jcardenas@asu.edu>; Carolyn Homer <cHomer@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com; Roysden, Beau <Beau.Roysden@azag.gov>; Skinner, OH <O.H.Skinner@azag.gov>; 'Nancy Tribbensee' <Nancy.Tribbensee@azregents.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

On further review, we suggest a non-substantive change to the text of the proposed order for clarity (attached, change tracked).  Please let us know if you have any questions about this or anything else.

Sincerely,
Drew

---

**From:** Ensign, Drew
**Sent:** Thursday, March 15, 2018 2:39 PM
**To:** 'Gadeir Abbas'; Cassiemarie Sporrer; Lisa Loo
**Cc:** Jose Cardenas (General Counsel); Carolyn Homer; Lena F. Masri, Esq.; raees@kellywarnerlaw.com; Roysden, Beau; Skinner, OH; Nancy Tribbensee
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Thanks, Gadeir.  The stipulation looks good to the AG's office with a slight tweak:  removing "Proposed" before "Joint Stipulation" where it appears on page 1.

For the joint motion, I think we probably need a separate Proposed Order that implements the terms of the stipulation in the form of a judicial order.  I took a quick stab at one (attached), along with a tweak to the joint motion to reference the proposed order (attached, edits tracked).

I think this structure may be easiest for the Court by separating clearly what the parties have agreed to (the stipulation) and the actions the Court is taking, which are reflected in the Proposed Order.  This hopefully makes it easier for the Court by providing a quick order it can sign, while still having the full stipulation entered into the record and blessed by the Court.

We are not wedded to this approach so let us know if you prefer a different one.   If this works, please also let us know if you have any edits or questions about the proposed order.

Drew

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Thursday, March 15, 2018 12:53 PM
**To:** Cassiemarie Sporrer; Lisa Loo
**Cc:** Ensign, Drew; Jose Cardenas (General Counsel); Carolyn Homer; Lena F. Masri, Esq.; raes@kellywarnerlaw.com; Roysden, Beau; Skinner, OH; Nancy Tribbensee
**Subject:** Re: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

All,

My apologies for the delay.  I'm attaching the joint motion I propose filing.  If you'd like something added or subtracted, we're flexible.  The motion will have two exhibits.

Exhibit A - Proposed stipulations
Exhibit B - the revised contract without the BDS and "all applicable laws" provision

Let me know if this works for you.  If you have thoughts about form/content, we're happy to discuss.

Regards,

Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

**From:** Cassiemarie Sporrer <Cassiemarie.Sporrer@asu.edu>
**Sent:** Thursday, March 15, 2018 10:35:29 AM
**To:** Gadeir Abbas; Lisa Loo
**Cc:** Ensign, Drew; Jose Cardenas (General Counsel); Carolyn Homer; Lena F. Masri, Esq.; raes@kellywarnerlaw.com; Roysden, Beau; Skinner, OH; Nancy Tribbensee
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

All,

Here's the conference line for today's 11am PT / 2pm ET call:

1-877-820-7831
Passcode:  165970 #

I'll send an Outlook invite as well.

Thank you,

**Cassiemarie Sporrer**
**Administrative Associate, Office of General Counsel**
**Arizona State University**
p: 480-965-4550  f: 480-965-0984  d: 480-965-9764
csporrer@asu.edu

Mailing: P.O. Box 877405, Tempe, AZ 85287-7405
Physical: Fulton Center, 300 E. University Dr., Ste. 335, Tempe, AZ 85281

---

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Thursday, March 15, 2018 4:50 AM
**To:** Lisa Loo <lisaloo@asu.edu>
**Cc:** Ensign, Drew <Drew.Ensign@azag.gov>; Jose Cardenas (General Counsel) <jcardenas@asu.edu>; Carolyn Homer
<cHomer@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com; Roysden, Beau
<Beau.Roysden@azag.gov>; Skinner, OH <O.H.Skinner@azag.gov>; Nancy Tribbensee
<Nancy.Tribbensee@azregents.edu>; Cassiemarie Sporrer <Cassiemarie.Sporrer@asu.edu>
**Subject:** Re: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Lisa,

Perfect.  Can you circulate call-in information for today's 2 PM EST call?  We look forward to speaking with
everyone later today.

Regards,

Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

---

**From:** Lisa Loo <lisaloo@asu.edu>
**Sent:** Thursday, March 15, 2018 12:12:16 AM
**To:** Gadeir Abbas
**Cc:** Ensign, Drew; Jose Cardenas (General Counsel); Carolyn Homer; Lena F. Masri, Esq.; raees@kellywarnerlaw.com;
Roysden, Beau; Skinner, OH; Nancy Tribbensee; Cassiemarie Sporrer
**Subject:** Re: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir, I believe the folks from ABOR, ASU and the AG's office are available at the proposed time.

Carolyn had circulated a conference line for us to use last week. If that line is available tomorrow can you
kindly resend?  If not, my assistant can circulate a number when she gets into the office tomorrow.

Thanks,
Lisa

Sent from my iPhone

On Mar 14, 2018, at 7:15 PM, Gadeir Abbas <gAbbas@cair.com> wrote:

> Drew,
>
> I think we're really close and can get this across the finish line.  Because we believe that we're just a few reasonable tweaks away from agreement, we'll hold our response until tomorrow.
>
> Can you chat at 2 pm est tomorrow?  We should be out of court before then.
>
> Regards,
>
> Gadeir Abbas, Esq.
> **Senior Litigation Attorney**
>
> 
>
> 453 New Jersey Ave, SE
> Washington, DC 20003
> Tel: 202.742.6420 Fax: 202.488.0833
> Dir: 202.640.4935 Cell: 720.251.0425
> **www.cair.com**

---

> **From:** Ensign, Drew <Drew.Ensign@azag.gov>
> **Sent:** Wednesday, March 14, 2018 2:51:15 PM
> **To:** Gadeir Abbas; 'Jose Cardenas (General Counsel)'; Carolyn Homer; Lena F. Masri, Esq.; raees@kellywarnerlaw.com
> **Cc:** Roysden, Beau; Skinner, OH; Nancy Tribbensee; Lisa Loo
> **Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670
>
> Thanks, Gadeir.  Given your commitments, we are certainly willing to hold our offer open until after we have a chance to talk tomorrow.  What times tomorrow would work for you?
>
> On a related note, in light of the fact that we may have an agreement tomorrow and your reply to our filing is not due until tomorrow evening, is there any reason why you need to file today when whatever you say may easily be mooted by tomorrow's discussion?
>
> Drew

---

> **From:** Gadeir Abbas [mailto:gAbbas@cair.com]
> **Sent:** Wednesday, March 14, 2018 12:26 PM

**To:** Ensign, Drew; 'Jose Cardenas (General Counsel)'; Carolyn Homer; Lena F. Masri, Esq.;
raees@kellywarnerlaw.com
**Cc:** Roysden, Beau; Skinner, OH; Nancy Tribbensee; Lisa Loo
**Subject:** Re: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Drew - I'm tied up and not going to be able to review this and discuss  with our team within
your timeframe.  We are also preparing for court tomorrow morning in another matter so won't
be able to get back to you until tomorrow afternoon. And remember, we're
replying/responding to your filing from last week as well today.

 If, because of these things, you're withdrawing your offer, we'll note in our filing later today
that you gave us 3 hours to respond to your "final offer."  I don't think that's productive but it's
up to you.  But if you're edits are in our vicinity, it seems wasteful that we've come this far only
to be thwarted by our packed Wednesday afternoon/evening.

If you'd like, we can schedule a call tomorrow afternoon to discuss and go over your proposed
edits.  I can commit to being ready to discuss by tomorrow afternoon.

Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

---

**From:** Ensign, Drew <Drew.Ensign@azag.gov>
**Sent:** Wednesday, March 14, 2018 2:06:45 PM
**To:** 'Jose Cardenas (General Counsel)'; Gadeir Abbas; Carolyn Homer; Lena F. Masri, Esq.;
raees@kellywarnerlaw.com
**Cc:** Roysden, Beau; Skinner, OH; Nancy Tribbensee; Lisa Loo
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir,

Thank you for your quick response.  At this point, we do not understand how you believe that
Plaintiffs are likely to suffer irreparable harm absent injunctive relief.  You objected to the "No
Boycott of Israel" clause and said "to Plaintiffs' knowledge, [it is] the only institutional and legal
roadblock to their participation in the scheduled April 3, 2018 event."  Doc. 9-1 at 5.  After ASU
removed that provision, however, you refused to sign the contracts.  Instead, you objected to
the "applicable law" clause (¶6).  So ASU removed that clause as well.  We are thus unaware of
*any* remaining provision that Plaintiffs object to, which by itself should settle this matter.  In
addition, both ABOR and the Attorney General have made commitments *in public filings with
the Court* that they will not take any action against the April 3 event under the Act.  *See* Doc. 17

6

at 3-4.  The suggestion that either ABOR or the Attorney General would violate the explicit and unequivocal commitments they have made to the Court in their March 8 filing is simply fanciful.

Nonetheless, in the interest of resolving this matter we are willing to enter into a joint stipulation to try to resolve whether Plaintiffs can speak at the April 3 event.  Attached is our proposed stipulation, which has tracked changes against your version.  Because there has already been too much back-and-forth on this and given the exigency created by your emergency request, this proposal reflects our final offer absent extraordinary circumstances or simple items like typos.  We believe this gives you everything you have asked for.  We therefore request that you let us know whether you will agree to this proposed stipulation by 6pm Eastern.  If you cannot accept the combination of (1) removing both the "No Boycott of Israel" and "applicable law" clauses (*i.e.*, all clauses you have objected to), (2) Defendants' March 8 unequivocal commitments to the Court, and (3) this proposed stipulation, we will be at an impasse.  In that event, we will seek relief as appropriate from the Court.

Please also note that we are not (and have not) accused you of "lying" to the Court when your March 2 filings were originally made.  We believe, however, that the language we quoted in the PI motion is no longer an accurate statement in light of your changed legal position.  In the PI, you stated that the "No Boycott of Israel" clause was "to Plaintiffs' knowledge, *the only institutional and legal roadblock* to their participation in the scheduled April 3, 2018 event."  Doc. 9-1 at 5 (emphasis added).  You now appear to be taking the position that the "applicable law" clause is an additional "institutional and legal roadblock."  If that is now your position, your original statement to the Court is no longer accurate and needs to be corrected, since you now obviously have knowledge of your own legal position that there are additional "institutional and legal roadblock[s]."

You are of course entitled to change your legal positions (subject to some doctrines that do not appear applicable here).  But when you do so, it triggers an obligation to correct any statements that thereby become inaccurate to the Court.  *See, e.g.*, *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 597 (S.D.N.Y. 2013) ("Rule 11 is … implicated 'where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that the claim was groundless.'" (alteration and citation omitted).

We don't want to belabor this point, so hopefully we can make this simple.  As to your March 2 statement, "The 'No Boycott of Israel' clause in ASU's standard speaker agreement is, to Plaintiffs' knowledge, the only institutional and legal roadblock to their participation in the scheduled April 3, 2018 event," Doc. 9-1 at 5, is that *currently* a correct statement of fact?  If so, please explain why you believe that is the case.  If not, please either let us know (1) that you will either correct the statement or withdraw the motion for a PI making it or (2) that you believe that you have no obligation to correct a statement to the Court that events have rendered incorrect.

We similarly request that you let us know your position whether the cited statements in Dr. Bazian's and Taher Herzallah's declarations are accurate statements of fact *today* (rather than when made), and if not, what actions (if any) you plan to take to correct them.  *See* Doc. 9-2 at 3 ¶8; Doc. 9-2 at 3 ¶16.  We ask that you let us know your positions on these matters by 6pm Eastern as well.

Sincerely,
Drew


**From:** Jose Cardenas (General Counsel) [mailto:jcardenas@asu.edu]
**Sent:** Wednesday, March 14, 2018 10:06 AM
**To:** Gadeir Abbas; Ensign, Drew; Carolyn Homer; Lena F. Masri, Esq.; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau; Skinner, OH; Nancy Tribbensee; Lisa Loo
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir, thanks for the prompt response.  I'm still puzzled by your insistence that we have a dispute given that the contract has none of the provisions that you said were of concern to your clients.

As for your statement regarding fears of action by the AG or by ABOR, we have already committed on behalf of our clients that neither the Attorney General nor ABOR will take any such action.  Moreover, the ABOR policy provision you reference in your proposed stipulation does not apply.

In spite of these facts, I assume you will simply come up with some other rationale for proceeding absent some sort of stipulation.  I'll leave it to the folks at the AG's office to take a cut at a stipulation that might be acceptable to them and to ABOR.

We'll be in touch.

Sincerely,

José


**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Wednesday, March 14, 2018 6:15 AM
**To:** Ensign, Drew <drew.ensign@azag.gov>; Carolyn Homer <cHomer@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com; Jose Cardenas (General Counsel) <jcardenas@asu.edu>
**Cc:** Roysden, Beau <beau.roysden@azag.gov>; Skinner, OH <o.h.skinner@azag.gov>; Nancy Tribbensee <Nancy.Tribbensee@azregents.edu>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Jose,

Thanks for your email and for engaging with us in good faith to figure this thing out.

While the removal of the catch all provision takes us closer to an agreement, given the pending motion, we won't withdraw without a stipulation from all the defendants.

First, as you know, the Board of Regents possesses the authority to veto ASU student group activity that is inconsistent with state law. Given the clarity of the BDS law, we remain concerned that either the AG or the Board of Regents will block the event at a later date.

Second, because these contract revisions constitute new facts, we do not view the unilateral withdrawal of our motion as an appropriate mechanism to guarantee that the April 3rd event will happen.

If you all do not plan to interfere with the event and will allow it to happen, then stipulate to it. As I'm sure you can appreciate, we would be doing our clients a disservice if we were to rely on an understanding between the attorneys to protect their rights.  To resolve this without a hearing, we need an on-the-docket stipulation as to what all the parties have agreed to do.

An unwillingness to stipulate, in our view, gives rise to the inference that one of the defendants may intend to interfere or even block the event when the time for a hearing has passed. The same political pressures that led to the passage of the law, without a stipulation, may lead one of the defendants to intervene despite the nonbinding assurances the defendants have provided to date.

In short, we will only withdraw our motion pursuant to an all-party stipulation. We respectfully suggest that the parties work together to fashion a stipulation that ensures the event will happen and that the parties can live with.

Regards,
Gadeir

---

**From:** Jose Cardenas (General Counsel) <jcardenas@asu.edu>
**Sent:** Tuesday, March 13, 2018 8:27:22 PM
**To:** Gadeir Abbas; Ensign, Drew; Carolyn Homer; Lena F. Masri, Esq.; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau; Skinner, OH; Nancy Tribbensee; Lisa Loo
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir, I've reviewed your e-mail exchange with Drew.

For the reasons set forth in the e-mail I sent you on March 8, I completely disagree with your position that the "compliance with all applicable laws" provision in the contract means the no boycott clause, which is not in the contract, nevertheless applies to the April 3rd speaking engagement.  I also made clear that ASU had no intentions of applying that clause to this agreement.  Given the Attorney General's concurrence, I thought we were done.

I was surprised that we did not get a prompt response from you and even more surprised to see that you continue to insist that the "all applicable laws" provision means we still have a dispute.

But rather than continue that debate, I have a simple solution that avoids the need for a stipulation and that resolves your clients' concerns.  I've deleted what was paragraph 6 of the December 2017 contract to eliminate the clause regarding compliance with all applicable laws.

I trust that this will resolve all issues and that we can now focus on the April 3rd event.

Please confirm by noon EST that your clients will sign the attached revised agreement and then please get it back to us as soon as possible.

Thanks.

José A. Cárdenas

---

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Tuesday, March 13, 2018 2:58 PM
**To:** Ensign, Drew <Drew.Ensign@azag.gov>; Carolyn Homer <cHomer@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau <Beau.Roysden@azag.gov>; Skinner, OH <O.H.Skinner@azag.gov>; Jose Cardenas

(General Counsel) <jcardenas@asu.edu>; Nancy Tribbensee <Nancy.Tribbensee@azregents.edu>; Lisa
Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Hi Drew,

I apologize if you feel that we've not been communicative.  That hasn't been intentional, and I
emphasize that I'm always happy to hop on the phone with any of you.  My cell is listed below.

As I communicated to Jose, we've been very surprised by the defendants' position that the law does not
apply.  We're not the only ones: https://www.thefire.org/arizonas-anti-bds-statute-lands-arizona-state-
university-in-federal-court/

Certainly, if we thought the law allowed for any room for the defendants to negotiate, we would have
discussed it.  Given your representations, we remain open to resolving the preliminary injunction piece
of this case.

I will note that accusations that either I or our plaintiffs have lied or misled the court do not facilitate
conversations among  us.  And with this email, we've now been accused—wrongly, and it is
demonstrable—of lying by counsel for most of the defendants.  It's offensive, and not helpful to
resolving this matter or maintaining professional courtesy among the attorneys, for you to claim that
the statements that I made somehow render our plaintiffs' declarations false.  But if your strategy is to
pursue such ad hominem attacks, it will just highlight the anti-free speech nature of Arizona's BDS law
and the state's hail-mary attempts to defend it.

Putting your personal attacks to the side, to resolve this short of a court hearing, we're not willing to
simply rely upon attorney-representations.  With respect to the April 3rd event, we remain concerned
that, having removed the explicit BDS provision from the contract, the defendants intend for the general
catch-all provision to envelope the BDS law.  Indeed, that is how we read it.  And we believe that is a fair
reading of it, given the clarity of the BDS law's language.

We've attached a draft stipulation that we believe would allow our plaintiffs to come to ASU on April 3rd
without violating their rights.  All current parties would be bound.

We await your thoughts on it.  If you'd like to discuss it by phone, please advise.

Regards,


Gadeir Abbas, Esq.
**Senior Litigation Attorney**

<image001.png>
453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

Licensed to practice in VA, not in DC.
Practice limited to federal matters.

*[This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.]*

**WEB | FACEBOOK | TWITTER**

---

**From:** Ensign, Drew [mailto:Drew.Ensign@azag.gov]
**Sent:** Tuesday, March 13, 2018 3:28 PM
**To:** Carolyn Homer <cHomer@cair.com>; Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau <Beau.Roysden@azag.gov>; Skinner, OH <O.H.Skinner@azag.gov>; 'Jose Cardenas (General Counsel)' <jcardenas@asu.edu>; Nancy Tribbensee <Nancy.Tribbensee@azregents.edu>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir, Lena, and Carolyn,

On behalf of the Attorney General, we request that you withdraw your request for an expedited hearing (Doc. 10).  In light of the factual developments outlined in Jose's March 8 email (copied below) and our March 8 filing with the Court (Doc. 17)—both 5 days ago—there can be no uncertainty as to whether Dr. Bazian and American Muslims for Palestine ("AMP") will be able to speak at the April 3 event.  They will be.  We therefore do not believe there is any basis for Plaintiffs to continue seeking an expedited hearing.  We ask that you let us know by noon EDT tomorrow whether you will be withdrawing your request so that we can seek relief from the Court as may be necessary.  We also request that you let us know by the same time whether you will be amending/refiling your motion for a preliminary injunction and supporting declarations to correct statements therein that, as discussed below, now appear false in light of statements you have made to the press.

Although you have not responded to Jose's email or our court filing last Thursday, Gadeir has been quoted in the press as stating *inter alia*:  "The lawsuit's about the law, not the April 3 event." (attached)  Given that admission, we do not understand how there could be any need for an expedited hearing, which explicitly was based on Dr. Bazian's and AMP's ability to speak at the April 3 event.  Doc. 10 at 2.  Indeed, whatever the merits of that request when filed, it has become clear that the request is now thoroughly unwarranted.

On a related note, we will also confess our frustration that you have failed to communicate with us directly and instead have done so almost exclusively through the press.  For example, your complaint was filed late on March 1 and CAIR released a press release and held a press conference the next day.  (https://www.cair.com/press-center/press-releases/15009-cair-defends-free-speech-in-lawsuit-challenging-arizona-bds-law.html).  But you did not serve us until late on March 5, and only then because we affirmatively reached out to you to request service after we received notice of your complaint through press inquiries.  Similarly, you have ducked responding to Jose's email for 5 days now, but have apparently been willing to respond to the substance of his email to reporters.

We therefore request that, as a matter of professional courtesy, you speak directly to us about your positions on pending matters in this case and avoid having us receive notice of your positions belatedly and indirectly through the press.

We are also writing to provide you notice that we believe Gadeir's statement to the press is—at a bare minimum—in sharp tension with the duty of candor owed to the Court.  You represented to the Court that "The 'No Boycott of Israel' clause in ASU's standard speaker agreement is, to Plaintiffs' knowledge, the only institutional and legal roadblock to their participation in the scheduled April 3, 2018 event."  Doc. 9-1 at 5.  However, your recent press statement indicates that you now apparently object to the "applicable law" clause, although that same clause appeared in the contracts that you were sent previously—and attached in court filings.  *See* Doc. 9-2 Ex. A at 2 ¶6; Doc. 9-3 Ex. A at 2 ¶6.  You thus had full knowledge of the "applicable law" clause of paragraph 6, but nonetheless represented to the

Court that the only obstacle to Plaintiffs speaking at the April 3 event was the "No Boycott of Israel" clause.

