# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| American Muslims for Palestine and Dr. Hatem Bazian,<br><br>               Plaintiffs,<br>vs.<br><br>Arizona Board of Regents for and on behalf of Arizona State University; and Mark Brnovich, in his official capacity as Attorney General Of Arizona,<br>               Defendants.. | Case No: 2:18-cv-00670-JJT |

## DECLARATION OF DREW C. ENSIGN

I, Drew C. Ensign, declare as follows:

1. I am an attorney licensed to practice law in Arizona and the District of Columbia. I am a Senior Litigation Counsel with the Office of the Attorney General Of Arizona, and represent Defendant Mark Brnovich in his official capacity as Attorney General of Arizona in this matter.

2. The Office of the Attorney General has not filed any civil or criminal action in any court to enforce A.R.S. § 35-393.01(A) (the "Act").

3. I am not aware of any instance in which the Office of the Attorney General has threatened to file an enforcement action related to the Act.

2

4. Attached hereto as Exhibit A is the roll call vote in the Arizona House of Representatives for the Act.

5. Attached hereto as Exhibit B is the roll call vote in the Arizona Senate for the Act.

6. Attached hereto as Exhibit C are excerpts of the transcript from the Rule 30(b)(6) deposition of Plaintiff Mikkel (Mik) Jordahl, P.C. in *Jordahl v. Brnovich* (No. 17-cv-08263-PCT-DJH), which was conducted on January 8, 2018.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, and that this declaration was issued on April 10, 2018, in Phoenix, Arizona.

s/ Drew C. Ensign  
Drew C. Ensign

# Exhibit A

House Final Reading - HB2617 ✕

| Action Date | Action | Vote | |
|---|---|---|---|
| 03/14/2016 | Passed | 42-16-2-0-0 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ACKERLEY | Y | COBB | Y | LAWRENCE | Y | PLUMLEE | N |
| ALLEN J | Y | COLEMAN | Y | LEACH | Y | PRATT | Y |
| ALSTON | Y | ESPINOZA | Y | LIVINGSTON | Y | RIOS | N |
| ANDRADE | N | FANN | Y | LOVAS | Y | RIVERO | Y |
| BARTON | Y | FARNSWORTH E | Y | MACH | N | ROBSON | Y |
| BENALLY | NV | FERNANDEZ | N | MCCUNE DAVIS | Y | SALDATE | N |
| BOLDING | N | FINCHEM | Y | MENDEZ | N | SHOPE | Y |
| BORRELLI | Y | FRIESE | N | MESNARD | Y | STEVENS | Y |
| BOWERS | Y | GABALDÓN | N | MEYER | Y | THORPE | Y |
| BOYER | Y | GONZALES | N | MITCHELL | Y | TOWNSEND | Y |
| BROPHY MCGEE | Y | GRAY | Y | MONTENEGRO | Y | UGENTI-RITA | Y |
| CAMPBELL | Y | HALE | N | NORGAARD | Y | VELASQUEZ | N |
| CARDENAS | Y | KERN | Y | OLSON | Y | WENINGER | Y |
| CARTER | NV | KOPEC | N | OTONDO | Y | WHEELER | N |
| CLARK | N | LARKIN | Y | PETERSEN | Y | GOWAN | Y |

# Exhibit B

Senate Third Reading - HB2617   ✕

| Action Date | Action | Vote | |
|---|---|---|---|
| 03/10/2016 | Passed | 23-6-1-0-0 | Amended |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **ALLEN S** | Y | **DIAL** | Y | **LESKO** | Y | **SHERWOOD** | Y |
| **BARTO** | Y | **DONAHUE** | Y | **MCGUIRE** | Y | **SHOOTER** | Y |
| **BEGAY** | Y | **DRIGGS** | Y | **MEZA** | Y | **SMITH** | Y |
| **BRADLEY** | N | **FARLEY** | NV | **MIRANDA** | Y | **WORSLEY** | Y |
| **BURGES** | Y | **FARNSWORTH D** | Y | **PANCRAZI** | Y | **YARBROUGH** | Y |
| **CAJERO BEDFORD** | N | **GRIFFIN** | Y | **PIERCE** | Y | **YEE** | Y |
| **CONTRERAS** | N | **HOBBS** | N | **QUEZADA** | N | **BIGGS** | Y |
| **DALESSANDRO** | N | **KAVANAGH** | Y | | | | |

