**CAIR LEGAL DEFENSE FUND**
Lena F. Masri (D.C. Bar # 1000019) (*pro hac vice*)
Email:  lmasri@cair.com
Gadeir I. Abbas* (VA Bar # 81161) (*pro hac vice*)
Email:  gabbas@cair.com
Carolyn M. Homer (D.C. Bar # 1049145) (*pro hac vice*)
Email: chomer@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax:      (202) 379-3317

**KELLY / WARNER, PLLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Raeesabbas Mohamed, Esq. (AZ Bar # 027418)
Email: raees@kellywarnerlaw.com
Phone: (480) 331-9397
Fax:      (866) 961-4984

*Attorneys for Plaintiffs*

    * Licensed in VA, not in D.C.
    Practice limited to federal matters

## UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA
### PHOENIX DIVISION

| | |
|---|---|
| American Muslims for Palestine and Dr. Hatem Bazian<br><br>          Plaintiffs,<br><br>          vs.<br><br>Arizona Board of Regents on behalf of Arizona State University; and Mark Brnovich, in his official capacity as Attorney General of Arizona<br><br>          Defendants. | Case No.  CV-18-670-PHX-JJT<br><br>**Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION .............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................. 1

ARGUMENT ....................................................................................................................... 4

I.   ARIZONA'S ANTI-BDS ACT AND THE ARIZONA BOARD OF REGENTS'
"NO BOYCOTT OF ISRAEL" CLAUSE FACIALLY VIOLATE THE FIRST
AMENDMENT ......................................................................................................... 5

  A.   Support for the Boycott, Divestment, and Sanctions Movement is Protected
  Speech .................................................................................................................. 5

  B.   Arizona's anti-BDS Act Targets Specific Viewpoints ........................................... 6

  C.   Arizona's anti-BDS Act Targets Specific Content and Speakers........................... 7

  D.   The Anti-BDS Act Requires the Arizona Board of Regents to put "No Boycott
  of Israel Clauses" in its Contracts ...................................................................... 9

II.   PLAINTIFFS' FIRST AMENDMENT CHALLENGE TO ARIZONA'S ANTI-
BDS ACT IS NOT MOOT ...................................................................................... 11

  A.   Defendants' Voluntary Cessation is Flimsy and Inconsistent, and Therefore
  Cannot Moot this Dispute .................................................................................. 11

  B.   Plaintiffs Have Been Invited to Return to Campus and May Encounter anti-BDS
  Contract Terms Again ....................................................................................... 14

III.   PLAINTIFFS HAVE STATED A SECTION 1983 CLAIM ................................... 16

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Agency for International Development v. Alliance for Open Society International, Inc.*,
   133 S. Ct. 2321 (2013) ........................................................................................ 8

*Bell v. City of Boise*,
   709 F.3d 890 (9th Cir. 2013) ............................................................................ 12

*Boos v. Barry*,
   485 U.S. 312 (1988) .............................................................................................. 7

*City of Mesquite v. Aladdin's Castle*,
   455 U.S. 283 (1982) ............................................................................................ 12

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.*,
   438 U.S. 59 (1978) .............................................................................................. 17

*Epona, Ltd. Liab. Co. v. Cty. of Ventura*,
   876 F.3d 1214 (9th Cir. 2017) ...................................................................... 9, 14

*Forsyth 4 County, Ga. v. Nationalist Movement*,
   505 U.S. 123 (1992) .............................................................................................. 8

*Friends of the Earth, Inc.* v. *Laidlaw Environmental Serv.*,
   528 U.S. 167 (2000) ...................................................................................... 12, 13

*In re Nat'l Sec. Letter*,
   930 F. Supp. 2d 1064 (N.D. Cal. March 14, 2013) ......................................... 5

*Kingdomware Techs., Inc. v. United States*,
   136 S. Ct. 1969 (2016) ......................................................................... 11, 15, 16

*Knox v. SEIU, Local 1000*,
   567 U.S. 298 (2012) ............................................................................................ 16

*Koontz v. Watson*,
   283 F. Supp. 3d 1007 (D. Kan. Jan. 30, 2018) ................................................ 6

*Lamb's Chapel v. Center Moriches Union Free School District*,
   508 U.S. 384 (1993) .............................................................................................. 6

*Log Cabin Republicans v. United States*,
   658 F.3d 1162 (9th Cir. 2011) .......................................................................... 12

*Los Angeles County v. Davis*,
   440 U.S. 625 (1979) ............................................................................................ 12

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) .............................................................................................. 6

*NAACP v. Trump*,
   2018 U.S. Dist. LEXIS 68589 (D.D.C. Apr. 24, 2018) ................................ 11

- iii -

*O'Hare Truck Serv. v. City of Northlake*,
    518 U.S. 712 (1996) ........................................................................................ 8

*Planned Parenthood of Ariz., Inc. v. Brnovich*,
    172 F. Supp. 3d 1075 (D. Ariz. 2016) .......................................................... 17

*Planned Parenthood of Idaho, Inc. v. Wasden*,
    376 F.3d 908 (9th Cir. 2004) ........................................................................ 17

*Police Dep't of City of Chicago v. Mosley*,
    408 U.S. 92 (1972) .......................................................................................... 6

*Porter v. Bowen*,
    496 F.3d 1009 (9th Cir. 2007) ................................................................ 12, 13

*Quade v. Ariz. Bd. of Regents*,
    700 F. App'x 623 (9th Cir. 2017) ................................................................... 9

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015) ................................................................................ 5, 8

*Regents of the Univ. of Cal. v. United States, Dep't of Homeland Sec.*,
    279 F. Supp. 3d 1011 (N.D. Cal. 2018) ...................................................... 11

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
    515 U.S. 819 (1995). .............................................................................. 5, 6, 7

*St. Clair v. Chico*,
    880 F.2d 199 (9th Cir. 1989) .......................................................................... 4

