WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Muslims for Palestine, et al., | No. CV-18-00670-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Arizona State University, et al., | |
| Defendants. | |

## INTRODUCTION

In February 2018, an advocacy group called American Muslims for Palestine and its chairman, Dr. Hatem Bazian (collectively, "Plaintiffs"), were invited to speak at an upcoming event at Arizona State University ("ASU"). Plaintiffs allege that, at the time the invitation was extended, ASU utilized a contract requiring outside speakers to certify they were "not currently engaged in a boycott of Israel and will not engage in a boycott of Israel during the term of this Contract." Plaintiffs thus filed this lawsuit in March 2018. It poses a First Amendment challenge both to ASU's speaker contracts and to an Arizona statute that requires public entities to include "no boycott of Israel" clauses in certain types of contracts. *See* A.R.S. § 35-393.01(A).

Almost immediately after the lawsuit was filed, Plaintiffs were informed that ASU doesn't require outside speakers to make any Israeli boycott-related certifications. As a result, Plaintiffs were allowed to speak at the ASU event in April 2018 without incident. Afterward, Defendants moved to dismiss. While the motion was pending, as part of an

entirely different lawsuit, another court reached the merits of the constitutional issue and issued a preliminary injunction enjoining the enforcement of A.R.S. § 35-393.01(A). *See Jordahl v. Brnovich*, __ F. Supp. 3d ___, 2018 WL 4732493 (D. Ariz. 2018).

The Court finds that it lacks subject matter jurisdiction over this case and will thus grant the motion to dismiss under Rule 12(b)(1) without reaching Defendants' 12(b)(6) arguments.[1] As explained below, jurisdiction is lacking for three interrelated reasons. First, Plaintiffs generally lack standing. The "irreducible minimum" of Article III's limit on judicial power is the requirement that the plaintiff "show he personally has suffered some actual or threatened injury." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982). Here, Plaintiffs have not suffered any injury (they were allowed to speak at the April 2018 event without signing a no-boycott certification) and any threat of future injury is remote and hypothetical (they have no specific plans to speak at an institution that requires speakers to provide a no-boycott certification and the state of Arizona has, in any event, been enjoined by a different court from enforcing A.R.S. § 35-393.01(A)).

Second, one of Plaintiffs' claims for relief is moot—specifically, their request for an injunction that would "permit[] them to participate in the Muslim Students Association's planned April 3, 2018 event." Because this event has now occurred, and Plaintiffs were allowed to participate in it, there is no longer a live controversy.

Third, even if Plaintiffs were somehow able to eke past the injury-in-fact prong of the standing test, the Court concludes that, for prudential reasons, their remaining claims for relief are not ripe for review. The prudential ripeness test involves consideration of, among other things, "'the hardship to the parties of withholding court consideration.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000) (en banc) (citation omitted). Here, Plaintiffs will suffer little to no hardship from a dismissal. The fate of A.R.S. § 35-393.01(A) will likely be resolved, one way or another, by the Ninth

---

[1] Although Defendants requested oral argument on their motion to dismiss, the Court will deny the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv. 7.2(f) (same).

Circuit in the *Jordahl* appeal, and there's essentially no risk Plaintiffs will be injured by the statute while the appeal is pending (because Arizona is currently enjoined from enforcing it). Moreover, the statute isn't penal in nature, which further undermines any claim of hardship arising from deferred review.

**BACKGROUND**

A.  <u>The Complaint</u>

On March 17, 2016, Arizona enacted House Bill 2617, codified at Arizona Revised Statutes section 35-393 *et seq.* (the "Act"). (Doc. 1 ¶ 22.) As relevant here, the Act provides that "[a] public entity may not enter into a contract with a company to acquire or dispose of services, supplies, information technology or construction unless the contract includes a written certification that the company is not currently engaged in, and agrees for the duration of the contract to not engage in, a boycott of Israel." A.R.S. § 35-393.01(A).