In light of your press statements, this representation to the Court now appears to be false.  If that press statement reflects your current legal position, we ask that you confirm that you will be withdrawing and/or correcting your motion for a preliminary injunction to correct what now appears to be a false statement to the Court.  We similarly note that the declarations of both Dr. Bazian and Taher Herzallah may now contain false statements under oath as well.  *See* Doc. 9-2 at 3 ¶8; Doc. 9-2 at 3 ¶16.  Relatedly, we note that this apparent deviation between the positions in the declarations and current facts underscores the need for depositions in this case.  The State should be permitted to examine these deviations as well as why the declarants did not originally object to the "applicable law" clauses.

In light of the exigency created by your request for an expedited hearing, we request that you let us know your positions on these matters by noon EDT tomorrow.  If you do not do so, we will assume that (1) Gadeir's statements to the press accurately reflect Plaintiffs' current legal positions, (2) Plaintiffs will not be withdrawing your request for an expedited hearing, and (3) Plaintiffs will not be correcting what appears to be false statements to the Court.  On that assumption, we will seek relief as appropriate from the Court.

Sincerely,
Drew


Drew C. Ensign
Senior Litigation Counsel

| <image002.jpg> | Office of the Attorney General |
| | Government Accountability & Special Litigation |
| | 2005 N. Central Ave., Phoenix, AZ 85004 |
| | Direct: 602-542-5200 \| Fax: 602-542-4377 |
| | Drew.Ensign@azag.gov |

CONFIDENTIALITY NOTICE:  This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

---

**From:** Jose Cardenas (General Counsel)
**Sent:** March 8, 2018 8:51 AM
**To:** 'Carolyn Homer' <cHomer@cair.com>; Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>
**Cc:** raees@kellywarnerlaw.com; Anne Griffith <anne@kellywarnerlaw.com>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Carolyn, Gadeir and Lena, this is a follow up to our discussion on Tuesday afternoon.  I have also copied your local counsel.

We appreciate your courtesy in discussing your lawsuit with us and in listening to the reasons we gave as to why it should be withdrawn.  While you did not agree with us on Tuesday, I am hopeful that upon further consideration of what we said and what is set forth here you will now agree that there is no dispute between ASU and your clients.

To be clear, for all of the reasons we discussed on Tuesday and as set forth below, ASU has no intentions of enforcing the statute that is the subject of your lawsuit and it will not be a bar to the April 3rd event. The statute simply does not apply in this context and that is why we removed it from our speaker engagement form contract.

As we told you, and as you know from press reports, your lawsuit is based on an outdated version of our speaker engagement form contract. The form was revised in December of 2017 and the no boycott of Israel provision to which you object was removed. That version of the contract is attached.

Lisa Loo, ASU's Vice President for Legal Affairs and Deputy General Counsel, tried to contact you and your local counsel last Friday before your scheduled press conference to tell you that the no boycott provision does not apply to the April 3rd event, but was not able to reach anyone. ASU, however, did make its position publicly known that same day and we will continue to do so.

That fact that our speaker engagement form does not have the boycott provision should in and of itself dispose of this lawsuit.

First, the relief you seek is an injunction "striking the 'No Boycott of Israel" clause from Defendants' standard speaker contract."

There is nothing to strike because the clause is not there.

Second, Dr. Bazian, in paragraph 16 of the affidavit attached to your complaint, said he would sign the contract if it did not have the provision to which he objects:

"I have no objection to Arizona State University's 'Speaker/Artist/Performer Agreement' other than Paragraph 20, the 'No Boycott of Israel' clause. I have already blocked off April 3, 2018 on my calendar for attendance at the Muslim Students Association's BDS event at Arizona State University. If the 'No Boycott of Israel' clause is stricken or declared unenforceable, I will sign the Agreement, enabling me to speak at the April 3, 2018 event."

If Dr. Bazian meant what he said, he should be willing to sign the contract because it does not have the clause he said prevents him from signing.

When we spoke, Gadeir came up with a new theory as to why the lawsuit should nevertheless proceed. You said that Dr. Bazian will not sign the contract because it also includes a provision about compliance with all Arizona laws. You contend that incorporates the no boycott provision of state law and therefore we still have something to argue about.

Again, there are several flaws in this logic:

1)   That argument is contrary to your client's position.

2)   The provision you reference actually refers to "all **applicable**" laws.

    a.   The no boycott provision does not apply to having Dr. Bazian speak at ASU, so there should be no further issues.

    b.   As I told you I would, I spoke to the lawyers in the Attorney-General's office who are handling this matter. I am authorized to tell you that they agree that the no boycott clause would not apply to Dr. Bazian or any other speaker at the April 3rd event.

13

c.  The argument puts CAIR in the rather odd position of telling ABOR and ASU that they have to follow a state law to which you object and that we independently concluded does not apply.  And now you know that the only other defendant agrees with our position.

3)  A further flaw is that the obligation the "no boycott" statute imposes in the first instance is upon the public entity and not upon the other party to the contract.  It requires the public entity to include that provision if applicable. If the clause is not there, we never get to the issue of whether your client has to agree to the certification.

4)  Thus, to the extent you're saying the reference to all laws means the boycott provision applies, what you're really saying is it has to be in the contract. That leaves you in the rather strange position of demanding the inclusion of the provision or inserting it yourself so that you can then say your client won't comply because it's now in the contract.

Gadeir, you were quoted on a local news posting as saying that your clients "hope ASU will come to its senses and allow the April 3rd event to go forward."

At the moment, the only thing that is preventing the April 3rd event from going forward is your tortured legal analysis and your insistence on creating a dispute where none exists.  If you insist on proceeding, I can well imagine the Judge asking, "why are we here?"

With all due respect, it is you and your colleagues who need to come to your senses and not waste the time and resources of the parties and the court and, more importantly, deprive ASU students and others of the opportunity to hear from Dr. Bazian.

As I told you when we spoke, ASU's commitment to free speech is long standing and deep.  That is why FIRE (Foundation for Individual Rights in Education) has lauded ASU as one of only 38 institutions in the entire country to earn its highest, "green light" rating for campus free speech.

Paragraph 30 of your complaint similarly notes that ASU is "committed to academic freedom, and to providing an open venue for student organizations to invite outside speakers and host educational events on a wide variety of subjects, and from a wide variety of viewpoints."

You were right.  That is why we look forward to finalizing the speaker engagement contract with Dr. Bazian's signature.

And we look forward to Dr. Bazian's appearance at ASU on April 3rd.


Sincerely,

José A. Cárdenas
Sr. Vice President and General Counsel
Arizona State University

# Exhibit I

**Ensign, Drew**

| | |
|---|---|
| **From:** | Ensign, Drew |
| **Sent:** | Wednesday, March 14, 2018 12:07 PM |
| **To:** | 'Jose Cardenas (General Counsel)'; 'Gadeir Abbas'; 'Carolyn Homer'; 'Lena F. Masri, Esq.'; 'raees@kellywarnerlaw.com' |
| **Cc:** | Roysden, Beau; Skinner, OH; 'Nancy Tribbensee'; 'Lisa Loo' |
| **Subject:** | RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670 |
| **Attachments:** | Hatem v. AZ Draft Stiplulation Defs Counter Proposal.docx |

Gadeir,

Thank you for your quick response.  At this point, we do not understand how you believe that Plaintiffs are likely to suffer irreparable harm absent injunctive relief.  You objected to the "No Boycott of Israel" clause and said "to Plaintiffs' knowledge, [it is] the only institutional and legal roadblock to their participation in the scheduled April 3, 2018 event."  Doc. 9-1 at 5.  After ASU removed that provision, however, you refused to sign the contracts.  Instead, you objected to the "applicable law" clause (¶6).  So ASU removed that clause as well.  We are thus unaware of *any* remaining provision that Plaintiffs object to, which by itself should settle this matter.  In addition, both ABOR and the Attorney General have made commitments *in public filings with the Court* that they will not take any action against the April 3 event under the Act.  *See* Doc. 17 at 3-4.  The suggestion that either ABOR or the Attorney General would violate the explicit and unequivocal commitments they have made to the Court in their March 8 filing is simply fanciful.

Nonetheless, in the interest of resolving this matter we are willing to enter into a joint stipulation to try to resolve whether Plaintiffs can speak at the April 3 event.  Attached is our proposed stipulation, which has tracked changes against your version.  Because there has already been too much back-and-forth on this and given the exigency created by your emergency request, this proposal reflects our final offer absent extraordinary circumstances or simple items like typos.  We believe this gives you everything you have asked for.  We therefore request that you let us know whether you will agree to this proposed stipulation by 6pm Eastern.  If you cannot accept the combination of (1) removing both the "No Boycott of Israel" and "applicable law" clauses (*i.e.*, all clauses you have objected to), (2) Defendants' March 8 unequivocal commitments to the Court, and (3) this proposed stipulation, we will be at an impasse.  In that event, we will seek relief as appropriate from the Court.

Please also note that we are not (and have not) accused you of "lying" to the Court when your March 2 filings were originally made.  We believe, however, that the language we quoted in the PI motion is no longer an accurate statement in light of your changed legal position.  In the PI, you stated that the "No Boycott of Israel" clause was "to Plaintiffs' knowledge, *the only institutional and legal roadblock* to their participation in the scheduled April 3, 2018 event."  Doc. 9-1 at 5 (emphasis added).  You now appear to be taking the position that the "applicable law" clause is an additional "institutional and legal roadblock."  If that is now your position, your original statement to the Court is no longer accurate and needs to be corrected, since you now obviously have knowledge of your own legal position that there are additional "institutional and legal roadblock[s]."

You are of course entitled to change your legal positions (subject to some doctrines that do not appear applicable here).  But when you do so, it triggers an obligation to correct any statements that thereby become inaccurate to the Court.  *See, e.g.*, *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 597 (S.D.N.Y. 2013) ("Rule 11 is

… implicated 'where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that the claim was groundless.'" (alteration and citation omitted).

We don't want to belabor this point, so hopefully we can make this simple. As to your March 2 statement, "The 'No Boycott of Israel' clause in ASU's standard speaker agreement is, to Plaintiffs' knowledge, the only institutional and legal roadblock to their participation in the scheduled April 3, 2018 event," Doc. 9-1 at 5, is that *currently* a correct statement of fact? If so, please explain why you believe that is the case. If not, please either let us know (1) that you will either correct the statement or withdraw the motion for a PI making it or (2) that you believe that you have no obligation to correct a statement to the Court that events have rendered incorrect.

We similarly request that you let us know your position whether the cited statements in Dr. Bazian's and Taher Herzallah's declarations are accurate statements of fact *today* (rather than when made), and if not, what actions (if any) you plan to take to correct them. *See* Doc. 9-2 at 3 ¶8; Doc. 9-2 at 3 ¶16. We ask that you let us know your positions on these matters by 6pm Eastern as well.


Sincerely,
Drew



**From:** Jose Cardenas (General Counsel) [mailto:jcardenas@asu.edu]
**Sent:** Wednesday, March 14, 2018 10:06 AM
**To:** Gadeir Abbas; Ensign, Drew; Carolyn Homer; Lena F. Masri, Esq.; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau; Skinner, OH; Nancy Tribbensee; Lisa Loo
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir, thanks for the prompt response. I'm still puzzled by your insistence that we have a dispute given that the contract has none of the provisions that you said were of concern to your clients.

As for your statement regarding fears of action by the AG or by ABOR, we have already committed on behalf of our clients that neither the Attorney General nor ABOR will take any such action. Moreover, the ABOR policy provision you reference in your proposed stipulation does not apply.

In spite of these facts, I assume you will simply come up with some other rationale for proceeding absent some sort of stipulation. I'll leave it to the folks at the AG's office to take a cut at a stipulation that might be acceptable to them and to ABOR.

We'll be in touch.

Sincerely,

José



**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Wednesday, March 14, 2018 6:15 AM
**To:** Ensign, Drew <drew.ensign@azag.gov>; Carolyn Homer <cHomer@cair.com>; Lena F. Masri, Esq.
<lmasri@cair.com>; raees@kellywarnerlaw.com; Jose Cardenas (General Counsel) <jcardenas@asu.edu>
**Cc:** Roysden, Beau <beau.roysden@azag.gov>; Skinner, OH <o.h.skinner@azag.gov>; Nancy Tribbensee

<Nancy.Tribbensee@azregents.edu>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Jose,

Thanks for your email and for engaging with us in good faith to figure this thing out.

While the removal of the catch all provision takes us closer to an agreement, given the pending motion, we won't withdraw without a stipulation from all the defendants.

First, as you know, the Board of Regents possesses the authority to veto ASU student group activity that is inconsistent with state law. Given the clarity of the BDS law, we remain concerned that either the AG or the Board of Regents will block the event at a later date.

Second, because these contract revisions constitute new facts, we do not view the unilateral withdrawal of our motion as an appropriate mechanism to guarantee that the April 3rd event will happen.

If you all do not plan to interfere with the event and will allow it to happen, then stipulate to it. As I'm sure you can appreciate, we would be doing our clients a disservice if we were to rely on an understanding between the attorneys to protect their rights.  To resolve this without a hearing, we need an on-the-docket stipulation as to what all the parties have agreed to do.

An unwillingness to stipulate, in our view, gives rise to the inference that one of the defendants may intend to interfere or even block the event when the time for a hearing has passed. The same political pressures that led to the passage of the law, without a stipulation, may lead one of the defendants to intervene despite the nonbinding assurances the defendants have provided to date.

In short, we will only withdraw our motion pursuant to an all-party stipulation. We respectfully suggest that the parties work together to fashion a stipulation that ensures the event will happen and that the parties can live with.

Regards,
Gadeir

---

**From:** Jose Cardenas (General Counsel) <jcardenas@asu.edu>
**Sent:** Tuesday, March 13, 2018 8:27:22 PM
**To:** Gadeir Abbas; Ensign, Drew; Carolyn Homer; Lena F. Masri, Esq.; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau; Skinner, OH; Nancy Tribbensee; Lisa Loo
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir, I've reviewed your e-mail exchange with Drew.

For the reasons set forth in the e-mail I sent you on March 8, I completely disagree with your position that the "compliance with all applicable laws" provision in the contract means the no boycott clause, which is not in the contract, nevertheless applies to the April 3rd speaking engagement.  I also made clear that ASU had no intentions of applying that clause to this agreement.  Given the Attorney General's concurrence, I thought we were done.

I was surprised that we did not get a prompt response from you and even more surprised to see that you continue to insist that the "all applicable laws" provision means we still have a dispute.

But rather than continue that debate, I have a simple solution that avoids the need for a stipulation and that resolves your clients' concerns.  I've deleted what was paragraph 6 of the December 2017 contract to eliminate the clause regarding compliance with all applicable laws.

I trust that this will resolve all issues and that we can now focus on the April 3rd event.

Please confirm by noon EST that your clients will sign the attached revised agreement and then please get it back to us as soon as possible.

Thanks.

José A. Cárdenas

---

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Tuesday, March 13, 2018 2:58 PM
**To:** Ensign, Drew <Drew.Ensign@azag.gov>; Carolyn Homer <cHomer@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau <Beau.Roysden@azag.gov>; Skinner, OH <O.H.Skinner@azag.gov>; Jose Cardenas (General Counsel) <jcardenas@asu.edu>; Nancy Tribbensee <Nancy.Tribbensee@azregents.edu>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Hi Drew,

I apologize if you feel that we've not been communicative. That hasn't been intentional, and I emphasize that I'm always happy to hop on the phone with any of you. My cell is listed below.

As I communicated to Jose, we've been very surprised by the defendants' position that the law does not apply. We're not the only ones: https://www.thefire.org/arizonas-anti-bds-statute-lands-arizona-state-university-in-federal-court/

Certainly, if we thought the law allowed for any room for the defendants to negotiate, we would have discussed it. Given your representations, we remain open to resolving the preliminary injunction piece of this case.

I will note that accusations that either I or our plaintiffs have lied or misled the court do not facilitate conversations among  us. And with this email, we've now been accused—wrongly, and it is demonstrable—of lying by counsel for most of the defendants. It's offensive, and not helpful to resolving this matter or maintaining professional courtesy among the attorneys, for you to claim that the statements that I made somehow render our plaintiffs' declarations false. But if your strategy is to pursue such ad hominem attacks, it will just highlight the anti-free speech nature of Arizona's BDS law and the state's hail-mary attempts to defend it.

Putting your personal attacks to the side, to resolve this short of a court hearing, we're not willing to simply rely upon attorney-representations. With respect to the April 3rd event, we remain concerned that, having removed the explicit BDS provision from the contract, the defendants intend for the general catch-all provision to envelope the BDS law. Indeed, that is how we read it. And we believe that is a fair reading of it, given the clarity of the BDS law's language.

We've attached a draft stipulation that we believe would allow our plaintiffs to come to ASU on April 3rd without violating their rights. All current parties would be bound.

We await your thoughts on it. If you'd like to discuss it by phone, please advise.

Regards,

Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

Licensed to practice in VA, not in DC.
Practice limited to federal matters.

*[This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.]*

WEB | FACEBOOK | TWITTER

**From:** Ensign, Drew [mailto:Drew.Ensign@azag.gov]
**Sent:** Tuesday, March 13, 2018 3:28 PM
**To:** Carolyn Homer <cHomer@cair.com>; Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau <Beau.Roysden@azag.gov>; Skinner, OH <O.H.Skinner@azag.gov>; 'Jose Cardenas (General Counsel)' <jcardenas@asu.edu>; Nancy Tribbensee <Nancy.Tribbensee@azregents.edu>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir, Lena, and Carolyn,

On behalf of the Attorney General, we request that you withdraw your request for an expedited hearing (Doc. 10).  In light of the factual developments outlined in Jose's March 8 email (copied below) and our March 8 filing with the Court (Doc. 17)—both 5 days ago—there can be no uncertainty as to whether Dr. Bazian and American Muslims for Palestine ("AMP") will be able to speak at the April 3 event.  They will be.  We therefore do not believe there is any basis for Plaintiffs to continue seeking an expedited hearing.  We ask that you let us know by noon EDT tomorrow whether you will be withdrawing your request so that we can seek relief from the Court as may be necessary.  We also request that you let us know by the same time whether you will be amending/refiling your motion for a preliminary injunction and supporting declarations to correct statements therein that, as discussed below, now appear false in light of statements you have made to the press.

Although you have not responded to Jose's email or our court filing last Thursday, Gadeir has been quoted in the press as stating *inter alia*:  "The lawsuit's about the law, not the April 3 event." (attached)  Given that admission, we do not understand how there could be any need for an expedited hearing, which explicitly was based on Dr. Bazian's and AMP's ability to speak at the April 3 event.  Doc. 10 at 2.  Indeed, whatever the merits of that request when filed, it has become clear that the request is now thoroughly unwarranted.

On a related note, we will also confess our frustration that you have failed to communicate with us directly and instead have done so almost exclusively through the press.  For example, your complaint was filed late on March 1 and CAIR released a press release and held a press conference the next day.  (https://www.cair.com/press-center/press-releases/15009-cair-defends-free-speech-in-lawsuit-challenging-arizona-bds-law.html).  But you did not serve us until late on March 5, and only then because you affirmatively reached out to you to request service after we received notice of your complaint through press inquiries.  Similarly, you have ducked responding to Jose's email for 5 days now, but have apparently been willing to respond to the substance of his email to reporters.

We therefore request that, as a matter of professional courtesy, you speak directly to us about your positions on pending matters in this case and avoid having us receive notice of your positions belatedly and indirectly through the press.

We are also writing to provide you notice that we believe Gadeir's statement to the press is—at a bare minimum—in sharp tension with the duty of candor owed to the Court.  You represented to the Court that "The 'No Boycott of Israel' clause in ASU's standard speaker agreement is, to Plaintiffs' knowledge, the only institutional and legal roadblock to their participation in the scheduled April 3, 2018 event."  Doc. 9-1 at 5.  However, your recent press statement indicates that you now apparently object to the "applicable law" clause, although that same clause appeared in the contracts that you were sent previously—and attached in court filings.  *See* Doc. 9-2 Ex. A at 2 ¶6; Doc. 9-3 Ex. A at 2 ¶6.  You thus had full knowledge of the "applicable law" clause of paragraph 6, but nonetheless represented to the Court that the only obstacle to Plaintiffs speaking at the April 3 event was the "No Boycott of Israel" clause.

In light of your press statements, this representation to the Court now appears to be false.  If that press statement reflects your current legal position, we ask that you confirm that you will be withdrawing and/or correcting your motion for a preliminary injunction to correct what now appears to be a false statement to the Court.  We similarly note that the declarations of both Dr. Bazian and Taher Herzallah may now contain false statements under oath as well.  *See* Doc. 9-2 at 3 ¶8; Doc. 9-2 at 3 ¶16.  Relatedly, we note that this apparent deviation between the positions in the declarations and current facts underscores the need for depositions in this case.  The State should be permitted to examine these deviations as well as why the declarants did not originally object to the "applicable law" clauses.

In light of the exigency created by your request for an expedited hearing, we request that you let us know your positions on these matters by noon EDT tomorrow.  If you do not do so, we will assume that (1) Gadeir's statements to the press accurately reflect Plaintiffs' current legal positions, (2) Plaintiffs will not be withdrawing your request for an expedited hearing, and (3) Plaintiffs will not be correcting what appears to be false statements to the Court.  On that assumption, we will seek relief as appropriate from the Court.