# Exhibit C

30(b)(6) of Mikkel (Mik) Jordahl, PC - January 8, 2018
Mikkel Jordahl

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

|  |  |
|---|---|
| Mikkel Jordahl; Mikkel (Mik) Jordahl, P.C.,<br><br>         Plaintiffs,<br><br>vs.<br><br>Mark Brnovich, Arizona Attorney General; Jim Driscoll, Coconino County Sheriff; Matt Ryan, Coconino County Board of Supervisors Chair; Lena Fowler, Coconino County Board of Supervisors Vice Chair; Elizabeth Archuleta, Coconino County Board of Supervisors Member; Art Babbott, Coconino County Board of Supervisors Member; Jim Parks, Coconino County Board of Supervisors Member; Sarah Benatar, Coconino County Treasurer, all in their official capacities,<br><br>         Defendants. | Case No.:<br>3:17-cv-08263-PCT-DJH |

30(b)(6) DEPOSITION OF MIKKEL (MIK) JORDAHL, P.C.,
BY MIKKEL JORDAHL

Phoenix, Arizona

January 8, 2018

Prepared by:
Gerard T. Coash, RPR, RMR
Certified Reporter
Certification No. 50503

**Coash & Coash, Inc.**
602-258-1440          www.coashandcoash.com

Case 2:18-cv-00670-JJT   Document 24-2   Filed 04/10/18   Page 10 of 16

Jordahl vs. Brnovich
3:17-cv-08263-PCT-DJH
Mikkel Jordahl
30(b)(6) of Mikkel (Mik) Jordahl, PC
January 8, 2018

Page 2

```
 1                    I N D E X
 2   WITNESS                                         PAGE
 3   MIKKEL (MIK) JORDAHL
 4        Examination by Mr. Ensign                     5
 5        Examination by Ms. Brody                    157
 6        Further Examination by Mr. Ensign           176
 7
 8
 9                   EXHIBITS MARKED
10   EXHIBITS         DESCRIPTION                    PAGE
11   Exhibit 1    Defendant Brnovich's Amended Notice   7
12                of Deposition Pursuant to Fed. R.
                  Civ. P. 30(b)(6)
13
     Exhibit 2    Declaration of Mikkel Jordahl        61
14                CV17-08263
15   Exhibit 3    Complaint for Declaratory and       119
                  Injunctive Relief
16
     Exhibit 4    Email string ending from Matthew    163
17                Figueroa to Mikkel Jordahl dated
                  12-8-17
18
```

Page 3

```
 1      30(b)(6) DEPOSITION OF MIKKEL (MIK) JORDAHL, P.C.,
 2                  BY MIKKEL JORDAHL
 3   was taken on January 8, 2018, commencing at 9:06 a.m., at
 4   the Offices of the Arizona Attorney General, 2005 North
 5   Central Avenue, Phoenix, Arizona, before Gerard T. Coash,
 6   a Certified Reporter in the State of Arizona.
 7
 8
 9                      *   *   *
10   APPEARANCES:
11      For the Plaintiffs:
            ACLU FOUNDATION OF ARIZONA
12          By:  Kathleen E. Brody, Esq.
                 3707 North 7th Street
13               Suite 235
                 Phoenix, Arizona  85014
14               602-650-1854
                 kbrody@acluaz.org
15      and
16
            ACLU FOUNDATION, SPEECH, PRIVACY & TECHNOLOGY
17          PROJECT
            By:  Brian Hauss, Esq. (Telephonic)
18               Vera Eidelman, Esq. (Telephonic)
                 125 Broad Street
19               18th Floor
                 New York, New York  10004
20               212-549-2500
                 bhauss@aclu.org
21               veidelman@aclu.org
```

Page 4

```
 1   For the Defendant Mark Brnovich in his official
        capacity as Attorney General:
 2      OFFICE OF THE ARIZONA ATTORNEY GENERAL
        By:  Drew C. Ensign, Esq.
 3           Oramel H. (O.H.) Skinner, Esq.
             Brunn (Beau) W. Roysden III, Esq.
 4           2005 North Central Avenue
             Phoenix, Arizona  85004
 5           602-542-5200
             drew.ensign@azag.gov
 6           o.h.skinner@azag.gov
             beau.roysden@azag.gov
 7
     Also present:  Jacob Richards
```

Page 5

09:06:33-09:07:13

1   (Mr. Roysden is not yet present.)
2
3   MIKKEL (MIK) JORDAHL,
4   the witness herein, having been first duly sworn by the
5   Certified Reporter, was examined and testified as follows:
6
7   EXAMINATION
8   BY MR. ENSIGN:
9   Q.  Could you please state and spell your full name
10  for the record?
11  A.  Yeah, my full name is Mikkel Steen Jordahl,
12  Mikkel is spelled M-i-k-k-e-l, middle name Steen,
13  S-t-e-e-n, last name Jordahl, J-o-r-d-a-h-l.  I go by Mik,
14  M-i-k.
15  Q.  Have you ever been deposed in a civil case
16  before?
17  A.  I believe I was deposed on one occasion many
18  years ago.
19  Q.  Okay.  And what kind of case was that?
20  A.  It was a civil rights case in which I was a
21  witness as a law student.  It was against the Tucson
22  Police Department.
23  Q.  Okay.
24  A.  And it was regarding their treatment of homeless
25  people.