*United States v. Concentrated Phosphate Export Ass'n*,
    393 U.S. 199 (1968) ...................................................................................... 12

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ........................................................................................ 7

**Constitution & Statutes**

Ariz. Const. Art. XI, § 5 .................................................................................... 9

Ariz. Rev. Stat. § 15-1601 ............................................................................. 2, 9

Ariz. Rev. Stat. § 15-1625 .................................................................................. 9

Ariz. Rev. Stat. § 35-301 ................................................................................. 17

Ariz. Rev. Stat. § 35-393 *et seq.* .............................................................. passim

U.S. CONST. Amend. I........................................................................................ 5

**Other Authorities**

Adam Steinbaugh, *Arizona's anti-BDS statute lands Arizona State University in federal court*, FIRE (Mar. 12, 2018) available at https://www.thefire.org/arizonas-anti-bds-statute-lands-arizona-state-university-in-federal-court/ ................................. 10

- iv -

1

Policy 5-202: Associated Students, ARIZONA BOARD OF REGENTS, available at
    https://public.azregents.edu/Policy%20Manual/5-202-Associated%20Students.pdf .... 16

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS

**INTRODUCTION**

This is a First Amendment challenge to an Arizona Act which punishes advocacy in support of the Boycott, Divestment and Sanctions movement.  This law constitutes a facial violation of the First Amendment.  Perhaps understanding this, the Arizona Board of Regents sidestepped the Act and permitted Plaintiffs to speak about the Boycott, Divestment and Sanctions movement on campus on April 3, 2018.  However the Act remains in force, the Arizona Board of Regents continues to incorporate "No Boycott of Israel" clauses into its various university contracts, and Plaintiffs will be visiting campus again next academic year.  Accordingly, this case remains a live controversy.  Defendants' Motion to Dismiss should be denied and this case should proceed to discovery and adjudication on the merits.

**FACTUAL BACKGROUND**

The relationship between Israel and Palestine is an internationally significant political conflict.  *See* Complaint ("Compl."), Dkt. 1 ¶¶ 2, 15; Preliminary Injunction Declaration of Dr. Hatem Bazian ("1st Bazian Decl."), Dkt. 9-3 ¶ 4.  One of the core disputes within the conflict concerns Israeli occupation and political control over Palestinian territory, including the West Bank and Golan Heights.  Compl., Dkt. 1 ¶ 15; 1st Bazian Decl., Dkt. 9-3 ¶ 4.  Since 2005 the "Boycott, Divestment and Sanctions" movement has strived to peacefully impose international economic and cultural pressure on Israel, with the goal of changing Israeli policy towards Palestinians.  Compl., Dkt. 1 ¶ 17; 1st Bazian Decl., Dkt. 9-3 ¶¶ 7-8; Preliminary Injunction Declaration of Taher Herzallah ("1st Herzallah Decl."), Dkt. 9-2 ¶ 3.  Plaintiffs American Muslims for Palestine and Dr. Hatem Bazian are leaders of that movement.  Compl., Dkt. 1 ¶¶ 6-7; 1st Herzallah Decl., Dkt. 9-2 ¶ 3; 1st Bazian Decl., Dkt. 9-3 ¶ 9.

Historically, the United States' friendly relationship with Israel has tended to mute its criticism of Israel's maltreatment of Palestinians.  *See* Compl. ¶¶ 18; 1st Bazian Decl., Dkt. 9-3 ¶ 5.  The United States' prevailing political support for Israel has caused state

governments and public officials to oppose the Palestinian-led Boycott, Divestment, and Sanctions ("BDS") movement.  *See* Compl. ¶¶ 20-22.

Arizona is one of the states opposed to the BDS movement.  On March 17, 2016, Arizona enacted HB 2617, codified at Ariz. Rev. Stat. § 35-393 *et seq.* (the "Act").  Ariz. Rev. Stat. § 35-393.01(A) provides: "A public entity may not enter into a contract with a company to acquire or dispose of services, supplies, information technology or construction unless the contract includes a written certification that the company is not currently engaged in, and agrees for the duration of the contract to not engage in, a boycott of Israel."  The Act also forbids state entities from adopting any "procurement, investment or other policy that has the effect of inducing … a person … to boycott Israel." Ariz. Rev. Stat. § 35-393.01(B).  The Act defines "Boycott" to include "engaging in a refusal to deal, terminating business activities or performing other actions that are intended to limit commercial relations with Israel."  Ariz. Rev. Stat. § 35-393.

The Arizona Board of Regents oversees Arizona's public universities including Arizona State University ("ASU").  Ariz. Rev. Stat. § 15-1601.  It is a public entity subject to the Act.  Shortly after the Act was signed in 2016, "ASU incorporated an anti-boycott provision into various contract templates, including its form speaker agreement." Declaration of José A. Cárdenas, Dkt. 24-1 ¶ 3; Compl., Dkt. 1 ¶ 34.  The anti-boycott clause reads:  "No Boycott of Israel.  As required by Arizona Revised Statutes § 35-393.01, Entity certifies it is not currently engaged in a boycott of Israel and will not engage in a boycott of Israel during the term of this Contract."  Cárdenas Decl., Dkt. 24-1 ¶ 3 & Ex. A; Compl., Dkt. 1 ¶ 34.