The complaint, filed on March 1, 2018, alleges that the Muslim Students Association at ASU regularly hosts events on campus, including inviting guest speakers, as a way of engaging in interfaith and intellectual dialogue. (Doc. 1 ¶ 28.) On February 22, 2018, the Muslim Students Association invited Plaintiffs to give a presentation on April 3, 2018 regarding the Boycott, Divestment, and Sanctions ("BDS") movement, which seeks to impose economic pressure on Israel to cease settlement activity in certain territories. (*Id.* ¶¶ 17, 31.) Both American Muslims for Palestine and Dr. Bazian advocate for boycotts of Israel and intended to use the speaking opportunity at ASU to educate the campus community about the BDS movement. (*Id.* ¶ 35.)

The complaint alleges that the Arizona Board of Regents and ASU require outside speakers to sign ASU's standard "Speaker/Artist/Performer Agreement." (*Id.* ¶ 33.) The complaint alleges that paragraph 20 of this agreement provides: "<u>No Boycott of Israel</u>. As required by Arizona Revised Statutes § 35-393.01, Entity certifies it is not currently engaged in a boycott of Israel and will not engage in a boycott of Israel during the term of this Contract." (*Id.* ¶ 34.) The complaint further alleges that Plaintiffs would not sign a contract with a "No Boycott of Israel" provision and that the presence of this clause was

the only barrier to their participation in the April 3, 2018 event. (*Id.* ¶¶ 36-37.)

The complaint asserts one cause of action, a § 1983 claim for violation of the First and Fourteenth Amendments, and seeks four categories of relief that are relevant to the analysis here: (1) a judgment declaring that A.R.S. § 35-393 is unconstitutional and unenforceable; (2) "a preliminary and permanent injunction striking the 'No Boycott of Israel' clause from [Plaintiffs'] contemplated speaker contract with the Arizona Board of Regents and Arizona State University, thereby permitting [Plaintiffs] to participate in the Muslim Students Association's planned April 3, 2018 event regarding the BDS movement"; (3) "a preliminary and permanent injunction against Defendants' inclusion of boycott provisions under Ariz. Rev. Stat. § 35-393 in any state contract, and against Defendant Attorney General's continuing enforcement of Ariz. Rev. Stat. § 35-393"; and (4) a judgment declaring void all "'No Boycott of Israel' clause[s] pursuant to Ariz. Rev. Stat. § 35-393 that now exist[] in any and all contracts between Arizona public entities and private companies or persons." (*Id.* at 12-13.)[2] The complaint asserts that, "[a]bsent an injunction, Plaintiffs will suffer irreparable harm because they will be barred by state law and contract from engaging in protected First Amendment speech and association on a matter of public concern" and "will be chilled in their discussion of and advocacy for Palestinian rights, and unable to participate in the ASU MSA's April 3, 2018 event." (*Id.* ¶ 58.) Finally, the complaint alleges that "[i]f Defendants are not enjoined from enforcing Ariz. Rev. Stat. § 35-393, and from including the 'No Boycott of Israel' clause in state contracts, Plaintiffs and all advocates for Palestine will be effectively prohibited from entering into any agreement with the State of Arizona unless they give up the constitutionally-protected views that are central to their educational and advocacy missions." (*Id.* ¶ 59.)

---

[2] The complaint also seeks "judgment in Plaintiffs' favor and against Defendants on all causes of action alleged herein" as well as Plaintiffs' "reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988" and "such other and further relief as the Court may deem to be just and proper." (Doc. 1 at 12-13.)

B. Post-Complaint Developments

On March 2, 2018, Plaintiffs moved for a preliminary injunction. (Doc. 9.)