Sincerely,
Drew


Drew C. Ensign
Senior Litigation Counsel



Office of the Attorney General
Government Accountability & Special Litigation
2005 N. Central Ave., Phoenix, AZ 85004
Direct: 602-542-5200 | Fax: 602-542-4377
Drew.Ensign@azag.gov

CONFIDENTIALITY NOTICE:  This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

---

**From:** Jose Cardenas (General Counsel)
**Sent:** March 8, 2018 8:51 AM
**To:** 'Carolyn Homer' <cHomer@cair.com>; Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>
**Cc:** raees@kellywarnerlaw.com; Anne Griffith <anne@kellywarnerlaw.com>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Carolyn, Gadeir and Lena, this is a follow up to our discussion on Tuesday afternoon.  I have also copied your local counsel.

We appreciate your courtesy in discussing your lawsuit with us and in listening to the reasons we gave as to why it should be withdrawn.  While you did not agree with us on Tuesday, I am hopeful that upon further consideration of what we said and what is set forth here you will now agree that there is no dispute between ASU and your clients.

To be clear, for all of the reasons we discussed on Tuesday and as set forth below, ASU has no intentions of enforcing the statute that is the subject of your lawsuit and it will not be a bar to the April 3rd event.  The statute simply does not apply in this context and that is why we removed it from our speaker engagement form contract.

As we told you, and as you know from press reports, your lawsuit is based on an outdated version of our speaker engagement form contract.  The form was revised in December of 2017 and the no boycott of Israel provision to which you object was removed.  That version of the contract is attached.

Lisa Loo, ASU's Vice President for Legal Affairs and Deputy General Counsel, tried to contact you and your local counsel last Friday before your scheduled press conference to tell you that the no boycott provision does not apply to the April 3rd event, but was not able to reach anyone.  ASU, however, did make its position publicly  known that same day and we will continue to do so.

That fact that our speaker engagement form does not have the boycott provision should in and of itself dispose of this lawsuit.

First, the relief you seek is an injunction "striking the 'No Boycott of Israel" clause from Defendants' standard speaker contract."

> There is nothing to strike because the clause is not there.

Second, Dr. Bazian, in paragraph 16 of the affidavit attached to your complaint, said he would sign the contract if it did not have the provision to which he objects:

> "I have no objection to Arizona State University's 'Speaker/Artist/Performer Agreement' other than Paragraph 20, the 'No Boycott of Israel' clause.  I have already blocked off April 3, 2018 on my calendar for attendance at the Muslim Students Association's BDS event at Arizona State University.  If the 'No Boycott of Israel' clause is stricken or declared unenforceable, I will sign the Agreement, enabling me to speak at the April 3, 2018 event."

If Dr. Bazian meant what he said, he should be willing to sign the contract because it does not have the clause he said prevents him from signing.

When we spoke, Gadeir came up with a new theory as to why the lawsuit should nevertheless proceed.  You said that Dr. Bazian will not sign the contract because it also includes a provision about compliance with all Arizona laws.  You contend that incorporates the no boycott provision of state law and therefore we still have something to argue about.

Again, there are several flaws in this logic:

1) That argument is contrary to your client's position.

2) The provision you reference actually refers to "all **applicable**" laws.

   a.  The no boycott provision does not apply to having Dr. Bazian speak at ASU, so there should be no further issues.

   b.  As I told you I would, I spoke to the lawyers in the Attorney-General's office who are handling this matter. I am authorized to tell you that they agree that the no boycott clause would not apply to Dr. Bazian or any other speaker at the April 3rd event.

c.  The argument puts CAIR in the rather odd position of telling ABOR and ASU that they have to follow a state law to which you object and that we independently concluded does not apply.  And now you know that the only other defendant agrees with our position.

3)  A further flaw is that the obligation the "no boycott" statute imposes in the first instance is upon the public entity and not upon the other party to the contract.  It requires the public entity to include that provision if applicable. If the clause is not there, we never get to the issue of whether your client has to agree to the certification.

4)  Thus, to the extent you're saying the reference to all laws means the boycott provision applies, what you're really saying is it has to be in the contract. That leaves you in the rather strange position of demanding the inclusion of the provision or inserting it yourself so that you can then say your client won't comply because it's now in the contract.

Gadeir, you were quoted on a local news posting as saying that your clients "hope ASU will come to its senses and allow the April 3rd event to go forward."

At the moment, the only thing that is preventing the April 3rd event from going forward is your tortured legal analysis and your insistence on creating a dispute where none exists.  If you insist on proceeding, I can well imagine the Judge asking, "why are we here?"

With all due respect, it is you and your colleagues who need to come to your senses and not waste the time and resources of the parties and the court and, more importantly, deprive ASU students and others of the opportunity to hear from Dr. Bazian.

As I told you when we spoke, ASU's commitment to free speech is long standing and deep.  That is why FIRE (Foundation for Individual Rights in Education) has lauded ASU as one of only 38 institutions in the entire country to earn its highest, "green light" rating for campus free speech.

Paragraph 30 of your complaint similarly notes that ASU is "committed to academic freedom, and to providing an open venue for student organizations to invite outside speakers and host educational events on a wide variety of subjects, and from a wide variety of viewpoints."

You were right.  That is why we look forward to finalizing the speaker engagement contract with Dr. Bazian's signature.

And we look forward to Dr. Bazian's appearance at ASU on April 3rd.


Sincerely,

José A. Cárdenas
Sr. Vice President and General Counsel
Arizona State University

**CAIR LEGAL DEFENSE FUND**
Lena F. Masri (D.C. Bar # 100019) (*pro hac vice*)
Email:  lmasri@cair.com
Gadeir I. Abbas* (VA Bar # 81161) (seeking *pro hac vice admission*)
Email:  gabbas@cair.com
Carolyn M. Homer (D.C. Bar # 1049145) (*pro hac vice*)
Email: chomer@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax:    (202) 379-3317

**KELLY / WARNER, PLLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Raeesabbas Mohamed, Esq. (AZ Bar # 027418)
Email: raees@kellywarnerlaw.com
Phone: (480) 331-9397
Fax:    (866) 961-4984

*Attorneys for Plaintiffs*

   * *Licensed in VA, not in D.C.*
   *Practice limited to federal matters*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**PHOENIX DIVISION**

| | |
|---|---|
| **AMERICAN MUSLIMS FOR PALESTINE** and **DR. HATEM BAZIAN** | Case No.  CV-18-670-PHX-JJT |
| Plaintiffs, | **JOINT STIPULATION CONSENTING TO APRIL 3, 2018 EVENT, WITHDRAWING PRELIMINARY INJUNCTION MOTION, AND AMENDING CAPTION** |
| vs. | |
| **ARIZONA STATE UNIVERSITY**; **ARIZONA BOARD OF REGENTS**; and **MARK BRNOVICH,** in his official capacity as Attorney General of Arizona | |
| Defendants. | |

**JOINT STIPULATION**

Plaintiffs and Defendants jointly stipulate to the following:

1.     The caption of the case shall be amended to remove Arizona State University ("ASU") as a defendant, given that Arizona Board of Regents has the capacity to be sued on ASU's behalf.  The two Defendants are now "Arizona Board of Regents for and on behalf of Arizona State University" and "Mark Brnovich, in his official capacity as Attorney General of Arizona."

2.     Defendants have repeatedly advised Plaintiffs that they will not enforce Ariz. Rev. Stat. § 35-393 *et seq.* (the "Act") against Plaintiffs in connection with their planned April 3, 2018 speaking engagement at Arizona State University, because Defendants do not interpret the Act to apply to that engagement.

3.     Plaintiffs have raised additional concerns about the "Speaker / Artist / Performer Agreement," (*see* Dkt. 17-1), concerning the "Compliance with Law" paragraph (paragraph 6).  Defendants do not agree with those concerns but counsel for ASU has circulated a revised agreement that removes that paragraph (attached hereto as Exhibit A).  Defendants will accept Plaintiffs' signatures on this revised "Speaker / Artist / Performer Agreement."

4.     Defendant the Arizona Board of Regents will not cancel or veto the April 3, 2018 event pursuant to Policy Number 5-202(C), or otherwise interfere with ASU's hosting of or Plaintiffs' participation at the April 3, 2018 speaking engagement, on the basis that the event does not adhere to Ariz. Rev. Stat. § 35-393 *et seq.*

5.     Plaintiffs will provide their signatures to the revised agreement (Exhibit A) by March 26, 2018.  So long as they do so, Defendants will permit Plaintiffs to

participate in the April 3, 2018 event at Arizona State University regarding the Boycott, Divestment, and Sanctions movement.

6.     The Parties reserve all rights to make any arguments about the lawfulness of Defendants' conduct and the constitutionality of Ariz. Rev. Stat. § 35-393 *et seq.*, including Defendants' arguments that the constitutionality of Ariz. Rev. Stat. § 35-393 *et seq.* is not at issue in this case and that there is no case or controversy properly before the Court.

7.     In light of the foregoing, Plaintiffs hereby withdraw their Application for a Preliminary Injunction (Dkt. 9) and Request for Preliminary Injunction Hearing (Dkt. 10), without prejudice, and each party agrees to bear its own costs and fees with respect to the same.

Dated:   April 10, 2018                          **CAIR LEGAL DEFENSE FUND**

                                         By /s/ Draft _____
                                             Lena F. Masri (D.C. Bar No. 100019)
                                              (*pro hac vice*)
                                             Gadeir I. Abbas (VA Bar No. 81161)*
                                              (seeking *pro hac vice* admission)
                                             Carolyn M. Homer (D.C. Bar No. 1049145)
                                              (*pro hac vice*)
                                             453 New Jersey Ave., SE
                                             Washington, DC 20003
                                             Phone: (202) 742-6420
                                             Fax:   (202) 379-3317

                                                 * *Licensed in VA, not in D.C.*
                                                 *Practice limited to federal matters*

                                         **KELLY / WARNER, PLLC**

                                         By /s/ Draft _____
                                             Raees Mohamed, Esq. (AZ Bar # 027418)
                                             8283 N. Hayden Road, Suite 229

Scottsdale, Arizona 85258
Phone: (480) 331-9397
Fax:     (866) 961-4984

*Attorneys for Plaintiffs*

Dated:   April 10, 2018                 **MARK BRNOVICH**
                                        **ATTORNEY GENERAL**

By /s/ Draft _____
     Drew C. Ensign (No. 25462)
     Oramel H. (O.H.) Skinner (No. 32891)
     Brunn (Beau) W. Roysden III (No. 28698)
     Robert J. Makar (No. 033579)

*Attorneys for Defendant Mark Brnovich*
*in his official capacity as Attorney General*

By /s/  Draft _____
     Nancy Tribbensee (No. 011128)
     Senior Vice President and General Counsel
     José A. Cárdenas (No. 005632)
     Senior Vice President and General Counsel,
     ASU

*Attorneys for Defendant Arizona Board of*
*Regents*

# Exhibit J

## Ensign, Drew

| | |
|---|---|
| **From:** | Jose Cardenas (General Counsel) <jcardenas@asu.edu> |
| **Sent:** | Wednesday, March 14, 2018 10:06 AM |
| **To:** | Gadeir Abbas; Ensign, Drew; Carolyn Homer; Lena F. Masri, Esq.; raees@kellywarnerlaw.com |
| **Cc:** | Roysden, Beau; Skinner, OH; Nancy Tribbensee; Lisa Loo |
| **Subject:** | RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670 |


Gadeir, thanks for the prompt response.  I'm still puzzled by your insistence that we have a dispute given that the contract has none of the provisions that you said were of concern to your clients.

As for your statement regarding fears of action by the AG or by ABOR, we have already committed on behalf of our clients that neither the Attorney General nor ABOR will take any such action.  Moreover, the ABOR policy provision you reference in your proposed stipulation does not apply.

In spite of these facts, I assume you will simply come up with some other rationale for proceeding absent some sort of stipulation.  I'll leave it to the folks at the AG's office to take a cut at a stipulation that might be acceptable to them and to ABOR.

We'll be in touch.

Sincerely,

José

---

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Wednesday, March 14, 2018 6:15 AM
**To:** Ensign, Drew <drew.ensign@azag.gov>; Carolyn Homer <cHomer@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com; Jose Cardenas (General Counsel) <jcardenas@asu.edu>
**Cc:** Roysden, Beau <beau.roysden@azag.gov>; Skinner, OH <o.h.skinner@azag.gov>; Nancy Tribbensee <Nancy.Tribbensee@azregents.edu>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Jose,

Thanks for your email and for engaging with us in good faith to figure this thing out.

While the removal of the catch all provision takes us closer to an agreement, given the pending motion, we won't withdraw without a stipulation from all the defendants.

First, as you know, the Board of Regents possesses the authority to veto ASU student group activity that is inconsistent with state law. Given the clarity of the BDS law, we remain concerned that either the AG or the Board of Regents will block the event at a later date.

Second, because these contract revisions constitute new facts, we do not view the unilateral withdrawal of our motion as an appropriate mechanism to guarantee that the April 3rd event will happen.

If you all do not plan to interfere with the event and will allow it to happen, then stipulate to it. As I'm sure you can appreciate, we would be doing our clients a disservice if we were to rely on an understanding between the

attorneys to protect their rights.  To resolve this without a hearing, we need an on-the-docket stipulation as to what all the parties have agreed to do.

An unwillingness to stipulate, in our view, gives rise to the inference that one of the defendants may intend to interfere or even block the event when the time for a hearing has passed. The same political pressures that led to the passage of the law, without a stipulation, may lead one of the defendants to intervene despite the nonbinding assurances the defendants have provided to date.

In short, we will only withdraw our motion pursuant to an all-party stipulation. We respectfully suggest that the parties work together to fashion a stipulation that ensures the event will happen and that the parties can live with.

Regards,
Gadeir

**From:** Jose Cardenas (General Counsel) <jcardenas@asu.edu>
**Sent:** Tuesday, March 13, 2018 8:27:22 PM
**To:** Gadeir Abbas; Ensign, Drew; Carolyn Homer; Lena F. Masri, Esq.; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau; Skinner, OH; Nancy Tribbensee; Lisa Loo
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir, I've reviewed your e-mail exchange with Drew.

For the reasons set forth in the e-mail I sent you on March 8, I completely disagree with your position that the "compliance with all applicable laws" provision in the contract means the no boycott clause, which is not in the contract, nevertheless applies to the April 3rd speaking engagement.  I also made clear that ASU had no intentions of applying that clause to this agreement.  Given the Attorney General's concurrence, I thought we were done.

I was surprised that we did not get a prompt response from you and even more surprised to see that you continue to insist that the "all applicable laws" provision means we still have a dispute.

But rather than continue that debate, I have a simple solution that avoids the need for a stipulation and that resolves your clients' concerns.  I've deleted what was paragraph 6 of the December 2017 contract to eliminate the clause regarding compliance with all applicable laws.

I trust that this will resolve all issues and that we can now focus on the April 3rd event.

Please confirm by noon EST that your clients will sign the attached revised agreement and then please get it back to us as soon as possible.

Thanks.

José A. Cárdenas

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Tuesday, March 13, 2018 2:58 PM
**To:** Ensign, Drew <Drew.Ensign@azag.gov>; Carolyn Homer <cHomer@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau <Beau.Roysden@azag.gov>; Skinner, OH <O.H.Skinner@azag.gov>; Jose Cardenas (General Counsel) <jcardenas@asu.edu>; Nancy Tribbensee <Nancy.Tribbensee@azregents.edu>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Hi Drew,

I apologize if you feel that we've not been communicative.  That hasn't been intentional, and I emphasize that I'm always happy to hop on the phone with any of you.  My cell is listed below.

As I communicated to Jose, we've been very surprised by the defendants' position that the law does not apply.  We're not the only ones: https://www.thefire.org/arizonas-anti-bds-statute-lands-arizona-state-university-in-federal-court/

Certainly, if we thought the law allowed for any room for the defendants to negotiate, we would have discussed it.  Given your representations, we remain open to resolving the preliminary injunction piece of this case.

I will note that accusations that either I or our plaintiffs have lied or misled the court do not facilitate conversations among  us.  And with this email, we've now been accused—wrongly, and it is demonstrable—of lying by counsel for most of the defendants.  It's offensive, and not helpful to resolving this matter or maintaining professional courtesy among the attorneys, for you to claim that the statements that I made somehow render our plaintiffs' declarations false.  But if your strategy is to pursue such ad hominem attacks, it will just highlight the anti-free speech nature of Arizona's BDS law and the state's hail-mary attempts to defend it.

Putting your personal attacks to the side, to resolve this short of a court hearing, we're not willing to simply rely upon attorney-representations.  With respect to the April 3rd event, we remain concerned that, having removed the explicit BDS provision from the contract, the defendants intend for the general catch-all provision to envelope the BDS law.  Indeed, that is how we read it.  And we believe that is a fair reading of it, given the clarity of the BDS law's language.

We've attached a draft stipulation that we believe would allow our plaintiffs to come to ASU on April 3rd without violating their rights.  All current parties would be bound.

We await your thoughts on it.  If you'd like to discuss it by phone, please advise.

Regards,


Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

Licensed to practice in VA, not in DC.
Practice limited to federal matters.

*[This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.]*

WEB | FACEBOOK | TWITTER

**From:** Ensign, Drew [mailto:Drew.Ensign@azag.gov]
**Sent:** Tuesday, March 13, 2018 3:28 PM
**To:** Carolyn Homer <cHomer@cair.com>; Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau <Beau.Roysden@azag.gov>; Skinner, OH <O.H.Skinner@azag.gov>; 'Jose Cardenas (General Counsel)' <jcardenas@asu.edu>; Nancy Tribbensee <Nancy.Tribbensee@azregents.edu>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir, Lena, and Carolyn,

On behalf of the Attorney General, we request that you withdraw your request for an expedited hearing (Doc. 10).  In light of the factual developments outlined in Jose's March 8 email (copied below) and our March 8 filing with the Court (Doc. 17)—both 5 days ago—there can be no uncertainty as to whether Dr. Bazian and American Muslims for Palestine ("AMP") will be able to speak at the April 3 event.  They will be.  We therefore do not believe there is any basis for Plaintiffs to continue seeking an expedited hearing.  We ask that you let us know by noon EDT tomorrow whether you will be withdrawing your request so that we can seek relief from the Court as may be necessary.  We also request that you let us know by the same time whether you will be amending/refiling your motion for a preliminary injunction and supporting declarations to correct statements therein that, as discussed below, now appear false in light of statements you have made to the press.

Although you have not responded to Jose's email or our court filing last Thursday, Gadeir has been quoted in the press as stating *inter alia*:  "The lawsuit's about the law, not the April 3 event." (attached)  Given that admission, we do not understand how there could be any need for an expedited hearing, which explicitly was based on Dr. Bazian's and AMP's ability to speak at the April 3 event.  Doc. 10 at 2.  Indeed, whatever the merits of that request when filed, it has become clear that the request is now thoroughly unwarranted.

On a related note, we will also confess our frustration that you have failed to communicate with us directly and instead have done so almost exclusively through the press.  For example, your complaint was filed late on March 1 and CAIR released a press release and held a press conference the next day.  (https://www.cair.com/press-center/press-releases/15009-cair-defends-free-speech-in-lawsuit-challenging-arizona-bds-law.html).  But you did not serve us until late on March 5, and only then because we affirmatively reached out to you to request service after we received notice of your complaint through press inquiries.  Similarly, you have ducked responding to Jose's email for 5 days now, but have apparently been willing to respond to the substance of his email to reporters.

We therefore request that, as a matter of professional courtesy, you speak directly to us about your positions on pending matters in this case and avoid having us receive notice of your positions belatedly and indirectly through the press.

We are also writing to provide you notice that we believe Gadeir's statement to the press is—at a bare minimum—in sharp tension with the duty of candor owed to the Court.  You represented to the Court that "The 'No Boycott of Israel' clause in ASU's standard speaker agreement is, to Plaintiffs' knowledge, the only institutional and legal roadblock to their participation in the scheduled April 3, 2018 event."  Doc. 9-1 at 5.  However, your recent press statement indicates that you now apparently object to the "applicable law" clause, although that same clause appeared in the contracts that you were sent previously—and attached in court filings.  *See* Doc. 9-2 Ex. A at 2 ¶6; Doc. 9-3 Ex. A at 2 ¶6.  You thus had full knowledge of the "applicable law" clause of paragraph 6, but nonetheless represented to the Court that the only obstacle to Plaintiffs speaking at the April 3 event was the "No Boycott of Israel" clause.

In light of your press statements, this representation to the Court now appears to be false.  If that press statement reflects your current legal position, we ask that you confirm that you will be withdrawing and/or correcting your motion for a preliminary injunction to correct what now appears to be a false statement to the Court.  We similarly note that the declarations of both Dr. Bazian and Taher Herzallah may now contain false statements under oath as well.  *See* Doc. 9-2 at 3 ¶8; Doc. 9-2 at 3 ¶16.  Relatedly, we note that this apparent deviation between the positions in the declarations and current facts underscores the need for depositions in this case.  The State should be permitted to examine these deviations as well as why the declarants did not originally object to the "applicable law" clauses.

In light of the exigency created by your request for an expedited hearing, we request that you let us know your positions on these matters by noon EDT tomorrow.  If you do not do so, we will assume that (1) Gadeir's statements to the press accurately reflect Plaintiffs' current legal positions, (2) Plaintiffs will not be withdrawing your request for an expedited

hearing, and (3) Plaintiffs will not be correcting what appears to be false statements to the Court.  On that assumption, we will seek relief as appropriate from the Court.