Case 2:18-cv-00670-JJT   Document 24-2   Filed 04/10/18   Page 11 of 16

Jordahl vs. Brnovich
3:17-cv-08263-PCT-DJH
Mikkel Jordahl
30(b)(6) of Mikkel (Mik) Jordahl, PC
January 8, 2018

| 09:07:20-09:08:03 | Page 6 |
|---|---|

1  Q. Okay. And you are a licensed lawyer, correct?
2  A. Yes.
3  Q. And you're familiar with the standard ground
4  rules for depositions. Is that correct?
5  A. I should be, and I think I am.
6  Q. Excellent.
7      One ground rule I'd like to emphasize is
8  that if you don't understand a question, please ask me to
9  clarify. If you answer a question, I'll assume that you
10 understood it. Is that okay?
11 A. Sure.
12 Q. Okay. Also, you can take a break whenever you'd
13 like. But if a question is pending, I'd like you to
14 finish answering that, and then we can take a break after
15 that, if that works.
16 A. Okay.
17 Q. Is there any reason that you can't give your best
18 testimony today?
19 A. I don't believe so.
20 Q. Are there any medication, other substances you're
21 under?
22 A. Just caffeine.
23 Q. Fair enough. And you are a plaintiff in the
24 litigation in the United States District Court titled
25 Jordahl, et al. v. Brnovich, et al., captioned 17-cv-8263?

| 09:09:41-09:10:39 | Page 8 |
|---|---|

1  Q. You are the CEO and sole director of your PC. Is
2  that correct?
3  A. Yes.
4  Q. Because you're the CEO and sole officer and
5  director, is it fair to say that the PC -- the PC
6  possesses all knowledge that you do?
7  A. Yes.
8  Q. Throughout the rest of this deposition, when I
9  refer to "you," that will mean your PC, unless I indicate
10 otherwise or context makes clear that it's you in your
11 personal capacity.
12 A. Okay.
13 Q. If you're ever unclear about that, please ask me
14 to clarify.
15 A. Sure.
16 Q. What did you do to prepare for this deposition
17 today?
18 A. I reviewed everything that I have filed. I have
19 met with my attorneys. And I have reviewed background
20 information on boycott and whatnot that's readily
21 available online.
22 Q. Is there anything else you did to prepare today?
23 A. I don't think so.
24 Q. Okay. About how long did you spend preparing?
25 A. Probably two, three hours.

| 09:08:24-09:09:33 | Page 7 |
|---|---|

1  A. Yes, both in an individual capacity and as my law
2  firm's.
3  Q. Great. And so as you just said, your company,
4  the PC, is a plaintiff in this litigation as well?
5  A. Yes.
6  Q. And I can refer to that as your PC going forward,
7  if that works?
8  A. Sure.
9  Q. You understand that your deposition relates to
10 this case, correct?
11 A. Yes.
12 Q. I'm handing you what I'd like to have marked as
13 Exhibit 1.
14    (Deposition Exhibit 1 was marked for
15 identification.)
16    BY MR. ENSIGN:
17 Q. Do you recognize this document?
18 A. Yes.
19 Q. What is it?
20 A. It's the Defendant Brnovich's Amended Notice of
21 Deposition Pursuant to the Federal Rule of a Civil
22 Procedure 30(b)(6).
23 Q. And that -- this document is why you're here
24 today, correct?
25 A. Yes.

| 09:11:03-09:12:08 | Page 9 |
|---|---|

1  Q. So could you take a look at the topic 1a on the
2  exhibit?
3  A. Sure.
4  Q. And how long -- what did you do to prepare to
5  address topic 1a?
6  A. I didn't so much focus on my organizational
7  structure. I mean, I recall all that information.
8  Q. Okay. And about how long did you spend preparing
9  for that?
10 A. I don't think I prepared at all in terms of
11 that subsection "a."
12 Q. In terms of topic 1b, what did you do to prepare
13 for that one?
14 A. I believe I reviewed the addendum that I was
15 asked to sign again, and that took just a matter of a few
16 minutes.
17 Q. Okay. Is there anything else that you recall
18 doing to prepare for that topic?
19 A. Let me look here.
20    I don't think so.
21 Q. Okay. So how about topic 1c? So what did you do
22 to prepare for that one?
23 A. Nothing. I have no business dealing with folks
24 under that category.
25 Q. Okay. And in terms of topic 1d, what did you do