On December 13, 2017, the Arizona Board of Regents asserts that it partially elected to not comply with the Act:  "ASU determined that the Act did not apply to speakers invited to speak on campus.  It therefore revised the speaker form agreement to remove the anti-boycott provision."  Cárdenas Decl., Dkt. 24-1 ¶ 3 & Ex. B.  However, the prior version of the contract remained in circulation; the ASU Muslim Students Association sent a contract containing the "No Boycott of Israel" clause to Plaintiffs on

February 22, 2018.  Compl. ¶¶ 31-34; 1st Herzallah Decl., Dkt. 9-2 ¶ 7 & Ex. A; 1st
Bazian Decl., Dkt. 9-3 ¶ 12 & Ex. B.  After this lawsuit was filed, a reporter sent
Plaintiffs' counsel a copy of a revised ASU Speaker/Artist/Performer Agreement the
reporter had obtained.  The revised contract omits the "No Boycott of Israel" clause and
on its face is dated February 9, 2018.  *See* Second Declaration of Gadeir Abbas, Ex. A.
However, the metadata of that document says it was created by an ASU administrative
assistant on February 22, 2018.  *See* 2nd Abbas Decl. ¶ 2.  February 22 was the same day
the Muslim Students Association sent the version they possessed to Plaintiffs, which still
contained a "No Boycott of Israel" clause.  Compl. ¶¶ 31-34; 1st Herzallah Decl., Dkt. 9-2
¶ 7 & Ex. A; 1st Bazian Decl., Dkt. 9-3 ¶ 12 & Ex. B.

The "No Boycott of Israel" clause is still present in other Arizona Board of Regents
contracts.  *See* Cárdenas Decl., Dkt. 24-1 ¶ 3.  An overarching ASU form contract states
that the "No Boycott of Israel" clause is "[r]equired in contracts to acquire or dispose of
services, supplies, information technology, and construction."  *See* 2nd Abbas Decl., Ex.
B (Arizona State University Supplemental Terms and Conditions).  Thus, for example, all
ASU vendors must still certify that do not boycott Israel.  *See* 2nd Abbas Decl., Ex. C
(Arizona State University Independent Contractor Agreement for Consulting, Services,
and Deliverables).

The Arizona Board of Regents also oversees Arizona's other public universities,
including the University of Arizona and Northern Arizona University ("NAU").  Despite
the decision at ASU to remove the "No Boycott of Israel" clause, the Arizona Board of
Regents has not adhered to that same action elsewhere.  For example, the University of
Arizona's contract guidance states that "The following clauses are to be incorporated into
*all* contracts: … f) No Boycott of Israel."  2nd Abbas Decl., Ex. D (University of Arizona
Contracting FAQs, emphasis added).  The University of Arizona classifies "speakers"
who are "engaged by student organizations" as "entertainers" or "performers."  2nd Abbas
Decl., Ex. E ¶¶ 7, 30 (University of Arizona policy on Independent Contractor Services).
As of today, May 14, 2018, both of the University of Arizona's form contracts for outside

- 3 -

speakers contain the "No Boycott of Israel" clause.  2nd Abbas Decl., Exs. F (links to University of Arizona performance contracts), G (contract over $1,000), H (contract under $1,000). The "Standard Terms and Conditions" for Northern Arizona University contracts, including speaker contracts, also contain "No Boycott of Israel" clauses.  2nd Abbas Decl., Exs. I (contract definition), J (standard terms).

Based on its inconsistent interpretation of the Act, the Arizona Board of Regents let Plaintiffs speak on ASU's campus on April 3, 2018.  *See* Second Declaration of Taher Herzallah ¶ 2.  The event was a success.  *Id.*  Campus events like these are a core component of Plaintiffs' BDS advocacy.  *Id.*  Plaintiffs have since been re-invited by ASU's Muslim Students Association to speak again next academic year.  *Id.* ¶ 3 & Ex. A. Plaintiffs have also been exploring speaking at the University of Arizona on the same trip. *Id.* ¶ 4.  A significant roadblock, however, is the Arizona Board of Regents' continued inclusion of the "No Boycott of Israel" clause in the University of Arizona's speaker contracts.  *Id.* ¶ 5; 2nd Abbas Decl. ¶¶ 8-9 & Exs. G-H.

## ARGUMENT

Defendants' Motion to Dismiss centers around mootness, rather than addressing the merits of Plaintiffs' First Amendment challenge to Arizona's anti-BDS Act.  This tactical choice is likely because Arizona's anti-BDS Act engages in facial viewpoint and content discrimination and Defendants know it cannot withstand judicial scrutiny.

Defendants' Motion to Dismiss arises under Federal Rule of Civil Procedure 12(b)(1), raising a factual challenge to this Court's subject-matter jurisdiction.  *See* Motion to Dismiss ("MTD"), Dkt. 24 at 4-5.  It is thus "necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *accord, e.g., GEICO Indem. Co. v. Brown*, No. 11-cv-0025, 2011 U.S. Dist. LEXIS 70448, at *8 (D. Ariz. June 29, 2011) (denying motion to dismiss and finding ripeness).  Plaintiffs rely on their prior preliminary injunction declarations, as well as proffer two additional declarations, in order to establish

- 4 -

1    the subject-matter jurisdiction of this court.

2          This case continues to be a live controversy.  Plaintiffs continue to experience harm

3    due to Ariz. Rev. Stat. § 35-393's requirement that public contracts and policies must

4    condemn boycotts of Israel.  Plaintiffs are repeat speakers at Arizona state universities.

5    They intend to return next academic year, and they may face a "No Boycott of Israel"

6    clause again.  The governing anti-BDS Act is unchanged, the Arizona Board of Regents is

7    still including the clause in contracts across its three universities, and the Arizona Board

8    of Regents remains free to re-insert it into ASU's speaker contract.  "The fact that the

9    statute is facially deficient … presents too great a risk of potential infringement of First

10   Amendment rights" to allow the government "to side-step constitutional review by relying

11   on its voluntary" non-enforcement.  *See, e.g.*, *In re Nat'l Sec. Letter*, 930 F. Supp. 2d

12   1064, 1074 (N.D. Cal. March 14, 2013).