On March 8, 2018, Defendants filed their response to Plaintiffs' request for an expedited hearing. (Doc. 17.) In this response, Defendants noted that (1) ASU's General Counsel, José Cárdenas, had already explained to Plaintiffs' counsel that the contract sent to Plaintiffs was an incorrect, older version and (2) Mr. Cárdenas had also sent the correct version to Plaintiffs' counsel, which did not contain a "No Boycott of Israel" provision. (*Id.* at 3; Doc. 17-1 (Cárdenas Decl.) Ex. 1).) Mr. Cárdenas had also informed Plaintiffs' counsel that the statute did not apply in the context of speaking engagements and that ASU did not intend to enforce the statute to bar Plaintiffs' participation in the April 3, 2018 event. (Doc. 17 at 3; Doc. 17-1 (Cárdenas Decl.) Ex. 1.) Defendant Brnovich agreed with ASU's position in this filing. (Doc. 17 at 3-4.)

Ultimately, on March 15, 2018, the parties filed a joint stipulation in which Defendants advised they would not enforce the Act against Plaintiffs in connection with the April 3, 2018 event or otherwise interfere with the event, and Plaintiffs agreed to withdraw their application and request for a preliminary injunction. (Doc. 20-1.)

On April 3, 2018, Taher Herzallah, on behalf of American Muslims for Palestine, and Dr. Bazian spoke at ASU. (Doc. 24-1 (2d Cárdenas Decl.) ¶ 8; Doc. 28-2 (2d Herzallah Decl.) ¶ 2.)

C. The Motion to Dismiss

On April 10, 2018, Defendants filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6). (Doc. 24.) With respect to Rule 12(b)(1), they contend (1) the case is "doubly moot" because Plaintiffs spoke at the April 3, 2018 event without incident and because ASU removed the no-boycott clause from its speaker contacts in December 2017, (2) the "challenge also fails for lack of ripeness," and (3) Plaintiffs "also cannot satisfy the requirements of Article III standing." (*Id.* at 1-2, 9.)

On May 14, 2018, Plaintiffs filed their response. (Doc. 28.) With respect to

Defendants' jurisdictional arguments,[3] Plaintiffs contend their claims are not moot, and remain ripe for review, because (1) they have specific plans to speak again at ASU next year and "the Arizona Board of Regents remains free to re-insert [a no-boycott clause] into ASU's speaker contract" and (2) they have been "exploring" the possibility of speaking in the future at other schools overseen by the Arizona Board of Regents, including the University of Arizona, and those other schools continue to incorporate no-boycott clauses into their speaker contracts. (*Id.* at 4, 11-16; *see also* Doc 28-2 (2d Herzallah Decl.) ¶¶ 3-4 & Ex. A.)

D. Other Lawsuits Involving Challenges to No-Boycott Provisions

1. **The Arizona Challenge**

On December 6, 2017, a law firm brought suit to challenge the Act. Complaint, *Jordahl v. Brnovich*, No. 3:17-cv-08263-DJH (D. Ariz. Dec. 6, 2017), Doc. 1.

On September 27, 2018, the court (Humetewa, J.) granted a preliminary injunction. *See Jordahl v. Brnovich*, __ F. Supp. 3d ___, 2018 WL 4732493 (D. Ariz. 2018). The court concluded it had subject matter jurisdiction because the law firm had a longstanding contract with an Arizona county to provide legal services, the firm refused to execute a no-boycott certification in 2017 following the Act's enactment, and the county thereafter stopped paying the firm for the legal services it was providing. *Id.* at *2. Thus, the court determined the firm had "not only experienced 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement,' it ha[d] actually sustained injury: it is not getting paid for services rendered due to its refusal to sign the certification. The Firm has clearly shown it has standing to challenge the constitutionality of the Act." *Id.* at *5.

An appeal from the preliminary injunction is pending. Notice of Appeal, *Jordahl v. Brnovich*, No. 3:17-cv-08263-DJH (D. Ariz. October 1, 2017), Doc. 65. On October 19, 2018, the court denied an emergency motion to stay the preliminary injunction pending appeal. *Jordahl v. Brnovich*, No. 3:17-cv-08263-DJH (D. Ariz. Oct. 19, 2018), Doc. 74.

---

[3] Although the motion to dismiss doesn't address the merits of the First Amendment challenge, Plaintiffs spend much of their brief discussing the merits. (Doc. 28 at 4-11.)