Sincerely,
Drew


Drew C. Ensign
Senior Litigation Counsel



Office of the Attorney General
Government Accountability & Special Litigation
2005 N. Central Ave., Phoenix, AZ 85004
Direct: 602-542-5200 | Fax: 602-542-4377
Drew.Ensign@azag.gov

CONFIDENTIALITY NOTICE:  This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

---

**From:** Jose Cardenas (General Counsel)
**Sent:** March 8, 2018 8:51 AM
**To:** 'Carolyn Homer' <cHomer@cair.com>; Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>
**Cc:** raees@kellywarnerlaw.com; Anne Griffith <anne@kellywarnerlaw.com>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Carolyn, Gadeir and Lena, this is a follow up to our discussion on Tuesday afternoon.  I have also copied your local counsel.

We appreciate your courtesy in discussing your lawsuit with us and in listening to the reasons we gave as to why it should be withdrawn.  While you did not agree with us on Tuesday, I am hopeful that upon further consideration of what we said and what is set forth here you will now agree that there is no dispute between ASU and your clients.

To be clear, for all of the reasons we discussed on Tuesday and as set forth below, ASU has no intentions of enforcing the statute that is the subject of your lawsuit and it will not be a bar to the April 3rd event.  The statute simply does not apply in this context and that is why we removed it from our speaker engagement form contract.

As we told you, and as you know from press reports, your lawsuit is based on an outdated version of our speaker engagement form contract.  The form was revised in December of 2017 and the no boycott of Israel provision to which you object was removed.  That version of the contract is attached.

Lisa Loo, ASU's Vice President for Legal Affairs and Deputy General Counsel, tried to contact you and your local counsel last Friday before your scheduled press conference to tell you that the no boycott provision does not apply to the April 3rd event, but was not able to reach anyone.  ASU, however, did make its position publicly  known that same day and we will continue to do so.

That fact that our speaker engagement form does not have the boycott provision should in and of itself dispose of this lawsuit.

First, the relief you seek is an injunction "striking the 'No Boycott of Israel' clause from Defendants' standard speaker contract."

There is nothing to strike because the clause is not there.

Second, Dr. Bazian, in paragraph 16 of the affidavit attached to your complaint, said he would sign the contract if it did not have the provision to which he objects:

> "I have no objection to Arizona State University's 'Speaker/Artist/Performer Agreement' other than Paragraph 20, the 'No Boycott of Israel' clause.  I have already blocked off April 3, 2018 on my calendar for attendance at the Muslim Students Association's BDS event at Arizona State University.  If the 'No Boycott of Israel' clause is stricken or declared unenforceable, I will sign the Agreement, enabling me to speak at the April 3, 2018 event."

If Dr. Bazian meant what he said, he should be willing to sign the contract because it does not have the clause he said prevents him from signing.

When we spoke, Gadeir came up with a new theory as to why the lawsuit should nevertheless proceed.  You said that Dr. Bazian will not sign the contract because it also includes a provision about compliance with all Arizona laws.  You contend that incorporates the no boycott provision of state law and therefore we still have something to argue about.

Again, there are several flaws in this logic:

1) That argument is contrary to your client's position.

2) The provision you reference actually refers to "all **applicable**" laws.

   a. The no boycott provision does not apply to having Dr. Bazian speak at ASU, so there should be no further issues.

   b. As I told you I would, I spoke to the lawyers in the Attorney-General's office who are handling this matter. I am authorized to tell you that they agree that the no boycott clause would not apply to Dr. Bazian or any other speaker at the April 3rd event.

   c. The argument puts CAIR in the rather odd position of telling ABOR and ASU that they have to follow a state law to which you object and that we independently concluded does not apply.  And now you know that the only other defendant agrees with our position.

3) A further flaw is that the obligation the "no boycott" statute imposes in the first instance is upon the public entity and not upon the other party to the contract.  It requires the public entity to include that provision if applicable. If the clause is not there, we never get to the issue of whether your client has to agree to the certification.

4) Thus, to the extent you're saying the reference to all laws means the boycott provision applies, what you're really saying is it has to be in the contract. That leaves you in the rather strange position of demanding the inclusion of the provision or inserting it yourself so that you can then say your client won't comply because it's now in the contract.

Gadeir, you were quoted on a local news posting as saying that your clients "hope ASU will come to its senses and allow the April 3rd event to go forward."

At the moment, the only thing that is preventing the April 3rd event from going forward is your tortured legal analysis and your insistence on creating a dispute where none exists.  If you insist on proceeding, I can well imagine the Judge asking, "why are we here?"

With all due respect, it is you and your colleagues who need to come to your senses and not waste the time and resources of the parties and the court and, more importantly, deprive ASU students and others of the opportunity to hear from Dr. Bazian.

As I told you when we spoke, ASU's commitment to free speech is long standing and deep.  That is why FIRE (Foundation for Individual Rights in Education) has lauded ASU as one of only 38 institutions in the entire country to earn its highest, "green light" rating for campus free speech.

Paragraph 30 of your complaint similarly notes that ASU is "committed to academic freedom, and to providing an open venue for student organizations to invite outside speakers and host educational events on a wide variety of subjects, and from a wide variety of viewpoints."

You were right.  That is why we look forward to finalizing the speaker engagement contract with Dr. Bazian's signature.

And we look forward to Dr. Bazian's appearance at ASU on April 3rd.


Sincerely,

José A. Cárdenas
Sr. Vice President and General Counsel
Arizona State University

# Exhibit K

**Ensign, Drew**

| | |
|---|---|
| **From:** | Gadeir Abbas <gAbbas@cair.com> |
| **Sent:** | Wednesday, March 14, 2018 6:15 AM |
| **To:** | Ensign, Drew; Carolyn Homer; Lena F. Masri, Esq.; raees@kellywarnerlaw.com; Jose Cardenas (General Counsel) |
| **Cc:** | Roysden, Beau; Skinner, OH; Nancy Tribbensee; Lisa Loo |
| **Subject:** | RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670 |

Jose,

Thanks for your email and for engaging with us in good faith to figure this thing out.

While the removal of the catch all provision takes us closer to an agreement, given the pending motion, we won't withdraw without a stipulation from all the defendants.

First, as you know, the Board of Regents possesses the authority to veto ASU student group activity that is inconsistent with state law. Given the clarity of the BDS law, we remain concerned that either the AG or the Board of Regents will block the event at a later date.

Second, because these contract revisions constitute new facts, we do not view the unilateral withdrawal of our motion as an appropriate mechanism to guarantee that the April 3rd event will happen.

If you all do not plan to interfere with the event and will allow it to happen, then stipulate to it. As I'm sure you can appreciate, we would be doing our clients a disservice if we were to rely on an understanding between the attorneys to protect their rights.  To resolve this without a hearing, we need an on-the-docket stipulation as to what all the parties have agreed to do.

An unwillingness to stipulate, in our view, gives rise to the inference that one of the defendants may intend to interfere or even block the event when the time for a hearing has passed. The same political pressures that led to the passage of the law, without a stipulation, may lead one of the defendants to intervene despite the nonbinding assurances the defendants have provided to date.

In short, we will only withdraw our motion pursuant to an all-party stipulation. We respectfully suggest that the parties work together to fashion a stipulation that ensures the event will happen and that the parties can live with.

Regards,
Gadeir

**From:** Jose Cardenas (General Counsel) <jcardenas@asu.edu>
**Sent:** Tuesday, March 13, 2018 8:27:22 PM
**To:** Gadeir Abbas; Ensign, Drew; Carolyn Homer; Lena F. Masri, Esq.; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau; Skinner, OH; Nancy Tribbensee; Lisa Loo
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir, I've reviewed your e-mail exchange with Drew.

For the reasons set forth in the e-mail I sent you on March 8, I completely disagree with your position that the "compliance with all applicable laws" provision in the contract means the no boycott clause, which is not in the contract, nevertheless applies to the April 3rd speaking engagement.  I also made clear that ASU had no intentions of applying that clause to this agreement.  Given the Attorney General's concurrence, I thought we were done.

I was surprised that we did not get a prompt response from you and even more surprised to see that you continue to insist that the "all applicable laws" provision means we still have a dispute.

But rather than continue that debate, I have a simple solution that avoids the need for a stipulation and that resolves your clients' concerns. I've deleted what was paragraph 6 of the December 2017 contract to eliminate the clause regarding compliance with all applicable laws.

I trust that this will resolve all issues and that we can now focus on the April 3rd event.

Please confirm by noon EST that your clients will sign the attached revised agreement and then please get it back to us as soon as possible.

Thanks.

José A. Cárdenas

---

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Tuesday, March 13, 2018 2:58 PM
**To:** Ensign, Drew <Drew.Ensign@azag.gov>; Carolyn Homer <cHomer@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau <Beau.Roysden@azag.gov>; Skinner, OH <O.H.Skinner@azag.gov>; Jose Cardenas (General Counsel) <jcardenas@asu.edu>; Nancy Tribbensee <Nancy.Tribbensee@azregents.edu>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Hi Drew,

I apologize if you feel that we've not been communicative. That hasn't been intentional, and I emphasize that I'm always happy to hop on the phone with any of you. My cell is listed below.

As I communicated to Jose, we've been very surprised by the defendants' position that the law does not apply. We're not the only ones: https://www.thefire.org/arizonas-anti-bds-statute-lands-arizona-state-university-in-federal-court/

Certainly, if we thought the law allowed for any room for the defendants to negotiate, we would have discussed it. Given your representations, we remain open to resolving the preliminary injunction piece of this case.

I will note that accusations that either I or our plaintiffs have lied or misled the court do not facilitate conversations among us. And with this email, we've now been accused—wrongly, and it is demonstrable—of lying by counsel for most of the defendants. It's offensive, and not helpful to resolving this matter or maintaining professional courtesy among the attorneys, for you to claim that the statements that I made somehow render our plaintiffs' declarations false. But if your strategy is to pursue such ad hominem attacks, it will just highlight the anti-free speech nature of Arizona's BDS law and the state's hail-mary attempts to defend it.

Putting your personal attacks to the side, to resolve this short of a court hearing, we're not willing to simply rely upon attorney-representations. With respect to the April 3rd event, we remain concerned that, having removed the explicit BDS provision from the contract, the defendants intend for the general catch-all provision to envelope the BDS law. Indeed, that is how we read it. And we believe that is a fair reading of it, given the clarity of the BDS law's language.

We've attached a draft stipulation that we believe would allow our plaintiffs to come to ASU on April 3rd without violating their rights. All current parties would be bound.

2

We await your thoughts on it.  If you'd like to discuss it by phone, please advise.

Regards,

Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

Licensed to practice in VA, not in DC.
Practice limited to federal matters.

*[This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.]*

WEB | FACEBOOK | TWITTER

---

**From:** Ensign, Drew [mailto:Drew.Ensign@azag.gov]
**Sent:** Tuesday, March 13, 2018 3:28 PM
**To:** Carolyn Homer <cHomer@cair.com>; Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau <Beau.Roysden@azag.gov>; Skinner, OH <O.H.Skinner@azag.gov>; 'Jose Cardenas (General Counsel)' <jcardenas@asu.edu>; Nancy Tribbensee <Nancy.Tribbensee@azregents.edu>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir, Lena, and Carolyn,

On behalf of the Attorney General, we request that you withdraw your request for an expedited hearing (Doc. 10).  In light of the factual developments outlined in Jose's March 8 email (copied below) and our March 8 filing with the Court (Doc. 17)—both 5 days ago—there can be no uncertainty as to whether Dr. Bazian and American Muslims for Palestine ("AMP") will be able to speak at the April 3 event.  They will be.  We therefore do not believe there is any basis for Plaintiffs to continue seeking an expedited hearing.  We ask that you let us know by noon EDT tomorrow whether you will be withdrawing your request so that we can seek relief from the Court as may be necessary.  We also request that you let us know by the same time whether you will be amending/refiling your motion for a preliminary injunction and supporting declarations to correct statements therein that, as discussed below, now appear false in light of statements you have made to the press.

Although you have not responded to Jose's email or our court filing last Thursday, Gadeir has been quoted in the press as stating *inter alia*:  "The lawsuit's about the law, not the April 3 event." (attached)  Given that admission, we do not understand how there could be any need for an expedited hearing, which explicitly was based on Dr. Bazian's and AMP's ability to speak at the April 3 event.  Doc. 10 at 2.  Indeed, whatever the merits of that request when filed, it has become clear that the request is now thoroughly unwarranted.

On a related note, we will also confess our frustration that you have failed to communicate with us directly and instead have done so almost exclusively through the press. For example, your complaint was filed late on March 1 and CAIR released a press release and held a press conference the next day. (https://www.cair.com/press-center/press-releases/15009-cair-defends-free-speech-in-lawsuit-challenging-arizona-bds-law.html). But you did not serve us until late on March 5, and only then because we affirmatively reached out to you to request service after we received notice of your complaint through press inquiries. Similarly, you have ducked responding to Jose's email for 5 days now, but have apparently been willing to respond to the substance of his email to reporters.

We therefore request that, as a matter of professional courtesy, you speak directly to us about your positions on pending matters in this case and avoid having us receive notice of your positions belatedly and indirectly through the press.

We are also writing to provide you notice that we believe Gadeir's statement to the press is—at a bare minimum—in sharp tension with the duty of candor owed to the Court. You represented to the Court that "The 'No Boycott of Israel' clause in ASU's standard speaker agreement is, to Plaintiffs' knowledge, the only institutional and legal roadblock to their participation in the scheduled April 3, 2018 event." Doc. 9-1 at 5. However, your recent press statement indicates that you now apparently object to the "applicable law" clause, although that same clause appeared in the contracts that you were sent previously—and attached in court filings. *See* Doc. 9-2 Ex. A at 2 ¶6; Doc. 9-3 Ex. A at 2 ¶6. You thus had full knowledge of the "applicable law" clause of paragraph 6, but nonetheless represented to the Court that the only obstacle to Plaintiffs speaking at the April 3 event was the "No Boycott of Israel" clause.

In light of your press statements, this representation to the Court now appears to be false. If that press statement reflects your current legal position, we ask that you confirm that you will be withdrawing and/or correcting your motion for a preliminary injunction to correct what now appears to be a false statement to the Court. We similarly note that the declarations of both Dr. Bazian and Taher Herzallah may now contain false statements under oath as well. *See* Doc. 9-2 at 3 ¶8; Doc. 9-2 at 3 ¶16. Relatedly, we note that this apparent deviation between the positions in the declarations and current facts underscores the need for depositions in this case. The State should be permitted to examine these deviations as well as why the declarants did not originally object to the "applicable law" clauses.

In light of the exigency created by your request for an expedited hearing, we request that you let us know your positions on these matters by noon EDT tomorrow. If you do not do so, we will assume that (1) Gadeir's statements to the press accurately reflect Plaintiffs' current legal positions, (2) Plaintiffs will not be withdrawing your request for an expedited hearing, and (3) Plaintiffs will not be correcting what appears to be false statements to the Court. On that assumption, we will seek relief as appropriate from the Court.

Sincerely,
Drew


Drew C. Ensign
Senior Litigation Counsel



Office of the Attorney General
Government Accountability & Special Litigation
2005 N. Central Ave., Phoenix, AZ 85004
Direct: 602-542-5200 | Fax: 602-542-4377
Drew.Ensign@azag.gov

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**From:** Jose Cardenas (General Counsel)
**Sent:** March 8, 2018 8:51 AM
**To:** 'Carolyn Homer' <cHomer@cair.com>; Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>

**Cc:** raees@kellywarnerlaw.com; Anne Griffith <anne@kellywarnerlaw.com>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Carolyn, Gadeir and Lena, this is a follow up to our discussion on Tuesday afternoon.  I have also copied your local counsel.

We appreciate your courtesy in discussing your lawsuit with us and in listening to the reasons we gave as to why it should be withdrawn.  While you did not agree with us on Tuesday, I am hopeful that upon further consideration of what we said and what is set forth here you will now agree that there is no dispute between ASU and your clients.

To be clear, for all of the reasons we discussed on Tuesday and as set forth below, ASU has no intentions of enforcing the statute that is the subject of your lawsuit and it will not be a bar to the April 3rd event.  The statute simply does not apply in this context and that is why we removed it from our speaker engagement form contract.

As we told you, and as you know from press reports, your lawsuit is based on an outdated version of our speaker engagement form contract.  The form was revised in December of 2017 and the no boycott of Israel provision to which you object was removed.  That version of the contract is attached.

Lisa Loo, ASU's Vice President for Legal Affairs and Deputy General Counsel, tried to contact you and your local counsel last Friday before your scheduled press conference to tell you that the no boycott provision does not apply to the April 3rd event, but was not able to reach anyone.  ASU, however, did make its position publicly  known that same day and we will continue to do so.

That fact that our speaker engagement form does not have the boycott provision should in and of itself dispose of this lawsuit.

First, the relief you seek is an injunction "striking the 'No Boycott of Israel" clause from Defendants' standard speaker contract."

    There is nothing to strike because the clause is not there.

Second, Dr. Bazian, in paragraph 16 of the affidavit attached to your complaint, said he would sign the contract if it did not have the provision to which he objects:

    "I have no objection to Arizona State University's 'Speaker/Artist/Performer Agreement' other than
    Paragraph 20, the 'No Boycott of Israel' clause.  I have already blocked off April 3, 2018 on my calendar
    for attendance at the Muslim Students Association's BDS event at Arizona State University.  If the 'No
    Boycott of Israel' clause is stricken or declared unenforceable, I will sign the Agreement, enabling me to
    speak at the April 3, 2018 event."

If Dr. Bazian meant what he said, he should be willing to sign the contract because it does not have the clause he said prevents him from signing.

When we spoke, Gadeir came up with a new theory as to why the lawsuit should nevertheless proceed.  You said that Dr. Bazian will not sign the contract because it also includes a provision about compliance with all Arizona laws.  You contend that incorporates the no boycott provision of state law and therefore we still have something to argue about.

Again, there are several flaws in this logic:

   1)   That argument is contrary to your client's position.

   2)   The provision you reference actually refers to "all **applicable**" laws.

a. The no boycott provision does not apply to having Dr. Bazian speak at ASU, so there should be no further issues.

b. As I told you I would, I spoke to the lawyers in the Attorney-General's office who are handling this matter. I am authorized to tell you that they agree that the no boycott clause would not apply to Dr. Bazian or any other speaker at the April 3rd event.

c. The argument puts CAIR in the rather odd position of telling ABOR and ASU that they have to follow a state law to which you object and that we independently concluded does not apply.  And now you know that the only other defendant agrees with our position.

3) A further flaw is that the obligation the "no boycott" statute imposes in the first instance is upon the public entity and not upon the other party to the contract.  It requires the public entity to include that provision if applicable. If the clause is not there, we never get to the issue of whether your client has to agree to the certification.

4) Thus, to the extent you're saying the reference to all laws means the boycott provision applies, what you're really saying is it has to be in the contract. That leaves you in the rather strange position of demanding the inclusion of the provision or inserting it yourself so that you can then say your client won't comply because it's now in the contract.

Gadeir, you were quoted on a local news posting as saying that your clients "hope ASU will come to its senses and allow the April 3rd event to go forward."

At the moment, the only thing that is preventing the April 3rd event from going forward is your tortured legal analysis and your insistence on creating a dispute where none exists.  If you insist on proceeding, I can well imagine the Judge asking, "why are we here?"

With all due respect, it is you and your colleagues who need to come to your senses and not waste the time and resources of the parties and the court and, more importantly, deprive ASU students and others of the opportunity to hear from Dr. Bazian.

As I told you when we spoke, ASU's commitment to free speech is long standing and deep.  That is why FIRE (Foundation for Individual Rights in Education) has lauded ASU as one of only 38 institutions in the entire country to earn its highest, "green light" rating for campus free speech.

Paragraph 30 of your complaint similarly notes that ASU is "committed to academic freedom, and to providing an open venue for student organizations to invite outside speakers and host educational events on a wide variety of subjects, and from a wide variety of viewpoints."

You were right.  That is why we look forward to finalizing the speaker engagement contract with Dr. Bazian's signature.

And we look forward to Dr. Bazian's appearance at ASU on April 3rd.


Sincerely,

José A. Cárdenas
Sr. Vice President and General Counsel
Arizona State University

# Exhibit L

## Ensign, Drew

| | |
|---|---|
| **From:** | Jose Cardenas (General Counsel) <jcardenas@asu.edu> |
| **Sent:** | Tuesday, March 13, 2018 5:27 PM |
| **To:** | Gadeir Abbas; Ensign, Drew; Carolyn Homer; Lena F. Masri, Esq.; raees@kellywarnerlaw.com |
| **Cc:** | Roysden, Beau; Skinner, OH; Nancy Tribbensee; Lisa Loo |
| **Subject:** | RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670 |
| **Attachments:** | SpeakerAgreement 12.13.17 revised.pdf |

Gadeir, I've reviewed your e-mail exchange with Drew.

For the reasons set forth in the e-mail I sent you on March 8, I completely disagree with your position that the "compliance with all applicable laws" provision in the contract means the no boycott clause, which is not in the contract, nevertheless applies to the April 3rd speaking engagement.  I also made clear that ASU had no intentions of applying that clause to this agreement.  Given the Attorney General's concurrence, I thought we were done.

I was surprised that we did not get a prompt response from you and even more surprised to see that you continue to insist that the "all applicable laws" provision means we still have a dispute.

But rather than continue that debate, I have a simple solution that avoids the need for a stipulation and that resolves your clients' concerns.  I've deleted what was paragraph 6 of the December 2017 contract to eliminate the clause regarding compliance with all applicable laws.

I trust that this will resolve all issues and that we can now focus on the April 3rd event.

Please confirm by noon EST that your clients will sign the attached revised agreement and then please get it back to us as soon as possible.