Jordahl vs. Brnovich  
3:17-cv-08263-PCT-DJH

Case 2:18-cv-00670-JJT   Document 24-2   Filed 04/10/18   Page 12 of 16

Mikkel Jordahl

30(b)(6) of Mikkel (Mik) Jordahl, PC  
January 8, 2018

---

**09:12:27-09:13:45** — Page 10

1  to prepare for that topic?
2  A. Well, I did review the companies that I'm in
3  favor of boycotting and their activities, which would
4  include companies like Hewlett-Packard, Caterpillar,
5  Airbnb, companies like that that are on the boycott list
6  and the reasons why -- why they should be boycotted in my
7  opinion. And I probably spent an hour on that.
8  Q. And what documents did you review to prepare for
9  that?
10 A. Well, I reviewed -- let's see, the EL- --
11 Evangelical Lutheran Church of America's position on Peace
12 Not Walls and various other literature that the Lutherans
13 have produced. Also, I reviewed Jewish Voice for Peace,
14 of which I'm a member, and looked at the boycott
15 divestment sanctions issues that they're promoting. And
16 I've also looked at other sources. I looked at -- this
17 morning I reviewed Haaretz, an Israeli left-leaning
18 newspaper. I have looked at other sources, one was
19 Mondoweiss, which is an electronic website that
20 specializes in that area. I think I have reviewed -- what
21 is it? There's a group called Electronic Intifada, which
22 I've looked at.
23 Q. Are there any other groups -- documents that you
24 reviewed?
25 A. I have looked at -- there is an Arizona Palestine

---

**09:14:13-09:15:15** — Page 11

1  solidarity network. I know the folks that are involved
2  there in Tucson; I've reviewed their website. I've
3  reviewed some literature on BDS. I've certainly looked at
4  the ACLU website and their involvement in opposing the
5  anti-Israel boycott act, which would imprison people for
6  participating in boycotts. So . . .
7  Q. Okay. And can you think of any other materials
8  you think you've reviewed?
9  A. There are many other sources. I can't think
10 of -- you know, I couldn't list them all, but just
11 mainstream press, New York Times. I read every day and
12 certainly areas there.
13 Q. Are there any particular documents that you, you
14 know, view as particularly useful in determining what
15 companies you boycott?
16 A. I'm not sure I could mention any particular
17 document.
18 Q. Then turning to topic 1e, what did you do to
19 prepare for -- to discuss that topic?
20 A. Well, I reviewed the allegations in the
21 complaint. I reviewed my statement of facts -- or
22 whatever that was called, my affidavit, and I prepared
23 with my attorneys.
24 Q. Okay. And about how long did that -- did you
25 prepare for that?

---

**09:15:39-09:17:04** — Page 12

1  A. I'd say probably at least two hours.
2  Q. Okay. And does that kind of capture topic 1f as
3  well?
4  A. Yes.
5  Q. Have you talked about this deposition with
6  anyone?
7  A. I've mentioned to my wife that -- I mean, that's
8  why we're here. So . . .
9  Q. Yeah.
10 A. And I have mentioned to my attorneys --
11 obviously, they know that. I have mentioned to folks at
12 Jewish Voice for Peace and some of my Tucson connections
13 in the area, yes.
14 Q. Okay. And sorry, who -- who would that be?
15 A. Well, it would be the Jewish Voice for Peace
16 folks, Abby Okrent; also Mohyeddin Abdulaziz, who is part
17 of the Arizona BDS network; also Thabet Khalidi, who is a
18 lawyer in Tucson; and also my son, Laiken Jordahl; my
19 wife, Sheila Nair, and that's probably about it.
20 Q. Okay. Okay. And can you think of anyone else
21 that you talked to?
22 A. I think I have mentioned to a relative or two on
23 the West Coast, my uncle and my cousin.
24 Q. Okay. And anyone else?
25 A. Do you need their names?