13   **I.    ARIZONA'S ANTI-BDS ACT AND THE ARIZONA BOARD OF
14          REGENTS' "NO BOYCOTT OF ISRAEL" CLAUSE FACIALLY VIOLATE
             THE FIRST AMENDMENT**

15         The First Amendment provides: "Congress shall make no law . . . abridging the

16   freedom of speech, or of the press."  U.S. CONST. Amend. I.  The First Amendment

17   equally binds the State of Arizona through the incorporation doctrine of the Fourteenth

18   Amendment.  *See, e.g.*, *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819,

19   822 (1995).  Arizona has "no power to restrict expression because of its message, its ideas,

20   its subject matter, or its content."  *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015).

21   Arizona's anti-BDS Act facially restricts individuals from engaging in expressive conduct

22   or speech which supports boycotts of Israel.  Ariz. Rev. Stat. § 35-393.01.  The Act, and

23   the "No Boycott of Israel" clauses implementing the Act, must be stricken as

24   unconstitutional.

25         **A.    Support for the Boycott, Divestment, and Sanctions Movement is
                   Protected Speech**

26         Politically-motivated boycotts like those the Boycott, Divestment, and Sanctions

27   movement encourages are fully protected speech under the First Amendment.  *See NAACP*

28

- 5 -

1  *v. Claiborne Hardware Co.*, 458 U.S. 886, 907, 915 (1982) (upholding civil rights

2  boycotts).  Such activity "rest[s] on the highest rung of the hierarchy of First Amendment

3  values."  *Id.* at 913 (internal citation omitted).  As the District of Kansas recently

4  recognized, BDS participants "seek to amplify their voices to influence change, as did the

5  boycotters in *Claiborne*."  *Koontz v. Watson,* No. 17-cv-4099, 283 F. Supp. 3d 1007, 2018

6  U.S. Dist. LEXIS 14260, at *24 (D. Kan. Jan. 30, 2018) (enjoining similar anti-BDS law

7  in Kansas).

8       **B.     Arizona's anti-BDS Act Targets Specific Viewpoints**

9       The Arizona Board of Regents operates three Arizona universities: Arizona State

10  University, the University of Arizona, and Northern Arizona University.  These

11  universities permit a wide range of educational activities by a wide range of student

12  organizations.  Compl., Dkt. 1 ¶¶ 29-30.  They thus provide limited public forums for

13  speech.  *Rosenberger*, 515 U.S. at 829.  Within these forums, any "ideologically driven

14  attempts to suppress a particular point of view" "are presumptively unconstitutional."  *Id.*

15  at 830.

16       Yet the anti-BDS Act and the "No Boycott of Israel" clause are both ideologically

17  driven attempts to suppress the Palestinian point of view surrounding Middle East

18  conflict.  "Denial on that basis [is] plainly invalid" viewpoint discrimination.  *Lamb's*

19  *Chapel v. Center Moriches Union Free School District*, 508 U.S. 384, 394 (1993);

20  *Rosenberger*, 515 U.S. at 828-29; *accord Police Dep't of City of Chicago v. Mosley*, 408

21  U.S. 92, 96 (1972) (Illinois statute distinguishing between labor and anti-labor protestors

22  failed strict scrutiny because the First Amendment condemns "discrimination among

23  different users of the same medium for expression").  The viewpoint-discriminatory

24  purpose of both the Act and "No Boycott of Israel" clauses is apparent by what they do

25  *not* prohibit.  University events discussing Israeli settlements in the West Bank are

26  permitted so long as the speakers are neutral or identify as pro-Israeli; it is only pro-

27  Palestinian participants in the BDS movement who are barred from speaking.  *See*

28

- 6 -

Cárdenas Decl., Dkt. 24-1 ¶ 3 & Ex. A; 2nd Abbas Decl., ¶¶ 3, 5, 8, 9, 11 & Ex. B, D, G, H, J (Arizona Board of Regents contract terms pertaining to speakers containing No Boycott of Israel clauses).

C.    **Arizona's anti-BDS Act Targets Specific Content and Speakers**

Although viewpoint-based discrimination is the most "egregious" First Amendment violation, content-based and speaker-based restrictions on speech are also presumptively unconstitutional.  *See Rosenberger*, 515 U.S. at 828-29 ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys…In the realm of private speech or expression, government regulation may not favor one speaker over another.").

A law is content-based, and presumptively unconstitutional, if "the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  Arizona's anti-BDS Act is content-based because it singles out those who participate in boycotts against Israel for disfavored treatment.  *See* Ariz. Rev. Stat. § 35-393 (defining "boycott" as engaging in business or "other actions" that are "intended to limit commercial relations with Israel").  The Act does not prohibit all economic boycotts against countries or national origins, it only prohibits boycotts *against Israel.*  Ariz. Rev. Stat. § 35-393.  Arizona contractors remain free, for example, to economically boycott Palestine – or Syria, Lebanon, Jordan, or Iran.  This statutory country-preference is akin to the Supreme Court's rejection of a D.C. ordinance which assessed "whether individuals may picket in front of a foreign embassy" as entirely dependent "upon whether their picket signs are critical of the foreign government or not." *Boos v. Barry*, 485 U.S. 312, 318-19 (1988).  Arizona's statutory "Israel" qualification proves that the anti-BDS Act is impermissibly content-based.

The Act is also impermissibly speaker-based because it only bars Arizona *contractors* from boycotting Israel.  Meanwhile, Arizona businesses, residents and visitors

- 7 -

who do not contract with the State of Arizona may still boycott Israel without censure. Singling out Government contractors in this manner is an unconstitutional condition on speech, a contractual term amounting to a prior restraint. The purpose and effect of Arizona's anti-BDS Act is to "weed out disfavored expression before it occurs" by preemptively limiting government contractors' advocacy and speech. *See Forsyth 4 County, Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992). Arizona cannot "coerce support" for its preferred "political association[s] by subjecting government contractors to "direct and specific abridgement[s] of First Amendment rights." *O'Hare Truck Serv. v. City of Northlake*, 518 U.S. 712, 720 (1996); *accord Agency for International Development v. Alliance for Open Society International, Inc.,* 133 S. Ct. 2321, 2328 (2013) (holding that unconstitutional conditions "seek to leverage [state] funding to regulate speech outside the contours of the program itself"). It is plain that Arizona's "speaker preference reflects a content preference" – *i.e.* support for Israel – and is therefore invalid. *See Reed*, 135 S. Ct. at 2230 (internal citations omitted).