2. **The Kansas Challenge**

In June 2017, Kansas enacted House Bill 2409. *See generally Koontz v. Watson*, 283 F. Supp. 3d 1007, 1012-13 (D. Kan. 2018). Similar to the Act, it "requires all state contractors to certify that they are not engaged in a boycott of Israel." *Id.* (citing Kan. Stat. Ann. § 75–3740f(a)).

In *Koontz v. Watson*, a Kansas public school teacher filed a lawsuit challenging the law's constitutionality. *Id.* at 1013. She alleged in her complaint that she had been selected during the 2016-17 school year to participate in a "teacher trainer" program administered by Kansas that paid "an extra $600 per day," that she became eligible to start performing training sessions in May 2017, that she accepted an offer to perform three sessions soon after becoming eligible, and that the offer was rescinded when she refused to sign a no-boycott certification. *Id.* at 1013-14. After the lawsuit was filed, Kansas officials argued her claims were unripe and moot because they would have waived the certification requirement if she'd simply asked for a waiver. *Id.* at 1014. The district court rejected this argument, concluding the plaintiff had suffered a cognizable injury and that Kansas's voluntary-cessation offer was insufficient to render the case moot. *Id.* at 1014-18 ("[T]he Kansas law . . . disqualifies plaintiff from eligibility for reaping the benefits of a contract with the State of Kansas that she otherwise would have received, *i.e.,* a contract compensating plaintiff for serving as a trainer for the Math and Science Partnership."). Having resolved the threshold question of jurisdiction, the court went on to rule against Kansas on the merits, holding that "Defendant is preliminarily enjoined from enforcing Kan. Stat. Ann. § 75–3740f and any other Kansas statute, law, policy, or practice that requires independent contractors to declare that they are not participating in a boycott of Israel." *Id.* at 1027.

**LEGAL STANDARD**

Standing, mootness, and ripeness all pertain to a federal court's subject matter jurisdiction under Article III of the United States Constitution and, thus, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See, e.g.*, *St. Clair v.*

*City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III of the federal Constitution."); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) . . . .").

Additionally, courts have an independent duty to examine jurisdictional issues such as standing and may raise such issues *sua sponte*. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) ("[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing."); *see also* Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

**ANALYSIS**

I.  <u>Plaintiffs Lack Standing Because They Have Not Suffered An Injury-In-Fact</u>

Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. *See* U.S. Const., Art. III, Section 2, Clause 1. "[O]ne of the controlling elements in the definition of a case or controversy under Article III is standing. The requisite elements of Article III standing are well established: A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Hein v. Freedom from Religion Foundation, Inc.*, 551 U.S. 587, 598 (2007) (citations and internal quotation marks omitted). Put another way, "[t]he plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (citations and internal quotation marks omitted).

Here, Plaintiffs haven't suffered an injury. The gist of what occurred is that Plaintiffs were invited to speak at ASU. Although they initially believed they'd be required

to sign a no-boycott certification in order to accept the invitation, they quickly learned this understanding was incorrect. As a result, they were allowed to speak at the ASU event on April 3, 2018, without signing the certification. Where's the injury? There is none.[4]

The absence of an injury distinguishes this case from *Jordahl* and *Koontz*—the two cases in which courts have reached the merits of constitutional challenges to no-boycott provisions. In *Jordahl*, the plaintiff actually lost money as a result of his refusal to sign a no-boycott certification—it stopped being paid for work it had been performing for more than a decade as a county contractor. *Jordahl*, 2018 WL 4732493 at *2, *5. Similarly, in *Koontz*, the plaintiff actually lost money as a result of her refusal to sign the certification— Kansas refused to let her conduct three training sessions for which was expecting to be paid $1,800. *Koontz*, 283 F. Supp. 3d at 1014-18.

It is, of course, possible to satisfy the injury-in-fact prong of the standing test without a sustained injury, by demonstrating a risk of threatened or future injury. However, Plaintiffs have failed to do so here. The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury are not sufficient.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted) (emphases in original); *see also Lyons*, 461 U.S. at 103 (noting that the "threat to the plaintiffs" of future injury must be "sufficiently real and immediate"). These principles doom both of Plaintiffs' theories of potential harm.