Thanks.

José A. Cárdenas

---

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Tuesday, March 13, 2018 2:58 PM
**To:** Ensign, Drew <Drew.Ensign@azag.gov>; Carolyn Homer <cHomer@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau <Beau.Roysden@azag.gov>; Skinner, OH <O.H.Skinner@azag.gov>; Jose Cardenas (General Counsel) <jcardenas@asu.edu>; Nancy Tribbensee <Nancy.Tribbensee@azregents.edu>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Hi Drew,

I apologize if you feel that we've not been communicative.  That hasn't been intentional, and I emphasize that I'm always happy to hop on the phone with any of you.  My cell is listed below.

As I communicated to Jose, we've been very surprised by the defendants' position that the law does not apply.  We're not the only ones: https://www.thefire.org/arizonas-anti-bds-statute-lands-arizona-state-university-in-federal-court/

Certainly, if we thought the law allowed for any room for the defendants to negotiate, we would have discussed it.  Given your representations, we remain open to resolving the preliminary injunction piece of this case.

I will note that accusations that either I or our plaintiffs have lied or misled the court do not facilitate conversations among  us.  And with this email, we've now been accused—wrongly, and it is demonstrable—of lying by counsel for most of the defendants.  It's offensive, and not helpful to resolving this matter or maintaining professional courtesy among the attorneys, for you to claim that the statements that I made somehow render our plaintiffs' declarations false.  But if your strategy is to pursue such ad hominem attacks, it will just highlight the anti-free speech nature of Arizona's BDS law and the state's hail-mary attempts to defend it.

Putting your personal attacks to the side, to resolve this short of a court hearing, we're not willing to simply rely upon attorney-representations.  With respect to the April 3rd event, we remain concerned that, having removed the explicit BDS provision from the contract, the defendants intend for the general catch-all provision to envelope the BDS law.  Indeed, that is how we read it.  And we believe that is a fair reading of it, given the clarity of the BDS law's language.

We've attached a draft stipulation that we believe would allow our plaintiffs to come to ASU on April 3rd without violating their rights.  All current parties would be bound.

We await your thoughts on it.  If you'd like to discuss it by phone, please advise.

Regards,


Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

Licensed to practice in VA, not in DC.
Practice limited to federal matters.

*[This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.]*

WEB | FACEBOOK | TWITTER

**From:** Ensign, Drew [mailto:Drew.Ensign@azag.gov]
**Sent:** Tuesday, March 13, 2018 3:28 PM
**To:** Carolyn Homer <cHomer@cair.com>; Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau <Beau.Roysden@azag.gov>; Skinner, OH <O.H.Skinner@azag.gov>; 'Jose Cardenas (General Counsel)'

<jcardenas@asu.edu>; Nancy Tribbensee <Nancy.Tribbensee@azregents.edu>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir, Lena, and Carolyn,

On behalf of the Attorney General, we request that you withdraw your request for an expedited hearing (Doc. 10).  In light of the factual developments outlined in Jose's March 8 email (copied below) and our March 8 filing with the Court (Doc. 17)—both 5 days ago—there can be no uncertainty as to whether Dr. Bazian and American Muslims for Palestine ("AMP") will be able to speak at the April 3 event.  They will be.  We therefore do not believe there is any basis for Plaintiffs to continue seeking an expedited hearing.  We ask that you let us know by noon EDT tomorrow whether you will be withdrawing your request so that we can seek relief from the Court as may be necessary.  We also request that you let us know by the same time whether you will be amending/refiling your motion for a preliminary injunction and supporting declarations to correct statements therein that, as discussed below, now appear false in light of statements you have made to the press.

Although you have not responded to Jose's email or our court filing last Thursday, Gadeir has been quoted in the press as stating *inter alia*:  "The lawsuit's about the law, not the April 3 event." (attached)  Given that admission, we do not understand how there could be any need for an expedited hearing, which explicitly was based on Dr. Bazian's and AMP's ability to speak at the April 3 event.  Doc. 10 at 2.  Indeed, whatever the merits of that request when filed, it has become clear that the request is now thoroughly unwarranted.

On a related note, we will also confess our frustration that you have failed to communicate with us directly and instead have done so almost exclusively through the press.  For example, your complaint was filed late on March 1 and CAIR released a press release and held a press conference the next day.  (https://www.cair.com/press-center/press-releases/15009-cair-defends-free-speech-in-lawsuit-challenging-arizona-bds-law.html).  But you did not serve us until late on March 5, and only then because we affirmatively reached out to you to request service after we received notice of your complaint through press inquiries.  Similarly, you have ducked responding to Jose's email for 5 days now, but have apparently been willing to respond to the substance of his email to reporters.

We therefore request that, as a matter of professional courtesy, you speak directly to us about your positions on pending matters in this case and avoid having us receive notice of your positions belatedly and indirectly through the press.

We are also writing to provide you notice that we believe Gadeir's statement to the press is—at a bare minimum—in sharp tension with the duty of candor owed to the Court.  You represented to the Court that "The 'No Boycott of Israel' clause in ASU's standard speaker agreement is, to Plaintiffs' knowledge, the only institutional and legal roadblock to their participation in the scheduled April 3, 2018 event."  Doc. 9-1 at 5.  However, your recent press statement indicates that you now apparently object to the "applicable law" clause, although that same clause appeared in the contracts that you were sent previously—and attached in court filings.  *See* Doc. 9-2 Ex. A at 2 ¶6; Doc. 9-3 Ex. A at 2 ¶6.  You thus had full knowledge of the "applicable law" clause of paragraph 6, but nonetheless represented to the Court that the only obstacle to Plaintiffs speaking at the April 3 event was the "No Boycott of Israel" clause.

In light of your press statements, this representation to the Court now appears to be false.  If that press statement reflects your current legal position, we ask that you confirm that you will be withdrawing and/or correcting your motion for a preliminary injunction to correct what now appears to be a false statement to the Court.  We similarly note that the declarations of both Dr. Bazian and Taher Herzallah may now contain false statements under oath as well.  *See* Doc. 9-2 at 3 ¶8; Doc. 9-2 at 3 ¶16.  Relatedly, we note that this apparent deviation between the positions in the declarations and current facts underscores the need for depositions in this case.  The State should be permitted to examine these deviations as well as why the declarants did not originally object to the "applicable law" clauses.

In light of the exigency created by your request for an expedited hearing, we request that you let us know your positions on these matters by noon EDT tomorrow.  If you do not do so, we will assume that (1) Gadeir's statements to the press accurately reflect Plaintiffs' current legal positions, (2) Plaintiffs will not be withdrawing your request for an expedited hearing, and (3) Plaintiffs will not be correcting what appears to be false statements to the Court.  On that assumption, we will seek relief as appropriate from the Court.

Sincerely,
Drew

Drew C. Ensign
Senior Litigation Counsel



Office of the Attorney General
Government Accountability & Special Litigation
2005 N. Central Ave., Phoenix, AZ 85004
Direct: 602-542-5200 | Fax: 602-542-4377
Drew.Ensign@azag.gov

CONFIDENTIALITY NOTICE:  This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

---

**From:** Jose Cardenas (General Counsel)
**Sent:** March 8, 2018 8:51 AM
**To:** 'Carolyn Homer' <cHomer@cair.com>; Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>
**Cc:** raees@kellywarnerlaw.com; Anne Griffith <anne@kellywarnerlaw.com>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Carolyn, Gadeir and Lena, this is a follow up to our discussion on Tuesday afternoon.  I have also copied your local counsel.

We appreciate your courtesy in discussing your lawsuit with us and in listening to the reasons we gave as to why it should be withdrawn.  While you did not agree with us on Tuesday, I am hopeful that upon further consideration of what we said and what is set forth here you will now agree that there is no dispute between ASU and your clients.

To be clear, for all of the reasons we discussed on Tuesday and as set forth below, ASU has no intentions of enforcing the statute that is the subject of your lawsuit and it will not be a bar to the April 3rd event.  The statute simply does not apply in this context and that is why we removed it from our speaker engagement form contract.

As we told you, and as you know from press reports, your lawsuit is based on an outdated version of our speaker engagement form contract.  The form was revised in December of 2017 and the no boycott of Israel provision to which you object was removed.  That version of the contract is attached.

Lisa Loo, ASU's Vice President for Legal Affairs and Deputy General Counsel, tried to contact you and your local counsel last Friday before your scheduled press conference to tell you that the no boycott provision does not apply to the April 3rd event, but was not able to reach anyone.  ASU, however, did make its position publicly  known that same day and we will continue to do so.

That fact that our speaker engagement form does not have the boycott provision should in and of itself dispose of this lawsuit.

First, the relief you seek is an injunction "striking the 'No Boycott of Israel" clause from Defendants' standard speaker contract."

There is nothing to strike because the clause is not there.

Second, Dr. Bazian, in paragraph 16 of the affidavit attached to your complaint, said he would sign the contract if it did not have the provision to which he objects:

4

"I have no objection to Arizona State University's 'Speaker/Artist/Performer Agreement' other than Paragraph 20, the 'No Boycott of Israel' clause.  I have already blocked off April 3, 2018 on my calendar for attendance at the Muslim Students Association's BDS event at Arizona State University.  If the 'No Boycott of Israel' clause is stricken or declared unenforceable, I will sign the Agreement, enabling me to speak at the April 3, 2018 event."

If Dr. Bazian meant what he said, he should be willing to sign the contract because it does not have the clause he said prevents him from signing.

When we spoke, Gadeir came up with a new theory as to why the lawsuit should nevertheless proceed.  You said that Dr. Bazian will not sign the contract because it also includes a provision about compliance with all Arizona laws.  You contend that incorporates the no boycott provision of state law and therefore we still have something to argue about.

Again, there are several flaws in this logic:

1) That argument is contrary to your client's position.

2) The provision you reference actually refers to "all **applicable**" laws.

    a. The no boycott provision does not apply to having Dr. Bazian speak at ASU, so there should be no further issues.

    b. As I told you I would, I spoke to the lawyers in the Attorney-General's office who are handling this matter. I am authorized to tell you that they agree that the no boycott clause would not apply to Dr. Bazian or any other speaker at the April 3rd event.

    c. The argument puts CAIR in the rather odd position of telling ABOR and ASU that they have to follow a state law to which you object and that we independently concluded does not apply.  And now you know that the only other defendant agrees with our position.

3) A further flaw is that the obligation the "no boycott" statute imposes in the first instance is upon the public entity and not upon the other party to the contract.  It requires the public entity to include that provision if applicable. If the clause is not there, we never get to the issue of whether your client has to agree to the certification.

4) Thus, to the extent you're saying the reference to all laws means the boycott provision applies, what you're really saying is it has to be in the contract. That leaves you in the rather strange position of demanding the inclusion of the provision or inserting it yourself so that you can then say your client won't comply because it's now in the contract.

Gadeir, you were quoted on a local news posting as saying that your clients "hope ASU will come to its senses and allow the April 3rd event to go forward."

At the moment, the only thing that is preventing the April 3rd event from going forward is your tortured legal analysis and your insistence on creating a dispute where none exists.  If you insist on proceeding, I can well imagine the Judge asking, "why are we here?"

With all due respect, it is you and your colleagues who need to come to your senses and not waste the time and resources of the parties and the court and, more importantly, deprive ASU students and others of the opportunity to hear from Dr. Bazian.

As I told you when we spoke, ASU's commitment to free speech is long standing and deep.  That is why FIRE (Foundation for Individual Rights in Education) has lauded ASU as one of only 38 institutions in the entire country to earn its highest, "green light" rating for campus free speech.

Paragraph 30 of your complaint similarly notes that ASU is "committed to academic freedom, and to providing an open venue for student organizations to invite outside speakers and host educational events on a wide variety of subjects, and from a wide variety of viewpoints."

You were right.  That is why we look forward to finalizing the speaker engagement contract with Dr. Bazian's signature.

And we look forward to Dr. Bazian's appearance at ASU on April 3rd.


Sincerely,

José A. Cárdenas
Sr. Vice President and General Counsel
Arizona State University



## SPEAKER/ARTIST/PERFORMER AGREEMENT

This Agreement is entered into as of _____, 20__, between the Arizona Board of Regents acting for and on behalf of Arizona State University (ASU) and _____ [1] (Speaker), or _____, a _____ _____ _____, [2] as the authorized agent for Speaker.  If Speaker is represented by an authorized agent, then references to Speaker herein will also refer to the authorized agent, where appropriate.

1.  <u>Engagement; Event</u>.  ASU hereby engages Speaker to personally provide the following services, and Speaker agrees to personally provide to ASU the following services (the <u>Presentation</u>) at the following Event (the <u>Event</u>):

    Event/Location: _____

    Dates and times of Event:_____

    Speaker's Presentation schedule: _____

    Title of Speaker's Presentation: _____

    Speaker's hospitality requirements: _____

    Speaker's technical requirements: _____

2.  <u>Notice</u>.  Any communication or notice required under this Agreement will be in writing and may either be given by personal delivery or sent, in all cases, against receipt, addressed to the following:

| If to ASU: | If to Speaker: |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| Attn: _____ | Attn: _____ |
| Email: _____ | Email: _____ |

    Notice will be deemed to be received upon actual receipt (or refusal of receipt) by the receiving party.

3.  <u>Speaker Warranty</u>.  Speaker warrants that at all times during the Event, Speaker will personally provide Speaker's best professional efforts. Speakers' professional credentials are such that Speaker can provide the Presentation in a knowledgeable and professional manner.

4.  <u>Payment.</u>  ASU will pay Speaker the all-inclusive fee of $_____ upon completion of the Presentation. Speaker will complete a Substitute W-9 Form, which must be signed by the person or entity to whom payment is to be issued. ASU will issue all payment in accordance with the information on the completed and signed Substitute W-9 Form.

5.  <u>Acceptance of Agreement</u>.  Speaker will accept and return this Agreement to ASU no later than _____, 20__. In all events, this Agreement must be fully signed and received at ASU at least one week prior to the Event to allow on-time payment. This Agreement must be fully signed before payment can be processed. Please return a signed copy of this Agreement to ASU at the address set forth in Section 2.

---

[1]  If an authorized agent is signing, please be sure to fill in the speaker name as well.
[2]  Include full legal name of authorized agent, state of formation, and type of entity (i.e.; ABC, Inc., an Arizona Corporation.)

OGC 12.13.17

6.  <u>Press Materials</u>.  Speaker will timely supply all press/promotion material requested by ASU.

7.  <u>Indemnity</u>.  Speaker will indemnify, defend, save and hold ASU harmless for, from, and against, any all claims, demands, suits, costs and damages (including reasonable attorneys' fees) that ASU may incur by reason of any: (a) actual or alleged infringement or violation of any copyright, or other proprietary right by Speaker; (b) claim for damages arising from Speaker's Presentation; or (c) any of Speaker's costs and liabilities arising out of the Presentation or Event, including without limitation: travel and meal expenses; union dues; taxes; agents' commissions or other expenses or obligations; damages to Speaker's equipment or materials; compensation to third parties engaged by Speaker; compensation for lost or stolen equipment or materials; workers compensation or other insurance; and any expenses not preapproved by ASU in writing.

8.  <u>Indemnification and Liability Limitation</u>.  Because ASU is a public institution, any indemnification, liability limitation, releases, or hold harmless provisions are limited as required by Arizona law, including Article 9, Sections 5 and 7 of the Arizona Constitution and Arizona Revised Statutes (<u>ARS</u>) §§ 35-154 and 41-621. ASU's liability under any claim for indemnification is limited to claims for property damage, personal injury, or death to the extent caused by acts or omissions of ASU.

9.  <u>Force Majeure</u>.  Neither Speaker nor ASU shall be liable to each other for failure to perform hereunder if failure is caused by civil tumult, strike, epidemic, or any other cause beyond the reasonable control of the parties (<u>Force Majeure</u>). The ingestion of alcohol, opioids, illegal substances, or the like, will not be deemed an event of Force Majeure. If the Event or Presentation is cancelled due to an event of Force Majeure, the parties will make reasonable efforts to reschedule, if feasible.

10. <u>Cancellation</u>. If either party cancels this Agreement or the Presentation, other than due to an event of Force Majeure the other party will have all remedies afforded by law and in equity. In addition, if ASU cancels the Event or the Presentation, ASU will reimburse Speaker for reasonable expenses incurred in preparation for the Presentation up to the date ASU provides notice of cancellation.

11. <u>Liability; Insurance</u>.  Speaker, at its expense, will procure and maintain, for the duration of the Event, a policy of commercial general liability insurance in an amount of not less than $1,000,000, single limit, against claims for bodily injury, death and property damage occurring in connection with the Event and the Presentation. This insurance must name the Arizona Board of Regents, Arizona State University, and the State of Arizona as additional insureds. Speaker must provide ASU with a certificate evidencing this insurance coverage no later than 10 days prior to the Presentation.

12. <u>No Assignment</u>.  Neither party may assign any rights or obligations under this Agreement without the prior written consent of the other party.

13. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter. No prior or contemporaneous agreement or understanding will be effective.

14. <u>Governing Law and Venue</u>.  This Agreement will be governed by the laws of the State of Arizona. ASU's obligations are subject to the regulations/policies of the Arizona Board of Regents. Any proceeding arising out of or relating to this Agreement will be conducted in Maricopa County, Arizona. Speaker consents to such jurisdiction, and waives objection to venue or convenience of forum.

15. <u>Independent Contractor</u>.  Speaker is an independent contractor and is not an employee of ASU. Neither Speaker nor any personnel of Speaker will for any purpose be considered employees or agents of ASU. Speaker assumes full responsibility for the actions of Speaker's personnel, and is solely responsible for their

supervision, direction and control, payment of salary and expenses (including withholding income taxes and social security), worker's compensation, and disability benefits.

16. <u>Recordings; Use of Name and Likeness</u>.  Both parties may record the Presentation for internal records. No recording of the Presentation, either visual or audio, will be made by or on behalf of Speaker for the purposes of profit or significant distribution without prior written approval from ASU. ASU may require an additional payment for the privilege, and may require Speaker to sign a filming/recording agreement. ASU may record the Presentation on video tape, audio tape, film, photograph or any other medium, use Speaker's name, likeness, voice and biographical material in connection with these recordings for purposes within the ASU mission, including education and research, and exhibit or distribute the recording in whole or in part without restrictions or limitation for any educational or promotional purpose that ASU deems appropriate.

17. <u>No Revenue Sharing</u>.  Speaker will not participate in any revenues associated with the Presentation or Event. This includes: sponsorship, ticketing, ticketing fees, ASU concessions revenues, and any other revenue streams that may be associated with the Event.

18. <u>Non-discrimination</u>.  The parties will comply with all applicable laws, rules, regulations, and executive orders governing equal employment opportunity, immigration, and nondiscrimination, including the Americans with Disabilities Act. **If applicable, the parties will abide by the requirements of 41 CFR §§ 60-_1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability**.

19. <u>Conflicts of Interest</u>.  If within 3 years after the execution of this Agreement, Speaker hires as an employee or agent any ASU representative who was significantly involved in negotiating, securing, drafting, or creating this Agreement, then ASU may cancel this Agreement as provided in ARS § 38-511. Notice is also given of ARS §§ 41-2517 and 41-753.

20. <u>Arbitration in Superior Court</u>.  The parties agree to arbitrate disputes filed in Arizona Superior Court that are subject to mandatory arbitration pursuant to ARS § 12-133. ARS § 12-1518 requires this provision in all ASU agreements.

21. <u>Records</u>.  To the extent required by ARS § 35-214, the non-ASU parties to this Agreement will retain all records relating to this Agreement. Speaker will make those records available at all reasonable times for inspection and audit by ASU or the Auditor General of Arizona during the term of this Agreement and for 5 years after the completion of this Agreement. The records will be provided at ASU in Tempe, Arizona, or another location designated by ASU on reasonable notice to Speaker.

22. <u>Failure of Legislature to Appropriate.</u>  In accordance with ARS § 35-154, if ASU's performance under this Agreement depends on the appropriation of funds by the Arizona Legislature, and if the Legislature fails to appropriate the funds necessary for performance, ASU may provide written notice of this to Speaker and cancel this Agreement without further obligation of ASU. Appropriation is a legislative act and is beyond ASU's control.

23. <u>Weapons, Explosives, and Fireworks</u>. ASU prohibits the use, possession, display or storage of any weapon, explosive device or fireworks on all land and buildings owned, leased, or under the control of ASU or its affiliated entities, in all ASU residential facilities (whether managed by ASU or another entity), in all ASU

vehicles, and at all ASU or ASU affiliate sponsored events and activities, except as provided in ARS § 12-781, or unless written permission is given by ASU's Police Chief or a designated representative. Speaker will notify all persons or entities who are employees, officers, subcontractors, consultants, agents, guests, invitees or licensees of Speaker of this policy, and Speaker will enforce this policy against all such persons and entities. ASU's policy is at asu.edu/aad/manuals/pdp/pdp201-05.html.

24. Privacy; Educational Records. Student educational records are protected by the U.S. Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (FERPA). Speaker will not require any ASU students or employees to waive any privacy rights (including under FERPA or the European Union's General Data Protection Regulation (GDPR)) as a condition for receipt of any educational services, and any attempt to do so will be void. Speaker will comply with FERPA and will not access or make any disclosures of student educational records to third parties without prior notice to and consent from ASU or as otherwise provided by law. If this Agreement requires or permits Speaker to access or release any student records, then, for purposes of this Agreement only, ASU-designates Speaker as a "school official" for ASU under FERPA, as defined in FERPA and its implementing regulations. In addition, any access or disclosures of student educational records by Speaker or any Speaker Parties must comply with ASU's definition of legitimate educational purpose. If Speaker violates this section, Speaker will immediately notify ASU.