---

**09:17:21-09:18:14** — Page 13

1  Q. Sure.
2  A. Well, Eric Skindrud, S-k-i-n-d-r-u-d, Michael
3  Skindrud, same last name. I think that's about it.
4  Q. And can you think of anyone else?
5  A. Not offhand. I mean, I may have shared that, I
6  just don't -- I'm not sure. So . . .
7  Q. So I'd like to turn to the -- your personal
8  boycotts.
9  A. Sure.
10 Q. So many of the "yous" in this section will be you
11 in your personal capacity. But to the extent you're ever
12 unclear, please let me know.
13 A. Okay.
14 Q. Are you currently engaged in any boycotts in your
15 personal capacity?
16 A. Yes. I would -- as a human being, not as a
17 corporation, you know, I would be -- I am boycotting, and
18 I urge the boycott -- of Hewlett-Packard, certainly
19 Caterpillar, and also Airbnb because they are businesses
20 that are involved in perpetuating the occupation of the
21 West Bank.
22 Q. Are you currently engaged in -- and don't worry
23 about the companies right now -- but are there any other
24 boycotts that you're engaged in right now, other than
25 the -- other than the boycott at issue in this suit?

Jordahl vs. Brnovich
3:17-cv-08263-PCT-DJH
Mikkel Jordahl
Case 2:18-cv-00670-JJT   Document 24-2   Filed 04/10/18   Page 13 of 16
90(b)(6) of Mikkel (Mik) Jordahl, PC
January 8, 2018

---

**11:15:21-11:16:07**  Page 82

 1    Is a copy of that contract attached as
 2  Exhibit 3 to your declaration?
 3  A.  It looks like it, yes.
 4  Q.  What kind of services do you perform for the jail
 5  district?
 6  A.  It's an interesting and fairly unique contract.
 7  Basically, instead of the county jail being on the hook
 8  for a law library, case law -- it comes out of Arizona, in
 9  fact -- allows services to be contracted for in lieu of
10  the law library.  So I provide services -- when an inmate
11  requests my services, they have to check a form on which
12  three basic areas it is, whether it's -- extradition is
13  one area --
14  Q.  Okay.
15  A.  -- habeas corpus is another, and conditions of
16  confinement is the third.
17      And then if someone is unrepresented, I also
18  provide services of helping research and draft documents
19  for them since they don't have access to a law library
20  without representation.
21      So basically the scope is I get that
22  request; I will go, then, visit the inmate.  I usually
23  lump together two or three of them, inmates, and then I
24  will address their issues.  A lot of it deals with
25  advising inmates pursuant to the -- what is it?  Prison

---

**11:16:24-11:17:28**  Page 83

 1  Reform Litigation Act.  They have to exhaust their
 2  internal remedies, and tell them they need to do that.
 3  They need to file grievances.  And then a lot of it is --
 4  frankly, is running interference with the jail and
 5  resolving problems.  So that's what it is.
 6  Q.  When did you first bid on the contract with the
 7  jail district?
 8  A.  You know, I don't recall the exact year, but I
 9  think it's been -- I know I've been through at least three
10  contract renewals, maybe four.  And they're either three-
11  or four-year terms.  So my best guess is about 12 years.
12  So -- and before that, I actually represented the inmates
13  in a class action lawsuit that was down here, and that's
14  how this kind of came about, through that, the idea of
15  this contract.  And so . . .
16  Q.  Okay.  Can you describe the bidding process for
17  those contracts?
18  A.  Yeah.  Every -- it's every four years.  They put
19  out a bid, and it's a call to attorneys in the
20  communities -- I think it goes to the bar -- Coconino Bar
21  Association, and each time I've been the guy.  So --
22  Q.  Okay.
23  A.  That's been chosen.  It's a competitive
24  situation.  Every four years the annual addendum is --
25  that's not a bid situation, it's just a certification, I

---

**11:17:44-11:18:48**  Page 84

 1  guess.  So it's not thrown out to annual bids.
 2  Q.  Okay.  When you submit a bid every four years
 3  then, what's involved with your submissions to the jail
 4  district?
 5  A.  Well, it's a very exhaustive and -- and thank God
 6  I've got it on my computer.  I can just update it.  But it
 7  talks about my philosophy and how I would approach the
 8  contract.  I think what the jail folks like is that my
 9  focus is on solving problems, and I view myself as sort of
10  an ombudsperson for the inmates and dealing with their
11  issues.  And if I feel like there's something to it -- an
12  awful lot of the requests are somewhat -- I mean, in my
13  opinion -- somewhat frivolous, you know, it's a lack of
14  understanding of what civil rights an inmate may or may
15  not have.  I mean, it's as you can imagine.  You know,
16  people complaining about no chunky peanuts in the peanut
17  butter.  So, you know, things -- it could be that bad.
18      But then it could be also things like the
19  right to religious worship, things that are legitimate
20  issues.
21      I know there's one fellow -- we're talking
22  about religion a bit here.  There's a Muslim inmate that
23  just wanted to know what direction Mecca was and what time
24  of day to pray, and we were able to work that out.  You
25  know, online I was able to find, for Flagstaff, what times