The District of Kansas recently agreed that a near-identical statute violated the First Amendment. Examining comparable legislative history, the Kansas district concluded that Kansas's "goal is to undermine the message of those participating in a boycott of Israel. This is either viewpoint discrimination against the opinion that Israel mistreats Palestinians or subject matter discrimination on the topic of Israel. Both are impermissible goals under the First Amendment." *Koontz*, 283 F. Supp. 3d 1007, 2018 U.S. Dist. LEXIS 14260 at *25. The same analysis governs Arizona's proclaimed intent to prevent "economic warfare" against the "dynamic and innovative" nation of Israel. Ariz. Rev. Stat. § 35-393.03. Arizona's anti-BDS Act is a facially viewpoint-based, content-based, and speaker-based restriction on those who support anti-Israel boycotts

Facially unconstitutional laws "may have a chilling effect on protected speech because potential speakers may choose to self-censor rather than either acquire a [contract] or risk sanction for speaking without one." *Epona, Ltd. Liab. Co. v. Cty. of Ventura*, 876 F.3d 1214, 1221 (9th Cir. 2017). Plaintiffs, as Arizona contractors engaged

1  in campus speaking events, seek to eliminate that chill as to themselves and all

2  contractors.

3  **D.     The Anti-BDS Act Requires the Arizona Board of Regents to put "No Boycott of Israel Clauses" in its Contracts**

4

5          The mechanism by which the anti-BDS Act enforces its unconstitutional aims is

6  through regulation of Arizona public entities.  The Arizona Board of Regents is a public

7  entity. Ariz. Rev. Stat. § 35-393 (definition of "public entity"); Ariz. Const. Art. XI, § 5

8  (establishing the Arizona Board of Regents as a state agency); *Quade v. Ariz. Bd. of*

9  *Regents*, 700 F. App'x 623, 625 (9th Cir. 2017) (recognizing the Arizona Board of

10  Regents as a state agency).  The Arizona Board of Regents is required by law to maintain

11  Arizona State University, the University of Arizona, and Northern Arizona University.

12  Ariz. Rev. Stat. § 15-1601.  Only the Arizona Board of Regents, and not the three

13  universities themselves, has the power to enter into contracts and engage in litigation

14  related to the universities.  Ariz. Rev. Stat. § 15-1625.

15          The anti-BDS Act imposes two principle restrictions on the Arizona Board of

16  Regents.  It first provides that "[a] public entity may not enter into a contract with a

17  company to acquire … services … unless the contract includes a written certification that

18  the company is not currently engaged in, and agrees for the duration of the contract to not

19  engage in, a boycott of Israel."  Ariz. Rev. Stat. § 35-393.01(A).  The Arizona Board of

20  Regents' form speaker contract for Arizona State University – even after its recent

21  amendments – is an agreement whereby "ASU hereby engages Speaker to personally

22  provide the following *services*," namely, a speech.  *See* Cárdenas Decl., Dkt. 24-1 ¶ 5 &

23  Ex. C (emphasis added).

24          Second, the anti-BDS Act restrains public entities from adopting *any* "policy that

25  has the effect of inducing…a person or company to boycott Israel."  Ariz. Rev. Stat. § 35-

26  393.01(A).  The dictionary definition of "induce" is to "succeed in persuading or leading

27  (someone) to do something."  *See* Induce, OXFORD LIVING DICTIONARIES, available at

28  https://en.oxforddictionaries.com/definition/induce.  Arizona's definition of "boycott"

- 9 -

1   encompasses both a "refusal to deal" with Israel and "performing other actions that are

2   intended to limit commercial relations with Israel."  Ariz. Rev. Stat. § 35-393.  The plain

3   language of the anti-BDS Act therefore bars *any* Arizona Board of Regents policy which

4   would permit campus advocacy for the Boycott, Divestment, and Sanctions movement,

5   because that advocacy would be intended towards and might have the effect of persuading

6   others to limit their commercial relations with Israel.

7         This plain language is why Arizona Board of Regents' overarching form contract,

8   known as the "Arizona State University Supplemental Terms and Conditions," is

9   annotated to "require" insertion of the "No Boycott of Israel" clause in all "contracts to

10  acquire or dispose of services."  *See* 2nd Abbas Decl., Ex. B ¶ 25.  The Foundation for

11  Individual Rights in Education concurs:  the "No Boycott of Israel" clause is a state law

12  requirement, even for speaker contracts.  *See* Adam Steinbaugh, *Arizona's anti-BDS*

13  *statute lands Arizona State University in federal court*, FIRE (Mar. 12, 2018) available at

14  https://www.thefire.org/arizonas-anti-bds-statute-lands-arizona-state-university-in-federal-

15  court/.  FIRE concludes "[t]he university's hands have been tied by the state legislature."

16  *Id.*

17        Defendants insist that they have agreed amongst themselves that the anti-BDS Act

18  does not legally apply to university speakers.  *See* MTD, Dkt. 24 at 1, 4.  But Defendants

19  have not even applied their implausible interpretation to all Arizona public universities,

20  leaving in place requirements that all University of Arizona and Northern Arizona

21  University contracts—including student group negotiated speaker agreements—contain

22  the anti-BDS provision.  *See* 2nd Abbas Decl., Exs. D, G, H, J.  Furthermore, except a

23  cross reference to a prior motion, Defendants' brief offers no legal basis as to how or why

24  they reached that interpretative decision, how that interpretative decision only covers ASU

25  speaker agreements and not other ASU contracts, or how or why they had previously

26  decided to include the anti-BDS provision.  *See* MTD, Dkt. 24 at 9 (citing Dkt. 17 at 3).