---

[4] Although the general rule is that, "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party," courts also have the "power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citations and internal quotation marks omitted). Here, although the complaint itself alleges Plaintiffs were prevented from speaking due to the presence of a no-boycott clause in ASU's speaker contracts, Plaintiffs subsequently filed a stipulation confirming they were being allowed to speak without completing the certification. (Doc. 20-1.) It would be nonsensical to confer standing on Plaintiffs based on allegations in a complaint that Plaintiffs themselves have now admitted are factually inaccurate. *St. Clair*, 880 F.2d at 201 ("[A] Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court. . . . The district court obviously does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes.").

First, although Plaintiffs contend they have specific plans to speak again at ASU next year and "the Arizona Board of Regents remains free to re-insert [a no-boycott clause] into ASU's speaker contract" (*see* Doc. 28 at 5, 14-15), this claim is too speculative to pass muster. The parties' stipulation establishes that ASU doesn't, at present, utilize the clause in its speaker contracts, and the *Jordahl* court's recent issuance of an injunction makes it unlikely the clause will be re-inserted in the near future. A theoretical possibility of future harm isn't sufficient under Article III. Second, although Plaintiffs also contend they have been "exploring" the possibility of speaking in the future at other schools overseen by the Arizona Board of Regents (including the University of Arizona), which are alleged to continue to incorporate no-boycott clauses into their speaker contracts (*see* Doc. 28 at 15), this allegation is again insufficient. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."); *Thomas*, 220 F.3d at 1139 ("A general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan."); *Snake River Farmers' Ass'n, Inc. v. Dept. of Labor*, 9 F.3d 792, 798 (9th Cir. 1993) ("This is the kind of 'some day' speculative possibility which *Lujan* holds cannot establish standing.").

Some of Plaintiffs' claims and theories are also marred by other standing-related deficiencies. For example, the complaint alleges that "Plaintiffs *and all advocates for Palestine* will be effectively prohibited from entering into any agreement with the State of Arizona unless they give up the constitutionally-protected views that are central to their educational and advocacy missions" (*see* Doc. 1 ¶¶ 58-59, emphasis added) and thus seeks an injunction that would prohibit Defendants from including a no-boycott provision "in any state contract" (*see* Doc. 1 at 13) and a declaration of invalidity as to "any and all contracts between Arizona public entities and private companies or persons" if those contracts contain no-boycott provisions (*id.*). Plaintiffs, however, do not have standing to bring claims on behalf of "all advocates for Palestine," even if other advocates potentially

may be affected by the law. *See Lyons*, 461 U.S. at 111 ("Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional."). Similarly, Plaintiffs lack standing to seek the invalidation of *all* of Arizona's contracts with third parties.

The Court has no doubt that Plaintiffs hold sincere, deeply-held concerns regarding the constitutionality of A.R.S. § 35-393.01(A). However, "a mere interest in the problem, no matter how long standing the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient" to confer standing. *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). Because Plaintiffs haven't suffered any injuries yet, and their theories of future harm rest on speculation and conjecture, they lack standing to pursue this lawsuit.

II. <u>One of Plaintiffs' Claims Is Moot</u>

The complaint requests several forms of declaratory and injunctive relief. One of the requests is for an injunction that would "permit[] them [Plaintiffs] to participate in the Muslim Students Association's planned April 3, 2018 event." (Doc. 1 at 12-13.) Because Plaintiffs already spoke at the April 3, 2018 event, this claim no longer presents a live controversy—it is moot. *See, e.g., Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007) (finding claim for injunctive relief relating to defendant's application of a policy moot where defendant had applied the policy and reached plaintiffs' desired result during appeal); *DeFunis v. Odegaard*, 416 U.S. 312, 319 (1974) (per curiam) (finding case moot where plaintiff challenged law school's admissions policy and sought admission to school but, at time of appeal, had been admitted and was finishing last term).