25. Authorized Presence Requirements.  As required by ARS § 41-4401, ASU is prohibited from awarding a contract to any contractor or subcontractor that fails to comply with ARS § 23-214(A) (verification of employee eligibility through the e-verify program). Speaker warrants that it and its subcontractors comply fully with all applicable immigration laws, rules, and regulations that relate to their employees and their compliance with ARS § 23-214(A). A breach of this warranty will be a material breach of this Agreement that is subject to penalties up to and including termination. ASU retains the right to inspect the papers of any contractor or subcontractor employee hereunder to ensure compliance with this warranty.

26. Tobacco-Free University.  ASU is tobacco-free. For details visit asu.edu/tobaccofree.

27. Authority. If an individual or entity signs below on behalf of Speaker, such signatory represents and warrants that he/she/it has full and current authority to act and contract on behalf of Speaker and obligate Speaker, and that this Agreement is binding upon and enforceable against Speaker and the undersigned (if not Speaker) in accordance with its terms.

PRINT NAME OF SPEAKER OR
AGENT OF SPEAKER

ARIZONA BOARD OF REGENTS FOR AND ON
BEHALF OF ARIZONA STATE UNIVERSITY

_____

_____          _____
Signature                                 Signature

_____          _____
Signatory Name                            Signatory Name

_____          _____
Signatory Title                           Signatory Title

_____          _____
Date Signed                               Date Signed

OGC 12.13.17

# Exhibit M

**Ensign, Drew**

| | |
|---|---|
| **From:** | Gadeir Abbas <gAbbas@cair.com> |
| **Sent:** | Tuesday, March 13, 2018 2:58 PM |
| **To:** | Ensign, Drew; Carolyn Homer; Lena F. Masri, Esq.; raees@kellywarnerlaw.com |
| **Cc:** | Roysden, Beau; Skinner, OH; 'Jose Cardenas (General Counsel)'; Nancy Tribbensee; Lisa Loo |
| **Subject:** | RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670 |
| **Attachments:** | Hatem v. AZ Draft Stipluation draft [for circulation].docx |

Hi Drew,

I apologize if you feel that we've not been communicative. That hasn't been intentional, and I emphasize that I'm always happy to hop on the phone with any of you. My cell is listed below.

As I communicated to Jose, we've been very surprised by the defendants' position that the law does not apply. We're not the only ones: https://www.thefire.org/arizonas-anti-bds-statute-lands-arizona-state-university-in-federal-court/

Certainly, if we thought the law allowed for any room for the defendants to negotiate, we would have discussed it. Given your representations, we remain open to resolving the preliminary injunction piece of this case.

I will note that accusations that either I or our plaintiffs have lied or misled the court do not facilitate conversations among us. And with this email, we've now been accused—wrongly, and it is demonstrable—of lying by counsel for most of the defendants. It's offensive, and not helpful to resolving this matter or maintaining professional courtesy among the attorneys, for you to claim that the statements that I made somehow render our plaintiffs' declarations false. But if your strategy is to pursue such ad hominem attacks, it will just highlight the anti-free speech nature of Arizona's BDS law and the state's hail-mary attempts to defend it.

Putting your personal attacks to the side, to resolve this short of a court hearing, we're not willing to simply rely upon attorney-representations. With respect to the April 3rd event, we remain concerned that, having removed the explicit BDS provision from the contract, the defendants intend for the general catch-all provision to envelope the BDS law. Indeed, that is how we read it. And we believe that is a fair reading of it, given the clarity of the BDS law's language.

We've attached a draft stipulation that we believe would allow our plaintiffs to come to ASU on April 3rd without violating their rights. All current parties would be bound.

We await your thoughts on it. If you'd like to discuss it by phone, please advise.

Regards,

Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE

Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

Licensed to practice in VA, not in DC.
Practice limited to federal matters.

*[This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.]*

WEB | FACEBOOK | TWITTER

---

**From:** Ensign, Drew [mailto:Drew.Ensign@azag.gov]
**Sent:** Tuesday, March 13, 2018 3:28 PM
**To:** Carolyn Homer <cHomer@cair.com>; Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; raees@kellywarnerlaw.com
**Cc:** Roysden, Beau <Beau.Roysden@azag.gov>; Skinner, OH <O.H.Skinner@azag.gov>; 'Jose Cardenas (General Counsel)' <jcardenas@asu.edu>; Nancy Tribbensee <Nancy.Tribbensee@azregents.edu>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Gadeir, Lena, and Carolyn,

On behalf of the Attorney General, we request that you withdraw your request for an expedited hearing (Doc. 10).  In light of the factual developments outlined in Jose's March 8 email (copied below) and our March 8 filing with the Court (Doc. 17)—both 5 days ago—there can be no uncertainty as to whether Dr. Bazian and American Muslims for Palestine ("AMP") will be able to speak at the April 3 event.  They will be.  We therefore do not believe there is any basis for Plaintiffs to continue seeking an expedited hearing.  We ask that you let us know by noon EDT tomorrow whether you will be withdrawing your request so that we can seek relief from the Court as may be necessary.  We also request that you let us know by the same time whether you will be amending/refiling your motion for a preliminary injunction and supporting declarations to correct statements therein that, as discussed below, now appear false in light of statements you have made to the press.

Although you have not responded to Jose's email or our court filing last Thursday, Gadeir has been quoted in the press as stating *inter alia*:  "The lawsuit's about the law, not the April 3 event." (attached)  Given that admission, we do not understand how there could be any need for an expedited hearing, which explicitly was based on Dr. Bazian's and AMP's ability to speak at the April 3 event.  Doc. 10 at 2.  Indeed, whatever the merits of that request when filed, it has become clear that the request is now thoroughly unwarranted.

On a related note, we will also confess our frustration that you have failed to communicate with us directly and instead have done so almost exclusively through the press.  For example, your complaint was filed late on March 1 and CAIR released a press release and held a press conference the next day.  (https://www.cair.com/press-center/press-releases/15009-cair-defends-free-speech-in-lawsuit-challenging-arizona-bds-law.html).  But you did not serve us until late on March 5, and only then because we affirmatively reached out to you to request service after we received notice of your complaint through press inquiries.  Similarly, you have delayed responding to Jose's email for 5 days now, but have apparently been willing to respond to the substance of his email to reporters.

We therefore request that, as a matter of professional courtesy, you speak directly to us about your positions on pending matters in this case and avoid having us receive notice of your positions belatedly and indirectly through the press.

We are also writing to provide you notice that we believe Gadeir's statement to the press is—at a bare minimum—in sharp tension with the duty of candor owed to the Court.  You represented to the Court that "The 'No Boycott of Israel' clause in ASU's standard speaker agreement is, to Plaintiffs' knowledge, the only institutional and legal roadblock to their participation in the scheduled April 3, 2018 event."  Doc. 9-1 at 5.  However, your recent press statement indicates that you now apparently object to the "applicable law" clause, although that same clause appeared in the contracts that you

were sent previously—and attached in court filings.  *See* Doc. 9-2 Ex. A at 2 ¶6; Doc. 9-3 Ex. A at 2 ¶6.  You thus had full knowledge of the "applicable law" clause of paragraph 6, but nonetheless represented to the Court that the only obstacle to Plaintiffs speaking at the April 3 event was the "No Boycott of Israel" clause.

In light of your press statements, this representation to the Court now appears to be false.  If that press statement reflects your current legal position, we ask that you confirm that you will be withdrawing and/or correcting your motion for a preliminary injunction to correct what now appears to be a false statement to the Court.  We similarly note that the declarations of both Dr. Bazian and Taher Herzallah may now contain false statements under oath as well.  *See* Doc. 9-2 at 3 ¶8; Doc. 9-2 at 3 ¶16.  Relatedly, we note that this apparent deviation between the positions in the declarations and current facts underscores the need for depositions in this case.  The State should be permitted to examine these deviations as well as why the declarants did not originally object to the "applicable law" clauses.

In light of the exigency created by your request for an expedited hearing, we request that you let us know your positions on these matters by noon EDT tomorrow.  If you do not do so, we will assume that (1) Gadeir's statements to the press accurately reflect Plaintiffs' current legal positions, (2) Plaintiffs will not be withdrawing your request for an expedited hearing, and (3) Plaintiffs will not be correcting what appears to be false statements to the Court.  On that assumption, we will seek relief as appropriate from the Court.

Sincerely,
Drew


Drew C. Ensign
Senior Litigation Counsel



Office of the Attorney General
Government Accountability & Special Litigation
2005 N. Central Ave., Phoenix, AZ 85004
Direct: 602-542-5200 | Fax: 602-542-4377
Drew.Ensign@azag.gov

CONFIDENTIALITY NOTICE:  This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

---

**From:** Jose Cardenas (General Counsel)
**Sent:** March 8, 2018 8:51 AM
**To:** 'Carolyn Homer' <cHomer@cair.com>; Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>
**Cc:** raees@kellywarnerlaw.com; Anne Griffith <anne@kellywarnerlaw.com>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Carolyn, Gadeir and Lena, this is a follow up to our discussion on Tuesday afternoon.  I have also copied your local counsel.

We appreciate your courtesy in discussing your lawsuit with us and in listening to the reasons we gave as to why it should be withdrawn.  While you did not agree with us on Tuesday, I am hopeful that upon further consideration of what we said and what is set forth here you will now agree that there is no dispute between ASU and your clients.

To be clear, for all of the reasons we discussed on Tuesday and as set forth below, ASU has no intentions of enforcing the statute that is the subject of your lawsuit and it will not be a bar to the April 3rd event.  The statute simply does not apply in this context and that is why we removed it from our speaker engagement form contract.

As we told you, and as you know from press reports, your lawsuit is based on an outdated version of our speaker engagement form contract. The form was revised in December of 2017 and the no boycott of Israel provision to which you object was removed. That version of the contract is attached.

Lisa Loo, ASU's Vice President for Legal Affairs and Deputy General Counsel, tried to contact you and your local counsel last Friday before your scheduled press conference to tell you that the no boycott provision does not apply to the April 3rd event, but was not able to reach anyone. ASU, however, did make its position publicly known that same day and we will continue to do so.

That fact that our speaker engagement form does not have the boycott provision should in and of itself dispose of this lawsuit.

First, the relief you seek is an injunction "striking the 'No Boycott of Israel" clause from Defendants' standard speaker contract."

There is nothing to strike because the clause is not there.

Second, Dr. Bazian, in paragraph 16 of the affidavit attached to your complaint, said he would sign the contract if it did not have the provision to which he objects:

"I have no objection to Arizona State University's 'Speaker/Artist/Performer Agreement' other than Paragraph 20, the 'No Boycott of Israel' clause. I have already blocked off April 3, 2018 on my calendar for attendance at the Muslim Students Association's BDS event at Arizona State University. If the 'No Boycott of Israel' clause is stricken or declared unenforceable, I will sign the Agreement, enabling me to speak at the April 3, 2018 event."

If Dr. Bazian meant what he said, he should be willing to sign the contract because it does not have the clause he said prevents him from signing.

When we spoke, Gadeir came up with a new theory as to why the lawsuit should nevertheless proceed. You said that Dr. Bazian will not sign the contract because it also includes a provision about compliance with all Arizona laws. You contend that incorporates the no boycott provision of state law and therefore we still have something to argue about.

Again, there are several flaws in this logic:

1) That argument is contrary to your client's position.

2) The provision you reference actually refers to "all **applicable**" laws.

   a. The no boycott provision does not apply to having Dr. Bazian speak at ASU, so there should be no further issues.

   b. As I told you I would, I spoke to the lawyers in the Attorney-General's office who are handling this matter. I am authorized to tell you that they agree that the no boycott clause would not apply to Dr. Bazian or any other speaker at the April 3rd event.

   c. The argument puts CAIR in the rather odd position of telling ABOR and ASU that they have to follow a state law to which you object and that we independently concluded does not apply. And now you know that the only other defendant agrees with our position.

3) A further flaw is that the obligation the "no boycott" statute imposes in the first instance is upon the public entity and not upon the other party to the contract. It requires the public entity to include that provision if

applicable. If the clause is not there, we never get to the issue of whether your client has to agree to the certification.

4)   Thus, to the extent you're saying the reference to all laws means the boycott provision applies, what you're really saying is it has to be in the contract. That leaves you in the rather strange position of demanding the inclusion of the provision or inserting it yourself so that you can then say your client won't comply because it's now in the contract.

Gadeir, you were quoted on a local news posting as saying that your clients "hope ASU will come to its senses and allow the April 3rd event to go forward."

At the moment, the only thing that is preventing the April 3rd event from going forward is your tortured legal analysis and your insistence on creating a dispute where none exists.  If you insist on proceeding, I can well imagine the Judge asking, "why are we here?"

With all due respect, it is you and your colleagues who need to come to your senses and not waste the time and resources of the parties and the court and, more importantly, deprive ASU students and others of the opportunity to hear from Dr. Bazian.

As I told you when we spoke, ASU's commitment to free speech is long standing and deep.  That is why FIRE (Foundation for Individual Rights in Education) has lauded ASU as one of only 38 institutions in the entire country to earn its highest, "green light" rating for campus free speech.

Paragraph 30 of your complaint similarly notes that ASU is "committed to academic freedom, and to providing an open venue for student organizations to invite outside speakers and host educational events on a wide variety of subjects, and from a wide variety of viewpoints."

You were right.  That is why we look forward to finalizing the speaker engagement contract with Dr. Bazian's signature.

And we look forward to Dr. Bazian's appearance at ASU on April 3rd.


Sincerely,

José A. Cárdenas
Sr. Vice President and General Counsel
Arizona State University

**CAIR LEGAL DEFENSE FUND**
Lena F. Masri (D.C. Bar # 100019) (*pro hac vice*)
Email:  lmasri@cair.com
Gadeir I. Abbas* (VA Bar # 81161) (seeking *pro hac vice admission*)
Email:  gabbas@cair.com
Carolyn M. Homer (D.C. Bar # 1049145) (*pro hac vice*)
Email: chomer@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax:    (202) 379-3317

**KELLY / WARNER, PLLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Raeesabbas Mohamed, Esq. (AZ Bar # 027418)
Email: raees@kellywarnerlaw.com
Phone: (480) 331-9397
Fax:    (866) 961-4984

*Attorneys for Plaintiffs*

   * *Licensed in VA, not in D.C.*
   *Practice limited to federal matters*

## UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA
### PHOENIX DIVISION

| | |
|---|---|
| **AMERICAN MUSLIMS FOR PALESTINE** and **DR. HATEM BAZIAN** | Case No.  CV-18-670-PHX-JJT |
| Plaintiffs, | **JOINT STIPULATION CONSENTING TO APRIL 3, 2018 EVENT, WITHDRAWING PRELIMINARY INJUNCTION MOTION, AND AMENDING CAPTION** |
| vs. | |
| **ARIZONA STATE UNIVERSITY**; **ARIZONA BOARD OF REGENTS**; and **MARK BRNOVICH**, in his official capacity as Attorney General of Arizona | |
| Defendants. | |

## JOINT STIPULATION

Plaintiffs and Defendants jointly stipulate to the following:

1.      The caption of the case shall be amended to remove Arizona State University ("ASU") as a defendant, given that Arizona Board of Regents has the capacity to be sued on ASU's behalf.  The two Defendants are now "Arizona Board of Regents" and "Mark Brnovich, in his official capacity as Attorney General of Arizona."

2.      Defendants will not enforce Ariz. Rev. Stat. § 35-393 *et seq.* against Plaintiffs in connection with their planned April 3, 2018 speaking engagement at Arizona State University.

3.      Defendants will accept Plaintiffs' signatures on the revised "Speaker / Artist / Performer Agreement," (*see* Dkt. 17-1) subject to the annotation on ¶ 6 that the Plaintiffs will comply with "all applicable…State…laws" except for Ariz. Rev. Stat. § 35-393 *et seq.*

4.      Defendant, Arizona Board of Regents, agrees that the "Speaker / Artist / Performer Agreement" is being entered into between Plaintiffs and Defendant, Arizona Board of Regents, and not any student association.

5.      The Arizona Board of Regents will not cancel or veto the April 3, 2018 event pursuant to Policy Number 5-202(C), or otherwise interfere with ASU's hosting of or Plaintiffs' participation at the April 3, 2018 speaking engagement, on the basis that the event does not adhere to Ariz. Rev. Stat. § 35-393 *et seq.*

6.      Plaintiffs will provide their signatures to the revised agreement by March 26, 2018.   So long as they do so, Defendants will permit Plaintiffs to

1   participate in the April 3, 2018 event at Arizona State University regarding the

2   Boycott, Divestment, and Sanctions movement.

3       7.    The Parties agree the correct legal interpretation of Ariz. Rev. Stat. §

4   35-393 *et seq.*, is a question of law for resolution by the Court and reserve all rights

5   to make any arguments about the lawfulness of Defendants' conduct and the

6   constitutionality of Ariz. Rev. Stat. § 35-393 *et seq*.

7       8.    In light of the foregoing, Plaintiffs hereby withdraw their Application

8   for a Preliminary Injunction (Dkt. 9) and Request for Preliminary Injunction

9   Hearing (Dkt. 10), without prejudice.

10

11  Dated:  April 10, 2018              **CAIR LEGAL DEFENSE FUND**

12                          By /s/ Draft _____
                                Lena F. Masri (D.C. Bar No. 100019)
13                               (*pro hac vice*)
                                Gadeir I. Abbas (VA Bar No. 81161)*
14                               (seeking *pro hac vice* admission)
                                Carolyn M. Homer (D.C. Bar No. 1049145)
15                               (*pro hac vice*)
                                453 New Jersey Ave., SE
16                              Washington, DC 20003
                                Phone: (202) 742-6420
17                              Fax:   (202) 379-3317

18                                  * *Licensed in VA, not in D.C.*
                                    *Practice limited to federal matters*
19
                                **KELLY / WARNER, PLLC**
20
21                          By /s/ Draft _____
                                Raes Mohamed, Esq. (AZ Bar # 027418)
22                              8283 N. Hayden Road, Suite 229
                                Scottsdale, Arizona 85258
23                              Phone: (480) 331-9397
                                Fax:    (866) 961-4984
24

*Attorneys for Plaintiffs*

Dated: April 10, 2018,

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By /s/ Draft
    Drew C. Ensign (No. 25462)
    Oramel H. (O.H.) Skinner (No. 32891)
    Brunn (Beau) W. Roysden III (No. 28698)
    Robert J. Makar (No. 033579)

*Attorneys for Defendant Mark Brnovich*
*in his official capacity as Attorney General*

By /s/ Draft
    Nancy Tribbensee (No. 011128)
    Senior Vice President and General Counsel
    José A. Cárdenas (No. 005632)
    Senior Vice President and General Counsel,
    ASU

*Attorneys for Defendant Arizona Board of*
*Regents*

# Exhibit N

**Ensign, Drew**

| | |
|---|---|
| **From:** | Ensign, Drew |
| **Sent:** | Tuesday, March 13, 2018 1:28 PM |
| **To:** | 'Carolyn Homer'; 'Gadeir Abbas'; 'Lena F. Masri, Esq.'; 'raees@kellywarnerlaw.com' |
| **Cc:** | Roysden, Beau; Skinner, OH; 'Jose Cardenas (General Counsel)'; 'Nancy Tribbensee'; 'Lisa Loo' |
| **Subject:** | RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670 |

Gadeir, Lena, and Carolyn,

On behalf of the Attorney General, we request that you withdraw your request for an expedited hearing (Doc. 10).  In light of the factual developments outlined in Jose's March 8 email (copied below) and our March 8 filing with the Court (Doc. 17)—both 5 days ago—there can be no uncertainty as to whether Dr. Bazian and American Muslims for Palestine ("AMP") will be able to speak at the April 3 event.  They will be.  We therefore do not believe there is any basis for Plaintiffs to continue seeking an expedited hearing.  We ask that you let us know by noon EDT tomorrow whether you will be withdrawing your request so that we can seek relief from the Court as may be necessary.  We also request that you let us know by the same time whether you will be amending/refiling your motion for a preliminary injunction and supporting declarations to correct statements therein that, as discussed below, now appear false in light of statements you have made to the press.

Although you have not responded to Jose's email or our court filing last Thursday, Gadeir has been quoted in the press as stating *inter alia*:  "The lawsuit's about the law, not the April 3 event." (attached)  Given that admission, we do not understand how there could be any need for an expedited hearing, which explicitly was based on Dr. Bazian's and AMP's ability to speak at the April 3 event.  Doc. 10 at 2.  Indeed, whatever the merits of that request when filed, it has become clear that the request is now thoroughly unwarranted.

On a related note, we will also confess our frustration that you have failed to communicate with us directly and instead have done so almost exclusively through the press.  For example, your complaint was filed late on March 1 and CAIR released a press release and held a press conference the next day.  (https://www.cair.com/press-center/press-releases/15009-cair-defends-free-speech-in-lawsuit-challenging-arizona-bds-law.html).  But you did not serve us until late on March 5, and only then because we affirmatively reached out to you to request service after we received notice of your complaint through press inquiries.  Similarly, you have ducked responding to Jose's email for 5 days now, but have apparently been willing to respond to the substance of his email to reporters.

We therefore request that, as a matter of professional courtesy, you speak directly to us about your positions on pending matters in this case and avoid having us receive notice of your positions belatedly and indirectly through the press.