---

**11:19:03-11:19:54**  Page 85

 1  of day, five times a day, it would be.  The jail was able
 2  to put a clock where he could see it outside of his -- and
 3  then give him the direction for Mecca.  And, you know,
 4  that was one thing.
 5      There have also been Jewish inmates about
 6  food, you know, kosher diets, things like that, where we
 7  go into it.  And these are all -- I'm sure you're aware of
 8  constitutional rights that even inmates retain.  So those
 9  are just a couple of issues.  There are all kinds of
10  issues.
11  Q.  So like RLUIPA?
12  A.  What's that?
13  Q.  So like RLUIPA?
14  A.  What's RLUIPA?
15  Q.  Religious liberties --
16  A.  For incarcerated people?
17  Q.  Yeah.
18  A.  Yeah, I haven't heard it termed that way.
19  Q.  Are there interviews as part of the bidding
20  process?
21  A.  No.  It has always been just written submissions.
22  Q.  Okay.
23  A.  As far as I know, yeah.
24  Q.  When do you typically get paid for the services
25  you provide?

---

Case 2:18-cv-00670-JJT   Document 24-2   Filed 04/10/18   Page 14 of 16

Jordahl vs. Brnovich
3:17-cv-08263-PCT-DJH
Mikkel Jordahl
30(b)(6) of Mikkel (Mik) Jordahl, PC
January 8, 2018

11:20:10-11:21:29                                          Page 86

1  A.  I get paid on a monthly basis.  I submit an
2  invoice at the beginning of the month, and they pay me for
3  that entire month.
4  Q.  Has your PC been involved in providing services
5  to the jail district continuously since your first
6  contract?
7  A.  Yes.
8  Q.  Okay.  So it's never lapsed?
9  A.  Right.
10 Q.  When was the last time the contract was bid out?
11 A.  Well, it would have been this -- 2016, whenever
12 that -- okay, I signed -- let's see here.
13     This one says January of 2017.  I probably
14 was notified of my acceptance maybe a month or so before
15 that.
16 Q.  Okay.  Do you know if there were any other
17 bidders the last time?
18 A.  Oh, I know there were, yes.  I don't know who
19 they were, but I was told there were several.  So . . .
20 Q.  Who are the primary decision makers for awarding
21 the contract?
22 A.  Well, I would think the primary one now would be
23 Commander Figueroa, and then his various lieutenants.
24 There is a jail district -- Coconino County Jail District,
25 and they have a board there that is comprised of -- I

11:21:42-11:22:45                                          Page 87

1  believe it's a Board of Supervisors, County Board of
2  Supervisors, and probably the Sheriff, and they make the
3  ultimate decision, I think.
4  Q.  Okay.  Do you know any of them?
5  A.  Yeah.  I know some, yeah.
6  Q.  Okay.  How long have you known them?
7      MS. BRODY: Object to form.
8      THE WITNESS: Well, we can go down the list
9  if you want.
10     MR. ENSIGN: Sure.
11     THE WITNESS: Of the defendants listed here,
12 Matt Ryan, I've known him for at least 12 years; Lena
13 Fowler I have met, but I don't -- can't say that I really
14 know her; Liz Archuleta, I have known for probably
15 20 years; Art Babbott, I've known him for many years,
16 maybe 10 years; Jim Parks I know a little bit.  I don't
17 know the county treasurer here, but that wasn't your
18 question.  I don't really know the current sheriff, Jim
19 Driscoll; and -- okay.
20     BY MR. ENSIGN:
21 Q.  Have you ever discussed the Act with any of them?
22 A.  I've discussed it with Matt Figueroa and a couple
23 of his lieutenants.  Because when I first saw this, I was
24 just so surprised, saying "What the heck is this doing in
25 my contract?"  You know, I had -- I didn't know where it

11:22:58-11:23:51                                          Page 88

1  came from.
2      And so Matt is -- it's Matt Figueroa -- was
3  wondering why I wasn't returning the contract.  And I said
4  "Well, it's the addendum.  And, you know, I'm having a
5  real problem with that."  And we didn't discuss it in
6  detail then, but he had no idea the addendum was in there
7  because it was something that was added, I think, to the
8  contract by -- I don't know if it was the county attorney
9  or someone that was trying to bring the county into
10 compliance with the new law.
11     And so then we finally discussed it, we met.
12 And I said it's Israel anti-boycott stuff.  You know, I
13 was like, "I have a problem with that.  I think it
14 violates my rights, constitutional rights."
15     And he was, "Oh, well" -- you know, he was
16 thinking it was a problem with the scope of the contract
17 and things like that.
18     And so I don't know if you want me to
19 expound or go get into --
20 Q.  Sure.
21 A.  -- this, but you'll probably ask anyway so let me
22 get it out there.
23     But basically, I said I have a real problem
24 with this and, if I sign, it's going to be under protest,
25 and I wanted to reserve my rights to challenge this law.