27        Defendants' position appears to fully rely upon a conveniently narrow and unlikely

28  definition of the word "services."  *See* Dkt. 17 at 3 (arguing "this type of guest speech is

- 10 -

not a provision of 'services' within the meaning of the Act").  Just as professors who
lecture provide educational "services" to ASU's students, guest speakers who present
information to students likewise provide "services" within the meaning of the anti-BDS
Act.  Even the current ASU speaker contract makes clear that speakers provide "services."
*See* Cárdenas Decl., Dkt. 24-1 ¶ 5 & Ex. C.  Defendants' motion does not and cannot
explain how a contract "engage[ing] Speaker to personally provide the following
services" is not a contract for "services" within the meaning of the anti BDS-Act.
*Compare* Cárdenas Decl., Dkt. 24-1 ¶ 5 & Ex. C *with* Ariz. Rev. Stat. § 35-393.01(A).
Nor do Defendants deny that their current legal interpretation is subject to change.

　　　　　Whatever the basis of Defendants' decision to amend ASU's speaker contract and
attempt to moot out this case's claims, binding interpretations of the law are the province
of courts and not Defendants' internal agreements.  Ultimately, whether the anti-BDS Act
legally applies to university contracts with outside speakers is a question only this Court
can resolve.  *See, e.g., Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977
(2016) (holding that federal agency lacked discretion to skip over mandatory statute
related to small business contracting).  *Cf. e.g., Regents of the Univ. of Cal. v. United
States, Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1037-1043 (N.D. Cal. 2018)
(explaining that federal agency's reversal of its own interpretation of a statute reflected a
"flawed legal premise"); *NAACP v. Trump*, 2018 U.S. Dist. LEXIS 68589 at *92 (D.D.C.
Apr. 24, 2018) ("The cases are clear that courts have the authority to review an agency's
interpretation of the law if it is relied on to justify an enforcement policy.").

## II.    PLAINTIFFS' FIRST AMENDMENT CHALLENGE TO ARIZONA'S ANTI-BDS ACT IS NOT MOOT

### A.    Defendants' Voluntary Cessation is Flimsy and Inconsistent, and Therefore Cannot Moot this Dispute

　　　　　Defendants cannot carry their heavy burden of demonstrating this case is moot.  "It
has long been established that the 'mere voluntary cessation of allegedly illegal conduct
does not moot a case; if it did, the courts would be compelled to leave the defendant . . .

- 11 -

Case 2:18-cv-00670-JJT   Document 28   Filed 05/14/18   Page 17 of 23

1    free to return to his old ways.'"  *Porter v. Bowen*, 496 F.3d 1009, 1017 (9th Cir. 2007)

2    (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203

3    (1968)) (cleaned up).  Even though the Arizona Board of Regents contends that it has

4    "ceased the complained-of conduct," mootness is inappropriate unless it is "absolutely

5    clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*

6    (citing *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)); *accord Friends of the*

7    *Earth, Inc.* v. *Laidlaw Environmental Serv.*, 528 U. S. 167, 190 (2000).

8         A government agency's discretionary non-enforcement of binding law does not

9    make it "absolutely clear" that the agency will not later reverse course.  *See Porter*, 496

10   F.3d at 1017 (holding that First Amendment dispute had not been mooted by agency letter

11   avowing non-enforcement, particularly since the new administration could reverse course

12   at any time).  Absolute clarity typically requires a formal legislative change – *i.e.* the

13   expiration, repeal, or material amendment of a statute.  *Bell v. City of Boise*, 709 F.3d 890,

14   898-99 (9th Cir. 2013).  Defendants' lead case is inapposite because it features the *repeal*

15   of the challenged *statute*.  *See, e.g., Log Cabin Republicans v. United States*, 658 F.3d

16   1162, 1166 (9th Cir. 2011) (Congress repealed Don't Ask Don't Tell during pendency of

17   appeal).  Here, Arizona's anti-BDS statute – the root of Plaintiffs' continuing First

18   Amendment harm – remains untouched.  *See* Ariz. Rev. Stat. § 35-393 *et seq.*

19        By contrast, voluntary and discretionary changes to contracts, licenses, or even

20   local ordinances are *in*sufficient guarantees that the government has permanently reversed

21   course.  *See Bell*, 709 F.3d at 899. (informal policy change did not moot controversy);

22   *accord City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982) (dispute not moot

23   where only the lower court judgment prevented city from reenacting the ordinance);

24   *Friends of the Earth*, 528 U.S. at 189 (Defendant's shutdown of a polluting plant did not

25   moot controversy, in part because operation permit was still active); *Porter*, 496 F.3d at

26   1017-18 (letter to legislature promising non-enforcement did not moot prior threat of

27   prosecution).

28        The potential for inconsistency is evident in light of the Arizona Board of Regents'

- 12 -

1  own wild variance.  Arizona State University incorporated the "No Boycott of Israel"

2  clause into its speaker contracts for more than a year.  Cárdenas Decl., Dkt. 24-1 ¶ 3, Ex.

3  A & B.  Arizona State University then suddenly eliminated the clause only one week after

4  the American Civil Liberties Union filed the first constitutional challenge to the anti-BDS

5  Act.  *Compare* Cárdenas Decl., Dkt. 24-1 ¶ 4, Ex. B (Dec. 13, 2017) *with Jordahl v.*

6  *Brnovich*, No. 17-cv-8263, Dkt. 1 (D. Ariz. Dec. 6, 2017) (cited by MTD, Dkt. 24 at 9).

7  The old contract version containing the No Boycott of Israel clause remained in

8  circulation and in use by student groups at least until February 2018 when Plaintiffs

9  received their invitations.  Compl. ¶¶ 31-34; 1st Herzallah Decl., Dkt. 9-2 ¶ 7 & Ex. A; 1st

10  Bazian Decl., Dkt. 9-3 ¶ 12 & Ex. B.  And other ASU contracts continue to incorporate

11  the No Boycott of Israel clause, including in ASU's form instructions requiring insertion

12  of the clause into any contract for services.  2nd Abbas Decl., Exs. B-C.