III. <u>Plaintiffs' Remaining Claims Are Unripe</u>

The concept of ripeness is part of the justiciability calculus, and federal courts lack jurisdiction to address unripe claims. *S. Pacific Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990) ("Ripeness is more than a mere procedural question; it is

- 11 -

determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed."). "[T]he ripeness inquiry contains both a constitutional and a prudential component." *Thomas*, 220 F.3d at 1138 (citation and internal quotation marks omitted).

As noted in Part I above, the Court concludes Plaintiffs lack standing to pursue this lawsuit. That analysis suggests Plaintiffs' claims for injunctive and declaratory relief (apart from the claim, addressed above, that is now moot) also fail to satisfy the constitutional component of the ripeness inquiry. *See Thomas*, 220 F.3d at 1138-39 ("The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong. . . . We need not delve into the nuances of the distinction between the injury in fact prong of standing and the constitutional component of ripeness: in this case, the analysis is the same.").

Moreover, even if Plaintiffs could somehow satisfy the constitutional component of the ripeness test, the Court concludes that, for prudential reasons, their remaining claims for relief are not ripe for review. "In evaluating the prudential aspects of ripeness, our analysis is guided by two overarching considerations: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Thomas*, 220 F.3d at 1141 (citation omitted). Here, Plaintiffs would suffer little hardship if the Court were to dismiss. The fate of A.R.S. § 35-393.01(A) will likely be resolved by the Ninth Circuit in the *Jordahl* appeal, and because Arizona is currently enjoined from enforcing the statute, there's little (if any) risk Plaintiffs will be injured by the statute while the *Jordahl* appeal is pending.

One final factor cuts against a finding of hardship. This isn't a case where Plaintiffs would be exposed to criminal prosecution or civil penalties if they were somehow presented, in the future, with a state contracting opportunity conditioned on their execution of a no-boycott clause and refused to execute it. In that circumstance, if they were denied the contract, they could simply file another lawsuit. *See, e.g., Thomas*, 220 F.3d at 1142 ("[Plaintiffs] have not persuaded us that any hardship will result from deferring resolution

of this matter to a time when a real case arises. . . . [T]he absence of any real or imminent threat of enforcement, particularly criminal enforcement, seriously undermines any claim of hardship."); *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 851 (9th Cir. 2007) (even in the First Amendment context, where ripeness inquiry may be relaxed, plaintiff must show he "'is immediately in danger of sustaining[] a direct injury as a result of [an executive or legislative] action'") (citation omitted).[5]

IV. Conclusion

The Court lacks subject matter jurisdiction over this case and thus must dismiss it. With regard to the form of dismissal, the Ninth Circuit has specified that "[d]ismissals for lack of jurisdiction 'should be . . . without prejudice so that a plaintiff may reassert his claims in a competent court.'" *Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (citation omitted); *see also Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citations omitted) ("In general, dismissal for lack of subject matter jurisdiction is without prejudice. The theory undergirding the general rule is that 'the merits have not been considered' before dismissal."). Accordingly,

**IT IS ORDERED** that**:**

1. Defendants' motion to dismiss (Doc. 24) is **GRANTED**; and

2. The case shall be dismissed without prejudice without further notice.

Dated this 29th day of November, 2018.

Dominic W. Lanza
United States District Judge

---

[5] In *Koontz*, the district court concluded that even though Kansas's no-boycott statute did "not expose [Ms. Koontz] to fear of prosecution or professional discipline," the potential loss of money arising from future contracting opportunities "present[ed] the requisite hardship for purposes of the ripeness analysis." 283 F. Supp. 3d at 1015. This outcome is difficult to reconcile with Ninth Circuit law, which, as noted, holds that the absence of a threat of criminal enforcement "seriously undermines any claim of hardship." *Thomas*, 220 F.3d at 1142. In any event, the ripeness analysis here also differs from *Koontz* due to the presence of the *Jordahl* injunction.