We are also writing to provide you notice that we believe Gadeir's statement to the press is—at a bare minimum—in sharp tension with the duty of candor owed to the Court.  You represented to the Court that "The 'No Boycott of Israel' clause in ASU's standard speaker agreement is, to Plaintiffs' knowledge, the only institutional and legal roadblock to their participation in the scheduled April 3, 2018 event."  Doc. 9-1 at 5.  However, your recent press statement indicates that you now apparently object to the "applicable law" clause, although that same clause appeared in the contracts that you were sent previously—and attached in court filings.  *See* Doc. 9-2 Ex. A at 2 ¶6; Doc. 9-3 Ex. A at 2 ¶6.  You thus had full knowledge of the "applicable law" clause of paragraph 6, but nonetheless represented to the Court that the only obstacle to Plaintiffs speaking at the April 3 event was the "No Boycott of Israel" clause.

In light of your press statements, this representation to the Court now appears to be false.  If that press statement reflects your current legal position, we ask that you confirm that you will be withdrawing and/or correcting your motion for a preliminary injunction to correct what now appears to be a false statement to the Court.  We similarly note that the declarations of both Dr. Bazian and Taher Herzallah may now contain false statements under oath as well.  *See* Doc. 9-2 at 3 ¶8; Doc. 9-2 at 3 ¶16.  Relatedly, we note that this apparent deviation between the positions in the declarations and current facts underscores the need for depositions in this case.  The State should be permitted to examine these deviations as well as why the declarants did not originally object to the "applicable law" clauses.

In light of the exigency created by your request for an expedited hearing, we request that you let us know your positions on these matters by noon EDT tomorrow.  If you do not do so, we will assume that (1) Gadeir's statements to the press accurately reflect Plaintiffs' current legal positions, (2) Plaintiffs will not be withdrawing your request for an expedited hearing, and (3) Plaintiffs will not be correcting what appears to be false statements to the Court.  On that assumption, we will seek relief as appropriate from the Court.

Sincerely,
Drew


Drew C. Ensign
Senior Litigation Counsel



Office of the Attorney General
Government Accountability & Special Litigation
2005 N. Central Ave., Phoenix, AZ 85004
Direct: 602-542-5200 | Fax: 602-542-4377
Drew.Ensign@azag.gov

CONFIDENTIALITY NOTICE:  This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

---

**From:** Jose Cardenas (General Counsel)
**Sent:** March 8, 2018 8:51 AM
**To:** 'Carolyn Homer' <cHomer@cair.com>; Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>
**Cc:** raees@kellywarnerlaw.com; Anne Griffith <anne@kellywarnerlaw.com>; Lisa Loo <lisaloo@asu.edu>
**Subject:** RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670

Carolyn, Gadeir and Lena, this is a follow up to our discussion on Tuesday afternoon.  I have also copied your local counsel.

We appreciate your courtesy in discussing your lawsuit with us and in listening to the reasons we gave as to why it should be withdrawn.  While you did not agree with us on Tuesday, I am hopeful that upon further consideration of what we said and what is set forth here you will now agree that there is no dispute between ASU and your clients.

To be clear, for all of the reasons we discussed on Tuesday and as set forth below, ASU has no intentions of enforcing the statute that is the subject of your lawsuit and it will not be a bar to the April 3rd event.  The statute simply does not apply in this context and that is why we removed it from our speaker engagement form contract.

As we told you, and as you know from press reports, your lawsuit is based on an outdated version of our speaker engagement form contract.  The form was revised in December of 2017 and the no boycott of Israel provision to which you object was removed.  That version of the contract is attached.

Lisa Loo, ASU's Vice President for Legal Affairs and Deputy General Counsel, tried to contact you and your local counsel last Friday before your scheduled press conference to tell you that the no boycott provision does not apply to the April 3rd event, but was not able to reach anyone.  ASU, however, did make its position publicly  known that same day and we will continue to do so.

That fact that our speaker engagement form does not have the boycott provision should in and of itself dispose of this lawsuit.

First, the relief you seek is an injunction "striking the 'No Boycott of Israel' clause from Defendants' standard speaker contract."

There is nothing to strike because the clause is not there.

Second, Dr. Bazian, in paragraph 16 of the affidavit attached to your complaint, said he would sign the contract if it did not have the provision to which he objects:

"I have no objection to Arizona State University's 'Speaker/Artist/Performer Agreement' other than Paragraph 20, the 'No Boycott of Israel' clause.  I have already blocked off April 3, 2018 on my calendar for attendance at the Muslim Students Association's BDS event at Arizona State University.  If the 'No Boycott of Israel' clause is stricken or declared unenforceable, I will sign the Agreement, enabling me to speak at the April 3, 2018 event."

If Dr. Bazian meant what he said, he should be willing to sign the contract because it does not have the clause he said prevents him from signing.

When we spoke, Gadeir came up with a new theory as to why the lawsuit should nevertheless proceed.  You said that Dr. Bazian will not sign the contract because it also includes a provision about compliance with all Arizona laws.  You contend that incorporates the no boycott provision of state law and therefore we still have something to argue about.

Again, there are several flaws in this logic:

1) That argument is contrary to your client's position.

2) The provision you reference actually refers to "all **applicable**" laws.

   a. The no boycott provision does not apply to having Dr. Bazian speak at ASU, so there should be no further issues.

   b. As I told you I would, I spoke to the lawyers in the Attorney-General's office who are handling this matter. I am authorized to tell you that they agree that the no boycott clause would not apply to Dr. Bazian or any other speaker at the April 3rd event.

   c. The argument puts CAIR in the rather odd position of telling ABOR and ASU that they have to follow a state law to which you object and that we independently concluded does not apply.  And now you know that the only other defendant agrees with our position.

3) A further flaw is that the obligation the "no boycott" statute imposes in the first instance is upon the public entity and not upon the other party to the contract.  It requires the public entity to include that provision if applicable. If the clause is not there, we never get to the issue of whether your client has to agree to the certification.

4) Thus, to the extent you're saying the reference to all laws means the boycott provision applies, what you're really saying is it has to be in the contract. That leaves you in the rather strange position of demanding the inclusion of the provision or inserting it yourself so that you can then say your client won't comply because it's now in the contract.

Gadeir, you were quoted on a local news posting as saying that your clients "hope ASU will come to its senses and allow the April 3rd event to go forward."

At the moment, the only thing that is preventing the April 3rd event from going forward is your tortured legal analysis and your insistence on creating a dispute where none exists.  If you insist on proceeding, I can well imagine the Judge asking, "why are we here?"

With all due respect, it is you and your colleagues who need to come to your senses and not waste the time and resources of the parties and the court and, more importantly, deprive ASU students and others of the opportunity to hear from Dr. Bazian.

As I told you when we spoke, ASU's commitment to free speech is long standing and deep.  That is why FIRE (Foundation for Individual Rights in Education) has lauded ASU as one of only 38 institutions in the entire country to earn its highest, "green light" rating for campus free speech.

Paragraph 30 of your complaint similarly notes that ASU is "committed to academic freedom, and to providing an open venue for student organizations to invite outside speakers and host educational events on a wide variety of subjects, and from a wide variety of viewpoints."

You were right.  That is why we look forward to finalizing the speaker engagement contract with Dr. Bazian's signature.

And we look forward to Dr. Bazian's appearance at ASU on April 3rd.


Sincerely,

José A. Cárdenas
Sr. Vice President and General Counsel
Arizona State University

# YELLOW SHEET REPORT

BRIDGETOWER MEDIA © by Arizona Capitol Reports, LLC unless otherwise credited. All rights reserved.   **Monday, March 12, 2018**

## ·NEWS NOTES AND GOSSIP·

### ASU PUTS OUT THE WELCOME MAT



The Bd of Regents and the AG's office said the plaintiffs in a lawsuit alleging that a 2016 law barring the state from contracting with people who boycott Israel are free to speak at a pro-Palestine event on April 3. The plaintiffs had claimed that the law prohibits them from speaking at the ASU event. In a filing last week in US District Court, Drew Ensign, senior litigation counsel for the AG's office, wrote that ASU's Muslim Students Assn provided the wrong form to Dr. Hatem Bazian and American Muslims for Palestine when it invited them to speak at the event, and that the correct, updated version of the form does not include language requiring them to assert that they aren't engaged in a boycott of Israel. Ensign, who represents the AG's office and ABOR – ASU is not a party to the motion because it is a non-jural entity that cannot be sued – wrote that because Bazian and AMP's sole objection to signing the agreement was the anti-boycott language that was mistakenly included, both are, therefore, free to attend and speak at the event. Furthermore, Ensign wrote that the 2016 law barring the state and other public entities from contracting with people and organizations that participate in the boycott, divestment and sanctions (BDS) movement against Israel does not apply to speakers like Bazian and AMP because such guest speech does not qualify as a provision of services under the law. "Because plaintiffs will be able to speak at that event no matter what actions this court takes, no expedited hearing is either needed or warranted. The scarce resources of this court need not be consumed by a hearing that is now, by all available evidence, pointless," Ensign wrote. Ensign's motion included an email from ASU general counsel José Cárdenas to plaintiffs' attorney Gadeir Abbas, in which Cárdenas argued that the anti-BDS law would not bar Bazian and AMP from speaking at the April 3 event. "ASU has no intentions of enforcing the statute that is the subject of your lawsuit and it will not be a bar to April 3rd event. The statute simply does not apply in this context and that is why we removed it from our speaker engagement form contract," Cárdenas wrote. The attorney went on to note that Bazian said in an affidavit that, if the "no boycott of Israel clause" were removed from the contract, he would sign that agreement so he could speak at the event. "If Dr. Bazian meant what he said, he should be willing to sign the contract because it does not have the clause he said prevents him from signing," Cárdenas said. Ensign's legal arguments were laid out in a motion opposing the plaintiffs' request for an expedited hearing in the lawsuit, which Bazian and AMP's lawyer said was necessary because they wanted to speak at the April 3 event. Ensign wrote that Brnovich will use the same argument when he asks Judge John Tuchi to dismiss the case. A copy of Ensign's motion can be viewed in the "documents" section.

### BUT CAIR SAYS IT DOESN'T FEEL VERY WELCOME

Council on American-Islamic Relations attorney Gadeir Abbas isn't taking ASU, ABOR and the AG's office at their word, and argued that they're intentionally violating the anti-BDS law in order to avert a

lawsuit against it. Abbas told our reporter that he still believes the law applies, even if the explicit anti-boycott language was removed from the speaker agreement that the Muslim Students Assn sent to Bazian and AMP. "Defendants don't get to pick and choose their plaintiff," Abbas said. "They're hoping that by embedding an explicit requirement to abandon BDS activity into a general provision that requires adherence to state law they can avoid adjudication of this issue. That's not enough." The current version of the contract still requires signers to assert that they will abide by all applicable laws, and Abbas said that includes the anti-BDS law, even though ARS 35-393.01 places the onus of compliance on the public entities that contract for outside services, not the people who provide those services. "We are glad that ASU took a step in the right direction by removing the offending provision. But it's not far enough and it does not fully resolve the situation," Abbas said. The lawyer also said the lawsuit is about more than whether Bazian and AMP can speak at ASU. "The lawsuit's about the law, not the April 3 event. The law remains the problem," he said.

## HE DOESN'T SOUND CONVINCED

In his email to Abbas, Cárdenas took aim at his argument that the speaker agreement still includes the anti-BDS language by inference, which he called "a new theory as to why the lawsuit should nevertheless proceed" after Bazian and AMP were asked to sign the updated form without the anti-boycott language. Cárdenas noted that the agreement asks signers to abide by "all applicable laws," and the BDS law simply isn't applicable. He also noted that the anti-boycott language imposes an obligation on public entities, not other parties. "Gadeir, you were quoted on a local news posting that your clients 'hope ASU will come to its sense and allow the April 3rd event to go forward,'" Cárdenas wrote. "At the moment, the only thing that is preventing the April 3rd event from going forward is your tortured legal analysis and your insistence on creating a dispute where none exists. If you insist on proceeding, I can well imagine the Judge asking 'why are we here?'"

## DUCEY SAYS DETAILS ARE PENDING ON SCHOOL SAFETY PLAN

Ducey said there will be a school safety plan this legislative session. The governor told reporters today that he's still meeting with people on all sides of the issue and figuring out what the plan will contain and what form it will take. He said he's working with legislative leadership in both parties and expects a bipartisan plan, but wouldn't say definitively what form the plan will take, whether it be a bill, part of the budget or some other mechanism. "What we want to do is find the best way to move this through the Legislature and have it become the law of the land," he said. He again mentioned the idea of addressing background check loopholes, specifically looking at how city and county convictions end up in the national background check system, and finding a way to flag people who have shown themselves to be dangerous, as was the case for the shooter in Parkland, Florida, who had repeated reports to social services and law enforcement. "I'd like to remove all the guns away from the people that should not have the guns," he said. But he said any plan to do so will need to take due process into account. Ducey said school superintendents have told him they can sometimes identify a person who may be at risk of shooting up a school before it happens. And in those instances, he questioned, "Is there a tool with law enforcement or in legal statutes where we can act on that? That's what we're researching."

## IT'S EASIER TO GET REPUBLICAN VOTES IF IT'S NOT A 'GUN PLAN'

Ducey wouldn't say if his school safety plan, which he insisted was a "school safety" plan, not a "gun plan," will include any money. He said there will definitely be a plan this session, and there will definitely be a budget this session, which is, of course, required by law. "Much of what we're talking about is things we can partner with law enforcement on and work with the schools on. Other things do come with a cost. So we want to crunch the numbers before we raise expectations," he said.

## GUNS ARE FOR RESOURCE OFFICERS, NOT TEACHERS

There are a few ideas on guns Ducey likely won't include in whatever plan he comes up with. He has said multiple times that he doesn't like the idea of arming teachers, saying teachers should be spending their time teaching kids. Instead, he has pointed to the idea of school resource officers as those who should be in charge of student safety. He also said today he doesn't want to raise the age for gun purchases for assault rifles, an idea Trump floated in the days following the shooting in Parkland, Florida. He also didn't voice support for kids walking out of schools nationally and in Arizona this week and next week to protest inaction on gun safety. "I want to see kids inside schools. I want to see kids inside classrooms," he said, adding that Arizona is going to take a proactive approach on school safety.

## HOW DO YOU LIKE THEM APPLES?

Arizona Educators United, the group that encouraged people to wear red for K-12 education last week, has now attracted more than 30,000 members on Facebook. And even if they're not all ready to go on strike, the group has plans to keep the momentum from dissipating. Its first order of business this week was to pay the governor a visit at KTAR today, where he had an interview scheduled for the late afternoon. In a video posted to the Facebook page yesterday, the group's leadership announced it would attempt to present Ducey with a basket of apples after an interview with the station. "We'll just see if he accepts our offering," said organizer Rebecca Fligelman Garelli in the video. She asked teachers to show up at KTAR wearing red and carrying "Why I'm red for ed" signs. "What we're looking for [Monday] is for everyone to come together, be peaceful, be professional," she said. The bulk of the group will stay back on the sidewalk, she added, while a "small cohort" makes the offer to Ducey.

## HE LIKES THEM JUST FINE, APPARENTLY

Speaking to reporters earlier this afternoon, Ducey signaled he'd accept the gift from Arizona Educators United. "I'm going to be on the radio this afternoon. I'm going to be out in public," he said. "If people are there to give me apples, then I'll happily accept them and have a conversation."

## ·PRESS RELEASES AND NEWS CLIPS·

# Education Reformers Rally Behind Shawnna Bolick for the Arizona Legislature

Phoenix, AZ- March 12, 2018-  Today, a group of like-minded education reformers endorsed Shawnna Bolick for an open seat in the Arizona House of Representatives in Legislative District 20.  Here is what they had to say about candidate Bolick:

"We need elected officials who will put parents first over bureaucrats.  Shawnna Bolick has been a passionate voice for parental school choice for over two decades.  Her dedication to ensuring parents maintain control of their school children's curriculum is paramount.  I know Ms. Bolick will represent parents well once she's elected to the Arizona Legislature."

~ Jared Taylor

Member, State Board of Education

Gilbert Town Councilman

"In order for Arizona to prosper we need to return to the founding principles of our country - individual liberty, fiscal responsibility and free enterprise.  Shawnna Bolick is dedicated to these principles and she has common sense.  If we are going to win this battle over fiscal responsibility, we need more citizens like Shawnna serving in the Arizona Legislature."

~ Jean McGrath

current Member of Maricopa Community College District's Governing Board, District 4

former Central Arizona Project Board of Directors

former Arizona legislator

 "I heartily endorse Shawnna Bolick for the Legislative District 20 State House of Representatives because of her conservative philosophy and experience in all areas of education.  Her contributions to the legislative decision-making would resolve long-standing problems we now face.  She knows her stuff!"

~ Johanna Haver

current Member of Maricopa County Community College Governing Board, District 3

Bolick stated, "I am thankful for our continued support for our legislative run.  I have gotten to know these fine individuals through my community involvement.  I got to know Mr. Taylor while serving on the Arizona State Board of Education's Standards Committee and value his insights."  She added, "from Kindergarten to the community college level I believe we can give the power back to the consumer and away from the bureaucrats trying to control each and every decision meant for parents, teachers and students."

###

# Rep. McSally Leads Effort to Secure Resources to Combat Opioid Epidemic

*Urges Appropriators to Set Aside Billions in Budget to Stop Deadly Drug Crisis in High-Mortality Populations*

WASHINGTON, DC – U.S. Representative Martha McSally last week led other members of Congress in urging House appropriators to allocate billions of the budget to address the opioid crisis that has hit Arizona communities especially hard. Pima County in the Congresswoman's district had 356 overdoses in 2016, a rate almost twice as high as any other county in Arizona. According to the Arizona Department of Health Services, 790 Arizonans died from opioid overdoses in 2016. In the letter, the legislators requested the funds be targeted towards those areas most in need of assistance.

"It is clear that we must redouble our efforts to stop this disastrous and heartbreaking problem that is wreaking havoc on our communities and kills an average of 115 Americans every single day," the lawmakers write. "We are encouraged to hear that H.R. 1892 provides room for the appropriation of an additional few billion dollars for Fiscal Years 2018 and 2019 to continue the fight against the opioid crisis and improve mental health care. We ask that you target the funds towards those populations most in need including states with the highest per-capita overdose mortality rates, as well as tribal and rural areas."

Overdose deaths in Arizona increased by an alarming 74 percent over the past four years. The number of Americans killed by drug overdoses nearly doubled in the last decade.

Congresswoman McSally has consistently been a leader in the fight against opioid addictions, applauding the administration for declaring the opioid crisis a nationwide public health emergency last fall, spearheading legislation signed by the President, and voting for an increase of $781 million for fighting the opioid epidemic. Last Congress, Congresswoman McSally worked to include provisions in the 21st Century Cures Act that provide resources and training to law enforcement on the frontlines of dealing with this crisis. Additionally, Congress passed the Comprehensive Addiction and Recovery Act with Congresswoman McSally's support, to offer grants, treatment and prevention, and support for law enforcement in communities around the nation to combat this crisis.

Click HERE to see below for the full text of the letter.

The Honorable Tom Cole

Chairman

Subcommittee on Labor, Health and Human

Services, Education, and Related Agencies

2358-B Rayburn House Office Building
Washington, DC 20515

The Honorable Rosa DeLauro

Ranking Member

MARCH 12, 2018     PAGE 5
© BY ARIZONA CAPITOL REPORTS LLC  UNLESS OTHERWISE CREDITED

Subcommittee on Labor, Health and Human

Services, Education, and Related Agencies

1016 Longworth House Office Building

Washington, DC 20515

Dear Chairman Cole and Ranking Member De Lauro,

In light of the recent passage of H.R. 1892, the *Bipartisan Budget Act of 2018*, we write to express our strong support for the inclusion of potentially billions of dollars in additional resources to combat the opioid crisis. With the number of Americans killed by drug overdoses nearly doubling in the last decade, it is clear that we must redouble our efforts to stop this disastrous and heartbreaking problem that is wreaking havoc on our communities and kills an average of 115 Americans every single day.[1] That means this crisis claims nearly as many American lives in one year as the entire Korean War.

As you are aware, the *21st Century Cures Act* contained almost $1 billion in funding for the State Targeted Response to the Opioid Crisis Grants to help fight the opioid crisis. While these grants have begun to make a difference in our communities, we want to build on this effort. We are encouraged to hear in discussions that H.R. 1892 provides room for the appropriation of an additional few billion dollars for Fiscal Years 2018 and 2019 to continue the fight against the opioid crisis and improve mental health care. We want to ensure that these funds are appropriated and specifically targeted towards the areas and populations in the most need of assistance.

Despite recent efforts to target resources to those most in need, Native Americans and native Alaskans who had 500% increase in overdose deaths—have been left out of the conversation.[2] As you begin to appropriate the much needed additional funds to fight the opioid crisis, we ask that you target the funds towards those populations most in need including states with the highest per-capita overdose mortality rates, as well as tribal and rural areas. Please make sure that your appropriations legislation clearly states that these funds must be targeted to the areas and populations who need it most.

Sincerely,

Martha McSally

Member of Congress

Mike Bishop

Member of Congres

John J. Faso

Member of Congress

Claudia Tenney

Member of Congress

Paul A. Gosar D.D.S.