11:24:05-11:25:01                                          Page 89

1  Q.  And when did that conversation occur?
2  A.  Well, it would have been right before I
3  ultimately signed my letter of protest, whenever that was,
4  but probably within, you know, three or four weeks before
5  that time.
6  Q.  Okay.
7  A.  You know, so it would have been the end of --
8  what is that?  2016, I think.
9  Q.  Okay.  Aside from that conversation, did you have
10 any other conversations or email exchanges regarding the
11 Act?
12 A.  Meaning -- with -- with whom?
13 Q.  Let's start with Matt Figueroa.
14 A.  I have, yeah, since -- since filing this lawsuit,
15 you know, because I was concerned that I could lose the --
16 the contract.  You know, I wanted to continue providing
17 services.  So there is email correspondence.  I'm happy to
18 provide that to you.
19     And basically he was thankful for bringing
20 up the idea.  I talked with the county attorney, Bill
21 Ring, he's an old friend of mine from Coconino County.
22 You know, we talked on the phone just little bit.  Not
23 about the case, because I didn't want to get him in
24 trouble because I'm actually the plaintiff.  I just let
25 him know that this is coming down the pike.  And he hadn't

Case 2:18-cv-00670-JJT   Document 24-2   Filed 04/10/18   Page 15 of 16

Jordahl vs. Brnovich
3:17-cv-08263-PCT-DJH
Mikkel Jordahl
30(b)(6) of Mikkel (Mik) Jordahl, PC
January 8, 2018

---

11:25:14-11:26:26                                          Page 90

 1   seen it yet, so I put him in touch with my attorney,
 2   Kathy.
 3       And I think they were very relieved to know
 4   that I would continue providing the services and -- you
 5   know, I expect to get paid on those. But they are not
 6   able to pay me at this time. So I'm providing the
 7   services, I'm submitting the invoices, and I'm not getting
 8   paid. I think I will get paid. I think we'll win this
 9   lawsuit -- no disrespect -- but -- so that's the status of
10   things.
11       So it did -- yeah, there is communication --
12   recent communication over my actions now. I didn't want
13   them to freak out. I was saying it's not about the
14   County, it's about -- you know, the County has no role in
15   this really, other than the State, as it -- as it has want
16   to do, preempt every area of, you know, local control
17   practically, whether it's plastic bags or boycotting a
18   foreign country, you know. So I don't hold them
19   responsible for this. I hold your clients responsible.
20   So . . .
21 Q.  So aside from the conversation with Matt Figueroa
22   you were discussing earlier, did you have any other
23   conversations or email exchanges with Matt Figueroa prior
24   to the filing of this lawsuit that relates to the Act?
25 A.  I think a few days before filing I sent Figueroa

---

11:26:50-11:27:45                                          Page 91

 1   an email -- and also Bill Ring, the county attorney. And
 2   I said I'm -- thanks for your patience on not -- I had
 3   received an email, I think from Figueroa -- and you'll get
 4   this if you want it. Oh, I had submitted my bill for
 5   December, and he said, "Hey, we can't pay you until we get
 6   this back in, you know. Can you sign the darn thing?"
 7   And then I responded later saying, "I'm having a problem
 8   with this certification, and bear with me. I'm looking
 9   into it." And then we filed suit a few days later.
10 Q.  Okay.
11 A.  Long answer, short question.
12 Q.  Can you think of any other conversations or email
13   exchanges?
14 A.  With those folks --
15 Q.  Yeah.
16 A.  -- about the certification?
17       I'm sure in 2017, when I filed the thing,
18   there was some clarification. There was -- I think I
19   spoke about that, about my objections to this, and that I
20   would be signing it under protest.
21 Q.  Okay.
22 A.  And that seemed to appease them. All they want
23   is my signature. I don't think they care, you know,
24   personally, but that's my speculation.
25 Q.  Okay. So what's involved with a -- when your