13      Meanwhile, as of the day of this filing, the Arizona Board of Regents has taken no

14  action to remove the No Boycott of Israel Clause from its *other* university contracts,

15  including the speaker contracts in force at the University of Arizona and Northern Arizona

16  University.  *See* 2nd Abbas Decl., Exs. D, G, H, J.  With respect to the University of

17  Arizona, the Arizona Board of Regents has taken no action to amend its form speaker

18  contracts.  Rather, the University of Arizona proclaims that the "No Boycott of Israel"

19  clause must "be incorporated into *all* contracts."  2nd Abbas Decl., Ex. D (emphasis

20  added).  Both of the University of Arizona contracts that apply to student-invited speakers

21  provide: "As required by ARS §§ 35-393 to 35-393.01, Performer certifies it is not

22  currently engaged in a boycott of Israel and will not engage in a boycott of Israel during

23  the term of this contract."  2nd Abbas Decl., Exs. G-H.

24      Northern Arizona University also appears to be enforcing Ariz. Rev. Stat. § 35-393

25  as to speakers.  Although the exact form contract for speakers appears to only be

26  accessible to those with a university login, there is no public indication that NAU has

27  removed the "No Boycott of Israel" clause.  Rather, NAU's Contracting, Purchasing and

28  Risk Management department provides public information on its standard contractual

terms.  It describes "[t]ypical standard NAU contracts [as] contracts for facility use, consulting and performers…These contracts have all the terms and conditions required for compliance with state regulations."  2nd Abbas Decl., Ex. I.  The contracting page then links to NAU's "standard terms and conditions," including a "Participation in Boycott of Israel" clause.  2nd Abbas Decl. ¶¶ 10-11 & Exs. I, J ¶ 56. "Pursuant to Arizona Revised Statute §§ 35-393 and 35-393.01, Offeror certifies that it is not currently engaged in and agrees, for the duration of the Contract, to not engage in a Boycott of Israel."  2nd Abbas Decl. ¶ 11 & Ex. J ¶ 56.

Defendant Arizona Board of Regents is a unitary entity governing Arizona State University, the University of Arizona, and Northern Arizona University.  Ariz. Rev. Stat. § 15-1601.  Yet it is only at Arizona State University – the site of Plaintiffs' campus BDS event – that the Arizona Board of Regents has decided state law does *not* require inclusion of the "No Boycott of Israel" clause, and even then it only exempts speakers.  Defendant's inconsistent legal conduct reeks of voluntary cessation.

At best, Arizona's contractual scheme surrounding anti-BDS Act compliance "lack[s] clear standards."  *Epona*, 876 F.3d at 1221.  As presented, the Arizona Board of Regents is in effect claiming an "unbridled direction to grant or revoke" contracts with "No Boycott of Israel" clauses.  *See id.*  Given the facial free speech violations implicit in No Boycott of Israel clauses and the anti-BDS Act as a whole, the Arizona Board of Regents' conduct poses a "real and substantial threat of censorship."  *Id.* at 1221 (cleaned up).

## B.   Plaintiffs Have Been Invited to Return to Campus and May Encounter anti-BDS Contract Terms Again

Defendants separately argue this dispute is moot because the April 3, 2018 event has already happened.  MTD, Dkt. 24 at 1, 5-6.  Plaintiffs' dispute is not moot because, as evidenced by the Arizona Board of Regents' inconsistent and discretionary conduct, it is not absolutely clear Plaintiffs will not encounter the No Boycott of Israel clause on their next visit to Arizona.

Prior to the April 3, 2018 event at Arizona State University, Dr. Hatem Bazian had

1   previously spoken at both ASU and the University of Arizona.  1st Bazian Decl., Dkt. 9-2

2   ¶ 11.  Mr. Taher Herzallah had also previously visited ASU as a student participant in a

3   Palestine event.  1st Herzallah Decl., Dkt. 9-3 ¶¶ 6, 9-10.  He remains in contact with

4   current ASU students as the Associate Direct of Outreach & Community Organizing for

5   American Muslims for Palestine.  *See id.* ¶ 2.  Due to the success of the April 3, 2018

6   event, Dr. Bazian and AMP have been invited to return to ASU next year.  2nd Herzallah

7   Decl. ¶ 3 & Ex. A.  They are also exploring opportunities to speak at the University of

8   Arizona on the same trip.  2nd Herzallah Decl. ¶ 4.  Accordingly, the Arizona Board of

9   Regents' compliance with the anti-BDS Act, through university contractual terms,

10  remains a live controversy with continuing First Amendment harm to Plaintiffs.

11          The repetitive cycle of short-term speaker contracts across Arizona

12  universities also qualifies under the "capable of repetition, yet evading review"

13  exception to mootness.  *See, e.g., Kingdomware*, 136 S. Ct. at 1976 (finding dispute

14  not moot and proceeding to strike down agency's short-term contract practice on

15  the merits).  So long as the anti-BDS Act exists, it will require the Arizona Board of

16  Regents to incorporate "No Boycott of Israel" clause.  *See* Section I-D, *supra.*

17  Plaintiffs have a reasonable expectation of encountering Arizona's mandatory "No

18  Boycott of Israel" contractual terms again, yet each individual speaking

19  engagement may be of too short duration to challenge.  The Supreme Court has

20  recognized that courts have jurisdiction when "the same legal issue in this case is

21  likely to recur in future controversies between the same parties in circumstances

22  where the period of contract performance is too short to allow full judicial review

23  before performance is complete."  *Kingdomware*, 136 S. Ct. at 1976.