Member of Congress

Sean P. Duffy

Member of Congress

John Katko

Member of Congress

Ted Budd

Member of Congress

Luke Messer

Member of Congress

Chris Collins

Member of Congress

Keith J. Rothfus

Member of Congress

Elise M. Stefanik

*March 12, 2018*

Member of Congress
Kevin Cramer
Member of Congress

## Republican Wendy Rogers Gives Speech at Wall Prototypes Ahead of President Trump Visit

**Flagstaff, AZ** - Arizona 1st District Congressional candidate, Wendy Rogers, a conservative entrepreneur and retired Air Force pilot, who supported Donald Trump in the primaries, visited the border wall prototypes near the Mexican border this weekend just days ahead of President Trump's expected visit. After inspecting the wall prototypes, Wendy Rogers gave a speech detailing her determination to build the wall, end chain migration, and fight for other key conservative immigration initiatives when elected.

President Trump is expected to visit the wall prototypes this week, where he is expected to highlight his immigration initiatives, mainly to fund and build the wall.

A video of the speech Wendy Rogers gave can be found on [Rogers' Facebook page](#).

The full text of Rogers' speech is below:

"Good afternoon, I'm Wendy Rogers, Republican candidate for Arizona's 1st Congressional District.

I'm speaking to you from the prototypes of President Trump's border wall, which he is fighting hard to get funded and built. Our nation's sovereignty, security, and the rule of law should be top priority for any elected official in Washington DC.

Unfortunately, however, they are not. We don't enforce our laws.  We allow immigrants to enter our nation illegally. We allow drugs, crime, and gang activity to run rampant, especially on our southern border.

We lose billions due to fraud, waste, and abuse stemming from our immigration programs and subsidies. Wages of American workers continually decline because of suppressed wages from illegal immigration.

I served as an American Air Force officer. I know what security looks like. What we have now is a complete and utter mess. We are losing our sovereignty and our respect for the rule of law.

It's time to do something about it.

You see . . . we still have politicians who give double-talk . . . they talk about fences instead of the wall.They talk about amnesty for millions of illegal aliens in order to give us even a fraction of the wall. No! This is not what we the people voted for!

We have serious problems. Our nation will not last unless we fix this, and fix it now. No more double-talk.

Build the wall. No amnesty - immigrants must enter legally or not at all. Crackdown on sanctuary cities. Arrest elected officials who undermine our sovereignty. End chain migration, which is a corrosive policy that endangers innocent Americans. It should've have ended long ago.

End the visa lottery, so we don't have to worry about admitting terrorists. Keep the travel ban in place until countries can demonstrate they are civilized on the world stage. End foreign aid to countries who deplore us. Put E-verify in place to double-check workers who enter, so we can be sure they're legitimate. Crackdown on MS-13. Enforce our laws! We veterans understand what security looks like. We know you don't leave a section of your perimeter unprotected. We know there must be solid access control. And we know you need to remove bad actors. This is common sense!

America First. Arizona First. It is time to get this done. Col. Wendy Rogers - out."

Wendy Rogers is a retired Air Force officer who attained the rank of Lt. Col., became one of the U.S. military's first female pilots, is an entrepreneur and homeschool mom.

###

YELLOW SHEET REPORT
© BY ARIZONA CAPITOL REPORTS LLC  UNLESS OTHERWISE CREDITED

MARCH 12, 2018       PAGE 7

---

# Congressman Biggs Calls for House Passage of Right to Try Legislation

**GILBERT, ARIZONA –** Yesterday, House Majority Leader Kevin McCarthy announced that Right to Try would receive floor consideration this week. Congressman Biggs, the original sponsor of the introductory House version, released the following statement:

*"All Americans have the right and freedom to try to save their lives. The Right to Try Act is a significant bipartisan endeavor, having become law in 38 states. In 2014, Arizona voters passed this law with almost 80% of the vote. I am pleased that, after years in the making, this policy is being considered on the House floor tomorrow. Our bill will give some relief to terminally-ill patients who have no further options left to extend their lives, including Jordan McLinn, Trickett Wendler, Bertrand Might, Matt Bellina, and Diego Morris. These individuals – and countless others – deserve this hope.*

*"Right to Try legislation would not be possible without the persistent efforts of President Donald Trump, Vice President Mike Pence, Senator Ron Johnson, Congressman Brian Fitzpatrick, the Goldwater Institute, FreedomWorks, Americans For Prosperity, Laura and Jordan McLinn, former Congressman Matt Salmon, and dozens of my House colleagues.*

*"At a time when pundits are claiming that our politics are broken, that Republicans and Democrats can't come together on anything, here's a cause that Americans of all political persuasions believe in. I believe that the House will approve this legislation, that the Senate will swiftly pass this bill, and that President Trump will soon sign this act into law."*

###



"At the moment, the only thing that is preventing the April 3rd event from going forward is your tortured legal analysis and your insistence on creating a dispute where none exists. If you insist on proceeding, I can well imagine the judge asking, 'Why are we here?'"

*- ASU general counsel José Cárdenas, to CAIR attorney Gadeir Abbas, on whether state law prevents pro-Palestine speakers from participating in an event at the university.*

# Exhibit O

**Ensign, Drew**

| | |
|---|---|
| **From:** | Jose Cardenas (General Counsel) <jcardenas@asu.edu> |
| **Sent:** | Thursday, March 08, 2018 9:51 AM |
| **To:** | Carolyn Homer; Gadeir Abbas; Lena F. Masri, Esq. |
| **Cc:** | raees@kellywarnerlaw.com; Anne? Griffith; Lisa Loo |
| **Subject:** | RE: American Muslims for Palestine v. Arizona State University et. al, 2:18-cv-00670 |
| **Attachments:** | SpeakerArtistPerformer 2017.pdf |

Carolyn, Gadeir and Lena, this is a follow up to our discussion on Tuesday afternoon.  I have also copied your local counsel.

We appreciate your courtesy in discussing your lawsuit with us and in listening to the reasons we gave as to why it should be withdrawn.  While you did not agree with us on Tuesday, I am hopeful that upon further consideration of what we said and what is set forth here you will now agree that there is no dispute between ASU and your clients.

To be clear, for all of the reasons we discussed on Tuesday and as set forth below, ASU has no intentions of enforcing the statute that is the subject of your lawsuit and it will not be a bar to the April 3rd event.  The statute simply does not apply in this context and that is why we removed it from our speaker engagement form contract.

As we told you, and as you know from press reports, your lawsuit is based on an outdated version of our speaker engagement form contract.  The form was revised in December of 2017 and the no boycott of Israel provision to which you object was removed.  That version of the contract is attached.

Lisa Loo, ASU's Vice President for Legal Affairs and Deputy General Counsel, tried to contact you and your local counsel last Friday before your scheduled press conference to tell you that the no boycott provision does not apply to the April 3rd event, but was not able to reach anyone.  ASU, however, did make its position publicly  known that same day and we will continue to do so.

That fact that our speaker engagement form does not have the boycott provision should in and of itself dispose of this lawsuit.

First, the relief you seek is an injunction "striking the 'No Boycott of Israel" clause from Defendants' standard speaker contract."

There is nothing to strike because the clause is not there.

Second, Dr. Bazian, in paragraph 16 of the affidavit attached to your complaint, said he would sign the contract if it did not have the provision to which he objects:

"I have no objection to Arizona State University's 'Speaker/Artist/Performer' Agreement' other than Paragraph 20, the 'No Boycott of Israel' clause.  I have already blocked off April 3, 2018 on my calendar for attendance at the Muslim Students Association's BDS event at Arizona State University.  If the 'No Boycott of Israel' clause is stricken or declared unenforceable, I will sign the Agreement, enabling me to speak at the April 3, 2018 event."

If Dr. Bazian meant what he said, he should be willing to sign the contract because it does not have the clause he said prevents him from signing.

When we spoke, Gadeir came up with a new theory as to why the lawsuit should nevertheless proceed.  You said that Dr. Bazian will not sign the contract because it also includes a provision about compliance with all Arizona laws.  You contend that incorporates the no boycott provision of state law and therefore we still have something to argue about.

Again, there are several flaws in this logic:

1) That argument is contrary to your client's position.

2) The provision you reference actually refers to "all **applicable**" laws.

   a. The no boycott provision does not apply to having Dr. Bazian speak at ASU, so there should be no further issues.

   b. As I told you I would, I spoke to the lawyers in the Attorney-General's office who are handling this matter. I am authorized to tell you that they agree that the no boycott clause would not apply to Dr. Bazian or any other speaker at the April 3rd event.

   c. The argument puts CAIR in the rather odd position of telling ABOR and ASU that they have to follow a state law to which you object and that we independently concluded does not apply.  And now you know that the only other defendant agrees with our position.

3) A further flaw is that the obligation the "no boycott" statute imposes in the first instance is upon the public entity and not upon the other party to the contract.  It requires the public entity to include that provision if applicable. If the clause is not there, we never get to the issue of whether your client has to agree to the certification.

4) Thus, to the extent you're saying the reference to all laws means the boycott provision applies, what you're really saying is it has to be in the contract. That leaves you in the rather strange position of demanding the inclusion of the provision or inserting it yourself so that you can then say your client won't comply because it's now in the contract.

Gadeir, you were quoted on a local news posting as saying that your clients "hope ASU will come to its senses and allow the April 3rd event to go forward."

At the moment, the only thing that is preventing the April 3rd event from going forward is your tortured legal analysis and your insistence on creating a dispute where none exists.  If you insist on proceeding, I can well imagine the Judge asking, "why are we here?"

With all due respect, it is you and your colleagues who need to come to your senses and not waste the time and resources of the parties and the court and, more importantly, deprive ASU students and others of the opportunity to hear from Dr. Bazian.

As I told you when we spoke, ASU's commitment to free speech is long standing and deep.  That is why FIRE (Foundation for Individual Rights in Education) has lauded ASU as one of only 38 institutions in the entire country to earn its highest, "green light" rating for campus free speech.

Paragraph 30 of your complaint similarly notes that ASU is "committed to academic freedom, and to providing an open venue for student organizations to invite outside speakers and host educational events on a wide variety of subjects, and from a wide variety of viewpoints."

You were right.  That is why we look forward to finalizing the speaker engagement contract with Dr. Bazian's signature.

And we look forward to Dr. Bazian's appearance at ASU on April 3rd.


Sincerely,

José A. Cárdenas
Sr. Vice President and General Counsel
Arizona State University



# SPEAKER/ARTIST/PERFORMER AGREEMENT

This Agreement is entered into as of _____, 20__, between the Arizona Board of Regents acting for and on behalf of Arizona State University (ASU) and _____ [1] (Speaker), or _____, a _____ _____ _____, [2] as the authorized agent for Speaker.  If Speaker is represented by an authorized agent, then references to Speaker herein will also refer to the authorized agent, where appropriate.

1.  Engagement; Event.  ASU hereby engages Speaker to personally provide the following services, and Speaker agrees to personally provide to ASU the following services (the Presentation) at the following Event (the Event):

   Event/Location: _____

   Dates and times of Event:_____

   Speaker's Presentation schedule: _____

   Title of Speaker's Presentation: _____

   Speaker's hospitality requirements: _____

   Speaker's technical requirements: _____

2.  Notice.  Any communication or notice required under this Agreement will be in writing and may either be given by personal delivery or sent, in all cases, against receipt, addressed to the following:

   If to ASU:                                    If to Speaker:

   _____      _____

   _____      _____

   _____      _____

   Attn: _____      Attn: _____

   Email: _____      Email: _____

   Notice will be deemed to be received upon actual receipt (or refusal of receipt) by the receiving party.

3.  Speaker Warranty.  Speaker warrants that at all times during the Event, Speaker will personally provide Speaker's best professional efforts. Speakers' professional credentials are such that Speaker can provide the Presentation in a knowledgeable and professional manner.

4.  Payment.  ASU will pay Speaker the all-inclusive fee of $_____ upon completion of the Presentation. Speaker will complete a Substitute W-9 Form, which must be signed by the person or entity to whom payment is to be issued. ASU will issue all payment in accordance with the information on the completed and signed Substitute W-9 Form.

5.  Acceptance of Agreement.   Speaker will accept and return this Agreement to ASU no later than _____, 20__. In all events, this Agreement must be fully signed and received at ASU at least one week prior to the Event to allow on-time payment. This Agreement must be fully signed before payment can be processed. Please return a signed copy of this Agreement to ASU at the address set forth in Section 2.

---

[1]  If an authorized agent is signing, please be sure to fill in the speaker name as well.
[2] Include full legal name of authorized agent, state of formation, and type of entity (i.e.; ABC, Inc., an Arizona Corporation.)

OGC 12.13.17

6.  <u>Compliance with Law</u>.  Speaker will comply with all applicable ASU, City, County, State, and Federal laws, acts, codes, regulations and policies, including all applicable federal immigration laws and regulations that relate to employment.

7.  <u>Press Materials</u>.  Speaker will timely supply all press/promotion material requested by ASU.

8.  <u>Indemnity</u>.  Speaker will indemnify, defend, save and hold ASU harmless for, from, and against, any all claims, demands, suits, costs and damages (including reasonable attorneys' fees) that ASU may incur by reason of any: (a) actual or alleged infringement or violation of any copyright, or other proprietary right by Speaker; (b) claim for damages arising from Speaker's Presentation; or (c) any of Speaker's costs and liabilities arising out of the Presentation or Event, including without limitation: travel and meal expenses; union dues; taxes; agents' commissions or other expenses or obligations; damages to Speaker's equipment or materials; compensation to third parties engaged by Speaker; compensation for lost or stolen equipment or materials; workers compensation or other insurance; and any expenses not preapproved by ASU in writing.

9.  <u>Indemnification and Liability Limitation</u>.  Because ASU is a public institution, any indemnification, liability limitation, releases, or hold harmless provisions are limited as required by Arizona law, including Article 9, Sections 5 and 7 of the Arizona Constitution and Arizona Revised Statutes (<u>ARS</u>) §§ 35-154 and 41-621. ASU's liability under any claim for indemnification is limited to claims for property damage, personal injury, or death to the extent caused by acts or omissions of ASU.

10. <u>Force Majeure</u>.  Neither Speaker nor ASU shall be liable to each other for failure to perform hereunder if failure is caused by civil tumult, strike, epidemic, or any other cause beyond the reasonable control of the parties (<u>Force Majeure</u>). The ingestion of alcohol, opioids, illegal substances, or the like, will not be deemed an event of Force Majeure. If the Event or Presentation is cancelled due to an event of Force Majeure, the parties will make reasonable efforts to reschedule, if feasible.

11. <u>Cancellation</u>. If either party cancels this Agreement or the Presentation, other than due to an event of Force Majeure the other party will have all remedies afforded by law and in equity. In addition, if ASU cancels the Event or the Presentation, ASU will reimburse Speaker for reasonable expenses incurred in preparation for the Presentation up to the date ASU provides notice of cancellation.

12. <u>Liability; Insurance</u>.  Speaker, at its expense, will procure and maintain, for the duration of the Event, a policy of commercial general liability insurance in an amount of not less than $1,000,000, single limit, against claims for bodily injury, death and property damage occurring in connection with the Event and the Presentation. This insurance must name the Arizona Board of Regents, Arizona State University, and the State of Arizona as additional insureds. Speaker must provide ASU with a certificate evidencing this insurance coverage no later than 10 days prior to the Presentation.

13. <u>No Assignment</u>.  Neither party may assign any rights or obligations under this Agreement without the prior written consent of the other party.

14. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter. No prior or contemporaneous agreement or understanding will be effective.

15. <u>Governing Law and Venue</u>.  This Agreement will be governed by the laws of the State of Arizona. ASU's obligations are subject to the regulations/policies of the Arizona Board of Regents. Any proceeding arising out of or relating to this Agreement will be conducted in Maricopa County, Arizona. Speaker consents to such jurisdiction, and waives objection to venue or convenience of forum.

OGC 12.13.17

16. <u>Independent Contractor</u>.  Speaker is an independent contractor and is not an employee of ASU. Neither Speaker nor any personnel of Speaker will for any purpose be considered employees or agents of ASU. Speaker assumes full responsibility for the actions of Speaker's personnel, and is solely responsible for their supervision, direction and control, payment of salary and expenses (including withholding income taxes and social security), worker's compensation, and disability benefits.

17. <u>Recordings; Use of Name and Likeness</u>.  Both parties may record the Presentation for internal records. No recording of the Presentation, either visual or audio, will be made by or on behalf of Speaker for the purposes of profit or significant distribution without prior written approval from ASU. ASU may require an additional payment for the privilege, and may require Speaker to sign a filming/recording agreement. ASU may record the Presentation on video tape, audio tape, film, photograph or any other medium, use Speaker's name, likeness, voice and biographical material in connection with these recordings for purposes within the ASU mission, including education and research, and exhibit or distribute the recording in whole or in part without restrictions or limitation for any educational or promotional purpose that ASU deems appropriate.

18. <u>No Revenue Sharing</u>.  Speaker will not participate in any revenues associated with the Presentation or Event. This includes: sponsorship, ticketing, ticketing fees, ASU concessions revenues, and any other revenue streams that may be associated with the Event.

19. <u>Non-discrimination</u>.  The parties will comply with all applicable laws, rules, regulations, and executive orders governing equal employment opportunity, immigration, and nondiscrimination, including the Americans with Disabilities Act. **If applicable, the parties will abide by the requirements of 41 CFR §§ 60-_1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability**.

20. <u>Conflicts of Interest</u>.  If within 3 years after the execution of this Agreement, Speaker hires as an employee or agent any ASU representative who was significantly involved in negotiating, securing, drafting, or creating this Agreement, then ASU may cancel this Agreement as provided in ARS § 38-511. Notice is also given of ARS §§ 41-2517 and 41-753.

21. <u>Arbitration in Superior Court</u>.  The parties agree to arbitrate disputes filed in Arizona Superior Court that are subject to mandatory arbitration pursuant to ARS § 12-133. ARS § 12-1518 requires this provision in all ASU agreements.

22. <u>Records</u>.  To the extent required by ARS § 35-214, the non-ASU parties to this Agreement will retain all records relating to this Agreement. Speaker will make those records available at all reasonable times for inspection and audit by ASU or the Auditor General of Arizona during the term of this Agreement and for 5 years after the completion of this Agreement. The records will be provided at ASU in Tempe, Arizona, or another location designated by ASU on reasonable notice to Speaker.

23. <u>Failure of Legislature to Appropriate.</u>  In accordance with ARS § 35-154, if ASU's performance under this Agreement depends on the appropriation of funds by the Arizona Legislature, and if the Legislature fails to appropriate the funds necessary for performance, ASU may provide written notice of this to Speaker and cancel this Agreement without further obligation of ASU. Appropriation is a legislative act and is beyond ASU's control.

OGC 12.13.17

24. <u>Weapons, Explosives, and Fireworks</u>. ASU prohibits the use, possession, display or storage of any weapon, explosive device or fireworks on all land and buildings owned, leased, or under the control of ASU or its affiliated entities, in all ASU residential facilities (whether managed by ASU or another entity), in all ASU vehicles, and at all ASU or ASU affiliate sponsored events and activities, except as provided in ARS § 12-781, or unless written permission is given by ASU's Police Chief or a designated representative. Speaker will notify all persons or entities who are employees, officers, subcontractors, consultants, agents, guests, invitees or licensees of Speaker of this policy, and Speaker will enforce this policy against all such persons and entities. ASU's policy is at asu.edu/aad/manuals/pdp/pdp201-05.html.

25. <u>Privacy; Educational Records</u>. Student educational records are protected by the U.S. Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (FERPA). Speaker will not require any ASU students or employees to waive any privacy rights (including under FERPA or the European Union's General Data Protection Regulation (GDPR)) as a condition for receipt of any educational services, and any attempt to do so will be void. Speaker will comply with FERPA and will not access or make any disclosures of student educational records to third parties without prior notice to and consent from ASU or as otherwise provided by law. If this Agreement requires or permits Speaker to access or release any student records, then, for purposes of this Agreement only, ASU-designates Speaker as a "school official" for ASU under FERPA, as defined in FERPA and its implementing regulations. In addition, any access or disclosures of student educational records by Speaker or any Speaker Parties must comply with ASU's definition of legitimate educational purpose. If Speaker violates this section, Speaker will immediately notify ASU.

26. <u>Authorized Presence Requirements</u>. As required by ARS § 41-4401, ASU is prohibited from awarding a contract to any contractor or subcontractor that fails to comply with ARS § 23-214(A) (verification of employee eligibility through the e-verify program). Speaker warrants that it and its subcontractors comply fully with all applicable immigration laws, rules, and regulations that relate to their employees and their compliance with ARS § 23-214(A). A breach of this warranty will be a material breach of this Agreement that is subject to penalties up to and including termination. ASU retains the right to inspect the papers of any contractor or subcontractor employee hereunder to ensure compliance with this warranty.

27. <u>Tobacco-Free University</u>. ASU is tobacco-free. For details visit asu.edu/tobaccofree.

28. <u>Authority</u>. If an individual or entity signs below on behalf of Speaker, such signatory represents and warrants that he/she/it has full and current authority to act and contract on behalf of Speaker and obligate Speaker, and that this Agreement is binding upon and enforceable against Speaker and the undersigned (if not Speaker) in accordance with its terms.

PRINT NAME OF SPEAKER OR
AGENT OF SPEAKER

ARIZONA BOARD OF REGENTS FOR AND ON
BEHALF OF ARIZONA STATE UNIVERSITY

_____

_____

Signature

Signature

_____

_____

Signatory Name

Signatory Name

_____

_____

Signatory Title

Signatory Title

_____

_____

Date Signed

Date Signed

OGC 12.13.17