---

11:28:06-11:29:08                                          Page 92

 1   contract gets renewed?
 2 A.  Gee, I've got to jump through a bunch of hoops
 3   annually too. I've got to show that I have all these
 4   different types of insurance. They need, believe it or
 5   not, car insurance, even though there's not a chance in
 6   hell that I will give an inmate that I'm providing
 7   services to in the jail a ride in my car. So they need a
 8   certain amount. They need a certain amount of malpractice
 9   insurance, that are all quite high. And you guys are
10   government attorneys, you know about this. I mean, all
11   these things they make you do. I think there was various
12   unemployment insurance things. What else? I'm sure I'm
13   leaving some things out, but there's a lot of different --
14   different things that end up costing a fair amount of
15   money to cover. So . . .
16 Q.  Okay. Aside from proof of insurance, can you
17   think of any other requirements for the annual renewals?
18 A.  I think that's about it, various types of
19   insurance. And then I don't think there's anything extra
20   that I have to renew, other than now this anti-Israel
21   stuff.
22 Q.  Okay.
23 A.  Yeah. And I don't know -- well, let's take a
24   look at the addendum. Is that in here?
25 Q.  I believe it is.

---

11:29:33-11:30:59                                          Page 93

 1 A.  It should be. I think it's the last page.
 2       Insurance -- yeah, commercial general
 3   liability. Even though I have a home office, never see an
 4   inmate, let alone a client, I have to have all this stuff,
 5   auto -- auto policy, worker's comp, professional
 6   liability. Naming the County as additional insured. So
 7   it's all CYA insurance of the County. But there's also
 8   this -- the boycott thing that goes on for page and a
 9   half.
10 Q.  Okay. Is Exhibit 3 to your declaration the last
11   contract that you signed with the jail district?
12 A.  It looks like it, yes.
13 Q.  Did that contract expire on June 30th, 2017?
14 A.  Looks like it, yeah, just under Term of
15   Agreement.
16 Q.  And you've continued to work for the jail
17   district after the expiration of this contract?
18 A.  Oh, let me see. Yes.
19 Q.  Are you performing the same scope of work for the
20   jail district that you provided before the contract
21   lapsed?
22 A.  Yeah, exactly the same.
23 Q.  What's the last month that you were paid for?
24 A.  I was paid -- I was paid in November for the
25   month of November. And I submitted my December invoice,

---

Case 2:18-cv-00670-JJT   Document 24-2   Filed 04/10/18   Page 16 of 16

Jordahl vs. Brnovich
3:17-cv-08263-PCT-DJH
Mikkel Jordahl
30(b)(6) of Mikkel (Mik) Jordahl, PC
January 8, 2018

15:11:02-15:11:21                                       Page 178

 1              MS. BRODY:  He testified to a whole --
 2              MR. ROYSDEN:  He testified about these
 3  before?
 4              MS. BRODY:  Yeah, he did.
 5              MR. ROYSDEN:  You just told me that he can't
 6  do it without his computer.  I want the complete list
 7  right now.
 8              THE WITNESS:  I don't have a complete list.
 9              Why don't we just leave it at that is the
10  groups that I'm responding to, the ones that I mentioned,
11  and we'll leave it at that.
12              MR. ROYSDEN:  And that's your testimony
13  under oath?
14              THE WITNESS:  That's my testimony.
15              MS. ROYSDEN:  Under oath?
16              THE WITNESS:  I know I'm under oath.
17              MR. ROYSDEN:  So the answer is yes?
18              THE WITNESS:  Yes.
19              MR. ENSIGN:  I think that concludes things.
20              (The deposition was concluded at 3:11 p.m.)
21
22                      _____
                                MIKKEL (MIK) JORDAHL
23
24
25


                                                        Page 179

 1  STATE OF ARIZONA    )
 2  COUNTY OF MARICOPA  )
 3              BE IT KNOWN the foregoing deposition was
 4  taken by me pursuant to stipulation of counsel; that I was
 5  then and there a Certified Reporter of the State of
 6  Arizona, and by virtue thereof authorized to administer an
 7  oath; that the witness before testifying was duly sworn by
 8  me to testify to the whole truth; notice was provided that
 9  the transcript was available for signature by the
10  deponent; that the questions propounded by counsel and the
11  answers of the witness thereto were taken down by me in
12  shorthand and thereafter transcribed into typewriting
13  under my direction; that the foregoing pages are a full,
14  true, and accurate transcript of all proceedings and
15  testimony had and adduced upon the taking of said
16  deposition, all to the best of my skill and ability.
17       I FURTHER CERTIFY that I am in no way related to
18  nor employed by any parties hereto nor am I in any way
19  interested in the outcome hereof.
20       DATED at Phoenix, Arizona, this 10th day of
21  January, 2018.
22
23                      _____
                          Gerard T. Coash, RMR
24                        Certified Reporter #50503
25