24          "A case becomes moot only when it is impossible for a court to grant any effectual

25  relief whatever to the prevailing party…. As long as the parties have a concrete interest,

26  however small, in the outcome of the litigation, the case is not moot."  *Knox v. SEIU,*

27  *Local 1000*, 567 U.S. 298, 307-08 (2012) (cleaned up).  The case is not moot because

28  there is still effectual relief this Court can award.  Plaintiffs are leaders of the BDS

- 15 -

movement; they are not engaged in a mere "pretense to challenge the Act." *Contra* MTD, Dkt. 24 at 1. Rather, they face continuing state-imposed roadblocks aimed directly at their Boycott, Divestment and Sanctions advocacy within Arizona and at Arizona universities. *See* 2nd Herzallah Decl. ¶ 5.

This Court can grant relief by declaring that the anti-BDS Act violates the First Amendment, and by striking the "No Boycott of Israel" clause from *all* Arizona Board of Regents contracts. Such an order would provide Plaintiffs with permanent relief from the burden and chill caused by the anti-BDS Act's plainly unconstitutional scope. The temporary relief provided by the Arizona Board of Regents' piecemeal voluntary cessation does not suffice to cure Plaintiffs' present and future First Amendment harms.

## III.   PLAINTIFFS HAVE STATED A SECTION 1983 CLAIM

The Arizona Board of Regents briefly contends that it has taken no unconstitutional action because the invitation Plaintiffs received originated from a student group. *See* MTD, Dkt. 24 at 17. Pursuant to the Arizona Board of Regents' own policies, however, student groups are not distinct legal entities. *See* Policy 5-202: Associated Students, ARIZONA BOARD OF REGENTS, available at https://public.azregents.edu/Policy%20Manual/5-202-Associated%20Students.pdf. Yet even when invited by students, all speaker contracts are promulgated by and must be signed by the Arizona Board of Regents. *See* Cárdenas Decl., Dkt. 24-1, Exs. A-C. The Arizona Board of Regents ultimately signed the modified contracts here. *See* 2nd Abbas Decl., Exs. K-M.[1] The Arizona Board of Regents is also bound to follow state law, and thus continues to incorporate objectionable "No Boycott of Israel" clauses in other contracts, including speaker contracts at other universities. *See* Section II-A, *supra.* Accordingly, Plaintiffs have plausibly alleged that

---

[1] Defendants attach what purport to be copies of the modified speaker agreement, as executed during this litigation. *See* Cárdenas Decl., Dkt. 24-1 ¶ 7 & Ex. D. However, Defendants do not disclose that they *rejected* the executed agreements they provided to the Court because student organizations lack the authority to sign them. The final versions, crossing out the student signatures and bearing the Arizona Board of Regents signatures, are attached. *See* 2nd Abbas Decl. Exs. L-M.

the Arizona Board of Regents itself has engaged and will continue to engage in conduct

harming Plaintiffs' First Amendment rights.

The Attorney General likewise contends that because, to date, he has only defended

the Act's constitutionality and not actively enforced it, he is not a proper Defendant to this

suit. *See* MTD, Dkt. 24 at 15-17.  The question regarding the Attorney General's

propriety as a defendant, however, is whether there is a sufficient connection between his

responsibilities and any injury that Plaintiffs might suffer. *Planned Parenthood of Idaho,*

*Inc. v. Wasden*, 376 F.3d 908, 919-20 (9th Cir. 2004). The requisite connection exists

here.  The Attorney General is responsible for enforcing the anti-BDS law, including to

prosecute custodians of public funds for paying those funds to another person "[w]ithout

authority of law." Ariz. Rev. Stat. § 35-301(1).  Any payment of expenses or an

honorarium to a contracted BDS speaker would violate this term.  The Attorney General

thus "has 'a powerful coercive effect on the action agency,'" which makes him a proper

defendant in this action challenging the constitutionality of the anti-BDS Act. *Planned*

*Parenthood of Ariz., Inc. v. Brnovich*, 172 F. Supp. 3d 1075, 1094 (D. Ariz. 2016)

(citation omitted); *see also Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438

U.S. 59, 71-72 & n.16 (1978).

Separately, it appears that the Attorney General's enforcement arm may be, or is

likely to be, at odds with the position of the Arizona Board of Regents. The Attorney

General is currently engaged in litigation with the Arizona Board of Regents regarding

universities' perceived compliance with state law on tuition matters related to

undocumented immigrants. *State of Arizona v. Arizona Board of Regents*, No. CV2017-

012115 (Maricopa Sup. Ct. filed Sept. 8, 2017).  Plaintiffs thus plausibly allege that a

court order limited to the Arizona Board of Regents alone would not provide the full

scope of relief, as the Attorney General could still enforce the anti-BDS Act against the

universities.

## CONCLUSION

The Court should deny Defendants' Motion to Dismiss.

- 17 -

1     Dated:  May 14, 2018           **CAIR LEGAL DEFENSE FUND**

2

3                        By <u>/s/ Gadeir I. Abbas</u>
                          Lena F. Masri (D.C. Bar No. 1000019)

4                            (*pro hac vice*)
                          Gadeir I. Abbas (VA Bar No. 81161)*

5                            (*pro hac vice*)
                          Carolyn M. Homer (D.C. Bar No. 1049145)

6                            (*pro hac vice*)
                          453 New Jersey Ave., SE

7                            Washington, DC 20003
                          Phone: (202) 742-6420

8                            Fax:   (202) 379-3317

9                                *\* Licensed in VA, not in D.C.*

10                               *Practice limited to federal matters*

11                          **KELLY / WARNER, PLLC**

12

13                        By <u>/s/ Raees Mohamed</u>
                          Raees Mohamed, Esq. (AZ Bar # 027418)

14                           8283 N. Hayden Road, Suite 229
                          Scottsdale, Arizona 85258

15                           Phone: (480) 331-9397
                          Fax:     (866) 961-4984

16                           *Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS